## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G., | |
| Plaintiffs, | Case No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity, | |
| Defendants. | |

## INTRODUCTION

1.     Plaintiffs and proposed class members are noncitizens with final removal orders resulting from proceedings in which they have been notified that they could be deported to a designated country of removal (usually their country of origin) and, in some cases, an alternative country of removal (usually a country of which they are a citizen or in which they hold status) and had an opportunity to contest removal to the designated country based on a claim of fear. They bring this class action to challenge the policy or practice of the Department of Homeland Security (DHS) of deporting, or seeking to deport, them to a *third* country – a country *never* designated for removal – without first providing them with notice or opportunity to contest removal on the basis that they have a fear of persecution, torture, and even death if deported to that third country.

2.     DHS' policy or practice of failing to afford these basic, minimal protections violates the Immigration and Nationality Act, the Foreign Affairs Reform and Restructuring Act

of 1998, the Due Process Clause of the Fifth Amendment, and the treaty obligations of the United States. Indeed, the Office of the Solicitor General (OSG) recognized these legal obligations when it informed the Supreme Court in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), that DHS will not deport to a third country noncitizens with final orders who have already been granted protection by an immigration judge (IJ) until after the individual receives meaningful notice of the opportunity to assert a fear-based claim against removal to that third country. *See* Transcript of Oral Argument at 20-21, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

3.      As Plaintiffs and proposed class members' cases demonstrate, and as litigation after the OSG's representations revealed, DHS has *no* written policy to provide noncitizens either with notice or an opportunity to present a fear-based claim before DHS deports them to a third country where they face persecution, torture, and/or death.

4.      The absence of written policies and procedures has in the past resulted in cases where individuals, including those granted protection from removal, were deported to third countries without warning. But on February 18, 2025, DHS issued a policy directive that has magnified the practical impact of this lack of a written policy. The directive instructs DHS officers to review all cases of individuals previously released from immigration detention – including those who have complied with the terms of their release for years, even decades – for re-detention and removal to a third country. This directive to re-detain places an untold number of noncitizens at imminent risk of the deprivation of liberty and deportation to a third country without the basic procedural protections of notice and opportunity to present a fear-based claim.

5.      DHS' failure to provide a meaningful notice and opportunity to present a fear-based claim before deportation to a third country has caused, and is causing, irreparable harm.

For example, Plaintiff O.C.G., a Guatemalan man to whom the IJ granted protection from deportation to Guatemala, thought he was being released from immigration detention when DHS instead placed him and approximately 20 other men on a bus without telling them that they were being deported to Mexico. Plaintiff O.C.G. had no notice and no opportunity to present his claim that he had been raped in Mexico and feared persecution and torture there. In Mexico, authorities gave Plaintiff O.C.G. the Hobson's choice of waiting several months in detention to apply for asylum in Mexico, a country in which he had been persecuted and feared future persecution, or being deported to Guatemala, the country where an IJ had found it was more likely than not that he would be persecuted. He currently remains in hiding in Guatemala.

6.    Plaintiffs, on behalf of themselves and similarly situated individuals, challenge DHS' policy or practice of failing to provide meaningful notice and the opportunity to present a fear-based claim prior to deportation to a third country and DHS' policy of re-detention pursuant to the February 18, 2025 directive. Plaintiffs ask this Court to declare these policies unlawful and to set them aside, to enjoin DHS from continuing to fail to provide meaningful advanced notice in writing and the opportunity to present a fear-based claim to an IJ prior to any deportation to a third country, and to order DHS to return Plaintiff O.C.G. and proposed class members who have been deported without these procedural protections.

## JURISDICTION

7.    This case arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, the regulations implementing the INA, the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub. L. No. 105–277, div. G, Title XXII, § 2242(a), 112 Stat. 2681, 2681–822 (1998) (codified as Note to 8 U.S.C. § 1231), the regulations implementing the FARRA, the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*; and 5 U.S.C. §

552 *et. seq.*

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as the instant case is a civil action arising under the laws of the United States. For Plaintiffs in immigration custody, 28 U.S.C. § 2241 also provides jurisdiction. The Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. §§ 705-06, 28 U.S.C. § 1651, 28 U.S.C. §§ 2201–02, 28 U.S.C. § 2241, and its equitable powers. The government has waived its sovereign immunity pursuant to 5 U.S.C. § 702.

## VENUE

9.      Venue properly lies in this District pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which one of the defendants is an agency of the United States, there is no real property involved in this action, and Plaintiffs D.V.D. and E.F.D. reside in this District.

## PARTIES

10.      Plaintiff D.V.D. is a noncitizen from Cuba and resident of Pittsfield, Massachusetts. He has a final removal order from 2017 following removal proceedings in which Cuba was the only country designated for removal. On March 28, 2025, Plaintiff D.V.D. faces imminent risk of re-detention and deportation to a third country when he is required to report for an in-person check-in with U.S. Immigration and Customs Enforcement (ICE) in Burlington, Massachusetts – only three weeks after his last check-in with that office.

11.      Plaintiff M.M. is a noncitizen from Honduras and resident of Fort Worth, Texas. In 2021, an IJ granted her application for withholding of removal to Honduras, the only country designated for removal, in withholding-only proceedings. On April 4, 2025, Plaintiff M.M. faces imminent risk of re-detention and deportation to a third country when she is required to report for an in-person check-in with ICE in Dallas, Texas – only three weeks after her last check-in with

that office and after ICE officers informed her that she was on a list of people scheduled to be deported.

12.     Plaintiff E.F.D. is a noncitizen from Ecuador and resident of Milford, Massachusetts. In 2018, in removal proceedings, an IJ granted his application for protection from deportation to Ecuador, the only country designated for removal, under the United Nations Convention Against Torture (CAT). On March 18, 2025, ICE and other agents took E.F.D. and his other co-workers into custody after their search for a different person was unsuccessful. He is currently detained at the Plymouth County Correctional Center in Plymouth, Massachusetts. He is at imminent risk of deportation to a third country.

13.     Plaintiff O.C.G. is a noncitizen from Guatemala. On February 19, 2025, an IJ granted his application for withholding of removal to Guatemala, the only country designated for removal, in withholding-only proceedings. On or around February 19, 2025, DHS deported Plaintiff O.C.G to Mexico without any advance notice, and Plaintiff O.C.G. had no opportunity to present his claim that he would suffer persecution and/or torture in Mexico. Following his deportation to Mexico, Mexican authorities deported him to Guatemala, the country from which the United States has granted him protection, where he remains in hiding to this day.

14.     Defendant U.S. Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA and is an agency within the meaning of the APA, 5 U.S.C. § 551(1). DHS oversees its component agencies, including ICE, U.S. Customs and Border Protection, and U.S. Citizenship and Immigration Services.

15.     Defendant Kristi Noem is the Secretary of DHS. In that capacity, she is charged with the administration and enforcement of the INA. She is sued in her official capacity.

16.     Defendant Pamela Bondi is the United States Attorney General. In this capacity,

she directs agencies within the United States Department of Justice, including the Executive

Office for Immigration Review (EOIR), which houses the immigration courts and Board of

Immigration Appeals. Defendant Bondi is responsible for the administration of immigration laws

pursuant to 8 U.S.C. § 1103(g) and oversees EOIR. She is sued in her official capacity.

17.     Antone Moniz is the Superintendent of the Plymouth County Correctional

Facility, and he has physical custody of Plaintiff E.F.D. pursuant to the facility's contract with

ICE to detain noncitizens. Mr. Moniz is a legal custodian of Plaintiff E.F.D.

## FACTUAL ALLEGATIONS

### I.     Legal Background

#### A.     Section 240 Removal Proceedings

18.     In 1996, Congress enacted the Illegal Immigration Reform and Immigrant

Responsibility Act (IIRIRA). The Act generally retained prior procedures for removal hearings

for all noncitizens—i.e., full immigration court hearings, appellate review before the Board of

Immigration Appeals, and federal court review.  *See* 8 U.S.C. § 1229a; 8 U.S.C. § 1252(a).  In

these removal proceedings (commonly referred to as "Section 240" proceedings), the noncitizen

is entitled to select a country of removal. 8 U.S.C. § 1231(b)(2)(A); *see also* 8 C.F.R. §

1240.10(f) ("[T]he immigration judge shall notify the respondent that if he or she is finally

ordered removed, the country of removal will in the first instance be the country designated by

the respondent . . . ."). The IJ will designate the country where the person "is a subject, national,

or citizen," if either the noncitizen does not select a country or as an alternative in the event the

noncitizen's designated country does not accept the individual. 8 U.S.C. § 1231(b)(2)(D). The IJ

also may designate alternative countries, as specifically set out by 8 U.S.C. § 1231(b)(2)(E). For

individuals placed in Section 240 proceedings upon arrival, the statute provides designation to

the country from which the individual boarded a vessel or aircraft and then can consider alternative countries. *See* 8 U.S.C. § 1231(b)(1); *see also* 8 C.F.R. § 1240.10(f).

19.    An IJ must provide sufficient notice and opportunity to apply for protection from a designated country of removal. 8 C.F.R. § 1240.10(f) (providing that the "immigration judge *shall* notify the respondent" of designated countries of removal) (emphasis added); 8 C.F.R. § 1240.11(c)(1)(i) (providing that the IJ shall "[a]dvise the [noncitizen] that he or she may apply for asylum in the United States or withholding of removal to [the designated countries of removal]").

20.    Asylum is a form of protection available in Section 240 removal proceedings. An IJ may grant asylum in the exercise of discretion where the applicant demonstrates a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" in their country of origin. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A); *see also* 8 C.F.R. §§ 208.1, 1208.1. Once granted asylum, an individual generally cannot be deported to their country of origin or any other country absent subsequent unlawful conduct, evidence of fraud in the asylum application, or a fundamental change in country conditions. *See generally* 8 U.S.C. § 1158(c)(2); 8 C.F.R §§ 208.24, 1208.24.

21.    For individuals determined to be ineligible for asylum, Congress further provided, with certain exceptions not relevant here, that "notwithstanding [8 U.S.C. §§ 1231(b)(1) and (2)], the Attorney General [i.e., DHS] may not remove [a noncitizen] to a country if the Attorney General [(i.e., an immigration judge)] decides that [the noncitizen's] life or freedom would be threatened in that country because of [the noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. §§ 208.16, 1208.16.  This form of protection, known as withholding of removal, is mandatory,

i.e., it cannot be denied to eligible individuals in the exercise of discretion. Unlike asylum, the protection of withholding of removal is country-specific.

22.     Individuals in Section 240 proceedings who are ineligible for withholding of removal, are still entitled to receive protection under the Convention Against Torture (CAT), in the form of withholding or deferral of removal, upon demonstrating a likelihood of torture if removed to the designated country of removal. *See* FARRA (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16(c), 208.17(a), 1208.16(c), 1208.17(a); 28 C.F.R. § 200.1. Like withholding of removal under 8 U.S.C. § 1231(b)(3), CAT protection is mandatory. *Id.* With respect to any individual granted deferral of removal under CAT, the IJ "shall also inform the [noncitizen] that removal has been deferred only to the country in which it has been determined that the [noncitizen] is likely to be tortured, and that the [noncitizen] may be removed at any time to another country where he or she is not likely to be tortured." 8 C.F.R. §§ 208.17(b)(2), 1208.17(b)(2).

23.     An IJ may only terminate a grant of CAT protection based on evidence that the person will no longer face torture. DHS must move for a new hearing and provide evidence "relevant to the possibility that the [noncitizen] would be tortured in the country to which removal has been deferred and that was not presented at the previous hearing." 8 C.F.R. §§ 208.17(d)(1), 1208.17(d)(1). If a new hearing is granted, the IJ must provide notice "of the time, place, and date of the termination hearing," and must inform the noncitizen of the right to "supplement the information in his or her initial [withholding or CAT] application" "within 10 calendar days of service of such notice (or 13 calendar days if service of such notice was by mail)." 8 C.F.R. §§ 208.17(d)(2), 1208.17(d)(2).

24.     Individuals in Section 240 proceedings are entitled to an administrative appeal to

the BIA along with an automatic stay of deportation while the appeal is pending, and to seek

judicial review of an adverse administrative decision by filing a petition for review in the court

of appeals. *See* 8 U.S.C. §§ 1101(a)(47)(B), 1252(a); 8 C.F.R. §§ 1003.6(a), 1240.15.

      **B.**     **Withholding-Only Proceedings**

     25.     Individuals who have been deported and subsequently return to the United States

without inspection are subject to a summary removal process known as reinstatement of removal.

*See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8. This summary process is carried out by DHS

officers. Individuals subject to reinstatement orders are barred from seeking most forms of relief

from removal, including asylum.

     26.     Some individuals who are not lawful permanent residents are subject to a separate

summary removal process—known as Section 238(b) administrative removal—if a DHS officer

determines that they are deportable due to an aggravated felony conviction. *See* 8 U.S.C.

§ 1228(b); 8 C.F.R. § 238.1(b)(1). That process is also carried out by DHS officers and, like

individuals subject to reinstatement orders, individuals with 238(b) administrative removal

orders are barred from most forms of relief from removal, including asylum.

     27.     However, consistent with the United States' commitment to *non-refoulement*-—

the fundamental principle that no one should be returned to a country where they would face

persecution, torture, cruel, inhuman, or degrading treatment, or serious harm—critical

protections from removal remain available in reinstatement and 238(b) administrative removal

proceedings: withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT protection. *See* 8

C.F.R. §§ 241.8(e), 238.1(f)(3); *see also* 8 C.F.R. §§ 208.31, 1208.31. Individuals who express a

fear of return to their countries of origin are given the opportunity to demonstrate a reasonable

fear of persecution or torture in interviews before asylum officers. *Id.* If the asylum officer

determines their fear is not reasonable, the individual can seek review of that determination

before an IJ in reasonable fear proceedings. 8 C.F.R. §§ 208.31(g), 1208.31(g). If either the

asylum officer or the reviewing IJ finds their fear is reasonable, the individual is placed in

withholding-only proceedings before an IJ where they can seek protection from deportation by

applying for withholding of removal and/or CAT protection. 8 C.F.R. §§ 208.31(e), (g)(2),

1208.31(e), (g)(2).

28.     If the IJ denies the withholding and/or CAT application, the individual may seek

review before the BIA, 8 C.F.R. §§ 208.31(e), (g)(2)(ii), 1208.31(e), (g)(2)(ii). Judicial review of

these orders and administrative decisions is available by filing a petition for review in the court

of appeals. 8 U.S.C. § 1252(a).

**C.      Statutory Scheme for Removal to a Third Country**

29.     Congress established the statutory process for designating countries to which

noncitizens may be removed, 8 U.S.C. § 1231(b)(1)-(3).[1]

30.     Subsection (b)(1) applies to noncitizens "[a]rriving at the United States,"

including from a contiguous territory, but expressly contemplates arrival via a "vessel or

aircraft." It designates countries and alternative countries to which the noncitizen may be

removed. 8 U.S.C. § 1231(b)(1)(B) (removal to contiguous country from which the noncitizen

traveled), § 1231(b)(1)(C) (alternative countries).

31.     Subsection (b)(2) applies to all other noncitizens, and like Subsection (b)(1),

designates countries and alternative countries to which the noncitizen may be removed. 8 U.S.C.

---

[1]     References to the Attorney General in Section 1231(b) refer to the Secretary of DHS for functions related to carrying out a removal order and to the Attorney General for functions related to selection of designations and decisions about fear-based claims. 6 U.S.C. § 557. The Attorney General has delegated the latter functions to the immigration courts and Board of Immigration Appeals. *See* 8 C.F.R. §§ 1208.16, 1208.17, 1208.31,1240.10(f), 1240.12(d).

§ 1231(b)(2)(A) (noncitizen's designation of a country of removal), 1231(b)(2)(B) (limitation on

designation), 1231(b)(2)(C) (disregarding designation), 1231(b)(2)(D) (alternative country),

1231(b)(2)(D) (alternative countries), 1231(b)(2)(E) (additional removal countries).

32.     Critically, both Subsections (b)(1) and (b)(2), have a specific carve-out provision

prohibiting removal of persons to countries where they face persecution or torture. Specifically,

§ 1231(b)(3)(A), entitled "Restriction on removal to a country where [noncitizen's] life or

freedom would be threatened," reads:

> **Notwithstanding paragraphs [b](1) and [b](2)**, the Attorney General **may not remove**
> [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or
> freedom would be threatened in that country because of the [noncitizen's] race, religion,
> nationality, membership in a particular social group, or political opinion.

*Id*. § 1231(b)(3)(A) (emphasis added).

33.     Similarly, with respect to the Convention Against Torture, the implementing

regulations allow for removal to a third country, but only "where he or she is not likely to be

tortured." 8 C.F.R. §§ 208.17(b)(2), 1208.17(b)(2).

34.     In *Jama v. Immigr. & Customs Enf't*, the Supreme Court addressed the

designation procedure under Subsection (b)(2). 543 U.S. 335 (2005). Critically, the Court stated

that noncitizens who "face persecution or other mistreatment in the country designated under §

1231(b)(2), . . . have a number of available remedies: asylum; withholding of removal; relief

under an international agreement prohibiting torture . . . ." *Jama*, 543 U.S. at 348 (citing 8 U.S.C.

§§1158(b)(1), 1231(b)(3)(A); 8 C.F.R. §§ 208.16(c)(4), 208.17(a)).

35.     Although individuals granted CAT protection may be removed to a third country,

the regulations provide that they may not be removed to a country where they are likely to be

tortured: "The immigration judge shall also inform the [noncitizen] that removal has been

deferred only to the country in which it has been determined that the [noncitizen] is likely to be

tortured, and that the [noncitizen] may be removed at any time to another country where he or she is not likely to be tortured." 8 C.F.R. §§ 208.17(b)(2), 1208.17(b)(2).

36.    Notably, the regulations also provide that protection under CAT may be terminated based on evidence that the person will no longer face torture but nevertheless provides certain protections to noncitizens. First, the regulations require DHS to move for a new hearing, requiring that DHS support their motion for the new hearing with evidence "relevant to the possibility that the [noncitizen] would be tortured in the country to which removal has been deferred and that was not presented at the previous hearing. 8 C.F.R. §§ 208.17(d)(1), 1208.17(d)(1). Second, even if a new hearing is granted, the regulations require that the IJ provide the noncitizen with notice "of the time, place, and date of the termination hearing. Such notice shall inform the [noncitizen] that the [noncitizen]  may supplement the information in his or her initial application for withholding of removal under the Convention Against Torture and shall provide that the [noncitizen] must submit any such supplemental information within 10 calendar days of service of such notice (or 13 calendar days if service of such notice was by mail)." 8 C.F.R. §§ 208.17(d)(2), 1208.17(d)(2). Thus, not only is the noncitizen provided notice, but also an opportunity to submit documentation in support of their claim for protection.

**D.    DHS' Obligation to Provide Notice and Opportunity to Present a Fear-Based Claim Before Deportation to a Third Country**

37.    For individuals in removal proceedings, the designation of a country of removal (or, at times, countries in the alternative that the IJ designates) on the record provides notice and an opportunity to permit a noncitizen who fears persecution or torture in the designated country (or countries) to file an application for protection. *See* 8 C.F.R. § 1240.10(f) (stating that "immigration judge shall notify the [noncitizen]" of proposed countries of removal); 8 C.F.R. § 1240.11(c)(1)(i) ("If the [noncitizen] expresses fear of persecution or harm upon return to any of

the countries to which the [noncitizen] might be removed pursuant to § 1240.10(f) . . . the immigration judge shall . . . [a]dvise [the noncitizen] that he or she may apply for asylum in the United States or withholding of removal to those countries[.]").

38.     Pursuant to § 1231(b)(3)(A), courts repeatedly have held that individuals cannot be removed to a country that was not properly designated by an IJ if they have a fear of persecution or torture in that country. *See Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999); *Kossov v. INS*, 132 F.3d 405, 408-09 (7th Cir. 1998); *El Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004); *cf. Protsenko v. U.S. Att'y Gen.*, 149 F. App'x 947, 953 (11th Cir. 2005) (per curiam) (permitting designation of third country where individuals received "ample notice and an opportunity to be heard").

39.     Providing such notice and opportunity to present a fear-based claim prior to deportation also implements the United States' obligations under international law. *See* United Nations Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150; United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223, 606 U.N.T.S. 267; Refugee Act of 1980, Pub. L. 96-212, § 203(e), 94 Stat. 102, 107 (codified as amended at 8 U.S.C. § 1231(b)(3)); *INS v. Stevic*, 467 U.S. 407, 421 (1984) (noting that the Refugee Act of 1980 "amended the language of [the predecessor statute to § 1231(b)(3)], basically conforming it to the language of Article 33 of the United Nations Protocol"); *see also* United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *opened for signature* Dec. 10, 1984, art. III, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85, 114; FARRA at 2681–822 (codified at Note to 8 U.S.C. § 1231) ("It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of

being subjected to torture, regardless of whether the person is physically present in the United States."); United Nations Committee Against Torture, General Comment No. 4 ¶ 12, 2017, Implementation of Article 3 of the Convention in the Context of Article 22, CAT/C/GC/4 ("Furthermore, the person at risk [of torture] should never be deported to another State where he/she may subsequently face deportation to a third State in which there are substantial grounds for believing that he/she would be in danger of being subjected to torture.").

40.    Meaningful notice and opportunity to present a fear-based claim prior to deportation to a country where a person fears persecution or torture are also fundamental due process protections under the Fifth Amendment. *See Andriasian*, 180 F.3d at 1041; *Protsenko*, 149 F. App'x at 953; *Kossov*, 132 F.3d at 408; *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1004 (W.D. Wash. 2019). Similarly, a "last minute" IJ designation of a country during removal proceedings that affords no meaningful opportunity to apply for protection "violate[s] a basic tenet of constitutional due process." *Andriasian*, 180 F.3d at 1041.

41.    The federal government has repeatedly acknowledged these obligations. In June 2001, the former Immigration and Naturalization Service drafted a document entitled "Notice to Alien of Removal to Other than Designated Country (Form I-913)," which would have provided noncitizens with written notice of deportation to a third country and a 15-day automatic stay of removal to allow the noncitizen to file an unopposed motion to reopen removal proceedings and accompanying Form I-589 (protection application) before an IJ. *See* Attachment A, Records Produced in Response to Freedom of Information Act (FOIA) Litigation, *Nat.'l Immigr. Litigation Alliance v. ICE*, No. 1:22-cv-11331-IT (D. Mass. filed Aug. 17, 2022), at 2022-ICLI-00055* 9-14. Almost twenty years later, in June 2020, DHS again drafted a model "Notice of Removal to Other than Designated Country," that likewise provided these protections. *See*

14

Attachment B, Records Produced in Response to FOIA Litigation, *Nat.'l Immigr. Litigation Alliance v. ICE*, No. 1:22-cv-11331-IT (D. Mass. filed Aug. 17, 2022), at 2022-ICLI-00055* 8 (Notice).[2] Although neither form was ever published, both reflect how notice must be provided to be meaningful.[3]

42.    Additionally, in 2005, in jointly promulgating regulations implementing 8 U.S.C. § 1231(b), the Departments of Justice and Homeland Security asserted that "[a noncitizen] will have the opportunity to apply for protection as appropriate from any of the countries that are identified as potential countries of removal under [8 U.S.C. § 1231(b)(1) or (b)(2)]." Execution of Removal Orders; Countries to Which Aliens May Be Removed, 70 Fed. Reg. 661, 671 (Jan. 5, 2005) (codified at 8 C.F.R. pts. 241, 1240, 1241) (supplementary information). Furthermore, the Departments contemplated that, in cases where ICE sought removal to a country that was not designated in removal proceedings, namely, "removals pursuant to [8 U.S.C. § 1231(b)(1)(C)(iv) or (b)(2)(E)(vii)]," DHS would join motions to reopen "[i]n appropriate circumstances" to allow the noncitizen to apply for protection. *Id*.

43.    Furthermore, consistent with the above-cited authorities, at oral argument in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), the Assistant to the Solicitor General represented that the government must provide a noncitizen with notice and an opportunity to present a fear-based claim before that noncitizen can be deported to a non-designated third country. Specifically, at oral argument in that case, the following exchange between Justice Kagan and Vivek Suri, Assistant to the Solicitor General, took place:

> JUSTICE KAGAN: . . . [S]uppose you had a third country that, for whatever reason,

---

[2]    The complete production is available at https://tinyurl.com/2t868ykr. Pages 1-7 (Bates 2022-ICLI-00055* 1-7) indicate that the notice was drafted on or about May 21, 2020.
[3]    The forms fell short of providing a meaningful opportunity to present a fear-based claim, however, because they placed the burden on the noncitizen to file a motion to reopen.

was willing to accept [a noncitizen]. If -- if -- if that [noncitizen] was currently in withholding proceed -- proceedings, you couldn't put him on a plane to that third country, could you?

MR. SURI: We could after we provide the [noncitizen] notice that we were going to do that.

JUSTICE KAGAN: Right.

MR. SURI: But, without notice --

JUSTICE KAGAN: So that's what it would depend on, right? That -- that you would have to provide him notice, and if he had a fear of persecution or torture in that country, he would be given an opportunity to contest his removal to that country. Isn't that right?

MR. SURI: Yes, that's right.

JUSTICE KAGAN: So, in this situation, as to these [noncitizens] who are currently in withholding proceedings, you can't put them on a plane to anywhere right now, isn't that right?

MR. SURI: Certainly, I agree with that, yes.

JUSTICE KAGAN: Okay. And that's not as a practical matter. That really is, as -- as you put it, in the eyes of the law. In the eyes of the law, you cannot put one of these [noncitizens] on a plane to any place, either the -- either the country that's referenced in the removal order or any other country, isn't that right?

MR. SURI: Yes, that's right.

*See* Transcript of Oral Argument at 20-21, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

44.     Notice is only meaningful if it is presented sufficiently in advance of the deportation to stop the deportation, is in a language the person understands, and provides for an automatic stay of removal for a time period sufficient to permit the filing of a motion to reopen removal proceedings so that a third country for removal may be designated as required under the regulations and the noncitizen may present a fear-based claim. *Andriasian*, 180 F.3d at 1041; *Aden*, 409 F. Supp. 3d at 1009 ("A noncitizen must be given sufficient notice of a country of deportation [such] that, given his capacities and circumstances, he would have a reasonable

opportunity to raise and pursue his claim for withholding of deportation.").

45.     An opportunity to present a fear-based claim is only meaningful if the noncitizen is not deported before removal proceedings are reopened. *See Aden*, 409 F. Supp. 3d at 1010 (holding that merely giving petitioner an opportunity to file a discretionary motion to reopen "is not an adequate substitute for the process that is due in these circumstances" and ordering reopening); *Dzyuba v. Mukasey*, 540 F.3d 955, 957 (9th Cir. 2008) (remanding to BIA to determinate whether designation is appropriate).

### E.     DHS Routinely Violates Its Obligations to Provide Notice and Opportunity to Present a Fear-Based Claim Before Deportation to a Third Country

46.     As a matter of policy or practice, DHS violates the statutory, regulatory, and due process framework by depriving Plaintiffs of any notice, let alone meaningful notice, and any opportunity, let alone a meaningful opportunity, to present a fear-based claim prior to deportation to a third country.

47.     Although DHS has a nondiscretionary duty to provide both these protections, DHS routinely fails to do so.

48.     DHS has no written policy to provide, or guarantee provision of, either of these protections.

49.     DHS did not produce any policy in response to the FOIA request and subsequent litigation for such a policy in *Nat.'l Immigr. Litigation Alliance v. ICE*, No. 1:22-cv-11331-IT (D. Mass filed Aug. 17, 2022).

50.     In litigation involving a plaintiff who was removed to a third country after being granted withholding of removal to Cuba, DHS has admitted it has no policy to provide notice or an opportunity to apply for protection regarding removal to a third country. *See Ibarra-Perez v. United States*, No. 2:22-cv-01100-DWL-CDB (D. Ariz. filed Jun. 29, 2022). In both written

discovery and two depositions of DHS witnesses conducted pursuant to Federal Rule of Civil Procedure 30(b)(6), the government repeatedly stated it has no obligation to provide written or oral notice if it intends to deport a noncitizen to a third county, and has no written policy requiring such written notice; instead, the government claimed that if such notifications are provided, they are usually oral. In addition, the government admitted it has no policy to ensure a noncitizen has an opportunity to seek fear-based protection from removal to a third country before that removal takes place.

51.    Nonetheless, DHS has, in a limited number of cases over the years, filed a motion to reopen removal proceedings to designate a new country and allow a noncitizen to pursue a fear-based claim, demonstrating that it is aware of what should be done to provide a meaningful opportunity to seek protection prior to removal to a third country.

52.    DHS' routine failure to provide meaningful notice and opportunity to present a fear-based claim prior to deportation to a third country has led to hundreds of unlawful deportations, placing individuals at serious risk of persecution, torture, and/or death.

## II.    Increased Third Country Deportation Efforts and Re-detention Directive

53.    Defendants have been in longstanding violation of their obligation to create a system to provide noncitizens with notice and an opportunity to present a fear-based claim to an immigration judge before DHS deports them to a third country.

54.    On information and belief, until January 20, 2025, the number of individuals subjected to DHS' policy or practice was relatively small.

55.    Prior to taking office, the Trump Administration stated its intention to pressure

third countries to accept noncitizens ordered deported from the United States.[4]

56.     On January 20, 2025, President Trump signed an Executive Order, entitled Securing our Borders, in which he instructed the Secretary of State, Attorney General, and DHS Secretary to "take all appropriate action to facilitate additional international cooperation and agreements, . . ., including [safe third country agreements] or any other applicable provision of law." *See* Exec. Order No. 14165, 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025).

57.     In early February, news outlets reported that Secretary of State Marco Rubio visited several Central American countries to negotiate increased acceptance of noncitizens in or arriving in the United States, including individual with final removal orders.[5]

58.     On or about February 18, 2025, ICE issued a directive instructing officers to review cases for third country deportations and re-detained previously released individuals, including individuals granted withholding or removal or CAT protection and individuals previously released because removal was not reasonably foreseeable. Attachment C.[6]

59.     On March 5, 2025, the New York Times reported: "[ICE leadership] are considering deporting people who have been found to have a legitimate fear of torture in their home countries to third nations, according to documents obtained by The New York Times."[7]

---

[4]     Julia Ainsley, *Incoming Trump Administration Plans to Deport Some Migrants to Countries Other Than Their Own,* NBC News (Dec. 5, 2024); Commonwealth of the Bahamas, *Statement from the Office of the Prime Minister on the Trump Administration Transition Team Proposal* (Dec. 5, 2024) (rejecting Trump transition team proposal to "to accept deportation flights of migrants from other countries").

[5]     Camilo Montoya-Galvez, *Trump Eyes Asylum Agreement with El Salvador to Deport Migrants There*, CBS News (Jan. 27, 2025); Matthew Lee, *Guatemala Gives Rubio a Second Deportation Deal for Migrants Being Sent Home from the US*, AP News (Feb. 5, 2025).

[6]     Nick Miroff and Maria Sacchetti, *Trump Seeks to Fast-Track Deportations of Hundreds of Thousands*, The Washington Post (Feb. 28, 2025).

[7]     Hamed Aleaziz and Zolan Kanno-Youngs, *Frustration Grows Inside the White House Over Pace of Deportations*, N.Y. Times (Mar. 5, 2025).

60.     On March 6, 2025, Reuters published a copy of the February 18, 2025, directive.[8] The directive expressly instructs officers to review the cases of noncitizens granted withholding of removal or protection under CAT "to determine the viability of removal to a third country and accordingly whether the [noncitizen] should be re-detained" and, in the case of those who previously could not be removed because their countries of citizenship were unwilling to accept them, to "review for re-detention . . . in light of . . . potential for third country removals."

61.     Since on or about January 20, 2025, on information and belief, DHS has dramatically increased the number of individuals being re-detained and/or deported to third countries and being considered for deportation to a third country.

## III.    Plaintiffs' Cases

### A.     Plaintiff D.V.D.

62.     Plaintiff D.V.D. is a citizen of Cuba who is married to a U.S. citizen and has two U.S. citizen children. He has a history of severe mental illness which currently is controlled by psychiatric treatment he receives. In February 2017, an IJ ordered him removed to Cuba in removal proceedings. In those proceedings, the IJ designated only Cuba as a country to which he could be removed. ICE released him from detention on an Order of Supervision (OSUP) in May 2017.

63.     Plaintiff D.V.D. consistently has checked in with ICE as required, starting in December 2017. Since September 2019, his check-ins were with ICE's Enforcement and

---

[8]     Ted Hesson and Kristina Cooke, *Trump Weighs Revoking Legal Status of Ukrainians as US Steps Up Deportations*, Reuters (Mar. 6, 2025). The article links to the directive (Attachment C): https://fingfx.thomsonreuters.com/gfx/legaldocs/gkpljxxoqpb/ICE_email_Reuters.pdf (last visited Mar. 23, 2025).

Removal (ERO) office in Burlington, Massachusetts.[9] His most recent check-ins were by telephone or email. He only needed to check in once a year, except in 2019, when he checked in twice.

64.     On Friday, March 7, 2025, D.V.D. completed a check-in with ICE's ERO office in Burlington by email through his immigration attorney. Three days later, on Monday, March 10, 2025, ICE instructed his attorney that he needed to report in person on March 28, 2025 at 8:00am to the Burlington ERO office, only three weeks from the date of his last check-in.

65.     On March 12, 2025, his attorney asked ICE why he needed to check in again so soon after the email check and why it needed to be in person. She also informed them of a separate pending immigration relief application that had been filed in 2021.

66.     On March 15, 2025, the ICE office responded that ICE was requiring all people to report in person and more frequently on a case-by-case basis. Plaintiff D.V.D. is worried because his attorney has never heard of ICE calling someone back for an in-person check-in three weeks after the earlier check-in.

67.     On information and belief, ICE intends to re-detain D.V.D. at the March 28, 2025 check-in pursuant to the February 18, 2025 directive. D.V.D. fears deportation to any third country without notice and a meaningful opportunity to apply for protection—especially with respect countries where he will be deprived of access to psychiatric treatment and will therefore be at risk of persecution due to his mental health conditions or countries where he will be imprisoned upon arrival.

---

[9]     The Burlington ERO office is part of the Boston Field Office of ICE. *See* https://www.ice.gov/contact/field-offices.

**B.    Plaintiff M.M.**

68.    M.M. is a citizen of Honduras and resident of Fort Worth, Texas. In 2014, she arrived in the United States, fleeing persecution and torture by her husband, the father of her three eldest children, who had beaten her and the children after having been released from prison for killing two people. M.M. had previously fled Honduras and her husband found her in Mexico and threw her out a second-floor window.

69.    Because M.M. had previously been ordered removed, when she arrived in 2014, DHS reinstated her earlier order, but because M.M. expressed a fear of return to Honduras, an asylum officer interviewed her. The officer found that she had a reasonable fear of persecution or torture in Honduras, and she was placed in withholding-only proceedings before an immigration judge.

70.    In 2021, an IJ granted M.M.'s withholding of removal application, protecting her against deportation to Honduras. Following the IJ's decision, M.M. had to report to ICE in Dallas once a year, which she has been doing.

71.    At her regularly scheduled check-in on February 21, 2025, an ICE officer told M.M. to report again on March 7, 2025, and also placed an ankle shackle on her. On March 7, 2025, M.M. again reported to ICE and an officer told her that she needed to leave the United States because she was on a list of people who would be deported on March 21. The officer made a copy of her passport. M.M. was terrified.

72.    Then, on March 17, 2025, an ICE officer telephoned M.M. in the morning and told her she needed to report in person on April 4, 2025, to the same ICE office that had put on the ankle shackle and where she was told that she is on a list of people ICE is going to deport.

73.    On information and belief, ICE intends to re-detain M.M. at the April 4, 2025

check-in pursuant to the February 18, 2025 directive. M.M. is afraid that, if she is deported to a third country, they would send her back to Honduras, where her husband will hurt or kill her. She also fears that her husband would find her in a third country through his connections in the region, as he previously found her in Mexico, or through his connections in other countries, including his family in El Salvador. She is afraid that her children would suffer and that they would be in danger if she cannot continue to protect them.

**C.      Plaintiff E.F.D.**

74.      E.F.D. is citizen of Ecuador who resides in Milford, Massachusetts. He fled the country after he was threatened and beaten by Ecuadorian police after he refused to transport drugs for them in his taxi. The police smashed his taxi's windshield and windows, robbed him, and promised to come back to "finish" him and his family. During his journey to the United States, E.F.D. was kidnapped and robbed in Guatemala and Mexico. He arrived in the United States in 2015 and told immigration officers he was afraid of being returned. After E.F.D. demonstrated to an asylum officer that his fear was credible, he was placed in removal proceedings.

75.      In 2018, an IJ granted E.F.D.'s application for CAT protection, preventing his deportation to Ecuador. Subsequently, ICE released E.F.D. from immigration custody and he has been reporting to ICE in Burlington as part of the terms of his release.

76.      On March 18, 2025, ICE encountered E.F.D. and his co-coworkers when agents were conducting a search for another person who was not there. ICE took E.F.D. and his co-workers into custody. E.F.D. has been at the Plymouth County Correction Facility since that time.

77.      On information and belief, ICE has re-detained E.F.D. pursuant to the February

18, 2025 directive with the intention of deporting to him to a third country. E.F.D. fears

deportation to any third country without notice and a meaningful opportunity to apply for

protection—especially with respect countries that will deport him back to Ecuador where he won

protection, with respect to El Salvador, Colombia, or Peru, where he fears individuals in the drug

trade will mark him, and to Mexico and Guatemala based on his past experiences of being

robbed and kidnapped.

### D.     Plaintiff O.C.G.

78.     Plaintiff O.C.G. is a gay man from Guatemala who fled the country after facing

multiple death threats on account of his sexuality. He arrived at the U.S. border in March 2024

and attempted to present himself for inspection to seek asylum. At the border, he told DHS

officers that he was afraid to go back to Guatemala. After he spent about a week in immigration

custody, DHS officers told O.C.G. that he would be removed. O.C.G. asked officers to have a

credible fear interview, but DHS officers told him that it would not be possible, without

providing an explanation. He was summarily ordered removed pursuant to 8 U.S.C. § 1225(b)

and deported to Guatemala. Still unsafe, he again fled Guatemala and entered Mexico in April

2024.

79.     Shortly after arriving in Iztapalapa, Mexico, O.C.G. was raped by one of the men

who had been helping him reach the U.S.-Mexico border. These men locked O.C.G. in a room

for several days. O.C.G. was let go after his sister paid these men. He then fled to the United

States seeking protection.

80.     O.C.G. entered the United States in May 2024 and voiced his fear of return to

Guatemala. DHS officers issued a reinstatement order against him pursuant to 8 U.S.C.

§ 1231(a)(5), designating Guatemala as the country of removal. But because O.C.G. articulated a

fear of persecution in Guatemala, DHS referred him for an interview with an asylum officer. After he established in that interview that his fear was reasonable, DHS placed him in withholding-only proceedings before an IJ in Eloy, Arizona.

81.    In June 2024, O.C.G. appeared pro se for his first hearing. After the IJ told him that he was ineligible for asylum, O.C.G. asked the IJ if he could be deported to a country other than Guatemala or Mexico. The IJ advised O.C.G. that Guatemala was already designated as the country of removal but reassured him that "we cannot send you back to Mexico, sir, because you are a native of Guatemala."

82.    Even though Mexico was not designated as a country or alternative country of removal in the course of those proceedings, O.C.G. nevertheless provided both documentation and testimony about his past harm in Mexico. On February 19, 2025, after hearing testimony and reviewing his documentary evidence, the IJ granted his application for withholding of removal to Guatemala. The IJ determined that it was more likely than not he would be persecuted in Guatemala on account of his sexuality because of the threats of serious harm against him.

83.    Prior to his closing arguments, DHS counsel asked the IJ to clarify whether Mexico was designated as a country of removal. The IJ indicated that Mexico was not designated as a country of removal and that it was too late to designate Mexico as alternate country of removal.

84.    After rendering his decision, the IJ then asked DHS counsel if DHS wanted to reserve appeal. DHS counsel stepped out of the courtroom for approximately 10 minutes and, upon return, indicated that the government waived appeal.

85.    O.C.G. remained detained at Eloy Detention Center after he won withholding. Approximately two days later, a deportation officer told him to gather his belongings because he

was being taken out of the facility. O.C.G. asked where he was being taken, but the officer would not specify. O.C.G. signed a document he was informed was to reclaim his belongings.

86.    After O.C.G. was taken out of the detention center, an officer told him that he was being deported to Mexico. O.C.G. protested that he had won his case and showed the IJ's order. The officer told him that the grant had "expired." He then asked to use a phone to call his attorney, but the officer told him that it was too late to call anyone now that they were outside the facility.

87.    O.C.G. was then taken by bus to Nogales, Mexico with approximately 20 other men. In Nogales, the group was made to board a second bus driven by a man that appeared to be with the Mexican national guard/armed forces and taken to Tabasco, Mexico.

88.    In Tabasco, O.C.G. and the other men were held at a detention facility where he was permitted a two-minute phone call. At the facility, Mexican authorities gave O.C.G. a Hobson's choice: he could either go to another detention facility hours away by bus where they said he would remain detained and wait several months to apply for asylum in Mexico, a foreign country in which he was raped, held hostage, and extorted and did not feel safe, or Mexican authorities would take him to Guatemala, the country from which he fled and in which an IJ had found it was more likely than not he would again be persecuted.

89.    With no safe option, on February 25, 2025, Mexican authorities deported Plaintiff O.C.G. to Guatemala. To date, Plaintiff O.C.G. remains in hiding in Guatemala.

## CLASS ACTION ALLEGATIONS

90.    Plaintiffs bring this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the class, the class is

so numerous that joinder of all members is impractical, Plaintiffs' claims are typical of the claims of the class, and Plaintiffs will fairly and adequately protect the interests of the class. Defendants have acted on grounds that apply generally to the class, so that relief under the Administrative Procedure Act and declaratory relief are appropriate with respect to the class as a whole.

91.    Plaintiffs seek to represent the following class:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

92.    The proposed class meets the numerosity requirements of Federal Rule of Civil Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable. DHS is in sole possession of the information regarding the precise number of potential class members. On information and belief, there are thousands of individuals with final removal orders that DHS presently cannot execute to the designated country(ies), including because, inter alia, the individual has won withholding of removal or CAT protection specific to the designated country of removal or because the designated country of removal or alternative country of removal is recalcitrant, uncooperative, or unwilling to accept the individual. These individuals are now at significant risk of both re-detention and deportation to third countries without an opportunity to present a fear-based claim of persecution or torture. On information and belief, there are hundreds of individuals DHS has deported to third countries since January 20, 2025.

93.    The proposed class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2). The members of the class are all subject or will be subject to DHS' unlawful policy or practice of refusing to provide meaningful notice and opportunity to present a fear-

based claim to an immigration judge prior to deportation to a third country and to the February 18, 2025 re-detention directive. The lawsuit raises questions of law common to members of the proposed class, including whether DHS' policy or practice of third country removal, and the re-detention directive, violate the INA, FARRA, implementing regulations, and/or due process.

94.     The proposed class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3) because the claims of the representative Plaintiffs are typical of the class. Each of the class members will be subject to, or has been subjected to, DHS' policy or practice of not providing notice or a meaningful opportunity to present a fear-based claim to an immigration judge prior to deportation to a third country and ICE's re-detention directive. This is true even though the INA, FARRA, implementing regulations, and due process requires Defendants to provide these basic safeguards and due process mandates that detention must be narrowly tailored to achieve a legitimate government purpose. Plaintiffs and the proposed class share the same legal claims, which assert the same substantive and procedural rights under the INA, FARRA, implementing regulations, APA, and Due Process Clause.

95.     The proposed class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same final relief as the other members of the class—namely, an order declaring Defendants' policy or practice and February 18, 2025 re-detention directive unlawful, declaring Plaintiffs' rights under the INA, FARRA, implementing regulations, and the Constitution, enjoying Defendants from failing to provide Plaintiffs with meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports a person to a third country, and setting aside Defendants' February 18, 2025 directive.

96.     Plaintiffs will fairly and adequately protect the interests of the proposed class

members because they seek relief on behalf of the class as a whole and have no interest that is

antagonistic to other class members.

97.    Plaintiffs are represented by competent counsel with extensive experience in

complex class actions and immigration law.

98.    The proposed class also satisfies Federal Rule of Civil Procedure 23(b)(2).

Defendants have acted on grounds generally applicable to the proposed class, thereby making

final declaratory, APA, and injunctive relief appropriate with respect to the class as a whole.

## CLAIMS FOR RELIEF

### Count I

### Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C)

99.    The allegations in the above paragraphs are realleged and incorporated herein.

100.    The APA entitles "a person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action . . . to judicial review." 5 U.S.C. § 702.

101.    The APA compels a reviewing court to "hold unlawful and set aside agency

action, findings, and conclusions found to be . . . arbitrary [or] capricious, . . . otherwise not in

accordance with law," *id.* § 706(2)(A), or "short of statutory right," *id.* § 706(2)(C).

102.    Defendants have a policy or practice of failing to provide noncitizens who have

final removal orders with meaningful notice and opportunity to present a fear-based claim prior

to deportation to a third country.

103.    Defendants' policy or practice is arbitrary and capricious. It deprives individuals

with final removal orders of meaningful notice of DHS' intent to deport them to a third country

and deprives them of an opportunity to present a fear-based claim to an immigration judge prior

to deportation to a third country. It endangers their lives and safety by subjecting them to the

very persecution and torture they fear in the third country.

104.    In addition, Defendants' February 18, 2025 directive explicitly instructing DHS officers to review cases for removal to third countries and to re-detain individuals prior to providing notice of the third country and an opportunity to apply for protection is arbitrary and capricious and not in accordance with law because Defendants have no mechanism to ensure meaningful notice and an opportunity to present a fear-based claim prior to removal to a third country. As such, their civil detention is not tied to a lawful purpose.

105.    Defendants' policy or practice is also not in accordance with law, short of statutory rights, and violates the INA, FARRA, and implementing regulations all of which mandate that Defendants refrain from removing Plaintiffs to a third country where they will likely be persecuted or tortured, thus requiring Defendants to provide meaningful notice of deportation to a third country and the opportunity to present a fear-based claim to an immigration judge before deporting an individual to a third country, yet Defendants do not do so.

106.    Accordingly, the Court should hold unlawful and set aside Defendants' policy or practice of failing to provide noncitizens who have final removal orders with meaningful notice and opportunity to present a fear-based claim prior to deportation to a third country.

107.    The Court also should order Defendants to provide Plaintiffs and class members with meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports a person to a third country, and should set aside Defendants' February 18, 2025 directive to re-detain Plaintiffs D.V.D. and M.M. and previously released class members until they have been provided meaningful notice and opportunity to apply for protection.

**Count II**

**Administrative Procedure Act, 5 U.S.C. § 706(1)**

108.    The allegations in the above paragraphs are realleged and incorporated herein.

109.    The APA empowers federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

110.    The INA, FARRA, and implementing regulations, and the Constitution mandate meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports a person to a third country. Defendants have unlawfully withheld the provision of these statutory, regulatory, and constitutional rights.

111.    Accordingly, the Court should compel Defendants to provide Plaintiffs and class members with meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports a person to a third country.

**Count III**

**Fifth Amendment Due Process Clause and
Administrative Procedure Act, 5 U.S.C. § 706(2)(D)**

112.    The allegations in the above paragraphs are realleged and incorporated herein.

113.    The INA, FARRA, and implementing regulations mandate meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports a person to a third country.

114.    Plaintiffs have a due process right to meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports a person to a third country. *See, e.g.*, *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1004 (W.D. Wash. 2019). Plaintiffs also have a due process right to implementation of a process or procedure to afford these protections. *See, e.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991). Plaintiffs also have a due

process right to not be re-detained pursuant to the February 18, 2025 directive because Defendants have no procedural protections to ensure meaningful notice and an opportunity to present a fear-based claim prior to removal to a third country. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The APA also compels a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

115.    By failing to implement a process or procedure to afford Plaintiffs meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports a person to a third country and by re-detaining previously released individuals pursuant to the February 18, 2025 directive, Defendants have violated Plaintiffs' substantive and procedural due process rights and are not implementing procedures required by the INA, FARRA, and the implementing regulations.

116.    Accordingly, the Court should declare that Defendants have violated Plaintiffs' constitutional right to due process and that the Due Process Clause affords Plaintiffs the right to a process and procedure ensuring that DHS provides meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports a person to a third country and ensuring that Plaintiffs D.V.D. and M.M. and previously released class members are not re-detained pursuant to the February 18, 2025 directive.

117.    The Court should enjoin Defendants from failing to provide Plaintiffs and class members with meaningful notice and opportunity to present a claim for protection to an immigration judge before DHS deports a person to a third country. The Court should also set aside the implementation of the February 18, 2025 directive to re-detain Plaintiffs D.V.D. and M.M. and previously released class members, and should release Plaintiff E.F.D., until

Defendants provide meaningful notice and an opportunity to apply for protection.

**Count IV**

**Declaratory Judgment, 28 U.S.C. § 2201**

118.    The allegations in the above paragraphs are realleged and incorporated herein.

119.    Under 28 U.S.C. § 2201(a), a court "may declare the rights and other legal relations of any interested party seeking such declaration."

120.    Plaintiffs seek a declaration that the Immigration and Nationality Act, the Foreign Affairs Reform and Restructuring Act of 1998, implementing regulations, the Due Process Clause of the Fifth Amendment, and the treaty obligations of the United States require Defendants to provide meaningful notice and opportunity to present a fear-based claim to an immigration judge prior to deportation and prior to re-detaining Plaintiffs and class members based on potential removal to a third country.

121.    Defendants have a policy or practice of ignoring these statutory, regulatory, and constitutional mandates.

122.    Accordingly, Plaintiffs request that the Court declare their rights and legal relations under the INA, and FARRA and implementing regulations and the Due Process Clause of the Fifth Amendment.

**Count V**

**Violation of 8 U.S.C. § 1231(a) and Fifth Amendment Due Process Clause
(Brought by Plaintiffs E.F.D., D.V.D., and M.M.)**

123.    The allegations in the above paragraphs are realleged and incorporated herein.

124.    The INA requires mandatory detention of individuals with final removal orders only during the 90-day removal period. 8 U.S.C. § 1231(a)(2).

125.    A noncitizen who is not removed within that period "shall be subject to

supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

126.    While § 1231(a)(6) permits detention beyond the removal period in certain situations, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

127.    No statute permits Defendants to re-detain an individual who has been released under § 1231(a)(3) without evidence that removal is now reasonably foreseeable or that the individual has violated the conditions of their release.

128.    The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

129.    Plaintiffs E.F.D., D.V.D., and M.M. were previously detained by ICE and released after an individualized custody determination that considered any danger or unmitigable flight risk. They have a liberty interest in remaining free from physical confinement where removal is not reasonably foreseeable, they have not violated the conditions of their release, and where re-detention is unlawful because Defendants have not created a lawful mechanism to ensure that noncitizens receive meaningful notice and an opportunity to present a fear-based claim before deportation to a third country.

130.    For these reasons, Defendants have violated the INA, implementing regulations, and the Due Process Clause of the Fifth Amendment.

## Count VI

### Violation of FOIA, 5 U.S.C. § 552
### Failure to Proactively Disclose Records
### (Against Defendant DHS)

131.    The allegations in the above paragraphs are realleged and incorporated herein.

132.    Defendant DHS is obligated under 5 U.S.C. § 552(a)(2)(B) and (a)(2)(C) to proactively disclose "those statements of policy and interpretations which have been adopted by

the agency and are not published in the Federal Register" and "administrative staff manuals and instructions to staff that affect a member of the public."

133.    Defendant DHS may not "rel[y] on, use[], or cite[] as precedent" any "final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public" against a party unless the material is "indexed and either made available or published as provided by [5 U.S.C. § 552(a)(2)(E)]" or "the party has actual and timely notice of the terms thereof." 5 U.S.C. § 552(a)(2)(E).

134.    The February 18, 2025 directive is a statement of policy adopted by DHS but not published in the Federal Register and an instruction to staff which affects members of the public. On information and belief, Defendant DHS has similar statements of policy, instruction, or guidance covered by 5 U.S.C. § 552(a)(2)(E) related to Defendants' increased efforts to deport noncitizens to third countries exist.

135.    Defendant DHS has failed to proactively disclose the February 18, 2025 directive and/or related statements of policy, instruction, or guidance covered by 5 U.S.C. § 552(a)(2)(E), and no legal basis exists for Defendant DHS's failure to proactively disclose these materials.

136.    Defendant DHS has nonetheless relied upon the February 18, 2025 directive, and has possibly relied on other statements of policy or instruction or guidance covered by 5 U.S.C. § 552(a)(2)(E), against Plaintiffs.

137.    Defendant DHS's failure to proactively disclose the February 18, 2025 directive and other statements of policy, instruction, or guidance covered by 5 U.S.C. § 552(a)(2)(E), is in violation of 5 U.S.C. § 552(a)(2). Defendant DHS's reliance on these materials against Plaintiffs is violation of 5 U.S.C. § 552(a)(2)(E).

138.    For these reasons, Defendants cannot rely on or use the February 18, 2025

directive to re-detain Plaintiffs and class members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    Assume jurisdiction over this action;

b.    Certify the case as a class action as proposed herein and in the accompanying motion for class certification;

c.    Declare that Defendants have violated Plaintiffs' and class members' statutory, regulatory, and constitutional rights by depriving them of meaningful notice and opportunity to present a fear-based claim to an immigration judge prior to deportation to a third country and by re-detaining them pursuant to the February 18, 2025 directive;

d.    Declare that Defendants have a mandatory duty to provide Plaintiffs and class members with meaningful notice and opportunity to present a fear-based claim to an immigration judge prior to deportation to a third country;

e.    Declare that Defendants' February 18, 2025 directive is unlawful because re-detention is not tied to a lawful removal process;

f.    Set aside Defendants' current policy of failing to provide Plaintiffs and class members with written notice and a meaningful opportunity to present a fear-based claim to an immigration judge prior to deportation to a third country;

g.    Set aside Defendants' February 18, 2025 directive to re-detain Plaintiffs and class members who were previously released based on potential removal to a third country;

h.    Preliminarily and permanently enjoin Defendants from failing to provide individual named Plaintiffs with written notice and a meaningful opportunity to present a fear-based claim under 8 U.S.C. § 1231(b)(3) and/or under the Convention Against Torture to an

immigration judge prior to deportation to a third country;

i.      Preliminarily and permanently enjoin Defendants from failing to provide class members with written notice and a meaningful opportunity to present a fear-based claim under the Convention Against Torture to an immigration judge prior to deportation to a third country;

j.      Stay and set aside Defendants' February 18, 2025 directive to re-detain Plaintiffs and class members who were previously released where re-detention is not tied to a lawful removal process (i.e., without providing meaningful notice and an opportunity to present a protection claim regarding removal to a third country);

k.      Order Defendants to immediately return Plaintiff O.C.G. to the United States and provide him with written notice and a meaningful opportunity to present a fear-based claim under 8 U.S.C. § 1231(b)(3) and/or under the Convention Against Torture to an immigration judge prior to any effort to again deport him to a third country;

l.      Order Defendants to immediately return class members who have been removed to a third country without written notice and a meaningful opportunity to apply for protection under the Convention Against Torture unless the class member confirms they do not wish to return;

m.     Enjoin Defendants from relying on or using the February 18, 2025 directive pursuant to 5 U.S.C. § 552(a)(2);

n.      Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

o.      Order all other relief that the Court deems just and proper.

Respectfully submitted,

s/*Tomás Arango*
_____
Tomas Arango
Trina Realmuto*
Kristin Macleod-Ball*
Mary Kenney*
**NATIONAL IMMIGRATION**
**LITIGATION ALLIANCE**
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4649
trina@immigrationlitigation.org

Anwen Hughes*
**HUMAN RIGHTS FIRST**
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
**NORTHWEST IMMIGRANT**
**RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

*Attorneys for Plaintiffs*

* *Application for admission pro hac vice forthcoming*

Dated: March 23, 2025