UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity,<br><br>Defendants. | Case No. 25-cv-10676 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO APPEAR UNDER PSEUDONYMS**

# INTRODUCTION

Plaintiffs D.V.D., M.M., E.F.D., and O.C.G. (Plaintiffs) request leave to proceed under pseudonyms to protect their identities from public disclosure. Plaintiffs also move the Court to order Defendants to maintain the confidentiality of Plaintiffs' identities by using only pseudonyms in all filings, including all exhibits in which Plaintiffs' names appear. Plaintiffs will disclose their identities to Defendants and the Court.

Plaintiffs entered the United States because they were fleeing persecution and/or torture in their countries of origin. Through this lawsuit, Plaintiffs, on behalf of themselves and similarly-situated others, challenge Defendants' policy or practice of deporting noncitizens to third countries without first providing the individual with meaningful notice and an opportunity to contest removal on the basis that they have a fear of persecution, torture, and even death if deported to that third country. They also challenge Defendants' re-detention of Plaintiffs and proposed class members pursuant to the February 18, 2025, directive. *See* Dkt. 1-4.

Allowing Plaintiffs to proceed under pseudonyms is necessary to protect their safety and wellbeing and to preserve their privacy with respect to highly sensitive information. Without anonymity in this case, Plaintiffs will face psychological and possible physical harm and other similarly situated individuals will be reluctant to challenge Defendants' policy or practice and the February 18, 2025, re-detention directive. Plaintiffs' need for privacy outweighs the public's interest in knowing their identities. Additionally, granting anonymity to Plaintiffs is consistent with the general framework of confidentiality in all cases, but particularly important in cases such as this, where each of the plaintiffs "reasonably fears that coming out of the shadows will cause [them] unusually severe harm (either physical or psychological)". *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022) (*MIT*) (citing cases); *see also id.* at 70-72.

Plaintiffs will reveal their identities and will disclose unredacted versions of Plaintiffs' declarations to this Court and to Defendants. Because Plaintiffs do not seek to withhold their identities from Defendants or Defendants' counsel, granting this motion would cause them no prejudice. Plaintiffs' need for anonymity "outweighs the public's transparency interest." *Id.* at 72.

## ARGUMENT

I. **PLAINTIFFS FALL WITHIN SEVERAL PARADIGMS FOR ANONYMITY ARTICULATED BY THE FIRST CIRCUIT.**

In *MIT*, the Court of Appeals for the First Circuit articulated general guidelines for district courts deciding whether to allow a party to proceed under a pseudonym. Although the court noted the general presumption against the use of pseudonyms in litigation, 46 F.4th at 67, it recognized that anonymity may be warranted in "exceptional cases," *id.* at 71. While the court emphasized that district courts enjoy "broad discretion" in identifying relevant circumstances in each case and in striking the proper balance between public and private interests, *id.* at 72, it identified four general paradigms of cases in which party anonymity "ordinarily will be warranted," *id.* at 71-72. These paradigms are cases in which (1) the party reasonably fears "unusually severe harm (either physical or psychological)" if not granted anonymity; (2) "innocent non-parties" would be harmed if identities were revealed; (3) "anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated;" and (4) the party's identity is "bound up with a prior proceeding made confidential by law." *Id.* The court further explained that, in cases in which more than one category applies, the argument for anonymity may be strengthened. *Id.* at 72 ("[I]t is possible that a party whose case for pseudonymity appears weak when each paradigm is analyzed separately may nonetheless make a persuasive showing when multiple paradigms are implicated"). Because this case falls within all

2

of the *MIT* paradigms, it is "exceptional" and anonymity is warranted. *Id.* at 71.

At issue in this case is Defendants' policy or practice of failing to provide procedural protections to ensure that noncitizens are not deported to undesignated third countries in which they fear severe physical or psychological harm, including possible torture or death, and Defendants' policy of re-detaining noncitizens for the purpose of unlawfully removing them to a third country without meaningful notice and an opportunity to apply for protection. *See generally* Dkt. 1 (complaint), Dkt. 1-4 (directive). Each of the Plaintiffs have strong reasons to fear persecution if deported to a third country. The risk of persecution will be heightened if they are not permitted to appear anonymously in this case.

Plaintiff O.C.G.'s facts are set forth in the Complaint and his accompanying declaration. *See* Dkt. 1 ¶¶ 78-89; Exh. D (Declaration of O.C.G.). In May 2024, O.C.G. established that he warranted protection from removal to his country of origin, Guatemala, when an immigration judge (IJ) granted him withholding of removal under 8 U.S.C. § 1231(b)(3) on account of his sexuality because of the threats of serious harm against him. Approximately two days after the IJ's decision, Defendant Department of Homeland Security (DHS) deported him to a third country, Mexico, without advance notice or an opportunity to present a fear claim. Plaintiff O.C.G. had reason to fear deportation to Mexico, as previously he had been targeted as a gay man and was raped, held hostage, and extorted when traveling through Mexico. Faced with the horrific choice of whether to risk violence in Mexico or Guatemala, Plaintiff O.C.G. went into hiding in Guatemala, where he remains at this time. If he is forced to publicly reveal his name in this case, he will be at even greater risk, including if his location is identified.

Plaintiff M.M.'s facts are set forth in the Complaint and his accompanying declaration. *See* Dkt. 1 ¶¶ 68-73; Exh. D (Declaration of M.M.). Plaintiff M.M. also was granted withholding

3

of removal under § 1231(b)(3) from her country of origin, Honduras, due to severe domestic violence by her husband—a convicted murderer—who repeatedly beat her and threatened to kill her, once putting a gun in her mouth and pointing it against her neck. He also beat her children, whom she fears she will no longer be able to protect if she is deported to a third country. If deported to a third country, she is terrified that her husband would find her because he has strong family and other connections in other countries—including El Salvador and Mexico—who would help him. While M.M. was in Mexico, after fleeing from him in 2006, he tracked her down and threw her from a second story window. She will be at heightened risk of her husband finding her if she is not permitted anonymity in this case.

Plaintiff E.C.F.'s facts are set forth in the Complaint and his accompanying declaration. *See* Dkt. 1 ¶¶ 74-77; Exh. C (Declaration of E.C.F.). As a taxi driver in Ecuador, Plaintiff E.F.D. was targeted by corrupt police who wanted him to assist in their illegal drug trade. When he refused to work with them, they beat and robbed him, threatened to "finish" both him and his family, and smashed the windshield and windows of his taxi. *Id*. After fleeing Ecuador for his life, he was kidnapped and robbed in both Guatemala and Mexico while on his way to the United States. In 2018, an IJ granted him protection under the Convention Against Torture (CAT). Although he was released from detention after his removal proceedings and has faithfully reported to U.S. Immigration and Customs Enforcement (ICE) as required for close to 7 years, he and his co-workers were recently re-detained by ICE when law enforcement agents were searching for another person. E.F.D. fears being deported to a third country based on his experiences in Mexico and Guatemala and because the drug trade "is deeply entrenched in the police culture" of the countries to which he might be sent, and he would be targeted as someone who refused to cooperate. His risk of being targeted will be heightened if he must publicly reveal

4

his name in this case.

Plaintiff D.V.D.'s facts are set forth in the Complaint and his accompanying declaration. *See* Dkt. 1 ¶¶ 62-67; Exh. A (Declaration of D.V.D.). Plaintiff D.V.D. suffers from severe mental illness, which currently is controlled by psychiatric treatment. For years, it profoundly impacted his life, making it impossible for him to hold a steady job and leading to homelessness, alcoholism, and drug addiction. He regularly heard voices, including voices that told him to harm and even kill himself. If deported to a third country, he fears that he will be unable to obtain the treatment he needs to manage his symptoms, that these symptoms will again take control of his life, and that he will then be targeted and persecuted for his mental illness.

In circumstances similar to those of the four named Plaintiffs, both the First Circuit and district courts within the Circuit have permitted noncitizens with fear-based claims to proceed under pseudonyms. *See, e.g.*, *G.P. v. Garland*, No. 21-2002, 2023 WL 4536070, at *1 & n.1 (1st Cir. July 13, 2023); *Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 3466327, at *1, *4 n.1 (D. Mass. May 12, 2023); *Doe v. Smith*, No. CV 17-11231-LTS, 2017 WL 6509344, at *1 & n.1 (D. Mass. Dec. 19, 2017). Numerous other courts have also permitted noncitizens fleeing persecution to proceed without revealing their full names. *See, e.g.*, *J.R. v. Barr*, 975 F.3d 778, 781 (9th Cir. 2020); *W.G.A. v. Sessions*, 900 F.3d 957, 960 n.1 (7th Cir. 2018); *Doe v. Holder*, 736 F.3d 871, 872 n.1 (9th Cir. 2013); *Doe v. U.S. Citizenship and Immigr. Servs.*, No. 1:21-cv-00576-NONE-SAB, 2021 WL 1907562, at *4 (E.D. Cal. May 12, 2021); *Ms. Q. v. U.S. Imm. & Customs Enf't*, No. 1:18-cv-02409, 2018 WL 10050939, at *3 (D.D.C. Oct. 24, 2018); *A.B.T. v. U.S. Citizenship & Imm. Servs.*, No. 2:11-cv-02108 RAJ, 2012 WL 2995064, at *3-4 (W.D. Wash. July 20, 2012).

The first *MIT* paradigm relating to a reasonable fear of unusually severe physical or

psychological harm also "includes . . . survivors of sexual assault." *Doe v. United States*, No. 1:24-CV-11445-JEK, 2024 WL 4495107, at *1 (D. Mass. Oct. 15, 2024). Due to the particularly sensitive nature of sexual violence, courts routinely engage in a "tradition of not revealing names of the victims of sexual assault, [and instead] use initials [] to protect the privacy of the [victims])." *Jordan v. Gardner*, 986 F.2d 1521, 1525 n.4 (9th Cir. 1993) (en banc); *see also Doe v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) ("Courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects.") (citing cases); *Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *4 (S.D. Cal. Dec. 20, 2017) (finding two plaintiffs warranted anonymity due to allegations of sexual assault); *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (same); *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) (noting "fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses"). Plaintiff O.G.C.'s traumatic experience as a rape victim and Plaintiff M.M.'s experience as a victim of spousal abuse are further reasons for granting their requests to appear under pseudonyms.

Additionally, "courts have recognized mental illness as a legitimate basis for permitting a party to proceed under a pseudonym." *Doe v. Standard Ins. Co.*, No. 1:15–cv–00105–GZS, 2015 WL 5778566, at *2 (D. Maine Oct. 2, 2015) (citing cases); *see also Doe v. Rostker,* 89 F.R.D. 158, 161 & n.6 (N.D. Cal. 1981) (cases involving "mental illness" are a common situation in which plaintiffs are allowed to proceed under pseudonym). Plaintiff D.V.D. has a long history of severe mental illness, including schizoaffective disorder, major depressive disorder, and post-traumatic stress disorder. For years, he heard voices, including voices that told him to harm or

kill himself. In the past, his illness prevented him from holding down a job, led him to be homeless, and contributed to his alcoholism and drug addiction. Although stable now, his long history of severe mental illness provides further support for allowing him to proceed anonymously.

With respect to the second *MIT* paradigm, relating to the harm on innocent nonparties, courts have permitted asylum seekers to proceed under pseudonyms to protect "innocent third parties" from harm—that is, their family members who could be subject to retaliatory persecution. *See, e.g.*, *Doe v. Immigr. & Naturalization Serv.*, 867 F.2d 285, 286 n.1 (6th Cir. 1989); *Doe*, 2021 WL 1907562, at *4; *cf. Int'l Refugee Assistance Project v. Trump*, No. 17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017) ("Potential retaliatory physical or mental harm against individuals in another country can form the basis for permitting plaintiffs to use pseudonyms." (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1063, 1065, 1071 (9th Cir. 2000)).

Here, Plaintiff M.M. and her three children fled Honduras to escape the severe domestic violence inflicted on all of them by M.M.'s husband, the children's father. Her husband beat the children. He has family and connections in other countries, including El Salvador and Mexico, and was able to find the family in Mexico after they fled Honduras—at which time he threw M.M. out of a second story window. Given this history and her husband's connections, M.M. is afraid that her children will be in danger if she is deported to another country and unable to protect them. *Id.* As such, M.M.'s case also falls within the second *MIT* paradigm.

The third *MIT* paradigm, relating to preventing a chilling effect on future similarly situated litigants, also is implicated here. In immigration-related cases, courts recognize that refusing to permit a party to proceed anonymously may have a chilling effect on future litigants.

*See, e.g., Al Otro Lado*, 2017 WL 6541446, at *7 ("Requiring the Individual Plaintiffs to use their true names despite their fear of harm from the persons they have sought to flee, creates an unnecessary risk of chilling the willingness of asylum seekers from litigating important issues . . . ."); *Ms. Q.*, 2018 WL 10050939, at *3 (same). Requiring Plaintiffs to reveal their names—notwithstanding the sensitive nature of their claims—will have a chilling effect on other vulnerable noncitizens, discouraging them from pursuing their rights in similar cases. This is particularly true if Plaintiff O.C.G. is required to use his name given his allegations of rape. As the First Circuit recognized, the "deterrence concern typically arises in cases involving 'intimate issues such as sexual activities.'" 46 F.4th at 71 (quoting *In re Sealed Case*, 971 F.3d 324, 327 (D.C. Cir. 2020)). Were his request for anonymity denied, other sexual assault victims would be reluctant to challenge agency actions where the assault was a relevant fact in the case. *See Al Otro Lado*, 2017 WL 6541446, at *4 ("Anonymity for sexual assault survivors is particularly appropriate given that a rule to the contrary might deter public disclosure of such conduct.").

Finally, anonymity also is warranted under the fourth *MIT* paradigm, relating to the connection between a party's identity and prior confidential proceedings. This is because of the confidentiality protections associated with protection claims under immigration law. Indeed, in recognition of the highly sensitive, private nature of such claims, governing regulations protect the confidentiality of "[a]ny information contained in an application" for refugee admission, asylum, withholding of removal, or CAT protection, as well as records related to fear screening interviews. 8 C.F.R. § 208.6(d)(1).

DHS has acknowledged the importance of the confidentiality regulations, stating that public disclosure of the safeguarded information "'could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is

repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin.'" *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) (quoting U.S. C[itizenship] & Immigration Servs. Asylum Div., U.S. Dep't of Homeland Sec., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* (2005)). Protection of this information is so important that its unlawful disclosure can be the basis for a claim to asylum, withholding of removal or CAT protection. *Id.* (remanding case "for the agency to determine whether Amin is entitled to asylum or other relief based on the confidentiality violation").

In sum, Plaintiffs' situations each fall within several *MIT* paradigms. While anonymity for each Plaintiff is warranted under any one of the relevant categories, their request is strengthened due the multiple paradigms involved. *See MIT*, 46 F.4th at 72.

## II. DEFENDANTS WILL NOT BE PREJUDICED IF PLAINTIFFS USE PSEUDONYMS IN PUBLICLY FILED DOCUMENTS.

Defendants will experience no prejudice because Plaintiffs do not seek to conceal their names from Defendants. Consequently, given Plaintiffs' significant privacy concerns, this is not one of the "rare cases" in which "the prospect of serious prejudice to other parties from a grant of pseudonymity overwhelms the movant's privacy concerns." *MIT*, 46 F.4th at 72. All that Plaintiffs seek is permission to use pseudonyms in publicly filed documents in this case. *See, e.g., Doe*, 2024 WL 4495107, at *1 n.1 (granting pseudonym motion where, inter alia, plaintiff would inform defendant and court of her full name).

Moreover, that this action is against the federal government rather than a private party weighs in favor of permitting Plaintiffs to proceed under pseudonyms. "Courts are more likely to permit plaintiffs to proceed under pseudonym when they are pursuing a claim against the government" because "although the mere filing of a lawsuit against a private party may cause the

9

defendant reputational and economic harm, such that fairness requires the identification of the plaintiffs, the government is not vulnerable to similar reputational harm." *Int'l Refugee Assistance Project*, 2017 WL 818255, at *3; *see also EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003).

## III. THE PUBLIC INTEREST WEIGHS IN FAVOR OF ALLOWING PLAINTIFFS TO PROCEED UNDER PSEUDONYMS.

In contrast to Plaintiffs' heightened interest in confidentiality, the public's interest in knowing Plaintiffs' identities is minimal. While the issues that Plaintiffs raise in this lawsuit are a matter of significant public concern, revealing Plaintiffs' identities will add little or nothing to the public's understanding of the lawfulness of the government inaction at issue in this case. *See Advanced Textile Corp.*, 214 F.3d at 1068-69 ("[P]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." (quoting *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Unit A Aug. 1981))).

Indeed, courts have observed that there is a public interest in allowing pseudonymous filing where, as here, the plaintiffs are challenging the lawfulness of government activity. *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *EW*, 213 F.R.D. at 111 (holding that when challenging government activity, a plaintiff's interest in anonymity is "particularly strong" because "plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights"). Accordingly, the public interest weighs in favor of allowing Plaintiffs to proceed under pseudonyms.

## CONCLUSION

For all the reasons stated, Plaintiffs request that the Court grant them permission to appear using their initials only and that the Court order Defendants to use only their initials in all

10

pleadings and other documents submitted in this case.

Respectfully submitted,

s/*Tomás Arango*

| | |
|---|---|
| Tomas Arango | Matt Adams* |
| Trina Realmuto* | Leila Kang* |
| Kristin Macleod-Ball* | Aaron Korthuis* |
| Mary Kenney* | Glenda M. Aldana Madrid* |
| **NATIONAL IMMIGRATION** | **NORTHWEST IMMIGRANT** |
| **LITIGATION ALLIANCE** | **RIGHTS PROJECT** |
| 10 Griggs Terrace | 615 Second Avenue, Suite 400 |
| Brookline, MA, 02446 | Seattle, WA 98104 |
| (617) 819-4649 | (206) 957-8611 |
| trina@immigrationlitigation.org | matt@nwirp.org |

Anwen Hughes*
**HUMAN RIGHTS FIRST**
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

*Attorneys for Plaintiffs*

\* *Application for admission pro hac vice forthcoming*

Dated: March 23, 2025

11