## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G., | |
| Plaintiffs, | Case No. 25-cv-10676 |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

Plaintiffs D.V.D., M.M., E.F.D., and O.C.G. and the class they seek to represent are noncitizens with final removal orders who have been deported or are at grave risk of being deported to a country not designated for removal (a "third" country) without meaningful advance notice or opportunity to present a claim of fear of persecution, torture, and/or death to an immigration judge (IJ) prior to that deportation. They challenge the policy or practice of the Department of Homeland Security (DHS) of failing to afford these basic, minimal protections, which are clearly mandated by the Immigration and Nationality Act (INA) and implementing regulations, the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), the Due Process Clause of the Fifth Amendment, and the treaty obligations of the United States. Defendants have been in longstanding violation of their obligations to ensure meaningful notice and an opportunity to apply for protection before deporting noncitizens to third countries, and that failure is now exacerbated by Defendant DHS's February 18, 2025 policy directive (*see* Dkt. 1-4), which Plaintiffs also challenge. That directive instructs officers to review cases of all previously released individuals, including individuals who have complied with the terms of their release for years, even decades, for re-detention and removal to a third country.

DHS's re-detention of noncitizens and failure to provide meaningful notice and an opportunity to present a fear-based claim before deportation to a third country has caused, and will continue to cause, the re-detention and deportation of Plaintiffs and thousands of proposed class members. DHS has been, and will continue, re-detaining and deporting them without providing notice of the third country, without asking if they have a fear of return, and/or without allowing them the opportunity to contest removal if they have such a fear. Thus, these policies

1

and practices deprive Plaintiffs and proposed class members of the ability to raise valid fear-based claims and force them to face the very persecution, torture, and/or death they fear.

The question presented in this case—whether DHS' policies or practices violate the INA, the Administrative Procedure Act (APA), the FARRA, implementing regulations, and the Due Process Clause of the Fifth Amendment—can and should be resolved on a class-wide basis. The proposed class satisfies the requirements under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs thus request that the Court certify the following class and appoint them as class representatives:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

On behalf of themselves and all proposed class members, Plaintiffs seek an order that (1) declares Defendants' current policy or practice unlawful, (2) sets aside Defendants' current policy or practice under the APA, (3) declares that the INA, FARRA, and Due Process Clause require Defendants to provide meaningful notice and opportunity to present a fear-based claim to an IJ prior to any deportation to a third country; and (4) order DHS to provide these protections.

## II.    BACKGROUND

### A.    Legal Background

#### 1.    Section 240 Removal Proceedings

Some individuals who Defendants seek to remove are entitled to full immigration court hearings in proceedings commonly referred to as Section 240 proceedings. *See* 8 U.S.C. § 1229a. In these proceedings, the noncitizen is entitled to select a country of removal. *See* 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). The IJ will designate a country of removal if the

noncitizen does not do so or as an alternative and may also designate certain additional alternative countries. *See* 8 U.S.C. § 1231(b)(2)(D)-(E). Additional requirements apply where the individual is placed in Section 240 proceedings immediately upon arrival. 8 U.S.C. § 1231(b)(1); 8 C.F.R. § 1240.10(f).

An IJ must provide sufficient notice and opportunity for an individual to apply for protection from a designated country of removal to individuals who fear persecution or torture if deported. 8 C.F.R. §§ 1240.10(f), 1240.11(c)(1). These forms of protection include asylum, *see* 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A), which generally protects against deportation to an individual's country of origin *and* any other country absent certain exceptions. *See generally* 8 U.S.C. § 1158(c); 8 C.F.R § 208.24. Additionally, individuals determined to be ineligible for asylum are generally entitled to apply for withholding of removal, a mandatory form of protection from removal that prevents deportation to the country where the IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. And those who are ineligible for both asylum *and* withholding remain entitled to seek protection under the Convention Against Torture (CAT), another mandatory form of protection, which protects against deportation to a country where the IJ finds that the individual is likely to be tortured. *See* FARRA, Pub. L. No. 105–277, div. G, Title XXII, § 2242(a), 112 Stat. 2681, 2681– 822 (1998) (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16(c), 1208.17(a), (b); 28 C.F.R. § 200.1. An IJ may only terminate CAT protection based on evidence that the person will no longer face torture and doing so requires DHS and the IJ to follow certain procedures, including a new hearing and notice. *See* 8 C.F.R. § 1208.17(d)(1), (d)(2).

**B.**    **Sections 241(a)(5) and 238(b) Proceedings, Including Reasonable Fear and Withholding-Only Proceedings**

Certain individuals Defendants seek to deport to a third country may instead have

received summary removal orders issued by DHS officers. These include reinstatement of removal orders, issued to noncitizens who DHS determines have previously been deported and subsequently return to the United States, *see* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8, and Section 238(b) administrative removal orders, issued to individuals DHS determines are not lawful permanent residents and have an aggravated felony conviction, *see* 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1. In both processes, DHS designates the country of removal and individuals are barred from most forms of relief from removal, including asylum.

However, consistent with the United States' commitment to *nonrefoulement*, critical protections from removal remain available: withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT protection. 8 C.F.R. §§ 241.8(e), 238.1(f)(3). Individuals must demonstrate a reasonable fear of persecution or torture in interviews before asylum officers or, if the asylum officers finds no reasonable fear, on review before an IJ. *Id.*; 8 C.F.R. § 208.31(g). If either the asylum officer or IJ finds their fear is reasonable, the individual is placed in withholding-only proceedings before an IJ where they can seek withholding of removal and/or CAT protection. 8 C.F.R. §§ 208.31(e), (g)(2), 208.16.

### C.    Statutory Scheme for Removal to a Third Country

The statutory process for designating countries to which noncitizens may be removed includes processes for noncitizens "arriv[ing] at the United States" and for all other noncitizens. 8 U.S.C. § 1231(b)(1), (b)(2).[1] The processes set forth how to designate countries and alternative countries to which the groups may be removed. *Id*. Critically, both processes have a specific

---

[1]      References to the Attorney General in § 1231(b) refer to the DHS Secretary for functions related to carrying out a removal order and to the Attorney General (delegated to IJs and Board of Immigration Appeals) for functions related to designations and decisions about fear-based claims. 6 U.S.C. § 557; *see also* 8 C.F.R. §§ 1208.16, 1208.17, 1208.31,1240.10(f), 1240.12(d).

carve-out prohibiting deportation to countries where they face persecution or torture:

> **Notwithstanding paragraphs [b](1) and [b](2)**, the Attorney General **may not remove** [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1231(b)(3)(A) (emphasis added). Similarly, under FARRA, codifying the United States' obligations under CAT, a noncitizen may not be removed to a third country where they would be tortured. *See* 28 C.F.R. § 200.1; 8 C.F.R. 1208.17(b)(2) ("The [IJ] shall also inform the [noncitizen] that removal has been deferred only to the country in which it has been determined that the [noncitizen] is likely to be tortured, and that the [noncitizen] may be removed at any time *to another country where he or she is not likely to be tortured*." (emphasis added).

### B.    Named Plaintiffs' Factual Backgrounds

#### 1.    Plaintiff D.V.D.

Plaintiff D.V.D. is a citizen of Cuba married to a U.S. citizen and with two U.S. citizen children, who resides in Pittsfield, Massachusetts. In February 2017, an IJ ordered him removed to Cuba, with Cuba as the only country designated for removal. Immigration and Customs Enforcement (ICE) released him an Order of Supervision in May 2017, and he has consistently checked in with ICE as required.

Three days after his most recent check-in by email, ICE emailed his attorney on March 10, 2025, and informed her that D.V.D. needed to check in in person on March 28, 2025. On information and belief, D.V.D. will be re-detained at that check-in. He is afraid of deportation to a third country without notice and opportunity to present a fear-based claim. D.V.D. has a history of severe mental illness which currently is controlled by psychiatric treatment he receives, but he fears that he may be deported to a country where he will be deprived of access to psychiatric treatment and will therefore be at risk of persecution due to his mental health conditions or

countries where he will be imprisoned upon arrival. *See* Dkt. 1 ¶¶10, 62-67; Exh. A.

### 2. Plaintiff M.M.

Plaintiff M.M. is a citizen of Honduras who resides in Fort Worth, Texas. Two of her teenaged children are lawful permanent residents, and her youngest child is a U.S. citizen. In 2014, she fled Honduras after facing persecution and torture by her husband after he was released from prison for killing two people. When she arrived in the United States, she was issued a reinstatement order pursuant to 8 U.S.C. § 1231(a)(5), because she had previously been deported. An asylum officer found she had a reasonable fear of persecution or torture, and DHS placed her in withholding-only proceedings before an IJ, where she was granted withholding of removal to Honduras in 2021.

M.M. reported for check-ins with ICE yearly, but at her check-in on February 21, 2025, an ICE officer told her to report again on March 7, 2025, and placed an ankle shackle on her. At the second check-in, an officer told her that she needed to leave the United States because she was on a list of people who would be deported on March 21. Later, she received a phone call from ICE telling her to report to an ICE office on April 4, 2025. On information and belief, ICE will re-detain her on April 4. If she is deported to a third country, M.M. fears that country would send her back to Honduras, where her husband will hurt or kill her, and/or her husband would find her and harm her in a third country through his connections, because, after previously fleeing him, he located her and hurt her in Mexico. *See* Dkt. 1 ¶¶11, 68-73; Exh. B.

### 3. Plaintiff E.F.D.

Plaintiff E.F.D. is a citizen of Ecuador who is currently detained at the Plymouth County Correction Facility, in Plymouth, Massachusetts and at imminent risk of deportation to a third country. He fled to the United States, arriving in 2015, after he was attacked and threatened by

Ecuadorian police. An asylum officer found that he had a credible fear of persecution or torture and he was placed in removal proceedings. In 2018, an IJ granted his application for CAT protection, protecting him against deportation to Ecuador. He was then released from custody and regularly attended check-ins with ICE in Burlington, Massachusetts.

On March 18, 2025, ICE encountered E.F.D. when agents were conducting a search for another person and took him into custody. E.F.D. fears deportation to any third country without meaningful notice and opportunity to apply for protection—especially with respect countries that will deport him back to Ecuador, with respect to El Salvador, Colombia, or Peru, where he fears individuals in the drug trade will mark him, and to Mexico and Guatemala, because he was previously robbed and kidnapped there. *See* Dkt. 1 ¶¶12, 74-77; Exh. C.

### 4.    Plaintiff O.C.G.

Plaintiff O.C.G. is a gay man from Guatemala who fled that country after facing multiple death threats on account of his sexuality. He was removed pursuant to 8 U.S.C. § 1225(b) in March 2024 after he was denied the opportunity to have a credible fear interview and deported to Guatemala. Still unsafe, he again fled Guatemala and entered Mexico in April 2024, where he was kidnapped, raped, and extorted. O.C.G. again fled to the United States in May 2024 and was issued a reinstatement order pursuant to 8 U.S.C. § 1231(a)(5), but an asylum officer found that he had a reasonable fear of persecution in Guatemala, and DHS placed him in withholding-only proceedings before an IJ. After a hearing, the IJ granted his application for withholding of removal to Guatemala. DHS waived appeal.

About two days later, DHS deported O.C.G. to Mexico without any notice and without the opportunity to present his claim of fear of deportation to Mexico. DHS took him by bus to Nogales, Mexico and then to Tabasco, Mexico. There, he was forced to choose between being

shipped to another detention facility in Mexico where he would wait for several months to apply

for asylum or be deported from Mexico to Guatemala. On February 25, 2025, Mexican

authorities deported Plaintiff O.C.G. to Guatemala. To date, Plaintiff O.C.G. remains in hiding in

Guatemala. *See* Dkt. 1 ¶¶13, 78-89; Exh. D.

## III.     ARGUMENT

Under Federal Rule of Civil Procedure 23, Plaintiffs are entitled to class certification

where two conditions are met: "The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*,

numerosity, commonality, typicality, and adequacy of representation), and it also must fit into

one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A.*

*v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The proposed class satisfies Rule 23(a) and (b)(2).

Federal courts, including this Court, have routinely certified class actions challenging

immigration policies and practices that have broad, categorical effect. *See, e.g.*, *Brito v. Barr*,

395 F. Supp. 3d 135, 149 (D. Mass. 2019) (certifying statewide classes of individuals

challenging bond hearing policies and practices); *Jimenez v. Mayorkas*, No. 18-10225-MLW,

2025 WL 220511, at *1 (D. Mass. Jan. 16, 2025) (referencing previously certified regional class

of noncitizens challenging policy and practice of detaining and removing noncitizens with

pending or approved visa petitions); *Reid v. Donelan*, 297 F.R.D. 185, 194 (D. Mass. 2014)

(certifying statewide class of individuals challenging immigration detention practices); *Gordon*

*v. Johnson*, 300 F.R.D. 28, 30 (D. Mass. 2014) (certifying statewide class of noncitizens subject

to certain mandatory detention policies); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 138

(E.D.N.Y. 2020) (certifying nationwide classes of Deferred Action for Childhood Arrivals

(DACA) recipients and applicants challenging policy suspending the DACA program);

*Nightingale v. USCIS*, 333 F.R.D. 449, 457–63 (N.D. Cal. 2019) (certifying nationwide classes

challenging agency's failure to produce immigration files); *Wagafe v. Trump*, No. C17-0094-RAJ, 2017 WL 2671254, at *16 (W.D. Wash. June 21, 2017) (certifying two nationwide classes of immigrants challenging legality of a government program applied to certain immigration benefits applications); *Mendez Rojas v. Johnson*, No. C16-1024RSM, 2017 WL 1397749, at *7 (W.D. Wash. Jan. 10, 2017) (certifying two nationwide classes of asylum seekers challenging defective asylum application procedures).

These cases demonstrate the propriety of Rule 23(b)(2) certification in actions challenging immigration policies or practices that deprive noncitizens of their rights. Indeed, the rule was intended to "facilitate the bringing of class actions in the civil-rights area," particularly those seeking declaratory or injunctive relief. Charles Alan Wright & Arthur R. Miller, 7AA *Federal Practice and Procedure* § 1775 (3d ed. 2022). Claims brought under Rule 23(b)(2) often involve issues affecting noncitizens who otherwise would be unable to present their claims. Also, the core issues in these types of cases generally present pure questions of law, rather than disparate questions of fact, and thus are well suited for resolution on a class-wide basis.

**1. The Proposed Class Meets the Requirements of Rule 23(a)**

**a. The proposed class members are so numerous that joinder is impracticable.**

The numerosity requirement imposes only a "low threshold," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009), particularly where, as here, plaintiffs seek only injunctive or declaratory relief. *Reid*, 297 F.R.D. at 189 ("[T]he threshold may be relaxed when a party seeks only declaratory or injunctive relief, since the inclusion of future members increases the impracticability of joinder." (citation omitted)). "Numerousness—the presence of many class members—provides an obvious situation in which joinder may be impracticable, but it is not the only such situation . . . ." William B. Rubenstein, 1 *Newberg & Rubenstein on Class Actions* §

3:11 (6th ed. 2022) (footnote omitted). "Thus, Rule 23(a)(1) is an impracticability of joinder rule, not a strict numerosity rule. It is based on considerations of due process, judicial economy, and the ability of claimants to institute suits." *Id.* (footnote omitted). Determining numerosity "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

While "no specific threshold exists" for the numerosity requirement, *Reid*, 297 F.R.D. at 189, it provides a "low threshold." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). Courts have generally found the numerosity requirement satisfied when plaintiffs "demonstrate[] that the potential number of plaintiffs exceeds 40." *Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, 561 F. Supp. 3d 93, 99 (D.N.H. 2021) (citations omitted); *see also Brito*, 395 F. Supp. 3d at 144 n.3 (certifying class where " it is likely that more than forty" class members "at any time"); *Gordon*, 300 F.R.D. at 29-30 (certifying where "it is reasonable to conclude that the class is over the forty-person threshold generally required in the First Circuit"); *O'Donnell v. Robert Half Int'l, Inc.*, 250 F.R.D. 77, 80 (D. Mass. 2008) (finding numerosity requirement met where "there could be at least 50" potential class members); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) (noting that "[c]ourts have certified classes with as few as thirteen members"); *McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan and Trust*, 268 F.R.D. 670, 674–76 (W.D. Wash. 2010) (certifying class with 27 known members); *Arkansas Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (finding 17 class members sufficient). "Moreover, the threshold may be relaxed when a party seeks only declaratory or injunctive relief, since the inclusion of future members increases the impracticability of joinder." *Reid*, 297 F.R.D. at 189; *see also Gomes*, 561 F. Supp. 3d at 99 (certifying a class where "the number of current *and future* members of the putative class

exceeds 40 persons") (emphasis added).

Here, Plaintiffs estimate that there are hundreds, if not thousands, of putative class members nationwide. In any given year, hundreds of individuals, at a minimum, are issued final removal orders but cannot be removed to their designated countries of removal and thus are members of the proposed class. For example, in Fiscal Year 2023, the Executive Office for Immigration Review granted 1,769 individuals with final removal orders withholding of removal or CAT protection.[2] Other individuals were not removed to designated countries of removal which accept few individuals for deportation.[3] Many of these individuals likely do not have attorneys and/or are unaware that they may soon be subject to Defendants' February 18, 2025 directive and policy and practice of third country deportation without notice and an opportunity to raise a fear-based claim. However, legal service providers and other attorneys have identified hundreds of such individuals with final orders who have been or will be subject to those policies. *See* Exh. H. ¶¶ 3-13; Exh. I. ¶¶ 4-12; Exh. J. ¶¶ 4-7; Exh. K. ¶¶ 5-11, 13 (identifying client who was one of two busloads of people ICE was deporting to Mexico); Exh. L. ¶¶ 5-9; Exh. M. ¶¶ 4-16; Exh. N. ¶¶ 3-7 (identifying four clients and noting that others are similar situations); Exh. O. ¶¶ 4-33 (identifying clients, one of whom was deported with about 50 other people and the other was deported with about 84 others); Exh. P. ¶¶ 4-5; Exh. R. ¶¶ 4-17 (identifying two clients); Exh. S. ¶¶ 4-18 (indicating concern that "numerous" clients are at risk of summary deportation to third countries and identifying three examples); Exh. Q. ¶¶ 5-8 (identifying clients and

---

[2]    *See* Congressional Research Service, *FY2023 Immigration Court Data: Case Outcomes* 2 (Feb. 7, 2024), https://www.congress.gov/crs_external_products/IN/PDF/IN12318/IN12318.3.pdf.
[3]    *See, e.g.*, Migration Policy Institute, *ICE Arrests and Deportations from the U.S. Interior* 6 (Feb. 2025) (noting that "recalcitrant" countries which "accept few or no returnees" include China, Cuba, India, and Venezuela).

individuals receiving legal orientation services); Exh. V. ¶¶ 4-10 (identifying six clients or

former clients); Exh. U. ¶¶ 4-7 (identifying two clients); Exh. T. ¶¶ 4-18; Exh. X. ¶¶ 4-13; Exh.

W. ¶¶ 3-4 (identifying two clients); *see also* Exh. D. ¶ 10 (attesting to deportation to Mexico by

bus with 20 other men). Thus, Plaintiffs have identified a sufficient number of proposed class

members to satisfy Rule 23(a)(1).

Joinder is also impracticable because of the existence of unnamed, unknown future class

members who will be subjected to Defendants' policy or practice of refusing to provide notice

and an opportunity to present a fear-based claim prior to deportation to a third country. *See, e.g.*,

*Reid*, 297 F.R.D. at 189 (noting that "[t]he potential inclusion of . . . currently uncountable,

future class members" demonstrated numerosity where "an influx of future members will

continue to populate the class"); *Gordon*, 300 F.R.D. at 30 (finding joinder impracticable where

the class is "inherently transient" and "filled with individual class members unknown (and to

some extent unknowable) to Plaintiffs"); *Ali v. Ashcroft*, 213 F.R.D. 390, 408–09 (W.D. Wash.

2003) ("[W]here the class includes unnamed, unknown future members, joinder of such

unknown individuals is impracticable and the numerosity requirement is therefore met,

regardless of class size." (citation and internal quotation marks omitted)); *Hawker v. Consovoy*,

198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential future class members who share a

common characteristic, but whose identity cannot be determined yet is considered

impracticable."). Here, joinder is impracticable for the same reason, as the proposed class

includes individuals with final removal orders whom DHS may deport, or has deported, on or

after February 18, 2025, to a country not previously designated and identified for removal.

In addition to class size and future class members, several other factors make joinder

impracticable in the present case, such as judicial economy, geographic dispersion of class

members, financial resources of class members, and the ability of class members to bring individual suits. *See* Rubenstein, *supra*, § 3:12; *see also, e.g.*, *Brito*, 395 F. Supp. 3d at 144 n.3 (explaining, in a case involving noncitizens in detention that "[t]he transient nature of the class and the inability of many [noncitizens] to speak English and secure counsel render joinder impracticable"); *Reid*, 297 F.R.D. at 189 (finding joinder unreasonable where class members are "located in four facilities" across Massachusetts, held under "a variety of statutory provisions, for distinct periods of time," and where many are unrepresented, do not speak English, and "are unlikely even to know that they are members of the proposed class"). Here, the proposed class members are dispersed nationwide. And by definition, they are subject to detention and deportation to countries where they have never lived, rendering it difficult for them to find counsel and afford the significant costs associated with litigation.

### 2.    The class presents common questions of law and fact.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." As Courts in this circuit have found, "a single common question is sufficient to satisfy the requirements of Rule 23(a)(2)." *Gomes*, 561 F. Supp. 3d at 99; *see also Reid*, 297 F.R.D. at 189. Commonality exists if class members' claims all "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Therefore, the critical issue for class certification "is not the raising of common 'questions' . . . but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted).

That putative class members may have different issues related to the merits of their fear-based claims does not defeat commonality. Instead, Plaintiffs challenge a policy or practice that

13

applies equally to all class members, thus satisfying the commonality requirement, notwithstanding those differences. *See, e.g.*, *Gomes*, 561 F. Supp. 3d at 101 ("[T]he existence of individual differences among putative class members does not foreclose a finding of commonality so long as least one common issue is raised."); *Brito*, 395 F. Supp. 3d at 148 (holding that "the need to answer a question of prejudice on an individual basis would not by itself defeat commonality"); *Savino v. Souza*, 453 F. Supp. 3d 441, 451 (D. Mass. 2020) (determining "that the admittedly significant variation among the Detainees does not defeat commonality"); *Quadrelli v. Moniz*, No. 20-CV-10685-ADB, 2020 WL 3051778, at *5 (D. Mass. June 8, 2020) (following courts that have certified classes of individuals "who have alleged a general risk of harm due to a policy or practice, even if there might additionally be a unique or distinct impact as to an individual putative class member"). In sum, "individual differences . . . do not foreclose a finding of commonality." *Gomes*, 561 F. Supp. 3d at 101.

The commonality standard is more liberal in a civil rights suit such as this one, which "challenges a system-wide practice or policy that affects all of the putative class members." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 808 (9th Cir. 2020) (citation omitted). Moreover, "class suits for injunctive or declaratory relief" like this case, "by their very nature often present common questions satisfying Rule 23(a)(2)." Wright & Miller, *supra*, § 1763.

Here, Plaintiffs and proposed class members challenge a system-wide policy and practice and directive, resulting in common harms. Specifically, Defendants have a policy and practice of not providing individuals with final removal orders with meaningful notice or opportunity to contest removal to a third country on the basis that they have a fear of persecution, torture, and even death if deported there. They also have a directive instructing officers to unlawfully re-detain Plaintiffs and putative class members without any mechanism to ensure meaningful notice

14

and an opportunity to present a fear-based claim before deportation to a third country.

By definition, all proposed class members have final removal orders and are subject or have been subject to re-detention and/or removal to a third country pursuant to Defendants' policy or practice and re-detention directive, and have not received a meaningful opportunity to present a fear-based claim regarding removal to that country to an IJ. Consequently, Plaintiffs and proposed class members all share the legal claim that Defendants are violating their right to seek protection against persecution and torture prior to deportation, pursuant to the INA, FARRA, regulations, Due Process Clause of the Fifth Amendment, and the United States' treaty obligations, which necessarily includes notice of the country to which they will be deported and a meaningful opportunity to assert a fear-based claim regarding such deportation.

Moreover, such injuries are capable of class-wide resolution through declaratory relief by declaring Defendants' policy or practice and directive unlawful and recognizing Defendants' obligation to provide meaningful notice and an opportunity to present a fear-based claim to an immigration judge prior to deportation to a third country, as well as by setting aside Defendants' policy or practice and directive. As the relief sought by Plaintiffs will resolve the litigation as to all class members "in one stroke," *Wal-Mart*, 564 U.S. at 350, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3. Plaintiffs' claims are typical of the claims of the members of the proposed class.

Rule 23(a)(3) specifies that the claims of the representatives must be "typical of the claims . . . of the class." Meeting this requirement usually follows from the presence of common questions of law. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). To establish typicality, "a class representative must be part of the class and possess the same interest and suffer the same

15

injury as the class members." *Id.* at 156 (citation and internal quotation marks omitted); *see also Garcia-Rubiera*, 570 F.3d at 460 (finding that typicality is "easily met" where "Plaintiffs' claims 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory'") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)) (alterations in original). As with commonality, factual differences among class members do not defeat typicality provided there are legal questions common to all class members. *See, e.g.*, *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 405 (D. Mass. 2017) ("Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct.") (quotation omitted); *Gomes*, 561 F. Supp. 3d at 101 ("The representative plaintiff's claims and those of absent class members need not be identical; they need only share the same essential characteristics.") (quotation omitted).

In this case, the claims of the named Plaintiffs are typical of the claims of the proposed class. Each Plaintiff, like each proposed class member, suffers from the same injury: being subject to, or at risk of being subject to re-detention pursuant to the February 18, 2025 directive and/or being subject to, or at risk of being subject to, DHS' policy or practice of failing to provide meaningful notice and opportunity to contest deportation to a third country before an IJ due to fear of persecution and/or torture. In sum, the harms suffered by Plaintiffs are typical of the harms suffered by the proposed class, and Plaintiffs' injuries and the injuries of proposed class members result from the identical course of conduct by Defendants. Plaintiffs therefore satisfy the typicality requirement.

     **4.**    **Plaintiffs will adequately protect the interests of the proposed class, and counsel are qualified to litigate this action.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1988) (citation omitted); *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129. 138 (1st Cir. 2012) ("Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)).

     *a.*    *Named Plaintiffs*

Plaintiffs are motivated to pursue this action on behalf of others like them who, based on Defendants' unlawful policy or practice and directive, have been or will be wrongfully re-detained and/or deported to a nondesignated country to which they had no notice that they could be deported and no opportunity to make a fear claim. This deprives Plaintiffs of their liberty during re-detention and places them at grave risk of persecution, torture, or even death if deported to a third country without notice and opportunity to present a fear-based claims. *See* D.V.D. Decl. ¶ 13; M.M. Decl. ¶ 13; E.F.D. Decl. ¶ 16; O.C.G. Decl. ¶¶ 8-10. Other class members face the same potential harms. Plaintiffs will also fairly and adequately protect the interests of the proposed class because they share the same interests and seek the same relief for all putative class members: a declaratory order and vacatur under the APA that stays and sets aside Defendants February 18, 2025 directive with respect to re-detention and Defendants' failure to provide notice and an opportunity to present a fear-based claim prior to deportation to a

third country. Finally, Plaintiffs do not seek money damages for themselves. As a result, there is

no potential conflict between the interests of any of the Plaintiffs and members of the proposed

class. Accordingly, Plaintiffs are adequate representatives of the proposed class.

### b.    Counsel

The adequacy of counsel is also satisfied here. Counsel are deemed qualified when they

have experience in previous class actions and cases involving the same area of law. *See, e.g.*,

*Ouadani v. Dynamex Operations East, LLC*, 405 F. Supp. 3d 149, 163 (D. Mass 2019); *Gomes*,

561 F. Supp. 3d at 102, 103; *DaSilva*, 296 F. Supp. 3d at 405; *Reid*, 297 F.R.D. at 192. Plaintiffs

are represented by attorneys from the National Immigration Litigation Alliance, Northwest

Immigrant Rights Project, and Human Rights First, all of whom who have extensive experience

in class action lawsuits and other complex federal court litigation involving immigration law,

including challenges to USCIS policies in adjudicating immigration benefits. *See* Exhs. E-G.

Counsel are able to demonstrate that they are counsel of record in numerous cases focusing on

immigration law, in which they vigorously represented both the class representatives and absent

class members in obtaining relief.

### 2.    The Proposed Class Satisfies Federal Rule of Civil Procedure 23(b)(2).

In addition to satisfying Rule 23(a), Plaintiffs also must meet one of the requirements of

Rule 23(b) for a class action to be certified. Here, Plaintiffs seek certification under Rule

23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

is appropriate respecting the class as a whole." "[C]ivil rights actions, where a party charges that

another has engaged in unlawful behavior towards a defined group, are prime examples of Rule

23(b)(2) classes." *Reid*, 297 F.R.D. at 193 (quotation omitted). Thus, this court certifies under

this rule where defendants "consistently" apply a statutory interpretation to all class members and plaintiffs seek "a single injunction or a single declaratory judgment" applicable to all class members. *Id.*; *see also Gordon*, 300 F.R.D. at 30 (finding that a class challenging a "single, statutory interpretation" and which is "entitled, at a minimum, to some form of declaratory judgment" "falls neatly into Rule 23(b)(2)"); *Vara v. DeVos*, No. 19-12175-LTS, 2020 WL 3489679, at *21 (D. Mass. Jun. 25, 2020) (recognizing Rule 23(b)(2) met where "plaintiffs seek 'declaratory and injunctive relief with respect to the entire class concerning the policies . . . which have been applied to each class member'") (quoting *McDonald v. Heckler*, 612 F. Supp. 293, 300 (D. Mass. 1985)). Rule 23(b)(2) "does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them," and so all that is required is that such relief "is conceivable." *B.D. by next friend Willington v. Sununu*, No. 21-cv-4-PB, 2024 WL 4227544, at *19 (D.N.H. Sept. 18, 2024) (quotations omitted).

This action meets the requirements of Rule 23(b)(2). DHS has subjected or will subject all class members to the same policy or practice of refusing to provide meaningful notice and an opportunity to present a fear-based claim before deportation to a third country and/or re-detention to carry out a third country deportation without a lawful mechanism to ensure these protections. Plaintiffs and proposed class members seek declaratory relief declaring Defendants' policy or practice and directive unlawful and declaring Plaintiffs' rights under the INA, FARRA, and Due Process Clause. They also seek to set aside Defendants' current policy or practice of refusing to provide meaningful notice and an opportunity to present a fear-based claim to an immigration judge before deportation to a third country and set aside the re-detention directive. Therefore, the relief sought by Plaintiffs will apply to the proposed class as a whole.

3.     **Plaintiffs Request Provisional Certification If the Court Does Not Grant Class Certification Prior to Any Injunctive Order.**

Plaintiffs concurrently seek preliminary injunctive relief for themselves and for putative class members. *See* Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction. If this Court does not grant temporary injunctive relief before determining that class treatment is proper, *see, e.g.*, *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974); *but see Westenfelder v. Ferguson*, 998 F. Supp. 146, 159 (D.R.I. 1998) (granting preliminary relief without ruling on motion for provisional class certification where injunction stopped defendants from enforcing a statute), it may grant provisional class certification for the purposes of entering such relief. *See, e.g., Gomes v. Acting Sec'y U.S. Dep't of Homeland Sec.*, No. 20-cv-453-LM, 2020 WL 2113642, *1-2 (D.N.H. May 4, 2020) (provisionally certifying a class for purposes of holding expedited bail hearings); *Yanes v. Martin*, 464 F. Supp. 3d 467, 469 (D.R.I. 2020) (noting that the court provisionally certified the class to allow for class members' individualized bond hearings); *see also Maney v. Brown*, 516 F. Supp. 3d 1161, 1171 (D. Or. 2021); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 343 (D.D.C. 2018). Thus, Plaintiffs also request provisional class certification to the extent it is required to protect the status quo and prevent irreparable harm to themselves and to the putative class. In entering a provisional order, the Court's analysis regarding satisfaction of the requirements should be "tempered . . . by the understanding that such [provisional] certifications 'may be altered or amended before the decision on the merits.'" *Damus*, 313 F. Supp. 3d at 329 (quoting *Bame v. Dillard*, No. 05-1833, 2008 WL 2168393, at *5 (D.D.C. May 22, 2008)).

## IV.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court certify the proposed class, appoint Plaintiffs as class representatives, and appoint the undersigned attorneys as class counsel.

20

Respectfully submitted,

s/*Tomás Arango*

Tomas Arango
Trina Realmuto*
Kristin Macleod-Ball*
Mary Kenney*
**NATIONAL IMMIGRATION
    LITIGATION ALLIANCE**
10 Griggs Terrace
Brookline, MA 02446
(617) 819-4649
trina@immigrationlitigation.org

Anwen Hughes*
**HUMAN RIGHTS FIRST**
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
**NORTHWEST IMMIGRANT
    RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

*Attorneys for Plaintiffs*

* *Application for admission pro hac vice forthcoming*

Dated: March 23, 2025