## DECLARATION OF TIFFANY WANG

I, Tiffany Wang, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.  I am a practicing attorney licensed to practice before the State of New Mexico. My business address is PO Box 90191, Albuquerque, NM 87199. I have been employed as a Fellow Attorney at Innovation Law Lab since August 2024. I am over the age of 18 and am competent to testify regarding the matters described below.

2.  I work almost exclusively with immigrants currently and formerly detained at the Torrance County Detention Facility in Estancia, NM. In addition to providing legal orientations to hundreds of detained individuals with fear-based claims on a biweekly basis, I have provided selective representation to some of these people in front of the Board of Immigration Appeals (BIA) or with applications and petitions for immigration benefits or relief filed with U.S. Citizenship and Immigration Services.

3.  I represent AL before the BIA. On or about February 21, 2025, AL was deported to a third country. AL is a citizen of Venezuela, and the only country the immigration judge (IJ) designated for removal was Venezuela.

4.  AL entered the United States in January 2024 and was placed in removal proceedings pursuant to 8 U.S.C. § 1229a. He entered the United States from Mexico, where he had been robbed. He was detained at the Torrance County Detention Facility. AL was originally served with a Notice to Appear at the immigration court where his U.S. sponsor was located and was set to be released from detention. However, a few days later, AL provided potentially life-saving assistance to another detained individual who was experiencing a medical emergency and needed medical attention. After doing so, ICE placed AL in administrative segregation and he was forced to attend all his immigration hearings while remaining detained.

5.  AL was pro se before the immigration court. AL filed Form I-589, the application for asylum, withholding of removal, and protection under the Convention Against Torture, with the immigration court on or about April 2, 2024. AL expressed fear of persecution based on his opposition to the Venezuelan government. After participating in peaceful protests against the Venezuelan government, AL was detained and tortured by the Bolivarian National Guard. He was subsequently labeled as a traitor to the country, harassed by members of the Bolivarian National Guard and the Colectivos, a pro-government criminal organization, and captured and tortured by the Colectivos.

6.  At his merits hearing on June 18, 2024, the IJ denied AL's application for protection and ordered him removed. AL felt forced to waive his right to appeal due to threats of prolonged detention.

7.  AL was released from detention around July 2024 and went to North Carolina to live with his sponsor. He wore an ankle monitor and had monthly phone check-ins with U.S.

EXHIBIT H

Immigration and Customs Enforcement (ICE) in Charlotte, North Carolina. ICE once visited his home. AL complied with all requirements of release set by ICE.

8.   On or around January 26, 2025, ICE came to AL's home to arrest him. ICE redetained him at the Stewart Detention Center in Lumpkin, GA.

9.   On February 6, 2025, I filed a *sua sponte* Motion to Reopen AL's removal proceedings with the IJ. After the IJ denied the motion without any reasoning, I represented AL in an appeal to the BIA and submitted a motion to stay his removal pending the adjudication of his appeal. AL's appeal and motion to stay were filed on February 12, 2025 and February 18, 2025, respectively, and remain pending to date.

10.   On or around February 14, 2025, ICE transferred AL to the Adams County Correctional Center in Natchez, MS, with a group of other Venezuelan men who had also received final orders of removal. While detained, AL heard rumors about deportations to Guantanamo Bay and Mexico. During a call, he expressed to me his fear of being sent to either of those locations, especially since he had been threatened and robbed in Mexico during his initial journey to the United States.

11.   On or around February 20, 2025, AL, along with other Venezuelan men with final orders of removal, was transferred to Florence Service Processing Center in Florence, AZ, where they spent one night. ICE officers told AL and the other men that they were going to be deported to Venezuela. Instead, ICE took them on a bus to Nogales, AZ, where they were handed over to Mexican authorities. The Mexican authorities told the men they had been voluntarily expelled to Mexico, despite the men never having been told where they were going. The men then spent three days on a bus that transported them to Villahermosa, Mexico, near the Mexico-Guatemala border. AL did not have an opportunity to express fear of being deported to Mexico before his deportation.

12.   As AL's attorney of record on an ongoing BIA appeal, I was never informed of AL's deportation.

13.   AL was left in southern Mexico without any identification documents, which had been confiscated by ICE. While making every effort to remain undetected, AL traveled to Mexico City, where he is currently in hiding. He continually fears harm from gangs or militias, who he reasonably fears will assault and rob him, as they did during AL's initial journey to the United States.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge.

Executed this 5th day of March 2025 at Albuquerque, NM.

_____
Tiffany Wang