# DECLARATION OF DANIELA HERNÀNDEZ CHONG CUY

I, Daniela Hernández Chong Cuy, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a practicing attorney licensed to practice before the State of California. My business address is 680 E Colorado Blvd. Suite 180, Pasadena, California. I have been employed as founder and directing attorney at the Law Office of Daniela Hernández Chong Cuy since 2020. I am over the age of 18 and am competent to testify regarding the matters described below.

2. I have practiced exclusively in immigration law since 2018, representing hundreds of noncitizens in removal proceedings before the Executive Office for Immigration Review (EOIR) and with applications and petitions for immigration benefits or relief filed with U.S. Citizenship and Immigration Services (USCIS). I have been Qualified Representative with the National Qualified Representative Program (NQRP), a program that provides legal representation to individuals found to be mentally incompetent to represent themselves, since 2018 and my office has been a legal service provider for NQRP since our office's inception in 2020.

3. I represent individuals with final removal orders in removal proceedings pursuant to 8 U.S.C. § 1229a (Section 240 proceedings) and final removal orders issued by the Department of Homeland Security pursuant to 8 U.S.C. § 1231(a)(5) (reinstatement orders) or 8 U.S.C. § 1228(b) (238b orders).

4. I represent Ms. M, a woman from Somalia who previously had lawful permanent resident (LPR) status, through NQRP, after she was deemed incompetent to represent herself in removal proceedings by an Immigration Judge (IJ). Ms. M had prior proceedings, but I began representing her in August 29, 2024. At that time, DHS had issued Ms. M a Notice to Appear (NTA) on July 25, 2024, placing her in Section 240 removal proceedings.

5. On January 30, 2025, the IJ ordered Ms. M removed but granted her deferral of removal to Somalia, a form of protection under the Convention Against Torture (D-CAT). She was granted protection on the basis that it is more likely than not that she would be tortured if returned to Somalia, due to her serious mental illness, her gender, and her membership in a minority ethnic group.

6. The IJ designated Somalia as the country of removal in those proceedings. At the end of Ms. M's individual hearing, DHS, without any prior notice, attempted to also designate Kenya as a country of removal, but the IJ expressly denied their request on the record, stating that there was no basis to do so at that stage of the proceedings.

7. DHS waived appeal and the order became final on January 30, 2025.

8. Ms. M has been in immigration detention since February 2024. For individuals who are part of NQRP, after they have won relief or protection in removal proceedings, U.S. Immigration and Customs Enforcement (ICE) must follow its safe release policy to ensure that the individual's transportation and other needs are provided for before release. As part of this process, Megan Hope, MSW, from Mariposa Legal, an NQRP legal service provider, with whom I worked on this case for post release planning, prepared a safe release plan for Ms. M after we received the order in her case and submitted it to Deportation Officer Shane Blea, the ICE officer working on Ms. M's case on February 4, 2025. Both Megan and I also sent several follow up messages to Officer Blea and/or a supervising officer, on February 7, 11, and 18, 2025.

9. On February 16, 2025, Ms. M told us that she spoke Officer Blea, who told her that ICE was making arrangements for her removal.

10. On February 19, 2025, I heard back from Officer Blea for the first time. The Officer told me that he was required to look for two other countries that Ms. M could be removed to, and that ICE had started that process, but he could not provide a timeline of when it would be complete. On February 21, 2025, we responded explaining that Ms. M had no status in any other country and again providing the release plan.

11. On February 21, 2025, Ms. M called us to explain that Officer Blea had asked her if there were any other countries that she wanted to be removed to and that she told him no. Officer Blea told her that ICE was working on her case that day.

12. On February 25, 2025, we again emailed Officer Blea regarding the safe release plan. On February 27, 2025, he responded and stated that, on February 26, he had submitted requests for acceptance to three countries to which Ms. M might or might not be removed and that those countries had 30 days to accept or decline. He did not specify what three countries he was referring to. He wrote that he could not move forward with release until the end of the 30-day period or once he had heard back from all three countries.

13. That same day, we wrote to Officer Blea asking what three countries he had contacted. Then, on February 28, 2025, I submitted a letter to ICE, explaining Ms. M's fear of deportation to a third country, including Kenya or other African countries, El Salvador, Panama, or Costa Rica.

14. On March 6, 2025, I spoke to Ms. M by telephone. She said that, on February 26, 2025, she had spoken to a different ICE officer who told her ICE had to try a different list of three countries where she might be removed. She told them that, if she had to be removed, she asked to be removed to Canada, France, or Poland. The officer told her that they were trying to remove her to Panama, Guatemala, or Nicaragua, but Guatemala had already declined.

15. On that same day, I wrote to ICE with an update to the February 28 letter, explaining that Ms. M had a fear of deportation to Nicaragua and reiterating her fear of deportation to Panama or Guatemala. At no point has ICE acknowledged receipt of the letter or update

16.     Ms. M has a fear of being deported to a third country. She is afraid that she will be deported from any third country back to Somalia, where she will be tortured or killed. She also fears that she will not be able to survive if deported to a third country, given her unique and serious vulnerabilities, including serious mental health issues which have led to her being unhoused for more than 16 years. Her family, including U.S. citizen father and siblings, live in the United States.

or given any response or indication that Ms. M will be provided with an opportunity to seek protection from deportation to a third country.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge.

Executed this 19th day of March 2025 at Los Angeles, California.

*Daniela Hernández*

_____
Daniela Hernández Chong Cuy

3