## DECLARATION OF LAURA BELOUS

I, Laura Belous, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a practicing attorney licensed to practice before the States of Arizona. My business address is PO Box 86299 Tucson, AZ 85754. I have been employed as an attorney at the Florence Immigrant & Refugee Rights Project (FIRRP) between 2010 and 2012 and since 2013. I am over the age of 18 and am competent to testify regarding the matters described below.

2. FIRRP is a non-profit 501(c)(3) organization that provides free legal and social services to the thousands of adults and children detained in immigration custody in Arizona on any given day. The Florence Project was founded in 1989 to provide free legal services to asylum seekers and other migrants in a remote immigration detention center in Florence, Arizona where people had no meaningful access to counsel. The Florence Project has expanded significantly since that time and now provides free legal and social services, including legal orientation program services, to thousands of detained adults. We also provide legal and social services to unaccompanied children throughout Arizona. As the only 501(c)(3) non-profit organization in Arizona dedicated to providing free legal and social services to people in immigration detention, our vision is to ensure that every person facing removal proceedings has access to counsel, understands their rights under the law, and is treated fairly and humanely.

3. Between 2010 and 2012, I had an Equal Justice Works fellowship with FIRRP and provided representation to detained noncitizens with mental health disabilities in Eloy and Florence, Arizona. During the fellowship, I represented about 50 individuals before the Executive Office for Immigration Review (EOIR) and United States Citizenship and Immigration Services (USCIS). In 2013, I was hired at FIRRP to mentor pro bono attorneys representing unaccompanied immigrant children in removal proceedings. I then became the managing attorney of FIRRP's Tucson office in 2014 and represented hundreds of unaccompanied immigrant children before EOIR, USCIS, and the Pima County Juvenile Court. In 2019, I moved to FIRRP's advocacy team and began representing clients before federal district court on habeas, Federal Tort Claim Act, and other related matters. I maintain active communication with our direct services teams about ongoing case work and offer consultation services with those teams on their case work as needed. I have also represented individuals before EOIR and USCIS in my current position.

4. Throughout my career, I have represented individuals with both final removal orders in removal proceedings pursuant to 8 U.S.C. § 1229a (Section 240 proceedings) and final removal orders issued by the Department of Homeland Security pursuant to 8 U.S.C. § 1231(a)(5) (reinstatement orders) or 8 U.S.C. §

**EXHIBIT Q**

1228(b) (238b orders)

5. In January 2025, I filed a petition for habeas corpus for a Honduran man pursuant to *Zadvydas v. Davis,* 533 U.S. 678 (2001). At the time of filing, the client, S.M.V., had been detained for nearly a year after his reinstated removal order to Honduras became final because ICE had been unable to deport him there. Not long after filing the petition, the Assistant U.S. Attorney (AUSA) assigned to the case called my co-counsel and asked if we would be willing to dismiss the case because ICE was going to deport S.M.V. to Mexico that evening or the following day. We informed her that we suspected that S.M.V. had not received any notice of his planned removal. When we were finally able to speak to S.M.V. that night, he confirmed that he had not received any notice and indeed feared return to Mexico because he had been kidnapped and assaulted there in the past. We had to file an emergency temporary restraining order with the district court to stop removal to Mexico, after which ICE agreed to allow S.M.V. the opportunity to voice a fear claim to Mexico and ask the asylum office to screen his fear. That interview was scheduled about two weeks later. S.M.V. ultimately decided to withdraw his claim to Mexico because he felt that he could no longer bear to be detained, having been in ICE detention for more than a year already. Had the AUSA not told my co-counsel in passing that the client was about to be removed to Mexico, neither S.M.V. nor counsel would have had any notice.

6. The Florence Project also represents C.M., a woman from Mexico who suffers from various mental health conditions and cognitive deficits. She is in withholding-only proceedings pursuant to a reinstated removal order. The Florence Project attorney requested that DHS provide notice of any planned removal to a third country as a safeguard under *Franco-Gonzalez v. Holder*, 767 F. Supp. 2d 1034 (9th Cir. 2010), which applies the section 504 of the Rehabilitation Act to immigration removal proceedings and provides additional protections and reasonable accommodations for persons in removal proceedings who have been found incompetent to represent themselves. If C.M. is granted protection from Mexico, her attorney is concerned that she will be removed to another country in Latin America where she may face harm or abuses on account of her mental health conditions and/or where she may be at increased risk of refoulment by that third country to Mexico.

7. FIRRP works with numerous clients at risk of removal to a non-designated third country. One such client is R.M., a Russian national who fled Russia after his political activities placed him at risk of persecution. At the time of his detention by ICE, R.M. had a significant aortic aneurism that required open heart surgery. He is also legally blind. The surgery was significantly delayed after various transfers while in ICE custody. R.M. had the surgery in February 2025 and was eventually granted deferral of removal under the Convention Against Torture. No third country was designated in removal proceedings and R.M. reserved appeal. R.M. is desperate to be released from detention to his wife in the Los Angeles

area so that he can recover from his open-heart surgery outside of detention. However, if he does not pursue the appeal, he faces the possibility of a removal without notice to a third country, which could put his fragile health in enormous peril. R.M. has a fear of various countries because of his health status and political opinions, but we are also very concerned that he could be refouled to Russia by one of the third counties he could be removed to. This would entirely undermine the immigration judge's grant of deferral of removal under the Convention Against Torture, which provides protection against removal to Russia by DHS.

8. Our team that provides legal orientation services to pro se individuals is also working with several people at risk of removal to third countries. A.A. is a Jordanian national who was granted Withholding of Removal and protection under the Convention Against Torture based on A.A's sexuality. Both DHS and A.A. waived appeal and A.A. remains detained. He has not received notice of any proposed third country of removal and remains fearful that he will be removed without notice to a country where he could also be harmed on account of his sexuality. Our team is also working with an Iraqi national, H.A, with a removal order from 2015. He has been detained since October 2024 without a court date. It is our understanding that Iraq is not accepting removals at this time, and the client is very afraid that he will be summarily removed to another country where he does not speak the language and has no connections.

9. FIRRP attorneys have struggled to provide adequate counsel to non-citizens regarding third country removals. We often find ourselves and our clients in a difficult situation: we cannot assist clients to advise DHS of a fear of a third country of removal without notice, and clients have been removed to third countries without notice. This means that we often have to file notices of fear of multiple countries, trying to guess where clients might be removed and hoping that the notices will be read and respected. We have devoted substantial time and energy toward both advising represented clients about the possibility of third country removal and educating clients who attend our legal orientation programming about how to advocate for themselves.

10. Currently, it is our understanding that Mexico is accepting removal of nationals from Guatemala, Honduras, El Salvador, Cuba, Haiti, Nicaragua, and Venezuela. We are also aware that El Salvador is accepting removal of Venezuelan nationals and is detaining or refouling people upon return. Additionally, we know that people from various other countries, including but not limited to China, Russia, Pakistan, Afghanistan, Iran, Nepal, Somalia, Cameroon, may be at risk of being deported to Panama and Costa Rica. In the detention centers where we provide legal orientation services, generally between 20 and 25% of the total population of approximately 2,000 is from those countries. Those individuals find themselves at particular peril of being removed to Mexico, El Salvador, or other third countries without notice or an opportunity to voice fear of removal.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge.

Executed this 21st day of March 2025 at Tucson, Arizona.

_____
Laura Belous