**DECLARATION OF MELISSA CHUA**

I, Melissa Chua, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a practicing attorney licensed to practice before the State of New York. My business address is 100 Pearl Street, 19th Floor, New York, NY 10004. I am the Co-Director of the Immigrant Protection Unit at the New York Legal Assistance Group (NYLAG) and have most recently been employed at NYLAG since 2019. I am over the age of 18 and am competent to testify regarding the matters described below.

2. I am currently the Co-Director of the Immigrant Protection Unit at NYLAG. I have practiced immigration law exclusively for over a decade, focusing on the representation of individuals in removal proceedings, appeals, and with final orders of removal. I have also taught the course on Immigration Law at Cardozo Law School and currently serve as an Adjunct Professor at Brooklyn Law School, teaching the Deportation Defense Clinic. As such, I have represented and supervised the representation of hundreds of noncitizens in removal proceedings before the Executive Office for Immigration Review (EOIR), the Board of Immigration Appeals (BIA) and federal courts and/or with applications and petitions for immigration benefits or relief filed with U.S. Citizenship and Immigration Services (USCIS).

3. NYLAG is one of three organizations that comprise the Rapid Response Legal Collaborative (RRLC). The RRLC provides free representation to individuals who have final orders of removal in removal proceedings pursuant to 8 U.S.C. § 1229a (Section 240 proceedings); and/or final removal orders issued by the Department of Homeland Security pursuant to 8 U.S.C. § 1231(a)(5) (reinstatement orders) or 8 U.S.C. § 1228(b) (238b orders). I supervise NYLAG staff representing clients as part of the RRLC.

4. NYLAG is currently representing D.N.B., a national of Venezuela, in removal proceedings pursuant to 8 U.S.C. § 1229a. In or around April 2024, D.N.B. was ordered removed *in absentia* after failing to attend an immigration court hearing because of a serious motor vehicle accident. D.N.B. was charged as a national of Venezuela on the Notice to Appear on Form I-862, the Immigration Judge designated Venezuela for removal, and D.N.B. was subsequently ordered removed to Venezuela. Upon information and belief, no other countries were designated for removal.

5. In or around November 2024, NYLAG assisted D.N.B. with a Motion to Reopen for D.N.B. pursuant to 8 U.S.C. § 1229a(b)(5)(C). Along with the Motion to Reopen, NYLAG attached D.N.B.'s application for asylum on Form I-589 stating D.N.B.'s fear of returning to Venezuela because of his participation in political protests. In November 2024, D.N.B.'s Motion to Reopen was denied by the Immigration Judge. NYLAG filed a timely appeal with the BIA on behalf of D.N.B.; that appeal is currently pending. Pursuant to that representation, NYLAG has had numerous calls with D.N.B.

**EXHIBIT R**

6. Upon information and belief, D.N.B. has no ties to Tren de Aragua, nor has the government alleged any against him. ICE did not indicate that D.N.B. is a gang member on his detention booking paperwork, leaving the box labeled "Gang Member/Leader" unchecked.

7. In or around October 2024, D.N.B. was detained by Immigration and Customs Enforcement (ICE) and sent to Orange County Correctional Center (OCJ) in Goshen, New York. As of March 2025, D.N.B. was housed in an OCJ unit with approximately 14 other men. All of the men in D.N.B.'s unit at OCJ were Venezuelan nationals.

8. D.N.B. was detained at OCJ until the evening of Thursday, March 13, 2025. At approximately 11 pm on March 13, 2025, D.N.B. and all of the other men in his unit were informed that they were going to be deported to Venezuela at 3 am the following morning. D.N.B. believes that of the 14 individuals in his unit, 12 individuals have final orders of removal after proceedings pursuant to 8 U.S.C. § 1229a, and two are in active proceedings pursuant to 8 U.S.C. § 1229a.

9. In the middle of the night on March 14, 2025, D.N.B. and the rest of the men in his unit were taken to the Jacob J. Javits Federal Building at 26 Federal Plaza. From there, D.N.B. and the rest of the men in his unit were transferred to the Nassau County Jail, where they spent the rest of the evening.

10. At approximately 1 pm on Friday, March 14, 2025, NYLAG spoke to D.N.B.'s deportation officer (DO) regarding D.N.B.'s location. The DO stated that D.N.B. was in New Jersey and would be transferred to Webb County Detention Center in Laredo, Texas by the end of the weekend. The DO further stated that ICE did not have a removal date for D.N.B. and was transferring D.N.B. due to lack of bed space at OCJ. NYLAG asked if ICE planned to remove D.N.B. to any country other than Venezuela, and the DO said no.

11. On Saturday, March 15, 2025, D.N.B. and all of the other men in his unit were flown to Buffalo, New York; then Boston, Massachusetts; and eventually to the Alexandria Staging Facility in Louisiana. They spent the night of March 15, 2025 at the Alexandria Staging Facility. On Sunday, March 16, 2025, D.N.B. and those in his unit were flown to Miami, Florida and then to the Webb County Detention Center in Laredo, Texas.

12. As of March 19, 2025, D.N.B. was still at the Webb County Correctional Center. NYLAG spoke with D.N.B. on March 18, 2025 by phone, during which he reported that four men from his unit were taken on the evening of March 17, 2025. Those four men were told that they were being moved to another detention center. Yesterday, March 18, 2025, two ICE officers visited D.N.B. and the remaining men in his unit and told them that if removal to Venezuela was not feasible, they may be removed to Mexico, Colombia, or Panama. D.N.B. and the remaining men in his unit all expressed a fear of removal to El Salvador to the officers.

13. On March 17, 2025, NYLAG emailed D.N.B.'s DO to report D.N.B.'s fear of removal to El Salvador and request to have an individualized hearing as to his fear of return before removal to El Salvador. The DO confirmed receipt of NYLAG's email. On March 18,

2025, NYLAG emailed the DO a second time, reasserting D.N.B.'s fear of removal to El Salvador and communicating his assent to removal to Venezuela, Panama, Colombia or Mexico. NYLAG is in the process of amending D.N.B.'s briefing before the BIA to assert his fear of removal to El Salvador and request to have an individualized hearing about his fear of return to El Salvador.

14. NYLAG also currently represents E.F.G. E.F.G is a national of Venezuela. Pursuant to that representation, NYLAG has had numerous calls with E.F.G. ICE reinstated E.F.G.'s prior removal order pursuant to 8 U.S.C. § 1231(a)(5). After passing a Reasonable Fear Interview, E.F.G. was placed into withholding only proceedings. Upon information and belief, the only country designated for removal was Venezuela. In March 2024, E.F.G. was ordered removed to Venezuela after missing his hearing because of a medical emergency. In March 2025, NYLAG assisted E.F.G. in filing a Motion to Reopen pursuant to 8 U.S.C. § 1229a(b)(5)(C). Along with the Motion to Reopen, NYLAG attached E.F.G.'s application for asylum on Form I-589 stating E.F.G.'s fear of returning to Venezuela because of his sexual orientation, and work as a police officer, during which he participated in the investigation of Tren de Aragua.

15. E.F.G.'s Motion to Reopen is currently still pending and he is currently detained at OCJ. E.F.G. fears that ICE intends to remove him to a nondesignated country because other Venezuelan nationals from his unit have been removed from OCJ and believes they have been or will be removed to El Salvador. E.F.G. fears persecution in several third countries, including El Salvador. On March 20, 2025, NYLAG alerted ICE to E.F.G.'s fears of being removed to El Salvador and requested a hearing before such a removal is initiated.

16. E.F.G. currently has a motion to rescind and reopen pending before the immigration court and, as such, has an administrative stay pursuant to 8 U.S.C. § 1229a(b)(5)(C) and 8 C.F.R. § 1003.23(b)(4)(ii). In addition, E-F-G has submitted an application for asylum on Form I-589 seeking protection because of his fear of persecution on account of his sexual orientation and work as a police officer.

17. Upon information and belief, E.F.G. has no ties to Tren de Aragua, nor has the government alleged any against him.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge.

Executed this 20th day of March 2025 at New York, New York.

_____
Melissa Chua

3