**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| D.V.D., *et al.*, | ) |
| | ) |
| Individually and on behalf of all others | ) |
| similarly situated, | ) |
| | ) |
| Plaintiffs, | ) No. 1:25-cv-10676-BEM |
| | ) |
| v. | ) |
| | ) |
| U.S. Department of Homeland Security, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND STAY OF ADMINISTRATIVE ACTION</u>

i

## INTRODUCTION

This Court should deny Plaintiffs' Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay of Administrative Action (ECF No. 7). Plaintiffs all have final, valid orders of removal which their motion seeks to stay and challenge in direct contravention of several jurisdiction stripping provisions in 8 U.S.C. § 1252. First, their motion seeks to interfere with Immigration and Customs Enforcement's ("ICE") execution of those removal orders in violation of 8 U.S.C. § 1252(g), which strips district courts of jurisdiction over claims arising from ICE's decision or action to execute a removal order *regardless* of the legal or constitutional nature of the challenge. Second, the relief their motion seeks—"an opportunity to apply for protection from removal to [a third country]"—is barred by § 1252(a)(5) and (b)(9) because that relief is already available to them through the administrative process via a motion to reopen. *See* ECF No. 7 at 1.

Plaintiffs are also unlikely to succeed on the merits of their claims. Although Plaintiffs claim that ICE's "policy or practice of failing to afford meaningful notice and an opportunity to present a fear-based claim prior to removal to a third country" is "[c]ontrary to the statute and regulations," ECF No. 7 at 11, 13, they notably do not identify any statutory or regulatory provision that mandates a written notice or any particular procedures that must be followed when DHS seeks to remove an individual with a final order of removal to a third country. Similarly, Plaintiffs do not define with particularity any liberty interest Defendants have violated and instead generally assert that the Fifth Amendment prohibits Defendants' conduct. This is plainly insufficient particularly in light of the administrative processes, including a motion to reopen, currently available to Plaintiffs which satisfy any cognizable due process requirements.

Finally, Plaintiffs' arguments regarding the remaining preliminary injunction factors fail for similar reasons. Plaintiffs cannot make a sufficient showing of irreparable harm where they claim they have a fear of removal to a third country but have failed to exhaust the administrative

remedies currently available to them. The public interest favors consistent application of the law and Congress' intent as expressed in the statute. That public interest is served here by Plaintiffs asserting their claims on an individual basis before the Board of Immigration Appeals ("BIA") or immigration court—not in this Court. This Court should therefore deny Plaintiffs' motion for extraordinary, emergency relief.

## **FACTUAL BACKGROUND**

The named Plaintiffs and proposed class members are aliens with final orders of removal. Compl. ¶ 1; Exh. A. Plaintiff D.V.D. is a native and citizen of Cuba who entered the United States at the San Ysidro Port of Entry from Mexico. Exh. A ¶ 24. In February of 2017, in removal proceedings before an Immigration Judge ("IJ"), Plaintiff D.V.D. requested voluntary departure to Cuba, but he was instead ordered removed. Compl. ¶ 62; Exh. A ¶ 29. Plaintiff D.V.D. was released from detention on an Order of Supervision in May of 2017. *Id.* Plaintiffs allege that D.V.D. attends regular check-ins with ICE's Enforcement and Removal Office ("ERO") in Burlington, Massachusetts. Compl. ¶ 63. Plaintiffs allege that on March 10, 2025, ICE instructed Plaintiff D.V.D.'s attorney that he needed to report for a check-in in person on March 28, 2025. Compl. ¶ 64. Plaintiffs allege that the ICE officer explained ICE was requiring all people to report in person and more frequently on a case-by-case basis. Compl. ¶ 66. Plaintiff D.V.D. is not in ICE custody. Exh. A ¶ 33.

Plaintiff M.M. is a native and citizen of Honduras. Compl. ¶ 68, Exh. A ¶ 34. In 2014, U.S. Border Patrol agents determined Plaintiff M.M. had unlawfully entered the United States from Mexico and was subject to a previous removal order that was reinstated. Compl. ¶ 68-69; Exh. A ¶ 36. In proceedings before an IJ in 2021, Plaintiff M.M. was granted withholding of removal to Honduras under 8 U.S.C. § 1231(b)(3). Compl. ¶ 70. Plaintiff M.M. is not in ICE custody. Exh. A ¶ 38.

Plaintiff E.F.D. is a native and citizen of Ecuador. Compl. ¶ 74; Exh. A ¶ 15. Plaintiff E.F.D. arrived in the United States at an unknown time and place, and in October 2015, was placed in removal proceedings under 8 U.S.C. §1229a. Exh. A ¶ 17. In 2018, in proceedings before an IJ, Plaintiff E.F.D. was ordered removed to Ecuador, but granted withholding of removal. Compl. ¶ 75; Exh. A ¶ 18. On March 18, 2025, Plaintiff E.F.D.'s order of supervision was revoked and he was taken into ICE custody. Compl. ¶ 76; Exh. A ¶ 19. ERO Boston is aware of the March 23, 2025, order requiring forty-eight hours' notice prior to any transfer of E.F.D. outside the jurisdiction of the United States District Court of Massachusetts, and Plaintiff E.F.D.'s removal has not yet been scheduled. Exh. A ¶ 21-22.

Plaintiff O.C.G. is a native and citizen of Guatemala who entered United States without being admitted or paroled in March of 2024 and was issued an expedited removal order pursuant to 8 U.S.C. § 1225(b) and deported to Guatemala. Compl. ¶ 78; Exh. A ¶ 4-6. In May of 2024, Plaintiff O.C.G. reentered the United States, without being admitted or paroled, through Mexico. Compl. ¶ 78-80; Exh. A ¶ 7-8. Plaintiff O.C.G was arrested by U.S. Border Patrol agents, and his removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), but he was referred to an asylum officer based on an expressed fear of return to Guatemala. Compl. ¶ 79-80; Exh. A ¶ 8-9. Plaintiff O.C.G. was then placed in withholding-only proceedings before an IJ in Arizona and was granted withholding of removal to Guatemala under 8 U.S.C. § 1231(b)(3). Compl. ¶ 82; Exh. A ¶ 10-11. Plaintiff O.C.G. remained in detention at Eloy detention Center. Compl. ¶ 85-86. In January of 2025, ERO verbally asked O.C.G. if he was afraid of being returned to Mexico. Exh. A ¶ 13. At that time, O.C.G. stated he was not afraid of returning to Mexico, and on February 21, 2025, he was removed to Mexico. *Id.* 13-14. Plaintiffs allege that Plaintiff O.G.C. was taken to Mexico by bus with approximately 20 others, and once he was placed in detention in Mexico, he was informed

by Mexican authorities that he could apply for asylum in Mexico or be returned to Guatemala. Compl. ¶¶ 87-88. Plaintiffs allege that on February 25, 2025, Plaintiff O.C.G. returned to Guatemala, where he remains today. *Id.* ¶ 89.

## LEGAL BACKGROUND

### A. Removal Proceedings

Several classes of aliens are "inadmissible" and therefore "removable." *See* 8 U.S.C. §§ 1182, 1229a(e)(2)(A). These include aliens who lack a valid entry document "at the time of application for admission." *Id.* § 1182(a)(7)(A)(i)(I). An alien who arrives at a "port of entry," i.e., a place where an alien may lawfully enter, must apply for admission. An alien present in the United States without being admitted is likely an applicant for admission who is treated the same way. *Id.* §§ 1225(a)(1), (3).

If an alien is inadmissible, the alien may be removed. Removal proceedings pursuant to § 1229a involve an evidentiary hearing before an IJ, and at that hearing an alien may attempt to show that he or she should not be removed. Among other things, an eligible alien may apply for asylum on the ground that he or she would be persecuted on a statutorily protected ground if returned to his or her home country. *Id.* §§ 1158, 1229a(b)(4); 8 C.F.R. § 1240.11(c) (2020). If that claim is denied and the alien is ordered removed, the alien can appeal the removal order to the BIA and, if that appeal is unsuccessful, the alien may petition for review in a federal court of appeals. 8 U.S.C. § 1229a(c)(5), 1252(a). While removal proceedings are pending before an IJ or an appeal is pending before the BIA, the alien will generally be detained or allowed to reside in this country, with the attendant risk that he or she may not later be found. *See* 8 U.S.C. § 1226(a).

While asylum is discretionary, withholding of removal under 8 U.S.C. § 1231(b)(3) and protection under the regulations implementing U.S. obligations under the CAT, 8 C.F.R. §§ 208.16-.18, 1208.16-.18, are mandatory and prohibit removal to a country where the alien will

4

likely be persecuted or tortured. *See Moncrieffe v. Holder*, 598 U.S. 184, 187 n.1 (2013).

### B.  Reinstatement and Withholding-Only Proceedings

Under 8 U.S.C. § 1231(a)(5), DHS may reinstate a prior order of removal for an alien it finds "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). When DHS reinstates a removal order, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.*

If the alien expresses fear of persecution or torture, the alien is referred to USCIS for an interview by an asylum officer to determine whether the alien possesses a "reasonable fear" of return. 8 C.F.R. § 208.31(b). If the asylum officer determines that the alien has not established a reasonable fear, the alien may request review of that determination by an IJ. 8 C.F.R. § 208.31(f). If the IJ concurs with the determination that no reasonable fear of persecution or torture exists, the case is returned to DHS for execution of the reinstated order of removal, and no administrative appeal is available. 8 C.F.R. § 208.31(g)(1). If, on the other hand, the asylum officer determines that the alien has established a reasonable fear of persecution or torture, the alien is referred to the IJ for consideration of withholding of removal only (aliens with reinstated orders of removal are not eligible for asylum). 8 C.F.R. § 208.31(e). In withholding-only proceedings, the IJ is limited to consideration of eligibility for withholding and deferral of removal. 8 U.S.C. § 1231(a)(5) (providing that an alien subject to reinstatement "is not eligible and may not apply for any relief under [the INA]"); 8 C.F.R. § 1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings . . . shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal."). Indeed, during withholding-only proceedings, "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." *Id.*

Withholding of removal is country-specific protection; thus, even if an alien ultimately succeeds on his withholding claim, he could potentially be removed to an alternate country. *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country"). Thus, the alien remains removable as an alien with a final order of removal.

### C. Third Country Removals

Aliens subject to removal orders need not be removed to their native country. Generally, aliens ordered removed "may designate one country to which the alien wants to be removed," and DHS "shall remove the alien to [that] country[.]" 8 U.S.C. § 1231(b)(2)(A).[1] In certain circumstances, DHS will not remove the alien to their designated country, including where "the government of the country is not willing to accept the alien into the country." *Id.* § 1231(b)(2)(C)(iii). In such a case, the alien "shall" be removed to the alien's country of nationality or citizenship, unless that country "is not willing to accept the alien[.]" *Id.* § 1231(b)(2)(D). If an alien cannot be removed to the country of designation or the country of nationality or citizenship, then the government may consider other options, including "[t]he country from which the alien was admitted to the United States," "[t]he country in which the alien was born," or "[t]he country in which the alien last resided[.]" *Id.* §§ 1231(b)(2)(E)(i), (iii)-(iv). Where removal to any of the countries listed in subparagraph (E) is "impracticable, inadvisable, or impossible," then the alien may be removed to any "country whose government will accept the alien into that country." *Id.* § 1231(b)(2)(E)(vii); *see Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). In addition, DHS "may not remove an alien to a country if the Attorney General

---

[1] There are separate but similar provisions that apply to arriving aliens who are processed for 240 proceedings upon arrival. *See* 8 U.S.C. § 1231(b)(1). The provisions in 8 U.S.C. § 1231(b)(2) discussed below apply to all other aliens.

decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16(a)-(b), 1208.16(a)-(b), or if it is more likely than not that the alien would be tortured, 8 C.F.R. §§ 208.16(c), 208.17, 1208.16(c), 1208.17.

### STANDARD OF REVIEW

"A preliminary injunction is an 'extraordinary and drastic remedy.'" *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,* 645 F.3d 26, 32 (1st Cir. 2011). In deciding a preliminary injunction motion, the Court "must consider: (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." *Gonzales-Droz v. Gonzalez-Colon,* 573 F.3d 75, 79 (1st Cir. 2009) (internal citation and quotation marks omitted). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." *Esso Std. Oil Co. (Puerto Rico) v. Monroig-Zayas,* 445 F.3d 13, 18 (1st Cir. 2006). The movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus, *Ryan v. U.S. Immigr. and Customs Enf't,* 974 F.3d 9, 18 (1st Cir. 2020), and if the movant "cannot demonstrate that he is likely to succeed in this quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir. 2002). Where, as here, a movant asks for a mandatory preliminary injunction, specifically with respect to the return of O.C.G. to the United States, it should be granted only "when the exigencies of the situation demand such relief." *Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.,* 622 F.3d 36, 41 (1st Cir. 2010). The standard for relief under 5 U.S.C. § 705 has some "functional overlap" with preliminary injunction and, as to the factors considered for each form of relief, there is "substantial overlap." *Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, Case No. 1:22-cv-11091-

IT, 2023 WL 3660689, at *3 (D. Mass. May 25, 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)); *see also Massachusetts Fair Hous. Center v. U.S. Dep't of Hous. and Urb. Dev.*, 496 F. Supp. 3d 600, 609 (D. Mass. 2020).

## ARGUMENT

### I.    Class-Wide Relief is Inappropriate.

As an initial matter, the Court must deny Plaintiffs' improper request for preliminary classwide relief because no class has been certified. In the absence of a certified class, a court cannot grant classwide relief. *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) ("Without a properly certified class, a court cannot grant relief on a class-wide basis.").[2]

Plaintiffs ask the Court for a "provisional" class certification, ECF No. 7 at 19-20, but the FRCP removed authority for conditional class certification over a decade ago. Courts generally reject certification of a class before the thorough Rule 23 class certification is undertaken. *See Berge v. United States*, 949 F. Supp. 2d 36, 49 (D.D.C. 2013) (citing Fed. R. Civ. P. 23 Advisory Committee Notes 2003 Amendments ("The provision that a class certification 'may be conditional' is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.")). Even those courts that permit provisional certification require that a plaintiff satisfy all the requirements of class certification under Rule 23. *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179–80 (D.D.C. 2015) (citing *Berg*, 949 F. Supp. 2d at 49). Moreover, the Supreme Court has made clear that a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,"

---

[2] *See also Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."); *National Center for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984) (same); *Hollon v. Mathis Independent School District*, 491 F.2d 92, 93 (5th Cir. 1974) (per curiam) (same); *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003) (the district court improperly awarded class damages when no class had been certified); *see also Baxter v. Palmigiano*, 425 U.S. 308, 310 n. 1 (1976) (same); *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 481 (1978) (noting that class certification controls "the scope of the relief that may ultimately be granted").

and "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982). Until the Court addresses Plaintiffs' Motion for Class Certification (ECF No. 4) and certifies a class, the scope of any relief must be limited to the named Plaintiffs.[3] Accordingly, this Opposition addresses Plaintiffs' requests for preliminary relief related to the four named Plaintiffs.

## II.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims.

The Court should deny Plaintiffs' motion for preliminary relief because they are not likely to succeed on the merits of their claims. This Court lacks subject-matter jurisdiction over their claims because 8 U.S.C. § 1252 precludes the review that they seek. Even if the Court had jurisdiction, Plaintiffs still fail to plead plausible claims for relief. Because Plaintiffs are not likely to succeed on the merits of their claims, the remaining factors are "matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

---

[3] Moreover, the Court lacks jurisdiction to certify Plaintiffs' proposed class and lacks jurisdiction to order the classwide relief that Plaintiffs seek. *See, e.g.*, 8 U.S.C. §§ 1252(a)(2)(A), (e)(1)(B). For instance, any individual with an expedited removal order cannot be part of the certified class. *See* 8 U.S.C. §§ 1252(a)(2)(A), 1252(e)(1)(B). Moreover, the relief Plaintiffs seek would have the effect of enjoining or restraining DHS's implementation of, *inter alia*, 8 U.S.C. § 1231. But 8 U.S.C. § 1252(f)(1) explicitly bars such relief. Invoking 5 U.S.C. § 705, Plaintiffs ask this Court to issue a "temporary stay of the February 18, 2025 directive," ECF No. 7 at 21, restraining DHS's use of its authority to remove individuals to alternative countries under § 1231(b). Section 1252(f)(1) provides: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). The Supreme Court held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)). Section 1231 is one of the statutory provisions § 1252(f)(1) covers. Section 1252(f)(1) thus eliminates this Court's authority to issue coercive orders enjoining or restraining implementation of § 1231(b). A court order postponing agency action under § 705 is such a coercive order. It would restrain DHS's actions with respect to how it implements § 1231(b) and is thus analogous to a preliminary injunction in that an order under § 705 purports to maintain the status quo pending resolution of the merits. 5 U.S.C. § 705 (referencing "preserv[ation of] status or rights"). Defendants will fully address these jurisdictional deficiencies, as well as Plaintiffs' failure to satisfy the requirements of Rule 23, in their response to Plaintiffs' Motion for Class Certification.

**A.  8 U.S.C. § 1252 *et seq.* Precludes Review of Plaintiffs' Claims.**

The jurisdiction of the federal courts is presumptively limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). As relevant here, in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which included provisions intended to deprive district courts of jurisdiction over removal-based claims. Then, in 2005, Congress amended § 1252 through the Real ID Act to ensure that all review of final orders of removal would be channeled to the courts of appeals and to "streamline what it saw as 'bifurcated and piecemeal' review of orders of removal." *Ishak v. Gonzales,* 422 F.3d 22, 28 (1st Cir. 2005).

**1.  *Section 1252(g) Bars Review of Plaintiffs' Claims.***

Section 1252(g) bars claims arising from the three discrete actions identified in § 1252(g), including, as relevant here, the decision or action to "execute removal orders." Congress spoke clearly, emphatically, and repeatedly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 (as well as review pursuant to the All Writs Act and Administrative Procedure Act) of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 482 (1999).

Plaintiffs' claims plainly arise from ICE's actions to execute their removal orders. Plaintiffs claim they "cannot be removed" unless and until they have been provided "such notice and opportunity to present a fear-based claim prior to deportation." ECF No. 7 at 12. However, Courts of Appeals have consistently held that claims like Plaintiffs' seeking a stay of removal—even

10

temporarily to assert other claims to relief—are barred by § 1252(g). *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order.  If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); *E.F.L. v. Prim,* 986 F.3d 959, 964-65 (7th Cir. 2021) (rejecting the argument that jurisdiction remained in similar circumstances because petitioner was challenging, DHS's legal authority as opposed to its "discretionary decisions"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute") (emphasis in original); *Hamama v. Adducci*, 912 F.3d 869, 874–77 (6th Cir. 2018) (vacating district court's injunction staying removal, concluding that § 1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim"). *Hamama v. Adducci*, 912 F.3d 869, 874–77 (6th Cir. 2018).[4]

Of these, the Ninth Circuit's decision in *Rauda* and the Sixth Circuit's decision in *Hamama* are particularly relevant. In *Rauda,* the Ninth Circuit considered whether § 1252(g) barred the alien's claim seeking to temporarily prevent his removal while his motion to reopen his removal

---

[4] *See also E.F.L. v. Prim,* 986 F.3d 959 964-65 (7th Cir. 2021) (rejecting the argument that jurisdiction remained in similar circumstances because petitioner was challenging, DHS's legal authority as opposed to its "discretionary decisions"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute") (emphasis in original); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim").

proceedings raising "new developments" regarding his CAT claim. 55 F.4th at 776-77. Plaintiff claimed that the administrative procedures associated with his motion to reopen were Constitutionally insufficient because they did not guarantee judicial review of these "new developments" prior to his removal. *Id.* He argued that § 1252(g) did not apply to ICE's allegedly unlawful decision to remove him now. *Id.* at 777. The Ninth Circuit held that § 1252(g) "does not include any temporal caveats" and nonetheless barred plaintiff's claims.

Similarly, in *Hamama,* a class of Iraqi nationals claimed that ICE could not enforce their years-old removal orders without first providing them an opportunity to reopen their proceedings and make new fear-based clams. The Sixth Circuit held that "[u]nder a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to review." 912 F.3d at 874.

Plaintiffs' claims are no different than those rejected by numerous courts of appeals. They seek to prevent their removal based on an assertion that their removal, at least temporarily, is unlawful. But § 1252(g) contains no such exception for such claims regardless of their nature or merit and therefore, this Court should deny Plaintiffs' motion seeking to interfere with their removal.

   2. ***Section 1252(a)(5) and (b)(9) Bar Review of Plaintiffs' Claims.***

This Court also lacks jurisdiction over Plaintiffs' claims concerning removal orders issued under section 1229a given 8 U.S.C. § 1252(a)(5) and (b)(9).[5] Section 1252(b)(9) provides:

---

[5] To the extent that Plaintiff O.C.G. is seeking to challenge his underlying expedited removal order from 2024, this claim would instead be governed by 8 U.S.C. §§ 1252(a)(2)(A), (e)(2). Such review is only available in a habeas corpus petition and is limited to an inquiry over whether: "(A) the petitioner is an alien, (B) whether the petitioner was ordered removed under such section, and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, [or is a refugee or has been granted non-terminated asylum]." *See* 8 U.S.C. § 1252(e)(2).

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter *shall be available only in judicial review of a final order under this section.* Except as otherwise provided in this section, *no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision*, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Section 1252(a)(5) provides that [n]otwithstanding any other provision of law (statutory or nonstatutory) . . . or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . .”

As the First Circuit has noted, § 1252(b)(9)'s “expanse is breathtaking.” *Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 9-12 (1st Cir. 2007). “Congress's purpose in enacting § 1252(b)(9) is evident”; it was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals. *Id.* at 9 (citing 8 U.S.C. § 1252(a)(5)). While “these words cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien,” *id.* at 10, they, *at a minimum,* bar claims that can be “raised efficaciously within the administrative proceedings delineated by the INA.” *Id.* at 11.

Each of the named Plaintiffs that are still within the United States can assert fear of return to a third country through the administrative process. 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c); *see, e.g.*, *Charles v. Garland,* 113 F.4th 20, 23 (1st Cir. 2024) (describing the sua sponte motion to reopen process under 8 C.F.R. § 1003.2(c)(2) and providing for review of denials of such motions by the BIA in limited circumstances). They can also seek an emergency stay of

removal as a part of the administrative process. *See generally* 8 C.F.R. § 1003.2(f), 1003.23(b)(v). Plaintiffs therefore already have the ultimate procedural protection they seek—those protections are just not before this Court. For this reason, their claims are unquestionably barred by §1252(a)(5) and (b)(9).

### B. Plaintiffs cannot establish that their removal would violate any statute or regulation.

Plaintiffs' claim that Defendants are violating the INA and its regulations fails on its face. Plaintiffs repeatedly assert that Defendants' "policy or practice of failing to afford meaningful notice and an opportunity to present a fear-based claim prior to removal to a third country" is "[c]ontrary to the statute and regulations." ECF No. 7 at 11, 13. But Plaintiffs notably do not identify any statutory or regulatory provision that mandates a written notice or any particular procedures that must be followed when DHS seeks to remove an individual with a final order of removal to a third country. Instead, Plaintiffs repeatedly cite to general provisions about relief from removal and the procedures available to aliens when they have on-going immigration proceedings but make no plausible claim that DHS has violated any mandatory statutory requirements. In reality, Plaintiffs are asking this Court to instead graft on an extra-statutory requirement with no basis in the relevant text of the INA or its regulations.

Plaintiffs cite 8 U.S.C. § 1231(b)(3)(A) for the proposition that the named Plaintiffs cannot be removed to a third country where their life might be threatened, and this therefore creates a mandatory notice requirement before an individual may be removed to a third country. ECF No. 7 at 2. But that's plainly not what § 1231(b)(3)(A) says. Instead, that provision merely provides the basic eligibility requirements for withholding of removal under the INA and states that DHS "may not remove an alien to a country *if the Attorney General decides that* the alien's life or freedom would be threatened in that country" on account of a protected ground. 8 U.S.C. § 1231(b)(3)(A).

14

Plaintiffs do not allege that DHS is seeking to remove any of the four Plaintiffs to a country where the Attorney General has determined they would be harmed (*i.e.*, a country from which they have been granted withholding of removal under the INA). Accordingly, Plaintiffs have not made any showing that Defendants are violating this statute or any other provisions of the INA.

Similarly, Plaintiffs repeatedly allege that Defendants are violating certain regulatory provisions, including 8 C.F.R. §§ 1208.16(c), 1208.17(a) and 28 C.F.R. § 200.1. But, again, these provisions merely provide the basic eligibility requirements for receiving protection under the CAT; *i.e.*, that an "alien who: has been ordered removed; has been found under § 1208.16(c)(3) to be entitled to protection under the Convention Against Torture [. . .] shall be granted deferral of removal to the country where he or she is more likely than not to be tortured." 8 C.F.R. § 1208.17(a). Plaintiffs do not allege that DHS is seeking to remove any of the four Plaintiffs to a country where an IJ has determined it is more likely than not that they would be tortured (*i.e.*, a country from which they have been granted protection under the CAT). Plaintiffs also cite to various other regulatory provisions governing the procedures available to aliens in certain removal proceedings before an IJ. ECF No. 7 at 4-5 (citing, *inter alia*, 8 C.F.R. §§ 1240.10(f), 1240.11(c)(1)). But Plaintiffs do not allege that these procedures were not followed during their removal proceedings, nor would this Court have jurisdiction to review such claims even if they did. *See* § II.A.2, *supra*. Accordingly, Plaintiffs have not made any showing that Defendants are violating these regulations or any other regulatory provisions.

Inexplicably, Plaintiffs reference the procedures by which DHS may seek to reopen an individual's IJ proceedings and terminate a prior grant of CAT protection to a particular country. ECF No. 7 at 12-13 (describing the procedures at 8 C.F.R. § 1208.17(d)(1)). But these procedures are inapposite because there is no allegation that DHS is seeking to terminate the CAT protection

previously granted to Plaintiffs M.M. or E.F.D., or that DHS removed Plaintiff O.C.G. to a country from which he was granted withholding of removal under the INA. And the CAT termination procedures do not apply where Defendants seek to remove someone to a third country from which the individual has never been granted withholding or deferral of removal. Indeed, Plaintiffs' *non sequitur* reference to these procedures inadvertently exposes the weakness of their argument, because *unlike* with the termination of CAT protection, there is no equivalent statutory or regulatory requirement to reopen an individual's removal proceedings before removing them to a third country. Accordingly, Plaintiffs' vague assertions that Defendants are violating any such procedures are without merit.

In reality, and as Plaintiffs acknowledge, ECF No. 1 ¶¶ 30-33, the INA expressly grants DHS the authority to remove individuals to various alternate or third countries in an effort to find a country that will accept them, including: the country in which they were born; the country from which they were admitted to the United States; a country in which they resided before they entered the country from which they entered the United States; or, in certain circumstances, "another country whose government will accept the alien into that country." *See, e.g.*, 8 U.S.C. § 1231(b)(2)(E); *Jama,* 543 U.S. at 341. Moreover, an individual granted withholding of removal under the INS may still be removed to a third country, *see* 8 U.S.C. § 1231(b)(2), and an individual granted protection under the CAT may still be removed "at any time," to a third country, *see* 8 C.F.R. § 1208.17(b)(2). Nothing about the "February 18, 2025 directive" Plaintiffs reference, which merely instructs officers to "determine the viability of removal to a third country and accordingly whether the alien should be re-detained," ECF No. 1-4 at 2, is contrary to these statutory and regulatory provisions allowing removal to third countries.

In sum, despite Plaintiffs' repeated assertions that DHS is acting contrary to the statute and regulations when seeking to remove individuals to a third country, their Motion never actually identifies any statute or regulation that has been violated. Accordingly, they fail to demonstrate that Defendants are acting in violation of the INA or its regulations.

### C. Plaintiffs also do not establish that their removal would violate due process.

Plaintiffs' next claim that their removal would violate their rights under the Due Process Clause of the Fifth Amendment, but they fail to state a valid claim. As an initial matter, Plaintiffs do not have a due process right to remain in the United States because they have already been ordered removed in their underlying removal proceedings. *See Enwonwu v. Gonzales,* 438 F.3d 22, 30 (1st Cir. 2006) (refusing to find a due process right to remain in the United States where the alien had been ordered removed); *Pena-Muriel v. Gonzales*, 489 F.3d 438, 433 (1st Cir. 2007) ("[T]he fact that a vacatur may be an 'appropriate' basis for reopening a deportation order does not establish a due process right to such reopening after one has departed the country."). Plaintiffs cite to several cases from other circuits regarding the due process requirements afforded to individuals while they are in pending removal proceedings, *see* ECF No. 7 at 13, but they do not identify a specific liberty interest that they believe DHS has violated or will violate. Therefore, at least as a general matter, Plaintiffs do not state any claim that their due process rights are being violated.

Nevertheless, Plaintiffs appear to assert a procedural due process violation in that they allege they will be deprived of "any notice or opportunity to present a fear-based claim prior to deportation to a third country." ECF No. 7 at 14. Assuming arguendo that this is a protected liberty interest entitled to the protections of due process, Plaintiffs still fail to allege a violation of that interest. The essential requirements of procedural due process are: (1) notice; and (2) an opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970); *Gorman v. Univ. of R.I.,*

837 F.2d 7, 12 (1st Cir. 1988). Plaintiffs do not demonstrate that they have been or will be imminently deprived of these requirements.

Plaintiff O.C.G. was notified that DHS intended to remove him to Mexico and was given an opportunity to state a fear of return to Mexico. Exh. A at ¶ 13. He did not do so and was removed to Mexico. *Id.* at ¶ 13-14. Plaintiff E.F.D. has been re-detained in preparation for DHS to remove him to a third country. *Id.* at ¶ 20. His removal has not been scheduled. *Id.* at ¶ 21. At this time, he has an opportunity to file a motion to reopen and assert claims for relief and protection from removal to additional countries, if he wishes. He does not allege that he has sought to do so. Plaintiff D.V.D. is not currently detained, has a final order of removal, and no relief preventing his removal to Cuba. *Id.* at ¶¶ 29, 30, 33. He alleges "on information and belief" that DHS intends to re-detain him and has plans to remove him to a third country without notice. ECF No. 7 at 7. He further speculates that DHS will actually remove him to a third country and that he will be at risk of persecution in that hypothetical third country. *Id.* at 8. But these allegations are merely speculative at this time and, moreover, he does not allege that he has sought to reopen his removal proceedings to assert a fear or seek relief from removal to any third country. Finally, Plaintiff M.M. is not currently detained and has been enrolled in the Alternatives to Detention Program. Exh. A at ¶¶ 38-40. At this time, she has an opportunity to file a motion to reopen her proceedings and assert claims for relief or protection from removal to additional countries, if she wishes.

Accordingly, even assuming Plaintiffs' removal would implicate a protected due process right, no Plaintiff has demonstrated that they will be deprived of "any notice or opportunity to present a fear-based claim prior to deportation to a third country." ECF No. 7 at 14. Plaintiff O.C.G. was notified of DHS's intent to remove him to a third country and given the opportunity to assert

a fear-based claim. Plaintiff E.F.D.[6] and M.M. have the opportunity to seek to reopen their immigration proceedings in order to assert a fear-based claim. They do not allege that they have done so. Accordingly, the basic requirements of notice and an opportunity to be heard have been satisfied with respect to these three Plaintiffs.

Finally, DHS has neither re-detained Plaintiff D.V.D. nor indicated that it will seek to remove him to Cuba or to any other country. Therefore, his claim that he will be removed to a third country without notice or opportunity to present a fear-based claim is purely speculative at this time. Accordingly, his due process claim is not ripe for judicial review. *Texas v. United States*, 523 U.S. 296, 300 (1998) (a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (cleaned up)). This Court should decline to entangle itself in an abstract dispute about what process Plaintiff D.V.D. might receive and whether this process would satisfy due process and instead conclude that his claims are simply not ripe. *See United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947) (noting that Article III standing requires "concrete legal issues, presented in actual cases, not abstractions"). For these reasons, each Plaintiff fails to demonstrate a likelihood of success on the merits of their due process claims.

### III.    The Remaining Preliminary Injunction Factors Do Not Favor Plaintiffs.

When a movant fails to establish that he is likely to succeed on the merits, "the remaining [preliminary injunction] factors become matters of idle curiosity." *New Comm Wireless Servs.,*

---

[6] Plaintiffs suggest that re-detention in order to effectuate removal to a third country is unlawful. ECF No. 7 at 11 ("alleging that Defendants are "depriving them of their liberty by subjecting them to re-detention that is not tied to a lawful removal process"). Plaintiff E.F.D. is the only Plaintiff currently detained. To the extent that E.F.D. seeks to bring a due process claim challenging his current detention, that claim similarly fails. As noted above, it is uncontested that ICE may lawfully remove individuals, including those granted withholding of removal under the INA or protection under the CAT, to alternate or third countries. *See, e.g.*, 8 U.S.C. § 1231(b)(1), (b)(2); 8 C.F.R. § 1208.17(b)(2). Moreover, it is well established that detention in order to effectuate removal is a lawful part of the removal process. *See generally Zadvydas v. Davis*, 533 U.S. 678 (2001). Therefore, any due process claim challenging the lawfulness of Plaintiff E.F.D.'s detention similarly fails.

*Inc.,* 287 F.3d at 9. As explained above, Plaintiffs are not likely to succeed on the merits of their claims. Consequently, they are not entitled to preliminary relief regardless of the other preliminary injunction factors.

Regardless, Plaintiffs cannot meet their burden to demonstrate that they will suffer irreparable harm in the absence of an injunction because they already have access to the relief they seek. Plaintiffs are all aware that ICE may seek to remove them to a third country and yet none of them have they sought to reopen their removal proceedings to assert such a fear. ECF Nos. 8-1, 8-2, 8-3, 8-4. Indeed, ICE asked O.C.G. prior to his removal whether he had a fear of return to Mexico which he answered in the negative. Exh. A at ¶ 13. Plaintiffs already have the "notice and an opportunity to present a fear-based claim," ECF No. 7 at 14, that they seek from ICE; therefore, they cannot meet their burden to demonstrate irreparable harm in the absence of an injunction.

The key point regarding the remaining two preliminary injunction factors is that "the public interest favors applying the federal law correctly." *Small v. Avanti Health Sys., LLC,* 661 F.3d 1180, 1197 (9th Cir. 2011); *see Nken v. Holder,* 556 U.S. 418, 435 (2009) (noting that in the immigration context "assessing the harm to the opposing party and weighing the public interest" merge when the government is the opposing party). There is also "strong public interest in bringing [immigration] litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *Immigration & Naturalization Serv. v. Abudu,* 485 U.S. 94, 107 (1988). Congress plainly intended that Plaintiffs' claims related to the removal process be channeled through the administrative process and, eventually, the Courts of Appeals. Plaintiffs' motion seeking relief and protection from removal while administrative remedies remain available "undermines the streamlined removal proceedings IIRIRA established." *Nken,* 556 U.S. at 436. It also undermines the "public interest in prompt

execution of removal orders." *Id.* This Court should therefore deny Plaintiffs' motion and direct their claims to the appropriate forums before the agency.

**IV.      The Court Should Require Plaintiffs to Post Security.**

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added). To the extent that the Court grants relief to Plaintiffs, Defendants respectfully request that the Court require Plaintiffs to post security for any taxpayer funds expended during the pendency of the Court's order.

<u>**CONCLUSION**</u>

For the forgoing reasons, this Court should deny Plaintiffs' Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay of Administrative Action (ECF No. 7).

Respectfully submitted,
YAAKOV M. ROTH
Acting Assistant Attorney General

EREZ REUVENI
Acting Deputy Director

ELIANIS N. PEREZ
Assistant Director

MATTHEW P. SEAMON
Senior Litigation Counsel

AYSHA IQBAL
DANIEL CAPPELLETTI
Trial Attorneys

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

22

## <u>CERTIFICATE OF SERVICE</u>

I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ <u>*Mary L. Larakers*</u>
Mary L. Larakers
Senior Litigation Counsel

Dated: March 25, 2025