# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D., *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Department of Homeland Security, *et al.*, <br><br> Defendants. | No. 1:25-cv-10676-BEM |

## DEFENDANTS' MOTION FOR PARTIAL STAY OF THE TEMPORARY RESTRAINING ORDER

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 62, Defendants hereby request that the Court promptly issue a stay pending appeal of section 2.b. of the Court's Order granting Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunctive Relief, ECF No. 34. The Court's Order issued a universal injunction prohibiting Defendants from removing *any* individual subject to a final order of removal from the United States to a third country, *i.e.*, a country other than the country designated for removal in immigration proceedings, until Defendants provide that individual with "written notice of the third country to where they may be removed," and "a meaningful opportunity for that individual to submit an application for CAT [Convention Against Torture] protection to the immigration court," and if any such application is filed, until "that individual receives a final agency decision on any such application." ECF No. 34 at 2. The Court did so on behalf of just three named plaintiffs without certifying a class action under Federal Rule of Civil Procedure 23, despite clear jurisdictional prohibitions that preclude issuance of such an order under 8 U.S.C. § 1252, and without any reasoning justifying this sweeping relief. As explained more fully below, the Government is likely to prevail on the merits of its appeal, will suffer irreparable harm absent a stay, and the balance of equities weighs strongly in favor of a stay. The Court should therefore immediately stay section 2.b of its injunction as to non-parties since the nationwide scope of the injunction is unsupported, unlawful, and will not harm Plaintiffs.

Given the urgency of harms to the government, Defendants request an immediate administrative stay of section 2.b. of the Order and are simultaneously filing a motion for a stay in the Court of Appeals tonight.

## BACKGROUND

The named Plaintiffs are four aliens with final orders of removal resulting from proceedings in which they were notified that they could be removed to a designated country of

1

removal or, potentially, a third country of removal. Compl. ¶ 1. Plaintiff E.F.D. is currently in ICE custody. Compl. ¶ 76; ECF No. 31-1 ¶ 19. Plaintiffs D.V.D. and M.M. have been released from ICE custody. ECF No. 31-1 ¶¶ 33, 38. Plaintiff O.C.G. was removed to Mexico on February 21, 2025. *Id.* ¶ 13. On March 23, 2025, Plaintiffs brought the instant suit and putative class action alleging that the Department of Homeland Security (DHS) violates the Immigration and Nationality Act ("INA"), its regulations, and the Due Process Clause of the Fifth Amendment by removing, or seeking to remove, the aliens to a third country without first providing them with notice or opportunity to assert a claim that they fear persecution or torture if removed to that third country. *See generally* Compl. On that same date, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunctive Relief and a Motion for Class Certification. ECF Nos. 4, 7. On March 28, 2025, the Court granted Plaintiffs' Motion for Preliminary Injunctive Relief, and issued an injunction prohibiting Defendants from removing the Plaintiffs D.V.D., M.M., and E.F.D., as well as *any* individual subject to a final order of removal from the United States, to a third country until Defendants provide them with written notice of the third country to where they may be removed, a "meaningful opportunity" to submit an application for CAT protection to the immigration court, and if any such application is filed, until they receive a final agency decision on the application. ECF No. 34.

## ARGUMENT

A partial stay is clearly merited here. Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants are plainly right on the merits concerning the

Court's lack of authority to issue such sweeping relief, and the equities clearly favor the government.

I.      **Defendants are Likely to Prevail on the Merits**

　　A.  **The nationwide injunction is a clear violation of 8 U.S.C. § 1252(f)(1)**

The Court's Order contains multiple, serious, legal errors that justify an immediate stay of section 2.b of the Order. First, the Court's universal injunction is prohibited by 8 U.S.C. § 1252(f)(1), which provides that: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). The Supreme Court has held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)). Section 1231, the provision the Court's Order impacts, is specifically one of the statutory provisions § 1252(f)(1) covers. *Aleman Gonzalez*, 596 U.S. at 544-550 (overturning preliminary injunction that enjoined the government from exercising its detention authority under § 1231(a) unless it provided additional procedures not required). As the Supreme Court held in *Aleman Gonzalez*, to "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. 596 U.S. at 549.

　　Here, the Court's Order "ENJOIN[S] and RESTRAIN[S]" Defendants from removing any individual subject to a final order of removal from the United States to a third country unless and until certain additional procedures are provided. ECF No. 34. This has the effect of enjoining or

3

restraining the Department of Homeland Security's ("DHS") implementation of its statutory authority to remove aliens to third countries pursuant to 8 U.S.C. §§ 1231(b)(1), (b)(2). But 8 U.S.C. § 1252(f)(1) explicitly bars such relief. Indeed, Plaintiffs concede, ECF No. 1 ¶¶ 30-33, that the relevant statutes expressly grant DHS the authority to remove individuals to various alternate or third countries. 8 U.S.C. § 1231(b)(1), (b)(2); *see Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). Thus, an injunction that prevents DHS from exercising its clear statutory authority to effectuate removals to third countries unquestionably prevents the operation of that statute and so constitutes an order "restraining" federal officials. *Aleman Gonzalez*, 596 U.S. at 550; *Hamama v. Homan*, 912 F.3d 869, 879 (6th Cir. 2018) (holding that injunction violated § 1252(f)(1) because it "created out of thin air a requirement . . . that does not exist in the statute"). Because § 1252(f)(1) eliminates this Court's authority to issue coercive orders enjoining or restraining DHS's implementation of § 1231(b), the Court lacked jurisdiction to issue its injunction enjoining DHS's removal authority on a nationwide, non-individualized basis.

### B. The Court lacked jurisdiction under 8 U.S.C. § 1252(a)(4), (a)(5), (b)(9), (g) and 8 U.S.C. § 1231(h)

Additionally, the Court lacked jurisdiction to enter its Order pursuant to several jurisdiction-stripping statutes. Section 1252(g) bars claims arising from the decision or action to "execute removal orders." Congress spoke clearly, emphatically, and repeatedly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 (as well as review pursuant to the All Writs Act and Administrative Procedure Act) of claims arising from a decision

4

or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 482 (1999).

The Court's Order clearly prevents Defendants' actions to execute the removal orders of named Plaintiffs and of "any individual subject to a final order of removal from the United States to a third country" until Defendants comply with procedural requirements, including providing aliens a "meaningful opportunity" to submit an application for relief to the immigration court. ECF No. 34 at 2. But numerous courts of appeals have consistently held that claims seeking a stay of removal—even temporarily to assert other claims to relief—are barred by § 1252(g). *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); *E.F.L. v. Prim,* 986 F.3d 959, 964-65 (7th Cir. 2021) (rejecting the argument that jurisdiction remained in similar circumstances because petitioner was challenging DHS's legal authority as opposed to its "discretionary decisions"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute") (emphasis in original); *Hamama*, 912 F.3d at 874–77 (vacating district court's injunction staying removal, concluding that § 1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring

5

"any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim"). *Hamama*, 912 F.3d at 874–77.

Thus, the Court's Order is predicated upon exercising the exact sort of judicial review that has been rejected by numerous courts of appeals and does so on a breathtaking scale. It prevents the removal of aliens to third countries on the assertion that their removal, at least temporarily, may be unlawful. But § 1252(g) contains no exception for such claims in district courts regardless of their nature or merit. Therefore, this Court was without jurisdiction to enter its order.

This Court also lacked jurisdiction to enter its injunction because of 8 U.S.C. § 1252(a)(5) and (b)(9). Section 1252(b)(9) provides that judicial review of "*all* questions of law and fact" arising from "*any* action taken or proceeding brought to remove an alien from the United States under this subchapter" is available "*only* in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Section 1252(a)(5) further provides that [n]otwithstanding any other provision of law (statutory or nonstatutory) . . . or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . ."

The First Circuit has noted that § 1252(b)(9)'s "expanse is breathtaking." *Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 9-12 (1st Cir. 2007). "Congress's purpose in enacting § 1252(b)(9) is evident"; it was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals. *Id.* at 9 (citing 8 U.S.C. § 1252(a)(5)).

The named Plaintiffs and other aliens with final orders of removal that are covered by the Court's sweeping order can, and therefore must, assert a fear of return to a third country through

the administrative process. 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c); *see, e.g.*, *Charles v. Garland,* 113 F.4th 20, 23 (1st Cir. 2024) (describing the sua sponte motion to reopen process under 8 C.F.R. § 1003.2(c)(2) and providing for review of denials of such motions by the BIA in limited circumstances). They can also seek an emergency stay of removal through the administrative process. *See generally* 8 C.F.R. §§ 1003.2(f), 1003.23(b)(v).

Finally, the Court's order violates the clear text of 8 U.S.C. §§ 1252(a)(4) and 1231(h), both of which bar review of challenges to third country removal procedures in the district court. Section 1252(a)(4), titled "Claims under the United Nations Convention" provides in no uncertain terms that "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment*, except as provided in subsection (e)." (Emphasis added).[1] Separately, 8 U.S.C. § 1231(h) provides that "Nothing in this section," which includes statutory provisions governing withholding of removal "shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." Together, these provisions make clear that one court—the court of appeals—and only that court, has jurisdiction over any of Plaintiffs' claims concerning what process they may be entitled to prior to removal.

---

[1] Subsection (e) refers to 8 U.S.C. § 1252(e), which governs judicial review of expedited removal orders.

And on top of that, the Court's order is flatly at odds with Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), which implements Article 3 of CAT and provides for judicial review of CAT claims "as part of the review of a final order of removal" exclusively. Indeed, that provision further provides that "[n]otwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252)." FARRA 2242(d). But that is precisely what the Court did—issuing its own rules governing CAT in its capacious order, in direct contravention of this provision.

Because the Court's order circumvents Congress's decision to require such claims to proceed exclusively in the courts of appeal, this Court's Order unquestionably exceeded its authority in clear violation of § 1252(a)(5) and (b)(9) and must be immediately stayed.

### C. The nationwide scope of the Court's Order is illegal and an abuse of discretion.

The injunction is also indefensibly overbroad because the Court issued extraordinary nationwide relief without certifying a class and without providing *any* reasoning in its written order whatsoever. Unless and until the Court complies with the requirements of Federal Rule of Civil Procedure 23(a), the Court's Order must be limited solely to the named Plaintiffs. *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 481 (1978) (noting that class certification controls "the scope of the relief that may ultimately be granted"); *see also Baxter v. Palmigiano*, 425 U.S. 308, 310 n. 1 (1976) ("The District Court treated the suit as a class action, . . . but did not certify

8

the action as a class action within the contemplation of Fed. Rules Civ. Proc. 23(c)(1) and 23(c)(3). Without such certification and identification of the class, the action is not properly a class action").[2]

The Court's universal injunction flouts limitations on Article III courts arising both from the Constitution and principles in equity. Relief must be narrowly tailored to the parties before the court and must be "limited to the inadequacy that produced [plaintiffs'] injury in fact," *Gill v. Whitford*, 585 U.S. 48, 66 (2018), particularly where plaintiffs utterly fail to show that "complete relief" could not be provided by a narrower injunction limited to any bona fide, identified plaintiffs subjected to the challenged actions, *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). Such overbroad relief allows "one district court [to] make a binding judgment for the entire country." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021). The Court must therefore stay Section 2.b. of its Order as to non-parties.

## II.   The Remaining Factors Support a Stay Pending Appeal

The Court's Order enjoining the government, on a nationwide basis, from exercising its statutory authority to effectuate third country removals necessarily imposes irreparable harm on the Government and the public interest. "[A]ny time a State is enjoined by a court from effectuating

---

[2] *National Center for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir. 1984) (holding that any relief ordered must be limited to apply only to the individual plaintiffs unless the district judge certifies a class of plaintiffs); *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) ("Without a properly certified class, a court cannot grant relief on a class-wide basis."); *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974) ("Relief cannot be granted to a class before an order has been entered determining that class treatment is proper."); *Hollon v. Mathis Independent School District*, 491 F.2d 92, 93 (5th Cir. 1974) (per curiam) (injunction restraining enforcement of school regulation as to similarly situated students was an abuse of discretion and not necessary to preserve the status quo in the absence of a class certification); *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003) (the district court improperly awarded class damages when no class had been certified); In purporting to set third country removal policy for the entire nation, this Court disregarded the usual rule to limit relief to "redress only the injury shown as to [Plaintiffs]." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018).

statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). The Court's nationwide injunction also undermines the Executive Branch's constitutional and statutory authority over immigration, and constitutes an "unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013). An injunction that prevents the Executive Branch from carrying out its broad authority over immigration matters is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of L.A. Cty Fed'n of Lab.*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Moreover, "[t]here is always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. Accordingly, the Court's injunction imposes irreparable harm on the Government and the public interest. With a single order devoid of any legal reasoning, the Court has potentially prevented the execution of possibly thousands of pending removal orders and may have irreparably harmed the Executive's ability to negotiate the return of aliens to countries of which they are not a citizen. In contrast, a stay against section 2.b of this Court's Order will not cause Plaintiffs any harm at all, since they will still be protected from removal under section 2.a.

## CONCLUSION

For the foregoing reasons, Defendants request that this Court stay section 2.b. of its Order.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW ENSIGN
Deputy Assistant Attorney General

EREZ REUVENI
Acting Deputy Director

ELIANIS N. PEREZ
Assistant Director

MARY L. LARAKERS
Senior Litigation Counsel

/s/*Matthew P. Seamon*
MATTHEW P. SEAMON
(California Bar #309249)
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 598-2648
(202) 305-7000 (facsimile)
Matthew.Seamon2@usdoj.gov

11

## LOCAL RULE 7.1 CERTIFICATION

I, Matthew Seamon, certify that pursuant to L.R. 7.1(a)(2), counsel for Defendants conferred with counsel for Plaintiffs, who oppose to this motion.

/s/ *Matthew P. Seamon*
Matthew P. Seamon
Dated: March 29, 2025                     Senior Litigation Counsel

## CERTIFICATE OF SERVICE

I, Matthew Seamon, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Matthew P. Seamon*
Matthew P. Seamon
Dated: March 29, 2025                     Senior Litigation Counsel