UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D., et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, et al., <br><br> Defendants. | Civil Action No. <br> 25-10676-BEM |

**MEMORANDUM ON PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER**

**MURPHY, J.**

In this action, Plaintiffs seek an order guaranteeing them the opportunity to show— before being removed to countries not included on their removal orders—that they will suffer persecution, torture, and/or death in those countries. The Court has GRANTED in part Plaintiffs' motion for a temporary restraining order and has issued narrow relief to ensure no irreparable harm is done while the underlying facts develop.[1] This memorandum explains the Court's reasoning.

**I.   Background**

Plaintiffs are individuals subject to final orders of removal, allegedly at imminent risk of deportation to countries other than those authorized by their respective orders. Dkt. 1 ¶¶ 1, 4. One named plaintiff ("O.C.G.")[2] has already been deported. *Id.* ¶ 13. Another ("E.F.D.") has been

---

[1] The Court announced the Order on the record in open court and has subsequently entered a written version on the docket. Dkt. 34.

[2] The Court has allowed Plaintiffs to proceed under pseudonyms. Dkt. 13.

detained. *Id.* ¶ 12. The remainder ("D.V.D." and "M.M.") fear imminent detention and deportation. *Id.* ¶¶ 10–11. Plaintiffs seek declaratory and injunctive relief. *Id.* at 36–37.

On March 23, 2025, Plaintiffs moved for a temporary restraining order. Dkt. 6.[3] Plaintiffs' motion asked the Court to enjoin the removal of E.F.D., D.V.D., and M.M., as well as all similarly situated parties, until they, first, receive written notice of the newly designated countries to which they might be removed and, second, be given a meaningful opportunity to object to those designations based on fear of persecution, torture, and/or death. Dkt. 6-1 at 1–2. Plaintiffs further asked that, in the interim, D.V.D. and M.M. not be detained. *Id.* at 2. Finally, Plaintiffs asked that O.C.G. be allowed to return to the United States. *Id.*[4]

## II. Jurisdiction

The Court has jurisdiction to hear this case under 28 U.S.C. § 1331.

The government argues that the Court lacks jurisdiction based on 8 U.S.C. §§ 1252(g) and 1252(a)(5), (b)(9). Dkt. 31 at 10–14. However, those provisions do not apply. 8 U.S.C. § 1252(g) displaces courts' power to hear cases "arising from the decision or action . . . to . . . execute removal orders." 8 U.S.C. §§ 1252(a)(5) and (b)(9) collectively vest courts of appeal with exclusive jurisdiction to hear petitions requesting "judicial review of an order of removal."

This case concerns neither "execut[ion]" nor "judicial review" of an order of removal. Rather, Plaintiffs allege deportations occurring by authority other than, and in the absence of, fully

---

[3] Plaintiffs also moved for a preliminary injunction. Dkt. 6. At this time, the Court considers only the request for a temporary restraining order.

[4] Plaintiffs also seek provisional class certification and corresponding relief. Dkt. 6-1 at 2–3. The Court will consider class certification in conjunction with the motion for preliminary injunction. As to the instant motion, class certification is not necessary because the "injunctive . . . relief will inure to the benefit of all those similarly situated." *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985); *see also Doe v. Gaughan*, 808 F.2d 871, 872 n.1 (1st Cir. 1986). The limitations on relief flowing from impact beyond the named Plaintiffs is addressed in Section V, *infra*.

2

authorizing orders of removal.[5]  Congress has not precluded district courts' review of removals outside of what has previously been ordered by an immigration judge.[6]  *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1006 (W.D. Wash. 2019) (concluding that claim concerning designation of removal country outside proceedings did not involve review of removal order); *see also Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023) (holding that § 1252(g) insulates only the discretionary decision to commence removal, not related, potentially unlawful acts).

### III.  Legal Standard

"A temporary restraining order . . . preserve[s] the status quo," preventing irreparable harm before there is a full opportunity to hear the case.  *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 37 n.6 (1st Cir. 2024).  The Court considers four factors: "(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest."  *Shurtleff v. City of Bos.*, 337 F. Supp. 3d 66, 70 (D. Mass. 2018) (citing *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013)), *aff'd*, 928 F.3d 166 (1st Cir. 2019).[7]

Of the four factors, likelihood of success "weighs most heavily" in the analysis.  *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020).  Nevertheless, "a court's conclusions

---

[5] At oral argument, the government agreed that, in designating additional countries of removal, it drew its authority from statute.  Rough Transcript at 2–4.  That implies something beyond mere "execut[ion]" of an order.  This plain reading of the statute is supported by the relevant regulations, which state that "the order of the immigration judge *does not limit* the authority of the Department of Homeland Security to remove the alien to any other country as permitted by section 241(b) of the Act."  8 C.F.R. § 1240.12(d) (emphasis added).  That such authority is not "limit[ed]" by an order does not suggest that the authority is still *pursuant to* that order.

[6] Although this case involves sensitive subject matter and complex statutory schemes, its underlying principles are very familiar.  Courts routinely consider whether jurisdiction is barred based on a prior court's order.  *See, e.g.*, *Verogna v. Johnstone*, 583 F. Supp. 3d 331, 336–37 (D.N.H. 2022), *aff'd*, No. 22-1364, 2022 WL 19795808 (1st Cir. Nov. 14, 2022).  Under §§ 1252(a)(5) and (b)(9), district courts are precluded from revisiting orders made by immigration judges.  It would not make sense, however, to offer that same protection for acts which go beyond those orders' preclusive scope.

[7] "The standard for issuing a TRO is 'the same as for a preliminary injunction.'"  *Orkin v. Albert*, 557 F. Supp. 3d 252, 256 (D. Mass. 2021) (quoting *Bourgoin v. Sebelius*, 928 F. Supp. 2d 258, 267 (D. Me. 2013)).

as to the merits of the issues presented on [a motion for temporarily relief] are to be understood [simply] as statements of probable outcomes." *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991). The Court prejudges no future motions or findings.

IV. **Discussion**

   A. **Likelihood of Success**

Plaintiffs have established that they are likely to succeed. The parties agree—and the Court assumes without deciding—that the government may, outside removal proceedings and apart from the specific authorization provided by a removal order, designate additional countries as places of removal. *See* Dkt. 31 at 15–18.

However, even if these removals can follow from authority exercised outside formal proceedings, that exercise must still comport with due process. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). It would be strange to hold that constitutional requirements can be circumvented simply by informalizing the process.

At oral argument, the government was asked if it took the position that it can "decide right now that someone who is in [] custody is getting deported to a third country, give them no notice and no opportunity to say, 'I will be killed the moment I arrive there,' and, as long as the [government] doesn't already know that there's someone standing there waiting to shoot him, that's [] fine." Rough Transcript at 26:13–21 ("In short, yes."). This Court holds a very different view.[8]

---

[8] So, too, does the government when appearing before the Supreme Court, including as recently as five days ago. Transcript of Oral Argument at 32–33, *Bondi v. Riley*, No. 23-1270 (S. Ct. Mar. 24, 2025) ("Justice Kagan: . . . [W]hen you have the order of removal but the [Convention Against Torture] proceedings have not yet been concluded, what does the government feel itself free to do with the alien? . . . [Assistant to the Solicitor General]: We do think we have the legal authority to [send the non-citizen to some other country, assuming no pending claim under the Convention Against Torture as to that other country], with the following caveat: We would have to give the person

4

Due process requires that an individual be given notice of where they are being taken and a meaningful opportunity to show that, if taken there, they will likely be subject to persecution, torture, or death. Such is established in common moral sense, in statute and in treaty,[9] and in the government's own assurances to our Supreme Court.[10]

Assuming these individuals have due-process rights attending the government's discretionary power to designate additional countries of removal outside formal proceedings, the government challenges Plaintiffs' showing that there have been, or are likely to be, any violations of those rights. Dkt. 31 at 18–20.

---

notice of the third country and give them the opportunity to raise a reasonable fear of torture or persecution in that third country."). At oral argument on this case's motion, the government attempted to distinguish this very recent statement as not applicable "post-final order." *See* Rough Transcript at 6–7. But that is not reflective of the government's statement, which concerned "when [the government] ha[s] the order of removal." Withholding proceedings, such as those within which one brings a claim under the Convention Against Torture, do not impact the overall removability of an individual, except as to the specific country at issue. *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021) ("If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States." (emphases in original)); *see also id.* at 539 ("[T]he finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings."). It is therefore not a meaningful distinction that an individual, subject to an order of removal, may have instituted a fear-based claim as to some other country. The introduction of a *new* country of removal is, according to the government in *Bondi v. Riley*, what triggers the right to receive notice and be heard.

[9] *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (explaining that individuals who "face persecution or other mistreatment in the country designated" as their place of removal "have a number of available remedies," by statute, regulation, and under international law, to "ensur[e] their humane treatment"); *see also Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (finding that "last minute designation" of removal country during formal proceedings "violated a basic tenet of constitutional due process: that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence").

[10] *See supra* note 8; *see also* Transcript of Oral Argument at 20–21, *Guzman Chavez*, 594 U.S. 523 (No. 19-897) ("Justice Kagan: So that's what it would depend on, right? That -- that you would have to provide [an individual being removed] notice [of what country he is being sent to], and if he had a fear of persecution or torture in that country, he would be given an opportunity to contest his removal to that country, isn't that right? [Assistant to the Solicitor General]: Yes, that's right."); Brief for the Petitioners at 3–4, *Guzman Chavez*, 594 U.S. 523 (No. 19-897) ("Congress has left open two avenues for an alien to avoid removal to a particular country where he faces persecution or torture. First, the alien may seek statutory withholding of removal under 8 U.S.C. 1231(b)(3), which prohibits the removal of an alien to a country where he would face persecution because of his 'race, religion, nationality, membership in a particular social group, or political opinion.' *Ibid.* Second, the alien may seek withholding or deferral of removal under regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), *adopted* Dec. 10, 1984, S. Treaty Doc. No. 20, 100th Cong., 2d Sess. (1988), 1465 U.N.T.S. 85—a treaty that addresses the removal of aliens to countries where they would face torture. *See* Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, Div. G, § 2242(b), 112 Stat. 2681–822; 8 C.F.R. 208.31, 241.8(e).").

The facts here are both contested and contestable. At this very early stage, the Court finds it probable that O.C.G. was not given a meaningful opportunity to state his fear-based claim.[11] That understanding of events supports the likelihood that the other Plaintiffs are reasonable in their fear that they will be subject to similar, insufficient processes. Oral argument in this matter made clear that the Government believes that such deportations, without notice and without concern for violations of the Convention Against Torture, could be occurring and would not be violative of any policy or practice of the Department of Homeland Security. In short, the Government expressed no concern that deportations in violation of the Convention Against Torture could be occurring immediately and regularly in the days until the preliminary injunction; the Court does not share the same disregard for probable due process violations protected by the Constitution and enumerated in both statute and treaty. Moreover, to the degree that the Government may argue that deportations of people subject to torture or death may *not* be occurring now or in the days before the preliminary injunction hearing, this temporary restraining order will be of no detrimental effect.

### B.    Irreparable Harm

The irreparable harm factor likewise weighs in Plaintiffs' favor. Here, the threatened harm is clear and simple: persecution, torture, and death. The government argues that Plaintiffs can make no showing of harm because, even without an injunction, they can move to reopen their removal cases and make fear-based claims therein. Dkt. 31 at 21. But until the government gives notice, it is unrealistic to expect Plaintiffs to be able to make the necessary, country-specific

---

[11] The government provides a declaration stating that O.C.G. was asked if he was afraid of being returned to Mexico and that O.C.G. responded that he was not. Dkt. 31-1 ¶ 13. This declaration, however, does not appear to have been given by anyone directly involved in O.C.G.'s handling. *Id.* ¶¶ 1–3. O.C.G. offers contrary, under-oath assertions that he received no such opportunity. Dkt. 8-4 ¶¶ 9–10.

showings.[12]  It may very well be the case that, following notice, the availability of a motion to reopen satisfies due process.[13]  However, Plaintiffs have alleged no possible opportunity for such a showing, and therefore that is not the question before this Court.

### C. Balance of Equities and Public Interest

Because the interest of the government is the interest of the public, the final two factors merge when the government is the opposing party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  In cases implicating removal, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."  *Id.* at 436.  However, there is also "a public interest in prompt execution of removal orders."  *Id.*

Here, the Court has found it likely that these deportations have or will be wrongfully executed and that there has at least been no opportunity for Plaintiffs to demonstrate the substantial harm they might face.  The Court finds that these circumstances countervail the public's normal and meaningful "interest in prompt execution."  *Id.*  Thus, the final two factors support issuance of relief.

### V. Limitations of Relief

A temporary restraining order should issue only insofar as it is "essential in order effectually to protect . . . rights against injuries otherwise irremediable."  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).  Here, the "irremediable" injury would be deportation without meaningful opportunity to present a claim based on fear of persecution, torture, or death.

---

[12] *See Guzman Chavez*, 594 U.S. at 536 ("[W]ithholding-only relief is country-specific.").  It is moreover unclear on what basis Plaintiffs would move to reopen, absent a noticed change to their country of removal.  *See* 8 C.F.R. § 1003.23.

[13] The Court expresses no opinion.

Accordingly, the Court circumscribes its remedy and declines, at this time, to issue Plaintiffs' proposed order as it pertains to detention. It is not sufficiently before the Court whether any Plaintiff could plausibly be removed in the "reasonably foreseeable future." Dkt. 6-1 at 2. Likewise, the Court will not order the return of O.C.G. A mandatory injunction, as would be required, "alters rather than preserves the status quo," and is thus subject to an even more heightened level of legal and factual scrutiny. *Braintree Lab'ys, Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 41 (1st Cir. 2010) (citing *Massachusetts Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness of Mass.*, 649 F.2d 71, 76 n.7 (1st Cir. 1981)). The Court finds, at this stage, that Plaintiffs have not yet made that showing.

Finally, although this memorandum has referred to fear-based claims collectively, such claims are divided between statutory claims made under 8 U.S.C. § 1231(b)(3)(A) and claims made under the Convention Against Torture. *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). This Court is precluded, under 8 U.S.C. § 1252(f)(1), from offering relief as to the former beyond the individual Plaintiffs. *See Galvez v. Jaddou*, 52 F.4th 821, 829–30 (9th Cir. 2022) (clarifying the scope of § 1252(f)(1)). The Court thus limits its Order as to statutory claims to only the named Plaintiffs while ensuring Convention Against Torture protection to all similarly situated individuals.

**VI.  Conclusion**

For the foregoing reasons, the Court has GRANTED in part Plaintiffs' motion.

**So Ordered.**

*/s/ Brian E. Murphy*
Brian E. Murphy
Dated: March 29, 2025            Judge, United States District Court