## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G., | |
| Plaintiffs, | Case No. 25-cv-10676-BEM |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity, | |
| Defendants. | |

## PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION……………………………………………………….    1

II.     ARGUMENT……………………………………………………….    2

   A.  This Court Has Jurisdiction to Issue Injunctive Relief…………………………    2

    1. Section 1252(f)(1) Does Not Bar Injunctive Relief…………………………    2

    2. FARRA and Subsection 1252(a)(4) Do Not Bar Injunctive Relief………….    4

   B.  This Court Has Jurisdiction Over Plaintiffs' Claims…………………………    6

    1. Section 1252(g) Does Not Bar Plaintiffs' Claims …………………………..    6

    2. Subsections 1252(a)(4), (a)(5), and (b)(9) Do Not Bar Plaintiffs' Claims…...    9

     a. Defendants Have Blocked Access to Judicial Review…………………...    9

     b. Neither Defendants' Guidance Nor Discretionary Motions to Reopen
     Safeguards Access to CAT Protections or Judicial Review……………...    10

   C.  This Court Has Authority to Order O.C.G.'s Return…………………………..    16

   D.  Plaintiffs Indisputably Demonstrate They Will Suffer Irreparable Harm……..    19

   E.  Preliminary Injunctive Relief with Assurances Is Needed Because Plaintiffs
   Have Reason to Believe Defendants Are Violating the TRO…………………..    19

III.    CONCLUSION………………………………………………………...    20

# I.    INTRODUCTION

The need for preliminary injunctive relief in this case is vital. Indeed, it may be the difference between safety and torture, life and death, for many noncitizens, including ones who have been living and working in this country for decades. This Court has the authority to protect Plaintiffs and putative class members with final removal orders whom Defendant Department of Homeland Security (DHS) seeks to deport to third countries. The Court may order compliance with the procedural protections required by the Immigration and Nationality Act (INA), the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), implementing regulations, and the Due Process Clause of the Fifth Amendment. It also has jurisdiction over Plaintiffs' claims and the authority to order Plaintiff O.C.G.'s return from Guatemala.

Because notice and the opportunity to be heard are pillars of the judicial system, Defendants are not likely to succeed on the merits. First, none of the jurisdictional provisions Defendants cite bar this Court's authority. Second, as Plaintiffs explained in their opposition to Defendants' motion for an indicative ruling, ECF 49, DHS's newly-issued memorandum, entitled "Guidance Regarding Third Country Removals" (Memo), ECF 43-1, does not ensure notice of the country to which  DHS intends to remove putative class members, nor does it provide a meaningful opportunity to show that, if removed there, they will likely face persecution or torture. Rather, if permitted to take effect, the Memo would allow Defendants to continue to deny mandatory protections and send noncitizens to face persecution, torture, or even death. Relatedly, Plaintiffs have shown that they face irreparable harm if deported to a third country without individualized, documented notice and a meaningful opportunity to present any fear-based claim before an immigration judge. Such a meaningful opportunity is not a petition for review, as Defendants contend, because the petition for review process is both inaccessible

and inadequate to address claims that arise after a final removal order. In addition, a motion to reopen, where the burden is on the noncitizen to overcome countless legal and practical impediments that apply only to noncitizen filers, does not afford protection. A viable remedy for this action is individualized, written notice sufficiently in advance of any third country deportation and an opportunity to seek protection that places on DHS the burden to move to reopen if the noncitizen expresses a fear. The need for preliminary injunctive relief is especially critical because Plaintiffs have documented violations of the existing TRO.

## II.    ARGUMENT

### A.    This Court Has Jurisdiction to Issue Injunctive Relief

#### 1.    Section 1252(f) Does Not Bar the Preliminary Injunctive Relief Sought.

Defendants wrongly contend that 8 U.S.C. § 1252(f)(1) bars the preliminary injunctive relief Plaintiffs seek on behalf of themselves and the putative class.[1] ECF 51 at 3-5. The individualized access to CAT protections that Plaintiffs seek would not enjoin 8 U.S.C. § 1231(b)(1) or (b)(2), as Defendants contend. *Id*. at 4. For the reasons set forth here, and in Plaintiffs' concurrently filed Reply in Support of Class Certification, a preliminary injunction ensuring individualized notice to noncitizens and their counsel, and an opportunity to submit a CAT application to an immigration judge does *not* enjoin DHS from deporting individuals to third countries as authorized by § 1231(b)(1) or (b)(2). Instead, it simply requires that such individuals *first* be properly afforded the protections mandated by FARRA and due process, i.e., written notice and a meaningful opportunity to make a fear-based claim for CAT protection.

---

[1]    There is no dispute that § 1252(f)(1) does not apply to the named Plaintiffs. *Brito v. Garland*, 22 F.4th 240, 247 (1st Cir. 2021) (stating that the "text [of § 1252(f)(1)] plainly leaves untouched a court's jurisdiction to issue injunctive relief in favor of any 'individual [noncitizen] against whom [proceedings] have been initiated'").

Defendants do not dispute, nor can they, that these CAT protections fall outside of § 1252(f)(1) because they were enacted through a separate statute, FARRA, supplemented by its implementing regulations, 8 C.F.R. §§ 1208.16-18. As such, they are not in "[chapter 4 of title II of the INA]*, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [IIRIRA]*," which are the only provisions § 1252(f)(1) covers.[2] Specifically, § 1252(f)(1) only bars injunctive relief with respect to the provisions covered by the plain language of IIRIRA § 306(a)(2), the statute that enacted it, at the time IIRIRA took effect, *i.e.*, on September 30, 1996. FARRA was enacted in October 1998, two years after IIRIRA's effective date. Moreover, it did not amend the INA but instead was codified as a Note to 8 U.S.C. § 1231. Thus, neither FARRA nor the implementing regulations are within § 1252(f)(1)'s scope.

The Ninth Circuit's decision in *Galvez v. Jaddou* is instructive. There, plaintiffs raised a class action challenge to delayed adjudication of special immigrant juvenile petitions, the authority for which was enacted by the Trafficking Victims Protection Reauthorization Act (TVPRA), codified at 8 U.S.C. § 1232(d)(2). 52 F.4th at 826. Because the TVPRA was enacted in 2008, 12 years after IIRIRA's effective date, and, like FARRA, did not amend the INA, the court upheld the lower court's exercise of jurisdiction. *Id*. at 829-31.[3]

Nor is § 1252(f)(1) applicable simply because Plaintiffs' challenge to FARRA may potentially have a collateral impact on a covered provision, *i.e.*, § 1231. Because Plaintiffs'

---

[2]    The codified text of § 1252(f)(1) is identical to the enacted language except for the language which refers to "…. the provisions of part IV of this subchapter, as amended by the [IIRIRA] ……" The reference to "part IV of this subchapter" in codified § 1252(f)(1) refers to Part IV of Subchapter II of Chapter 12 of Title 8 of the U.S. Code. However, the text of IIRIRA § 306(a)(2), which enacted § 1252(f), differs from the codified text, likely due to human error in the codification process. Courts should rely on IIRIRA § 306(a)(2). *Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022)

[3]    The parties in *Galvez* agreed that § 1252(f)(1) did not apply because § 1232(d)(2) was not part of INA or the provisions referenced when IIRIRA was enacted. *See Galvez*, 52 F.4th at 831.

claims regarding CAT protections do not arise from the INA but rather from FARRA, implementing regulations, and Due Process Clause, any impact on § 1231 is collateral. *See Gonzalez v. ICE*, 975 F.3d 788, 812-15 (9th Cir. 2020) (finding that any effect from injunction prohibiting issuance of certain detainers on provisions covered by § 1252(f)(1) was collateral so Plaintiffs' claims were not barred). Likewise, in *Al Otro Lado v. Executive Office for Immigration Review*, the Ninth Circuit upheld a district court's "negative injunctive relief" in a class action. 120 F.4th 606, 628-29 (9th Cir. 2024). The injunction prohibited DHS from applying a rule barring asylum eligibility under 8 U.S.C. § 1158, reasoning that "[e]ven though asylum eligibility may change the outcome of a removal proceeding under a covered provision [in § 1252(f)(1)], such an effect is collateral under our precedents" which "[t]he Supreme Court acknowledged . . . in [*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)] and left . . . undisturbed." *Id*. at 628.

Similarly, here, even though application of CAT protections "may change the outcome" of DHS's execution of a removal order under a covered provision (§ 1231), by first requiring the individual to apply for and potentially obtain CAT protection, "the injunction would have at most a 'collateral' effect on DHS' operation of proceedings under [a] covered provision[]." *Id.* at 627. As the Ninth Circuit recognized, "a 'one step removed' effect on a covered provision [does] not bring the injunction within the scope of § 1252(f)." *Id*. (discussing *Gonzalez v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007)). Thus, § 1252(f)(1) does not preclude the Court from issuing the preliminary injunctive relief Plaintiffs seek.

**2.    FARRA and Subsection 1252(a)(4) Do Not Bar Injunctive Relief.**

Similarly, neither 8 U.S.C. § 1252(a)(4) nor § 2242(d) of FARRA bars review of Plaintiffs' claims or injunctive relief. These provisions channel review of CAT claims to the

4

court of appeals in petitions for review. *See, e.g.*, *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020). Plaintiffs' claims do not fall within the scope of § 1252(a)(4) or the FARRA limitation because they have arisen *after* the conclusion of proceedings. It is precisely because Defendants initiated the third country removal process *after* the conclusion of removal proceedings that Plaintiffs are prevented from submitting an individualized application for CAT protection and thus from obtaining judicial review in the event of denial as contemplated in the channeling provisions of § 1252(a)(4). *Cf. Compere v. Nielsen*, 358 F. Supp. 3d 170, 177 n.8 (D.N.H. 2019) (finding § 1252(a)(4) "plainly inapplicable" where the petitioner was not seeking review of CAT claim's denial); *E.O.H.C. v. DHS,* 950 F.3d 177, 186 (3d Cir. 2020) (finding § 1252(a)(4) does not bar review "[w]hen a detained [noncitizen] seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal").

FARRA § 2242(d)'s bar to review of CAT regulations is also inapposite as the injunctive relief Plaintiffs seek does not "rewrite" or in any way "challenge" the CAT regulations." ECF 51 at 9. To the contrary, Plaintiffs request an order requiring Defendants to comply with FARRA and the implementing CAT regulations. Defendants provide no authority supporting their contention that an order specifying the procedures needed to comply with the statute and regulations is the equivalent of a challenge to the regulations. It is also irrelevant that CAT "is not self-executing," ECF 51 at 10, because it "has been implemented in the United States through FARRA and the subsequent regulations." *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003); *see also Nasrallah*, 590 U.S. at 580. Instead, Plaintiffs claim that Defendants' policy is contrary to those regulations. ECF 1 ¶¶ 105, 110, 113, 115, 120; *see also Saint Fort*, 329 F.3d at 201 (finding FARRA § 2242(d) not implicated where "no challenge is made . . . to the FARRA regulations"); *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 216 (3d Cir. 2003) (same).

**B.      This Court Has Jurisdiction Over Plaintiffs' Claims.**

**1.      Section 1252(g) Does Not Bar Plaintiffs' Claims.**

Defendants wrongly insist that 8 U.S.C. § 1252(g) applies, ECF 51 at 5-6. Section

1252(g) governs jurisdiction over actions "arising from" decisions or actions "to commence

removal proceedings, adjudicate cases, or execute removal orders." This Court has correctly

concluded it is not applicable because Plaintiffs do not challenge the execution of a removal

order. ECF 40 at 2-3; ECF 44 at 5. Rather, Plaintiffs challenge DHS's actions depriving them of

their statutory rights to notice and an opportunity to apply for protection from persecution or

torture prior to deportation to a third country. ECF 1 ¶¶ 6, 37-52, 102-05, 110, 113-17, 120.

Critically, these protections are mandatory, as required by the INA, Due Process Clause,

FARRA, and FARRA's implementing regulations. Both the Supreme Court and the First Circuit

have held that § 1252(g) does not bar challenges to nondiscretionary decisions or actions. *Reno*

*v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482, 485, 487 (1999) (holding

that § 1252(g) is "narrow[]," "applies only to three discrete actions," and was "clearly designed

to give some measure of protection to . . . discretionary determinations," as well as calling it a

"discretion-protecting provision"); *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023)

("Kong's FTCA claim does not arise from the discretionary decision to execute removal but

instead arises from the government's alleged violations of law in arresting Kong without a

relevant warrant and in failing to abide by its own regulations."); *Guerra-Casteneda v. United*

*States*, 656 F. Supp. 3d 356, 362-63 (D. Mass. 2023) (finding § 1252(g) did not apply because

plaintiff's claims arose from the violation of a stay order, not from the execution of the removal

order). In *Kong*, the court held that § 1252(g) did not apply to the plaintiff's damages claim

under the Federal Tort Claims Act (FTCA) predicated on his post-final-order arrest and re-

detention. 62 F.4th at 618. The First Circuit recognized that "§ 1252(g) was passed with the understanding that challenges to the legality of a petitioner's detention" were collateral to DHS' decision to execute his removal order and were not covered by the statute. *Id*. at 615. Plaintiffs' claims are also separate from DHS's discretionary authority regarding the execution of a removal order because they challenge Defendants' "violation of law" and "failure to abide by" the INA, the FARRA, the Due Process Clause, and implementing regulations. *Id*. at 618.[4]

Minimizing the weight of binding precedent, Defendants instead rely on inapposite out-of-circuit cases. Each involved an attempt to limit DHS's authority to execute a removal order because of some *discretionary* agency action that had not yet taken place, not because of any mandatory obligation the agency failed to fulfill. ECF 51 at 5. In *Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022), the petitioner sought to halt the execution of his removal order (to the designated country of removal) to await adjudication of discretionary motions to reopen removal proceedings, the timing of which also was in the agency's discretion.[5] The Supreme Court has classified such motions to reopen as "well-understood discretionary forms of review." *Santos-Zacaria v. Garland*, 598 U.S. 411, 427 (2023).

In *Camarena*, the plaintiffs sought to halt execution of final removal orders to await

---

[4]    *Kong* is not limited to the detention and/or FTCA context. The First Circuit rejected that distinction, finding that "the text of § 1252(g) cannot be interpreted differently depending on [the nature of the claim]." *Kong*, 62 F.4th at 617 (citing *Clark v. Martinez*, 543 U.S. 371, 382 (2005)).

[5]    In *Kong*, the court distinguished *Tazu v. Att'y Gen.*, which, like *Rauda*, was a habeas petition seeking a stay to await the adjudication of a discretionary motion to reopen. 975 F.3d 292, 297, 300 (3d Cir. 2020). In *Tazu*, the plaintiff did not challenge the agency's authority to execute the order to the designated country of removal, but instead its discretionary decision to do so *prior to adjudication* of a motion to reopen. The Third Circuit reasoned that "[t]he design of § 1252(g) shows that Tazu cannot challenge the timing of his removal." 975 F.3d at 297. The First Circuit contrasted Tazu's "brief door-to-plane detention," related to the act of executing a removal order, with Kong's detention claim which alleged violation of the laws prohibiting his arrest and re-detention absent compliance with applicable regulations. *Kong,* 62 F.4th at 618.

adjudication of their discretionary applications for provisional unlawful presence waivers. 988 F.3d 1268, 1270 (11th Cir. 2021). Notably, even if granted, the waivers would not prevent deportation but rather make it easier for the applicants to return to the United States. *Id*. The Eleventh Circuit rejected plaintiffs' argument that regulations deprived ICE of authority to execute a removal order, but in so doing, affirmed its earlier decision in *Madu*, holding that § 1252(g) does not bar challenges to the existence of a removal order. *Id*. at 1273 (citing *Madu v. Att'y Gen.*, 470 F.3d 1362 (11th Cir. 2006)).

In *E.F.L. v. Prim*, the petitioner filed a habeas petition to enjoin removal to await adjudication of a petition under the Violence Against Women Act (VAWA), which, if granted, would permit her to remain in the country. 986 F.3d 959, 962-63 (7th Cir. 2021) . Unlike here, there was no statutory or other mandate that such an application be decided *prior to* execution of the removal order.[6] Thus, the Seventh Circuit reasoned that the habeas petition constituted an impermissible challenge to DHS's legal authority to execute a removal order. *Id*. at 964-65.

Defendants rely on *Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001), but ignore the Fifth Circuit's subsequent decision in *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 380 (5th Cir. 2005), in which the court held § 1252(g) does not preclude jurisdiction over a challenge to the constitutionality of the statutory scheme, as opposed to a discretionary determination.[7]

---

[6]    Indeed, even if removed, a VAWA self-petitioner is eligible to obtain an immigrant visa through consular processing once the self-petition is approved. *See, e.g.*, U.S. Citizenship & Immigr. Servs. Policy Manual, Vol. 3, Pt. D, Ch. 5.

[7]    In *Foster*, which pre-dates *Flores-Ledezma*, the court held that § 1252(g) extends to non-discretionary decisions. 243 F.3d at 214-15. Even if *Foster* remains valid, the Fifth Circuit stands alone amongst all circuits to have ruled on the issue in extending § 1252(g) to bar review of nondiscretionary agency conduct. *See, e.g., Kong*, 62 F.4th at 617; *Garcia v. Att'y Gen.*, 553 F.3d 724, 726-29 (3d Cir. 2009); *Mustata v. DOJ*, 179 F.3d 1017, 1021-22 (6th Cir. 1999); *Arce v. United States*, 899 F.3d 796, 800-01 (9th Cir. 2018); *Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). The Tenth Circuit's unpublished decision in *Tsering v. ICE*, is similarly misguided as it relies on *Foster* and misreads *AADC*. 403 F. App'x 339, 343 (10th Cir. 2010).

In sum, the Court should affirm that § 1252(g) does not bar Plaintiffs' claims.

**2.    Subsections 1252(a)(4), (a)(5), and (b)(9) Do Not Bar Plaintiffs' Claims**

**a.    Defendants Have Blocked Access to Judicial Review.**

Defendants err in contending that 8 U.S.C. § 1252(a)(4), (a)(5) and (b)(9), which channel judicial review of removal orders via a petition for review to the courts of appeals, bar Plaintiffs' claims that DHS failed to provide *post-final-order* procedural protections through a petition for review. This is because, first, as this Court already recognized, ECF 40 at 2-3, Plaintiffs are not challenging any removal order or any underlying components. Instead, they are seeking to challenge a post-proceeding action taken by DHS that is not based on the prior order. Indeed, because the alleged violations occur after the removal proceedings are completed, Plaintiffs have no other avenue to seek judicial review.

Second, both Supreme Court and First Circuit precedent dictate this result. In *Jennings v. Rodriguez*, the Supreme Court rejected an "expansive interpretation" of § 1252(b)(9) such as Defendants claim here, finding that it "would lead to staggering results." 583 U.S. 281, 293 (2018). At issue in *Jennings* was the legality of immigration detention, including the meaning of the term "arising from" as used in 8 U.S.C. § 1252(b)(9). Noting the same term in § 1252(g), the Supreme Court reiterated that it does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General" but instead, "just those three specific actions themselves." *Jennings*, 538 U.S. at 294. The Court described a variety of hypothetical tort claims that a detained noncitizen might bring and noted that "[t]he 'questions of law and fact' in all those cases could be said to 'aris[e] from' actions taken to remove the [noncitizens] in the sense that the [noncitizens'] injuries would never have occurred if they had not been placed in detention." *Id.* at 293 (quoting 8 U.S.C. § 1252(b)(9)). The Court noted that it

"would be *absurd*" to construe § 1252(b)(9) so broadly. *Id.* (emphasis added).

This approach is consistent with the First Circuit's prior holding that § 1252(a)(5) and (b)(9) do not channel all claims related to removal proceedings into a petition for review. As the court made clear in *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007), "section 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar* explained that "[w]e thus read the words 'arising from' in section 1252(b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process. Among others, claims that cannot effectively be handled through the available administrative process fall within that purview." *Id.*; *see also Kong*, 62 F.4th at 613-14 (discussing *Aguilar*, 510 F.3d at 7-8, 10-11).[8]

There are also practical barriers to petitions for review. For example, a petition must be filed within 30 days of the final order, 8 U.S.C. § 1252(b)(1), while many final orders are years or decades old before DHS moves to deport someone to a third country. ECF 8-1 ¶ 6; 8-2 ¶ 4; 8-3 ¶ 9. Moreover, the petition for review process provides no forum to address claims that arose after proceedings concluded because the reviewing court of appeals is limited to the administrative record *in the removal proceeding*. 8 U.S.C. § 1252(b)(4)(A).

### b.   Neither Defendants' Guidance Nor Discretionary Motions to Reopen Safeguards Access to CAT Protections or Judicial Review

Yesterday, in *Trump v. J.G.G*, the Supreme Court clarified that all Venezuelan noncitizens subject to a President Proclamation invoking the Alien Enemies Act (AEA) were "entitled to notice and opportunity to be heard" as to their legal claims challenging the AEA's invocation and

---

[8]      Defendants' citation to 8 U.S.C. § 1231(h) (ECF 51 at 7) is foreclosed by *Zadvydas v. Davis*, where the Supreme Court held that § 1231(h) merely establishes that § 1231 itself does not create a cause of action; it does not render § 1231 unenforceable where another statute permits a challenge to actions that are "without statutory authority." 533 U.S. 678, 688 (2001); *see also Texas v. United States*, 515 F. Supp. 3d 627, 634 (S.D. Tex. 2021) (holding that "§ 1231(h) does not preclude Texas from challenging § 1231(a)(1)(A) under 5 U.S.C. § 706").

application. No. 24A931, 2025 WL 1024097, at *2 (U.S. Apr. 7, 2025) (per curiam). This was in the context of individuals not granted removal procedures under the INA. The Court held that regardless of the noncitizens' underlying claims or government's basis for subjecting them to the AEA, a noncitizen "must receive notice" they are to be removed pursuant to the AEA, and such "notice must be afforded within a reasonable time and in such a manner as will allow [those detained subject to the AEA] to actually seek habeas relief in the proper venue before such removal occurs." *Id*. The ruling underscores Plaintiffs' contention that they are likely to prevail on the merits—that Defendants violate their statutory and constitutional rights in failing to provide written notice and a meaningful opportunity to apply for protection.

The irony in Defendants' reliance on Subsections 1252(a)(4), (a)(5), and (b)(9) is that Defendants' actions have blocked any possible path of obtaining judicial review through a petition for review. Defendants similarly contend, ECF 51 at 7, that § 1252(b)(9) forecloses Plaintiffs' claims because DHS has issued the March 30, 2025, Memo, ECF 43-1. To the contrary, the Memo vividly underscores the need for district court review because it purports to eliminate all procedural protections—and all judicial review—based on blanket diplomatic assurances that do not include any individualized analysis. For the reasons Plaintiffs have explained, *see* ECF 49, and incorporated herein, the Memo does not protect individuals with final orders. Specifically, the Memo does not provide individualized notice and meaningful opportunity to apply for protection, *id*. at 5-7; relies on blanket diplomatic assurances that do nothing to address or protect against torture and also fail to address chain refoulement, including to the very country to which the individual's removal is already prohibited by a grant of CAT protection, *id*. at 7-8; is undermined by the State Department's own reports documenting torture by state and non-state actors in the countries to which Defendants seek to deport individuals with

final orders, *id*. at 8-11; and violates the regulation requiring diplomatic assurances to be individualized, even though individualized assurances are unreliable, *id*. at 11-14. In addition, absent assurances, the Memo contemplates a screening process that is woefully inadequate because it erroneously places the burden of manifesting fear on the noncitizen (allegedly in line with regulations that are actively being challenged in separate litigation, *id*. at 16), fails to inform noncitizens of their rights, applies an impermissible, heightened fear standard that has no basis in the statute, and curtails administrative review. ECF 49 at 14-18. The Memo also provides no path to judicial review. ECF 43-1 at 2 (providing that, if a country gives diplomatic assurances, there is no "need for further procedures" and that DHS has no obligation to reopen proceedings to designate a new country of removal if a person has demonstrated a fear of torture in a country that has not provided assurances and can instead designate another country).

Defendants also contend that individuals with final orders can file a motion to reopen their removal proceedings if they fear persecution or torture and then file a petition for review if that motion is denied. Defendants' explanation contains fatal flaws, including its most obvious deficiency as recognized by this Court: if an individual is not given written advance notice of their imminent removal to a third country, including the name of the country to which DHS seeks to remove them, "it is unrealistic to expect Plaintiffs to be able to make the necessary, country-specific showings." ECF 40 at 6-7 & n.12. Remarkably, Defendants make the following three inaccurate and unsupported assertions in an attempt to allege that motions to reopen filed by detained noncitizens on a moment's notice could somehow be a viable mechanism. First, they claim "that Plaintiffs know the countries to which they have a fear of removal." ECF 51 at 8. Next, they claim Plaintiffs "can assert those fears to DHS or move to reopen their proceedings at any time." *Id.* Finally, they state that "Plaintiffs know that this process is available but would

rather seek relief in the district court because it is more convenient." *Id*. Each is plainly incorrect.

First, Defendants baselessly assume that individuals will know on the spot whether they have reason to fear persecution or torture in any of the 197 countries recognized by the State Department. There is simply no basis for that assumption if, for example, the country in question is one where the person has never lived and has no legal status. Nor is there a basis for an individual to know in advance whether there is a risk that any third country will return (or *refoule*) them to their country of origin even if they already established a risk of persecution or torture. For example, Plaintiff O.C.G. won withholding of removal from Guatemala on account of his sexual orientation. ECF 1 ¶ 82; ECF 8-4 ¶ 6. There are 62 countries that criminalize homosexuality and many others where people are liable to persecution by state and non-state actors based on their sexuality. BBC, *Homosexuality: The countries where it is illegal to be gay* (Mar. 31, 2023). Under Defendants' view, O.C.G. should have filed a motion to reopen to assert a fear of deportation to all those countries.

Likewise, individuals like Plaintiffs M.M. and E.F.D. that their persecutors will hunt them down in multiple countries (as Plaintiff M.M.'s husband already once did). ECF 8-2 ¶ 13; ECF 8-3 ¶ 16; ECF 8-19 ¶¶ 7-8 (detailing how a persecutor, who had wherewithal to send agents to noncitizen's immigration-court proceedings to intimidate him and his wife, would have the capacity to locate the noncitizen in a third country and "would do unspeakable things to him"). Doing so would be impracticable. *See* Exh. I ¶ 13 (Austin Decl.) ("Logistically, it would be impossible for legal service providers to prepare motions to reopen with respect to every possible country to which an individual may be removed—and certainly that is not possible for pro se individuals."); Exh. J ¶¶ 22-23 (Mayer-Salins Decl.) ("[R]equiring motions to reopen to multiple countries, without notice, or on a condensed timeline turns the process into motion to reopen

13

whack-a-mole."). Moreover, immigration judges (IJs) would not seriously entertain such motions. Indeed, IJs already have denied motions to reopen based on fear claims on the grounds that the country was not previously designated as country of removal, Exh. L ¶¶ 13-17 (Gordon Decl.), ECF 11 ¶ 15, the motion was "premature" because it did not identifying any particular country due to lack of notice, Exh. M ¶ 6 (Gonzalez Decl), or the motions was "too generalized and vague" to establish prima facie eligibility despite documentation, Exh. I ¶ 14.

Second, the Court should not credit Defendants' claim that asserting fear to DHS is a safeguard against deportation. Plaintiff O.C.G. did just that, yet immigration officers ignored his pleas, refused his request to call his attorney, and deported him to Mexico. ECF 1 ¶¶ 85-86; ECF 8-4 ¶¶ 9-10; *see also* ECF 8-20 ¶¶ 9-13; ECF 8-14 ¶¶ 9-13. Moreover, noncitizens, especially those who are detained, and often in the process of being removed, cannot simply file a motion "at any time." ECF 51 at 7. If an individual does not have sufficient advance notice of third country deportation, they and their counsel, if any, will not have time to prepare, document, and mail a motion, let alone have it adjudicated before being deported. *See generally* Exh. I (Austin Decl.); Exh. J (Mayer-Salins Decl.); Exh. K (Morales Decl.). Moreover, individuals who have won protection, especially those who have been diligently reporting to DHS for years, have no cause or motivation to submit a written motion to reopen absent any indication that DHS is seeking to deport them to a third country.

Third, Defendants' reliance on legal resources issued by two of the undersigned immigrant-rights organizations warning of third-country-removal risks does not in any way demonstrate that a motion to reopen is a viable mechanism or that even most individuals with final orders "know" about them. ECF 51 at 8 & n.1. Instead, it simply illustrates the emergency circumstances in which Plaintiffs and putative class members currently find themselves due to

Defendants' failure to implement a meaningful process to provide written notice and opportunity to apply for protection. Undersigned counsel issued those resources to provide immigration attorneys with information and suggestions on how to defend noncitizens against unlawful actions. Yet, sadly, as demonstrated above, even for those few with counsel who have filed motions to reopen, such motions do not provide protection because IJs have denied them. Exh. L ¶¶ 13-17 (Gordon Decl.); ECF 11 ¶ 15, Exh. M ¶ 6 (Gonzalez Decl); Exh. I ¶ 14.

There are additional reasons why requiring noncitizens, especially unrepresented noncitizens, to file motions to reopen is not a viable method for safeguarding against persecution, torture, and death, even if the third country is identified. *See* ECF 1 ¶¶ 41 & n.3, 42, 44, 45, 51; ECF 7 at 13 n.5. Most noncitizens are unaware that motions to reopen exist and those who do face nearly insurmountable hurdles to preparing and filing a motion that comports with the applicable legal requirements, especially if unrepresented and/or detained. Exh. I ¶¶ 3-5; Exh. J ¶¶ 7-9, 12-19; Exh. K ¶¶ 5-12, 9-13. For example, noncitizens may file only one statutory motion to reopen within 90 days of a final removal order, which must "state the new facts that will be proven at a hearing if the motion is granted" and include "affidavits or other evidentiary material." 8 U.S.C. §§ 1229a(c)(7)(B), (C)(i). Importantly, if an individual seeks reopening to apply for relief or protection from removal, the motion must include the relief application and supporting documents and must demonstrate that the person is prima facie eligible for the relief sought. 8 C.F.R. §§ 1003.2(c)(1); 1003.23(b)(3).[9]

---

[9]    Absent a documented and successful equitable tolling claim of the time and numeric bars on statutory motions, the only reopening option available more than 90 days after a final removal order is *sua sponte* motions which are entirely discretionary and "limited to exceptional circumstances." *Matter of J-J-*, 21 I. & N. Dec. 976, 984 (BIA 1997). And judicial review over such denials is either severely curtailed or barred entirely. *Compare, e.g.*, *Thompson v. Barr*, 959 F.3d 476, 484 (1st Cir. 2020) (limited review) *with Rais v. Holder*, 768 F.3d 453, 464 (6th Cir. 2014) (no review); *see also* Exh. I ¶¶ 7-8 (Austin Decl.); Exh. J ¶ 11.b. (Mayer-Salins Decl.);

Meanwhile, there is no automatic stay of removal while noncitizens, or counsel, prepare and file a motion to reopen, which is time-consuming even in nonemergency situations. Exh. I ¶ 8; Exh. J ¶¶ 20-21; Exh. K ¶ 14. And if an IJ denies the motion, the noncitizen may appeal that denial to the BIA, but still there is no automatic stay before or after the appeal is filed. *Id.*[10] Finally, practical issues such as frequent transfers by ICE between detention centers mean attorneys cannot consult with clients about their claims. Exh. I ¶¶ 10-11; Exh. J ¶¶ 14, 16, 18; Exh. K ¶ 10. Of course, the lack of notice makes the entire process ineffective or unattainable.

In contrast, if, following individualized written notice, a person expressed a fear of a third country removal and DHS was obligated to file a motion to reopen to designate a new country, most, if not all, these legal and practical obstacles would not apply.[11]

**C.     This Court Has Authority to Order O.C.G.'s Return**

This Court has authority to order Plaintiff O.C.G.'s return as part of its inherent equitable authority. *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction."); *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (holding that courts' authority would be "entirely inadequate to the purposes for which it was conferred by the Constitution" if they did not have the power to enforce their judgments). Indeed, especially where, as here, Plaintiff O.C.G. was wrongfully deported without notice and an opportunity to

---

Exh. K ¶ 6 (Morales Decl.). Moreover, noncitizens who have been deported or who have been subjected to 8 U.SC. § 1231(a)(5) face additional regulatory or statutory bars to reopening, respectively. *See* 8 C.F.R. §§ 1003.2(d), 1003.23(b)(1); 8 U.S.C. § 1231(a)(5).

[10]     Moreover, the cases Defendants cite demonstrate that there is no stay of removal while waiting on the agency to adjudicate a motion to reopen. ECF 51 at 5 (citing *Rauda*, *supra*); ECF 31 at 11-12 (citing *Rauda* and *Hamama v. Aducci,* 912 F.3d 869 (6th Cir. 2018)).

[11]     Defendants implicitly acknowledge DHS's advantage in the Memo by instructing that DHS attorneys (ICE OPLA), not the noncitizen, should file the motion to reopen. ECF 43-1 at 2.

seek protection from deportation to Mexico, the Court's equitable authority is strong.

Courts routinely order return, or the facilitation of return, of individuals wrongly removed. *See Arce v. United States*, 899 F.3d 796, 799 (9th Cir. 2018) (describing unlawful deportation in violation of judicial stay and return pursuant to court order); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 286 (4th Cir. 2020) ("[W]e are ordering Nunez-Vasquez's return because his presence is necessary to effectuate judicial relief") (internal quotations omitted); *Orabi v. Att'y Gen.*, 738 F.3d 535, 543 (3d Cir. 2014) (granting petition for review and ordering return); *cf. Samirah v. Holder*, 627 F.3d 652, 665 (7th Cir. 2010) (ordering return to allow individual to pursue pending application to adjust status); *Umba v. Garland*, No. 19-9513, 2021 WL 3414104, at *10 n.2 (10th Cir. Aug. 5, 2021).[12] In many cases, where DHS initially refuses to facilitate return, DHS will do so after a complaint is filed in district court.[13] Doing so is in keeping with

---

[12]    *See also* Exh. Q at 1 (*Turnbull v. Ridge*, No. 1:04-cv-392 (E.D. Ohio Apr. 22, 2004)) (ordering return "forthwith" after "willful[] and surreptitious[]" removal); Exh. A at 1 (*Guerra-Castaneda v. Garland*, No. 19-1736 (1st Cir. Sept. 14 & Sept. 19, 2019)) (ordering "all necessary inquiries" regarding efforts to return an individual after deportation in violation of a stay); Exh. B (*Paye v. Garland*, No. 23-1426 (1st Cir. July 17, 2024)) (instructing DHS to immediately locate petitioner and make efforts to return him to the United States "forthwith"); Exh. C (*W.G.A. v. Sessions*, No. 16-4193 (7th Cir. Mar. 19, 2018)) (granting stay that becomes effective on "reentry to the United States pending resolution of [the] petition for review"); Exh. D at 1 (*Herrera-Meza v. Sessions*, No. 18-70117 (9th Cir. Sept. 18, 2018)) (granting a late motion to reconsider a judicial-stay denial and ordering individual's return to restore status prior to deportation); Exh. E (*Rodriguez Sutuc v. Att'y Gen.*, No. 15-2425 (3d Cir. June 19, 2015)) (ordering immediate return of mother and daughter seeking asylum whom DHS deported before the court could act on the stay); Exh. F (*H.I.L. v. Barr*, No. 19-3053 (2d Cir. Oct. 2, 2019)) (requiring DHS to report on its efforts to return the individual to the United States); Exh. G at 2 (*Ramirez-Chavez v. Holder*, No. 11-72297 (9th Cir. Apr. 10, 2012)) (directing DHS to locate and return petitioner in order to enforce order granting stay of removal); Exh. H at 3 (*Singh v. Att'y Gen.*, No. 15-10136 (11th Cir. July 2, 2015)) (instructing DHS to locate petitioner and advise him of his "right pursuant to this Court's stay of removal to be returned to the United States").
[13]    *See, e.g.*, *Fedoshchuk v. CBP*, No. 23-cv-089210-ODW-SK (C.D. Cal., filed Oct. 23, 2023); *Apostolov v. DHS*, No. 19-cv-01309 (C.D. Cal., filed July 2, 2019); *Balthazar v. Nielsen*, No. 18-cv-10590-RWZ (D. Mass., filed Mar. 27, 2018); *Nicio Lopez*, No. 18-cv-5397 (N.D. Cal., filed Aug. 31, 2018); *Previl v. DHS,* No. 1:13-cv-23230-MGC (S.D. Fla., filed Sept. 6, 2013); *Hairo Garcia v. DHS,* No. 12-0354 (M.D. Tenn., filed Apr. 5, 2012); *Alcaraz v. Napolitano*, No.

Congressional instruction that DHS agencies "shall leverage all mechanisms provided by current law to facilitate the return to the United States of those whose removal was contrary to law, whose removal order has since been overturned or reopened by judicial order, where the return of an individual would correct an error or assist in an ongoing criminal or any other federal, state, tribal, or territorial investigation." Joint Explanatory Statement accompanying Div. F, FY 2022 Consol. Appropriations Act, Pub. L. No. 117-103 (Mar. 15, 2022), available at 168 Cong. Rec. H2402 (Mar. 9, 2022).

Here, where DHS deported O.C.G. without providing any notice until agents were physically in the process of removing him, denied him access to counsel, failed to provide notice to his counsel, and lied to him that the IJ's order had "expired," granting a preliminary injunction ordering his return pursuant to similar authority is warranted. Indeed, absent the Court's order for his return, Defendant DHS would have the power to cut off Plaintiff O.C.G.'s access to mandatory CAT protections contrary to law. *See Lopez-Angel v. Barr*, 946 F.3d 527, 530 (9th Cir. 2019) (describing agency interpretation that would allow one party to unilaterally control proceedings as "strange" because "[i]t is unnatural to speak of one litigant withdrawing another's motion" (quoting *Marin-Rodriguez v. Holder*, 612 F.3d 591, 593 (7th Cir. 2010)); *Luna v. Holder*, 637 F.3d 85, 99-100 (2d Cir. 2011) (rejecting agency interpretation that could render a statutory right "'subject to manipulation' by the Government") (quoting *Boumediene v. Bush*, 553 U.S. 723, 765-66 (2008)); *Madrigal v. Holder*, 572 F.3d 239, 245 (6th Cir. 2009) ("To allow the government to cut off Madrigal's statutory right to appeal an adverse decision, in this manner, simply by removing her before a stay can be issued or a ruling on the merits can be obtained, strikes us as a perversion of the administrative process."); *cf. Boumediene*, 553 U.S. at

11-3716 (N.D. Cal., filed July 29, 2011).

765-66 (rejecting argument that could allow the government to "manipulat[e]" "[t]he test for determining the scope of [the habeas corpus] provision"); *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (holding that, absent a clear statement to the contrary, statutes should not be read "to place in executive hands authority to remove cases from the Judiciary's domain").

**D.     Plaintiffs Indisputably Demonstrate They Will Suffer Irreparable Harm in the Form of Persecution, Torture, or Death if Deported to a Third Country Without Notice and a Meaningful Opportunity to Apply for CAT Protection**

Plaintiffs have detailed the irreparable harm that they and putative class members currently are experiencing or will experience without the requested relief. *See* ECF 7 at 14-16; ECF 8-1 - 8-4; ECF 8-8 - 8-24; *see also* Exh. O (Glynn Decl.) (describing how 20-year-old Venezuelan who denies any ties to Tren de Aragua was deported to CECOT prison in El Salvador on or about March 18, 2025 after having been told he would be sent to Mexico). This Court already has recognized that Plaintiffs and putative class members are threatened with persecution, torture, and death. ECF 40 at 6. Defendants' steadfast refusal to provide meaningful notice means that Plaintiffs will continue to face these threats. ECF 44 at 9-11; *see also* ECF 43-1 at 1 n.2. Defendants' new Memo does not provide meaningful notice and does not provide an opportunity to present a CAT application. *See* ECF 49 at 5-7; *see also supra* II.B.2.b.[14]

**E.     Preliminary Injunctive Relief with Assurances Is Needed Because Plaintiffs Have Reason to Believe Defendants Are Violating the TRO**

Defendants are refusing to confirm whether they are violating this Court's TRO order.

---

[14]     Defendants argue that there is no irreparable harm because, they allege, this Court cannot "question" diplomatic assurances made pursuant to the Memo. ECF 51 at 10 (citing *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) and *Khouzam v. Att'y Gen.*, 549 F.3d 245 (3d Cir. 2008)). Defendants have not shown that any such assurances exist. Moreover, Defendants rely on cases that arose in the context of individualized diplomatic assurances and before *Nasrallah* recognized that FARRA provides for judicial review of CAT claims, and/or cases that failed to consider whether 8 U.S.C. § 1252(a)(4)'s bar is inapplicable to actions that arise after a final removal order, *see supra* § II.A.2.

*See* ECF 49 at 18-20; ECF 50-11. In another case, Defendants are challenging an order to facilitate the return of an individual who the government admits was unlawfully removed to El Salvador. *See* App. to Vacate Inj. & Request for Admin. Stay, *Noem v. Abrego-Garcia*, No. 24A949 (U.S. Apr. 7, 2025).[15] In the past week, Plaintiffs have gathered further information indicating that Defendants have violated this Court's TRO. *See* Exh. N ¶¶ 5-7 (Bowman Decl.) (detailing deportation of Venezuelan man with final removal order to Venezuela from Texas to Guantanamo Bay, Cuba after 11:44 p.m. March 28, 2025, and subsequent transfer from Cuba to El Salvador on March 30, 2025); Exh. P ¶¶ 11-13 (Brane Decl.) (detailing deportation of at least one Venezuelan man with a removal order, and likely more, to El Salvador after the entry of the TRO).[16] These actions underscore the need for a preliminary injunction with assurances and/or monitoring. They further demonstrate the woeful inadequacy of the Memo and the necessity of individualized written notice and a meaningful opportunity to present a CAT application to an immigration judge.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a preliminary injunction, either by converting the existing TRO to a preliminary injunction or by issuing a new order with the same protections.

//

//

//

//

//

---

[15]    *See also Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX, 2025 WL 1014261 (D. Md. Apr. 6, 2025) (memorandum in support of return order); *see also* ECF 50-10.

[16]    *Cf. J.G.G. v. Trump*, No. 25-cv-766, ECF 25 at 20-23 (D.D.C.) (Transcript of Mar. 17, 2025 Hearing); *id*. ECF 47 at 2.

Respectfully submitted,

s/*Trina Realmuto*
Trina Realmuto*
Kristin Macleod-Ball*
Mary Kenney*
Tomás Arango
**NATIONAL IMMIGRATION
  LITIGATION ALLIANCE**
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
**NORTHWEST IMMIGRANT
  RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

Anwen Hughes*
**HUMAN RIGHTS FIRST**
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

*Attorneys for Plaintiffs*

* *Admitted pro hac vice*

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF).

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance

Dated: April 8, 2025