# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G., | |
| Plaintiffs, | Case No. 25-cv-10676-BEM |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity, | |
| Defendants. | |

## PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

Page

I.        INTRODUCTION……………………………………………………….        1

II.       ARGUMENT………………………………………………………….        2

    A.  The Court Has Jurisdiction Over Plaintiffs' Claims…………………………        2

    B.  Section 1252(f)(1) Does Not Interfere With this Court's Authority to Certify        2
        the Putative Class………………………………………………………...

        1. Section 1252(f)(1) Does Not Encompass FARRA Provisions……………...        3

        2. Section 1252(f)(1) Does Not Limit Declaratory Relief…………………...        5

    C.  The Request for Provisional Certification Was Appropriate and Is Now Moot.        8

    D.  Plaintiffs Satisfy Rule 23(a)…………………………………………………        9

    E.  Plaintiffs Satisfy Rule 23(b)…………………………………………………        15

III.      CONCLUSION………………………………………………………...        19

## I.     INTRODUCTION

Defendants' opposition to class certification largely rests on their contention that this Court does not have authority to provide classwide relief to address violations of the Immigration and Nationality Act (INA), the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), implementing regulations, and the Due Process Clause of the Fifth Amendment. In doing so, Defendants misconstrue Plaintiffs' claims. Plaintiffs do not challenge the removal orders issued in their cases nor Defendants' authority to select an alternative country of removal; instead, they challenge the Department of Homeland Security's (DHS) failure to provide meaningful notice and an opportunity to apply for protection from persecution and torture as to previously undesignated countries. As such, the judicial review channeling provisions of 8 U.S.C. § 1252(a)(4), (5) and (b)(9) are inapplicable. Indeed, by failing to provide these mandatory procedural protections, Defendants preemptively block Plaintiffs from accessing § 1252(a)'s judicial review process. Likewise, § 1252(f)(1) does not bar classwide relief, but instead only limits injunctive relief as to specific provisions of the INA—provisions that do not include FARRA or the right to apply for protection under the Convention Against Torture (CAT). Nor does § 1252(f)(1) bar declaratory relief as to Plaintiffs' claims.

Plaintiffs satisfy all the requirements for class certification under Rule 23. All putative class members are subject to the same policy, raise identical claims, and seek identical relief: an order that protects their statutory, regulatory, and constitutional rights to notice and an opportunity to be heard on any fear-based claim prior to deportation to a third country. Defendants' arguments to the contrary revisit arguments repeatedly rejected by other courts. Classwide relief is appropriate because each putative class member is entitled to the same mandatory protections prior to deportation to a third country.

## II.    ARGUMENT

### A.    The Court Has Jurisdiction Over Plaintiffs' Claims.

As further explained in Plaintiffs' concurrently filed Reply in Support of Plaintiffs' Motion for a Preliminary Injunction, incorporated by reference herein, the Court does not lack subject matter jurisdiction over Plaintiffs' claims pursuant to 8 U.S.C. §§ 1252(a)(4), (a)(5), (b)(9), or 1231(h) or FARRA. Contrary to Defendants' contention, a class action is the appropriate mechanism for bringing systemic challenges. *See, e.g.*, *Connor B., ex rel. Vigurs v. Patrick*, 278 F.R.D. 30, 34 (D. Mass. 2011) (declining to decertify class alleging "systemic shortcomings" in child welfare system, which "provide[d] the 'glue' that unite[d] Plaintiffs' claims"). If brought individually, the Named Plaintiffs' claims would confer jurisdiction on the Court for the same reasons it has jurisdiction over the class claims.

Defendants suggest that Plaintiffs' individual claims are moot, *see* ECF 52 at 5, but, aside from a hearsay declaration regarding O.C.G. that is directly contradicted by his own sworn statement, *see* ECF 31-1, 8-4; Fed. R. Evid. 602, Defendants do not even attempt to support that allegation. Defendants' passing reference to Plaintiffs' purported failure to exhaust their individual claims is similarly untethered to the facts and law; the claims at issue in this case are premised on the fact that Plaintiffs have no meaningful opportunity to raise their claims and therefore cannot exhaust them. *See* ECF 1 ¶¶ 1, 46-52, 104-05, 110, 115, 121.

### B.    Section 1252(f) Does Not Interfere With this Court's Authority to Certify the Putative Class.

Defendants err in asserting that 8 U.S.C. § 1252(f)(1) strips this Court of jurisdiction to provide classwide relief. ECF 52 at 6-9. By its express terms, § 1252(f)(1) only limits injunctive relief with respect to the referenced sections. It is undisputed that FARRA, which mandates CAT protections, does not fall within the listed sections covered by § 1252(f)(1). In addition,

§ 1252(f)(1) plainly limits *only* injunctive relief, not other judicial remedies such as the declaratory relief that Plaintiffs seek on behalf of the class.

1.    **Section 1252(f)(1) Does Not Encompass FARRA Provisions.**

Defendants err in contending that 8 U.S.C. § 1252(f)(1) applies. *See* ECF 52 at 6-9; *see also* ECF 51 at 3-5 and Plaintiffs' concurrently filed Reply in Support of Plaintiffs' Motion for a Preliminary Injunction. First, as this Court already has recognized, CAT protections are not in "[chapter 4 of title II of the INA]*, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [IIRIRA]," which are the only provisions covered by the plain language of § 1252(f)(1).[1] *See* ECF 40 at 8. Section 1252(f)(1) bars injunctive relief only with respect to the provisions covered by the plain language of § 306(a)(2) of IIRIRA at the time IIRIRA took effect on September 30, 1996. Here, FARRA was enacted in October 1998—two years after IIRIRA's effective date—and did not directly amend any existing provisions of the INA. Instead, FARRA was codified as Note to 8 U.S.C. § 1231. Thus, neither FARRA nor its implementing regulations are within § 1252(f)(1)'s scope.

The Ninth Circuit's decision in *Galvez v. Jaddou* illustrates this point. 52 F.4th 821 (9th Cir. 2022). In that case, plaintiffs raised a class action challenge to U.S. Citizenship and Immigration Services' delayed adjudication of special immigrant juvenile petitions, the authority for which was enacted by the Trafficking Victims Protection Reauthorization Act (TVPRA) and codified at 8 U.S.C. § 1232(d)(2). At first glance, § 1232(d)(2) appeared to be a provision

---

[1]      The codified text of § 1252(f)(1) is identical to the enacted language except for the language which refers to "the provisions of part IV of this subchapter, as amended by the [IIRIRA]" The reference to "part IV of this subchapter" in the codified § 1252(f)(1) refers to Part IV of Subchapter II of Chapter 12 of Title 8 of the U.S. Code. However, the text of IIRIRA § 306(a)(2), which enacted § 1252(f), differs from the codified text, likely due to human error in the codification process. As the Ninth Circuit held in *Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022), courts should rely on IIRIRA § 306(a)(2).

referenced by § 1252(f)(1). However, the Court explained that because the TVPRA was enacted in 2008, twelve years after IIRIRA's effective date, "§ 235(d)(2) of the TVPRA is certainly not a provision of the INA '*as amended by* the [IIRIRA] of 1996' 8 U.S.C. § 1252(f)(1)." *Galvez*, 52 F.4th at 831. The TVPRA was enacted in 2008; it could not have enacted a law that was amended by the IIRIRA of 1996." *Id*. at 829-31. Accordingly, the court of appeals upheld the lower court's exercise of classwide jurisdiction. *Id.*

Defendants wrongly aver that "[a]lthough Plaintiffs invoke the CAT statute in FARRA, their fundamental objections are to how *removal* operations under § 1231 are being 'carried out' . . . ." ECF 52 at 7. Plaintiffs do not challenge Defendants' authority to execute final removal orders or even their authority to remove individuals with final orders to third countries. Instead, as this Court recognized, ECF 40 at 1, Plaintiffs challenge Defendants' failure, before deporting them to third countries, to afford the mandatory procedural protections of notice and an opportunity to be heard on a fear-based claim, if any, as required to individuals with final orders by FARRA, the INA, and the Due Process Clause.

Defendants also point to § 1252(a)(4), the provision channeling judicial review of CAT applications through the petition for review process, arguing that that statute is one of the sections covered by § 1252(f)(1). ECF 52 at 7. This argument fails for two reasons. First, Plaintiffs do not seek an order to restrain or enjoin the operation of § 1252(a)(4)—Plaintiffs do not in any way challenge the judicial review process for CAT claims. Instead, they seek an order restraining and enjoining Defendants' failure to afford Plaintiffs and putative class members the protections necessary to ensure an opportunity to submit CAT claims—protections necessary to allow for judicial review of those claims.

Second, even if Plaintiffs' claims were interpreted as a challenge to § 1252(a)(4),

Defendants fail to recognize that § 1252(f)(1) only covers portions of the INA "as amended by [IIRIRA] *of 1996*." (emphasis added). Thus, § 1252(f)(1) does not cover all challenges pertaining to the referenced statutes. Instead, it only encompasses challenges to the referenced provisions of the INA *in existence at the time* of IIRIRA's amendments. Yet, § 1252(a)(4) did not exist at that time. *See* REAL ID Act of 2005, Pub. L. No. 109-13, § 105, 119 Stat. 231, 310.

Moreover, § 1252(f)(1) does not apply simply because Plaintiffs' challenge to the non-referenced provision, FARRA, may potentially have a collateral impact on a covered provision, such as delaying the execution of a removal order under § 1231. Because Plaintiffs' claims regarding CAT protections do not arise from the INA but rather from FARRA and its implementing regulations, any impact on § 1231 is collateral. *See Gonzalez v. ICE*, 975 F.3d 788, 812-15, 814-15 (9th Cir. 2020) (affirming injunction prohibiting issuance of certain immigration detainers and finding that any effect on provisions covered by § 1252(f)(1) was collateral); *Al Otro Lado v. Exec. Off. for Immigr. Review*, 120 F.4th 606, 628 (9th Cir. 2024) ("Even though asylum eligibility may change the outcome of a removal proceeding under a covered provision [of § 1252(f)(1)], such an effect is collateral under our precedents" which "[t]he Supreme Court acknowledged . . . in [*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)] and left . . . undisturbed.").

### 2.    Section 1252(f) Does Not Limit Declaratory Relief.

Section 1252(f)(1) is not a barrier to class certification either, as Plaintiffs seek classwide declaratory relief in addition to injunctive relief. Contrary to Defendants' assertions, § 1252(f)(1) does not encompass any other judicial remedies not listed in the statute's plain language. Notably, the Supreme Court and other courts have affirmed that district courts have jurisdiction

over class actions challenging INA provisions covered by § 1252(f)(1), recognizing that declaratory relief is available even if injunctive relief is not.

Section 1252(f)(1) limits only orders that "enjoin or restrain" the specified parts of the INA as amended in 1996. These are legal terms of art that track the two types of injunctive relief provided under the Hobbs Act, 28 U.S.C. § 2341 *et seq.*, and the Federal Rules of Civil Procedure. *See* Hobbs Act, 28 U.S.C. § 2349(a), (b) (setting out, respectively, the power of the court of appeals to enjoin and temporarily restrain an agency order); Fed. R. Civ. P. 65 (providing for "injunctions and restraining orders"); *see also Arevalo v. Ashcroft*, 344 F.3d 1, 7 (1st Cir. 2003) ("The most sensible way to give operative effect to both words in this statutory scheme is to treat the word 'enjoin' as referring to permanent injunctions and the word 'restrain' as referring to temporary injunctive relief . . . ."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010) (term "restrain" is "best read to refer to temporary injunctive relief," while "enjoin" refers to permanent injunctions).

By contrast, § 1252(f)(1) makes no mention of declaratory relief, a distinct form of relief made available in the Declaratory Relief Act. 28 U.S.C. § 2201; *see also* Fed. R. Civ. P. 57. Declaratory relief "is not ultimately coercive," *Steffel v. Thompson*, 415 U.S. 452, 471 (1974), and does not "interdict[] . . . the operation . . . of the statute," *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963). Defendants seek to conflate the two different forms of relief by citing to Fed. R. Civ. P. 23(b)'s reference to classes that seek "final injunctive relief or corresponding declaratory relief." ECF 52 at 8. Their argument ignores that these terms are discussed in the disjunctive. More importantly, it ignores Congress's decision to include only injunctive relief in § 1252(f)(1). Indeed, subsection § 1252(f) is entitled "Limit on Injunctive Relief."

Defendants further ignore that the Supreme Court has already twice affirmed that district

courts have authority to entertain class actions seeking declaratory relief. *See Nielsen v. Preap*,

586 U.S. 392, 394 (2019) ("Whether the District Court in the *Preap* case had jurisdiction under

§ 1252(f)(1) to grant injunctive relief is irrelevant because the court had jurisdiction to entertain

the plaintiffs' request for declaratory relief."). Subsequently, in *Biden v. Texas*, 597 U.S. 785,

798 (2022), the Court again explained that, while § 1252(f)(1) "deprives courts of the power to

issue a specific category of remedies," the provision should not be read to deprive the court of

authority to consider other remedies:

> Our prior cases have already embraced this straightforward conclusion. Most
> relevantly, the Court previously encountered a virtually identical situation in
> *Nielsen* v. *Preap*. . . . *[S]ee also Jennings* v. *Rodriguez*, 138 S.Ct. 830, 875 (2018)
> (BREYER, J., joined by Ginsburg and SOTOMAYOR, JJ., dissenting)
> (concluding that "a court could order declaratory relief" notwithstanding section
> 1252(f)(1)). And previous statements from this Court regarding section 1252(f)(1)
> are in accord. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S.
> 471, 481 (1999) ("By its plain terms, and even by its title, [section 1252(f)(1)] is
> nothing more or less than a limit on injunctive relief.").

*Id.* at 800-01; *see also Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1048-49 (S.D. Cal.

2022) ("Although the issuance of a class-wide injunction is prohibited, § 1252(f)(1) does not

strip this Court of jurisdiction to issue a class-wide declaration."), *aff'd in part sub nom. Al Otro

Lado v. Exec. Off. for Immigr. Review*, 120 F.4th 606 (9th Cir. 2024); *Vazquez Perez v. Decker*,

No. 18-cv-10683 (AJN), 2019 WL 4784950, at *9 (S.D.N.Y. Sept. 30, 2019) (finding that

§ 1252(f)(1) "does not strip this Court of jurisdiction to issue declaratory relief on a classwide

basis"); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 200 (D.D.C. 2020) ("[E]ven if § 1252(f)(1)

precludes classwide *injunctive* relief, it does not bar the classwide *declaratory* relief also sought

by Plaintiffs").

    For all these reasons, Defendants err in asserting that this Court should deny class

certification because § 1252(f)(1) precludes classwide relief.

**C.    The Request for Provisional Certification Was Appropriate and Is Now Moot.**

Plaintiffs initially sought provisional class certification in their Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, ECF 7, because full briefing on class certification had not yet been completed. And, in that briefing, Plaintiffs established that provisional class certification was permitted and warranted because they met the requirements for class certification under Rule 23. ECF 7 at 18-19; ECF 5 at 20. Defendants acknowledge that courts continue to grant provisional class certification where a Plaintiff demonstrates that all Rule 23 requirements are satisfied. ECF 52 at 5-6 (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179-80 (D.D.C. 2015)).[2] Moreover, in granting provisional certification, courts understand that such certification "may be altered or amended before the decision on the merits." *Damus v. Nielsen*, 313 F. Supp. 3d 317, 329 (D.D.C. 2018) (quoting *Bame v. Dillard*, No. 05-1833, 2008 WL 2168393, at *5 (D.D.C. May 22, 2008)).[3]

However, now that class certification briefing is complete, there is no longer a need for the Court to address *provisional* certification. Instead, the Court can and should concurrently resolve the motions for class certification and preliminary injunctive relief.

---

[2]    Other courts regularly have done so also. *See, e.g.*, *Gomes v. Acting Sec'y U.S. Dep't of Homeland Sec.*, No. 20-cv-453-LM, 2020 WL 2113642, at *1-2 (D.N.H. May 4, 2020); *Maney v. Brown*, 516 F. Supp. 3d 1161, 1171 (D. Or. 2021); *see also AOL v. Wolf*, 952 F.3d 999, 1015-16 (9th Cir. 2020) (affirming preliminary injunction on behalf of provisionally certified class where district court found that Rule 23 requirements were met).

[3]    *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 30 (1st Cir. 2008) (Torruela J., concurring in part) ("Importantly, a district court remains free at a later stage to modify or even decertify a class if later evidence disproves the plaintiffs' assertions regarding, for example, the predominance of common issues.").

**D.      Plaintiffs Satisfy Rule 23(a).**

Federal Rule of Civil Procedure 23(a)(1)-(4) requires Plaintiffs seeking class certification to establish numerosity, commonality, typicality, and adequacy of representation. Defendants do not dispute that the size of the putative class is so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Rather, Defendants challenge commonality, typicality, and the adequacy of the Plaintiffs' representation. *See* ECF 52 at 10-15. But, as Defendants acknowledge, commonality is satisfied when the proposed "common contention" is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." ECF 52 at 10 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Here, Plaintiffs challenge a common policy or practice: Defendants' failure to provide noncitizens who have final removal orders with meaningful notice and opportunity to present a fear-based claim prior to deportation to a third country. *See, e.g.*, ECF 1 ¶¶ 102-07, 111, 115-17, 120-21. All Defendants' contrary claims fail to acknowledge this "common contention." *Wal-Mart*, 546 U.S. at 250.

Defendants first attempt to separate Plaintiffs and putative class members who have already been removed, arguing that "this Court lacks jurisdiction to order their return under 8 U.S.C. § 1252(g) and over their claims seeking [protections] prior to their removal to a third country." ECF 52 at 10-11. This is simply incorrect. As explained in Plaintiffs' concurrently filed reply in support of their preliminary injunction motion, this Court in fact *does* have the authority to order return, as part of its inherent equitable authority. Defendants' reliance on *Gicharu v. Moniz*, No. 23-11672-MJJ, 2023 WL 5833115 (D. Mass. Sept. 8, 2023) is misplaced, as the habeas petitioner's claims in that case were in fact mooted out: the pro se petitioner sought release under *Zadvydas v. Davis*, 533 U.S. 678 (2001), which requires release for certain

individuals whose removal is not reasonably foreseeable. But the petitioner was in fact removed almost immediately after he filed the habeas petition. *Gicharu*, 2023 WL 5833115 at *1. Thus, his removal was more than reasonably foreseeable—it had in fact already occurred—and the district court concluded that the habeas petition was moot.

Critically, the claims of putative class members here who have been deported are not moot. Upon return, they still will be subject to third country deportations without sufficient process, requiring the same protections sought on behalf of the entire class. The fact that they also require an additional remedy—return—does not defeat commonality. *See, e.g.*, *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 57 (D. Mass. 2010) (recognizing a "'common core' of issues among plaintiffs, even if coupled with 'disparate legal remedies within the class'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)); *Ortiz v. Saba Univ. Sch. of Med.*, 348 F.R.D. 4, 11 (D. Mass. 2024) (same). Moreover, should the Court find it necessary, it could certify a subclass for those individuals, with O.C.G. as a subclass representative. *See, e.g.*, *Perry v. Equity Residential Mgmt., L.L.C.*, No. 12-10779-RWZ, 2014 WL 4198850, at *6 (D. Mass. Aug. 26, 2014) (creating subclasses "on [the judge's] own initiative"); *Immigrant Defs. L. Ctr. v. Mayorkas*, No. CV 20-9893 JGB (SHKx), 2023 WL 3149243, at *36 (C.D. Cal. Mar. 15, 2023) (certifying nationwide subclass consisting of individuals outside of the United States after deportation); *cf. Gonzalez v. Holder*, No. 10-CV-02211 DMG (DTBx), 2015 WL 11116905, at *1 (C.D. Cal. Sept. 25, 2015) (approving settlement agreement requiring government to facilitate return of removed class members).

Defendants' suggestion that the Court lacks jurisdiction over the claims of putative class members with reinstatement orders under 8 U.S.C. § 1231(a)(5) for which the prior removal order is an expedited removal order is even further afield. ECF 52 at 11. Oddly, Defendants

10

argue that 8 U.S.C. § 1252(e)(1)(A) applies, but that statute limits only "declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude [a noncitizen] in accordance with [8 U.S.C. § 1225(b)(1)]." *Id.* No member of the putative class seeks *any* relief pertaining to an expedited removal order or any actions to execute such an order. Instead, those orders already were executed, and subsequent reinstatement orders were issued under § 1231(a)(5) after the noncitizens returned to the United States. Thus, the class is limited to individuals whose most recent final removal orders were issued under the three different statutory authorities identified in the class definition. ECF 1 ¶ 91.[4]

Defendants also argue that, because Plaintiffs' and putative class members' final removal orders were issued under three statutes, their claims lack commonality. ECF 52 at 12. In support, Defendants highlight the different administrative review procedures related to reopening or review, and differing access to discretionary forms of relief that apply to such persons. But these differences are irrelevant to the common contentions Plaintiffs have shown can be resolved identically for all class members. Fundamentally, Plaintiffs all seek to enforce the same basic set of rights under FARRA, the INA, implementing regulations, and the Due Process Clause. In doing so, and as Plaintiffs have repeatedly affirmed, they do not challenge their removal orders, and they seek only the opportunity to apply for *mandatory* forms of protection from removal. *See, e.g.*, ECF 1 ¶¶ 21-22; ECF 44 at 5, 41. And, where a petitioner "seeks declaratory and injunctive relief equally applicable to all putative class members . . . individual differences" do not defeat commonality. *Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, 561 F. Supp. 3d 93,

---

[4]    Notably, § 1252(e)(1)(A) does not bar review of reinstatement orders that are based on expedited removal orders, *see, e.g.*, *Bonilla v. Garland*, 23 F.4th 61, 64 (1st Cir. 2022); *Ayala v. Sessions*, 855 F.3d 1012, 1018 (9th Cir. 2017), let alone Plaintiffs' claims, which are even further removed from any previously executed expedited removal order.

101 (D.N.H. 2021); *see also Applegate v. Formed Fiber Techs., LLC*, No. 2:10-cv-00473-GZS, 2012 WL 3065542, at *6 (D. Me. July 27, 2012) ("Where class members have different degrees of injury or even where defenses might exist only as to particular individuals, commonality has been found for class certification.").[5] Notably, Defendants' new Memorandum regarding third country removals expressly applies to noncitizens "with final orders of removal pursuant to [INA §§] 240, 241(a)(5), or 238(b)." *See* ECF 43-1 at 1; *cf. Ortiz*, 348 F.R.D. at 11 (explaining that a plaintiff "established a 'common core of salient facts' through identifying a significant, uniform representation" made to all class members). This suggests that even Defendants believe Plaintiffs' claims are suitable for resolution via a single stroke.

Defendants are incorrect that Plaintiffs' due process claim presents their only common allegation. ECF 52 at 13. Plaintiffs raise common allegations as to the INA, FARRA, and CAT regulations. *See, e.g.*, ECF 1 ¶¶ 37-61, 93-95, 105, 110, 120. But even if Defendants' contention were true, claims that a common policy or practice violates due process are regularly resolved on a class-wide basis. Indeed, "[c]ourts also have allowed class actions under subdivision (b)(2) arising out of the alleged violation of the class members' due-process rights," Charles Alan Wright & Arthur R. Miller, 7AA *Federal Practice and Procedure* § 1776.1 (3d ed.) (citing as an example *Brito v. Barr*, 415 F. Supp. 3d 258 (D. Mass. 2019), *rev'd in part on other grounds*, 22 F.4th 240 (1st Cir. 2021)); *see also Garcia-Rubiera v. Calderon*, 570 F.3d 443, 456-58, 461 (1st Cir. 2009) (remanding with instructions to certify, under Rule 23(b)(2), a class challenging lack of notice under the Due Process Clause); *Hernandez v. Sessions*, 872 F.3d 976, 993-94 (9th Cir.

---

[5]     Defendants claim *Gomes* and other detention-related cases Plaintiffs cite are irrelevant because "they dealt with conditions at a detention facility shared by all proposed class members." ECF 52 at 12-13. But Defendants do not argue Plaintiffs' geographical distribution defeats commonality; instead, they rely on individual differences that do not impact Plaintiffs' common contention.

2017); *Mendez Rojas v. Johnson*, 305 F. Supp. 3d 1176, 1183-87 (W.D. Wash. 2018).[6] Plaintiffs

challenge whether the *policy or practice* of failing to provide meaningful notice and opportunity

to be heard regarding fear of deportation to a third country violates due process, not its

application in any particular case.

Just yesterday, the Supreme Court underscored this point. In *Trump v. J.G.G.*, the Court

clarified that all Venezuelan noncitizens subject to a Presidential Proclamation invoking the

Alien Enemies Act (AEA) were "entitled to notice and opportunity to be heard" as to their legal

claims challenging the AEA's invocation and application. No. 24A931, 2025 WL 1024097, at *2

(U.S. Apr. 7, 2025) (per curiam). In doing so, the Court held that regardless of the noncitizens'

underlying claims or the basis on which the government believes any given person is subject to

the Proclamation, noncitizens "subject to removal orders under the AEA are entitled to notice

and an opportunity to challenge their removal" and such "notice must be afforded within a

reasonable time and in such a manner as will allow [those detained subject to the AEA] to

actually seek habeas relief in the proper venue before such removal occurs." *Id.* The holding

underscores that a court can resolve due process claims regarding notice and opportunity to be

heard on a classwide basis regarding a policy that applies equally to a group of noncitizens.

Finally, Defendants claim that Plaintiffs have not demonstrated that they will be deprived

of "any notice or opportunity to present a fear-based claim prior to deportation to a third

country." ECF 52 at 11-12. But according to their own statements to this Court, Defendants'

---

[6]     Defendants' reliance on *Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021), is inapposite. ECF
52 at 13. While the First Circuit ultimately vacated an order specifying how to adjudicate bond
requests on a class-wide basis in that case, it did so only because the district court had first
decided the common question that merited class treatment—whether certain individuals were
automatically entitled to bond hearings after six months—in the negative. *Id*. at 10. Here, the
Court obviously has not yet ruled on the merits of Plaintiffs' common claims.

position is that they need not give notice of third country removal. *See* ECF 44 at 29. Moreover, the March 30 Memorandum on which Defendants now rely expressly states that where the Department of State accepts blanket diplomatic assurances from a country, no notice is required and the noncitizen "may be removed without the need for further procedures." ECF 43-1 at 1-2.

And, as explained in Plaintiffs' concurrently filed reply in support of their motion for a preliminary injunction, the motion to reopen process does not provide a meaningful opportunity to seek protection for individuals like M.M. and E.F.D., especially if they have not been provided with notice of the country to which they may be deported. Nor is D.V.D.'s claim improperly speculative, in light of the fact that he is subject to Defendants' policy regarding notice and fear-based claims if DHS seeks to deport him anywhere other than Cuba (which given the United States' relationship with Cuba appears likely). *See* U.S. Dep't of State, Cuba, https://www.state.gov/countries-areas/cuba/ (last visited Apr. 7, 2025) ("The United States pursues limited engagement with Cuba . . . ."); ECF 1-4 at 2 (indicating that Defendants are now reviewing the cases of all individuals released after a final order with no significant likelihood of removal for potential third country removal); *cf. Pustell v. Lynn Pub. Schs.*, 18 F.3d 50, 52 (1st Cir. 1994) (finding claim ripe where "[n]o further factual development is necessary for us to resolve the question at issue, namely, whether the policy . . . is constitutional"). Finally, even though Defendants claim that on the day they removed O.C.G. to Mexico, "ERO verbally asked O.C.G. if he was afraid of being returned to Mexico," they make that assertion via an inadmissible hearsay declaration, Fed. R. Evid. 602, that does not identify the officer who purportedly talked to O.C.G., or in what language they communicated. ECF 31-1 at 3. Defendants pointedly do not contest that the U.S. Immigration and Customs Enforcement (ICE) officer informed O.C.G. that the order of protection he was granted from the IJ had "expired,"

nor do they contest that ICE refused him the opportunity to contact his attorney when he

discovered he was being removed to Mexico. ECF 31-1.

Defendants then make the same arguments to challenge typicality and adequacy of

representation, *see* ECF 52 at 14-15, but they fail for the same reasons. Defendants contend that

Plaintiffs are not part of the putative class, but in doing so they twist the class definition, arguing

that O.C.G cannot demonstrate he was removed without "any notice." ECF 52 at 14. But the

putative class is not defined as those noncitizens who did not receive "any notice." Indeed,

Plaintiffs do not dispute that O.C.G. was told he was being removed to Mexico only as he was

taken out of the detention center and placed on a bus. ECF 8-4 ¶¶ 8-10. Instead, Plaintiffs

contend that this was not satisfactory notice and that it deprived O.C.G. of a meaningful

opportunity to apply for relief. And Plaintiffs flatly reject Defendants' assertion that O.C.G. had

an "opportunity to assert a fear-based claim." ECF 52 at 15. As to the remaining Plaintiffs,

Defendants suggest a Catch-22: because Plaintiffs have not received notice that they "will" be

deported to a third country, their claims are too speculative, ECF 52 at 15, but if Plaintiffs were

to wait to raise their claims until they *had* received notice, they likely already would be deported,

given Defendants' stated policy that such notice is not required in at least some cases, ECF 43-1

at 1; *see also* ECF 44 at 29; *see also infra* at 16-17.[7]

### E.    Plaintiffs Satisfy Rule 23(b).

Plaintiffs also satisfy Rule 23(b)(2), which requires that "the party opposing the class has

---

[7]    If this Court were inclined to agree with Defendants' concerns regarding the scope of the
class, it could amend the class to expressly incorporate individuals "at risk of" removal to a third
country if that term were defined. *Cf. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)
("Even after a certification order is entered, the judge remains free to modify it in the light of
subsequent developments in the litigation."); *see also supra* 8 & n.3. Notably, though, only
Defendants possess information about which persons they plan to remove to a third country.

acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Defendants' attempts to undermine the propriety of certification under Rule 23(b)(2) are unavailing, contrary to the record, and nonsensical.

Defendants erroneously claim that the Named Plaintiffs have not shown they have been subjected to the policy they complain of, suggesting that the first prong of Rule 23(b)(2) is not met. ECF 52 at 16-17. But the record demonstrates that Defendants themselves announced that they would be assessing the feasibility of third country removals for putative class members. *See* ECF 1-4 at 2. Defendants also have denied any obligation to provide putative class members with meaningful notice and an opportunity to submit a fear-based claim prior to removal to a third country. *See, e.g.*, ECF 44 at 29; ECF 40 at 4, 6 (discussing Defendants' position during the TRO hearing); ECF 31 at 14-17 (defending Defendants' lack of process as not legally required); ECF 43 (notifying court of new policy). Moreover, Plaintiffs already have explained why Defendants' new Memorandum is unlawful and inadequate. *See generally* ECF 49. In any event, Defendants' newly announced policy plainly demonstrates that DHS is capable of fashioning a uniform policy with respect to the putative class. *Compare* ECF 43-1 at 1 (asserting it "clarifies DHS policy regarding the removal of [noncitizens] with final orders of removal pursuant to sections 240, 241(a)(5), or 238(b)" of the INA), *with* ECF 5 at 2 (defining class as concerning individuals with final removal orders under those same sections).

It is thus not "speculative" that D.V.D. and M.M. as well as E.F.D. are at risk of removal to a third country. Nor is placing the burden on noncitizens—in the context of legal and practical impediments—to file motions to reopen a viable mechanism for obtaining an opportunity to be heard for either Plaintiffs or the putative class. *See, e.g.*, Exh. L attachment (Gordon Decl.)

(denying motion to reopen seeking protection from third country as "outside the jurisdiction" of the immigration court); Exh. M attachment (Gonzalez Decl.) (denying motion to reopen as premature for lack of third country information); ECF 8-11 ¶ 15 (describing denial of motion to reopen regarding third country deportation); *see also generally* Exh. I (Austin Decl.) (describing motion to reopen denied as "too generalized and vague" despite documentation and describing procedural, evidentiary, and substantive barriers to filing motions to reopen, especially for pro se and detained noncitizens given limitations on communication and mail access in immigration detention, as well as the impossibility of seeking reopening without knowledge of the country someone will be deported to); Exh. J (Mayer-Salins Decl.) (same, highlighting that pro se individuals are unlikely to be aware of the availability of motions to reopen as a procedural mechanism); Exh. K (Morales Decl.) (same, highlighting difficulties for detained individuals with limited English proficiency and the likelihood of deportation while a motion to reopen is pending).

    As for Plaintiff O.C.G., Defendants' hearsay statement, ECF 31-1 ¶ 13, that he was allegedly given notice and an opportunity to assert a fear-based claim and did not do so is belied by the facts of the case. Defendants ignore that the notice and opportunity must be meaningful. It is of no consequence that ICE told O.C.G. he was being removed to Mexico as they loaded him onto the bus, denying his requests to allow him to call his lawyer. *See* ECF 8-4 ¶¶ 9-10. Defendants assert that O.C.G. stated he was not afraid to return to Mexico, despite his sworn affidavit and sworn testimony in immigration court. ECF 31-1 ¶ 13. Defendants do not dispute that he was prevented from calling his attorney. Moreover, Defendants fail to even identify the ICE officer who allegedly asked whether O.C.G. was afraid to return to Mexico. *Id.*; *see also* Fed. R. Evid. 602 (requiring witness testifying to a matter to have "personal knowledge of the

matter," including when testifying as to an opposing party's statements); *see also* ECF 40 at 6 n.11 (recognizing questionable reliability of Defendants' declaration on this topic). Accordingly, Defendants' suggestion that they have not acted on grounds that apply generally to the class and do not threaten the class with the same injury and unlawful conduct is contradicted by their own directives and admissions.

Defendants' conclusory argument that Rule 23(b)(2) is not satisfied fares no better. All putative class members face the same circumstance: threatened removal to a third country without meaningful notice and opportunity to present a protection claim. They accordingly ask for the same remedy as they were all "entitled to notice and opportunity to be heard." *J.G.G.*, 2025 WL 1024097, at *2; *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner.") (citation and internal quotations omitted); *Vazquez-Robles v. CommoLoCo, Inc.*, 757 F.3d 1, 2 (1st Cir. 2014) (declaring "[n]o principle is more firmly embedded in American jurisprudence than" that requiring "notice and an opportunity to be heard" prior to official action that "threatens a person's life, liberty, or property"); *see also* ECF 31 at 17 (conceding that "notice" and "an opportunity to be heard" are "essential requirements of due process"). Plaintiffs thus ask for a remedy that all class members are entitled to, making certification under Rule 23(b)(2) appropriate and necessary.

Finally, Defendants' reliance on *Jennings v. Rodriguez*, ECF 52 at 17, is inapposite, for there the Court held certification under Rule 23(b)(2) may not be proper because the lower court had acknowledged "some members of the certified class may not be entitled to bond hearings as a constitutional matter," 583 U.S. 281, 313 (2018). Moreover, the detained individuals seeking class certification in *Vallario v. Vandehey* alleged they were exposed to "an unconstitutional risk of harm" arising from a "wide range of behavior," and made no "effort to give content" to the relief they sought. 554 F.3d 1259, 1260-61, 1268 (10th Cir. 2009) (internal quotations omitted). Thus, they did not demonstrate that a "single injunction that need not differentiate between class members" would resolve their claims. *Id.* at 1268 (internal quotations omitted). By contrast, Plaintiffs here seek relief from Defendants' policy with respect to one factual circumstance— third country removal—and have clearly specified the relief they seek that would address the injury to all class members. *See* ECF 5 at 19 (asking for, inter alia, "meaningful notice and an opportunity to present a fear-based claim to an immigration judge before deportation").

## IV.    CONCLUSION

For the foregoing reasons, the Court should certify the putative class.

Respectfully submitted,

s/*Trina Realmuto*

Trina Realmuto*
Kristin Macleod-Ball*
Mary Kenney*
Tomás Arango
**NATIONAL IMMIGRATION
    LITIGATION ALLIANCE**
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
**NORTHWEST IMMIGRANT
    RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

19

Anwen Hughes*
**HUMAN RIGHTS FIRST**
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

*Attorneys for Plaintiffs*

\* *Admitted pro hac vice*


CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing (NEF).


<u>s/ *Trina Realmuto*</u>
Trina Realmuto
National Immigration Litigation Alliance


Dated: April 8, 2025