**Declaration of Kelsey Morales**

I, Kelsey Morales, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

1. I am an immigration attorney with the Immigration Representation Unit of the Alameda County Public Defender's Office, the first deportation defense unit to be housed in a county public defender office in California and anywhere outside of New York State. I have practiced federal litigation and removal defense for over eight years, with the last five years focused on representing noncitizens detained by the Department of Homeland Security ("DHS").

2. Our immigration unit represents indigent individuals, including detained individuals, who are facing removal from the United States. We have limited resources for *pro bono* representation and focus on cases of indigent noncitizens detained in California who have viable claims for relief.

3. I have represented noncitizens detained by DHS in immigration and custody proceedings before the Executive Office for Immigration Review ("EOIR"), on writs of habeas corpus before the U.S. District Court for the Northern District of California, and on petitions for review before the U.S. Court of Appeals for the Ninth Circuit. My representation before EOIR includes representing noncitizens detained by DHS in removal and withholding-only proceedings, including before immigration judges and on direct appeal before the Board of Immigration Appeals ("BIA"), and on motions to reopen ("MTR") before the BIA.

4. MTRs are a legal vehicle by which noncitizens can seek to reopen completed immigration proceedings. *See* 8 U.S.C. § 1229a(c)(7). Successful MTRs must include new facts that are supported by affidavits or other evidence, such as expert reports or country conditions. *See* 8 U.S.C. § 1229a(c)(7)(B). MTRs seeking the opportunity to pursue relief, including relief based on a fear of persecution or torture, must include a completed copy of the relevant application and evidence demonstrating *prima* facie eligibility for relief. *See* 8 C.F.R. §§ 1003.2(c)(1), 1003.23(b)(3).

5. Pursuing MTRs for noncitizens is a difficult and time-consuming process in the best of circumstances. Such motions involve gathering supporting evidence, preparing applications for relief (if relevant), and research and drafting the motion itself, which may include statutory and constitutional arguments. In addition, these motions require familiarity with the client's prior immigration proceedings and generally must be completed on an expedited timeline of 90 days or sooner if the movant is seeking to establish timeliness for the purposes of a statutory MTR. The statute only provides noncitizens with the opportunity to file one MTR, with a limited exception. *See* 8 U.S.C. § 1229a(c)(7)(A), (c)(iv). Failure to make an argument or present relevant evidence may be prejudicial to the client. As such, it is imperative that all arguments and evidence challenging the initial removal order and preserving all potential immigration relief be included in the MTR.

EXHIBIT K

6. This is also the case for *sua sponte* MTRs filed more than 90 days after a final removal order. *Sua sponte* MTRs similarly require knowledge of the client's prior immigration history and must contain supporting evidence and comply with agency filing requirements to have a chance of success. Moreover, *sua sponte* motions require gathering additional equity documents, because the standard for *sua sponte* motions is highly discretionary.

7. MTRs are even more challenging and time-consuming when the noncitizen is detained by DHS. This is because it is difficult to obtain timely access to noncitizens detained by DHS.

8. In my experience, the likelihood of promptly obtaining confidential legal calls is highly dependent on the detention facility. For instance, I recently submitted requests for legal calls with several clients who are detained at the Golden State Annex in McFarland, California and the soonest the facility would schedule a legal call was 10 days after I had submitted my requests; no earlier calls were available. Moreover, detained clients may not make it to scheduled legal calls for reasons outside of their control. For example, last week, one of my clients was unable to appear at a scheduled legal video call because the facility did not transport him to the legal visit room. Delays in timely processing requests for legal calls can also make it difficult to coordinate with expert witnesses who interview the client in order to prepare their report or evaluation.

9. Another challenge I frequently face is reliance on postal mail to obtain the evidence necessary for any MTR. In my experience, many detention centers do not have a reliable or transparent mechanism for attorneys to obtain electronic signatures from detained clients. This is a big hurdle in representation because executed release forms are necessary before I can request a copy of a client's immigration records via EOIR or a Freedom of Information Act ("FOIA") request. It is generally not feasible to obtain client signatures or other case documents in person due to the remote nature of the detention facilities. The closest facility at which one of my clients is detained is over 250 miles away from my office, which is over a four-hour drive one way.

10. Another obstacle is the DHS's practice of transferring noncitizens between detention facilities, without any prior warning to them or their counsel. I have had a client transferred without my knowledge as recently as February 2025. Another coworker had two clients transferred without prior warning within the past year, with one client transferred out of state. Such transfers generally cause further delay in obtaining necessary information, as they often necessitate resending documents and scheduling new confidential calls. For example, in the case of my colleague's client who was transferred out of state, the unannounced transfer interfered with a previously scheduled psychological evaluation.

11. To determine whether a client has a viable MTR, I need to do a consultation with the client and review their immigration records. Many noncitizens may not know that they can file MTRs or be aware of the statutory or constitutional arguments that can be raised

in such motions. This is particularly true for noncitizens who are unrepresented and detained. Moreover, MTRs are highly technical motions and subject to both agency and federal court case law. Even if a detained noncitizen has heard of the existence of MTRs as a vehicle for reopening, in my experience, they are typically unaware of the many specific requirements they entail, such as submitting the relevant application for relief, presenting new or previously unavailable evidence, and complying with the statutory deadline (or establishing equitable tolling of such deadline). Additionally, EOIR has various practice manuals and regulations that impose rules on page counts, presentation of evidence, and service that filers must follow or the motion will be rejected.

12. In my opinion, it is difficult for detained, *pro se* noncitizens to comply with these legal and technical requirements. Based on my experience working with detained clients for the past five years, it is particularly difficult for noncitizens detained by DHS to obtain the evidence they need to support reopening from outside of custody. This includes documentation to support any fear-based claim because, again, the motion must establish *prima facie* eligibility for relief to be successful.

13. In addition, limited English proficiency will pose a major obstacle to *pro se* filings of MTRs, as all motions filed before EOIR must be filed in English (or accompanied by a certified English translation). *Pro se* noncitizens who do not understand English, or do not know how to write in English, will find it nearly impossible to file MTRs without counsel.

14. MTRs for detained noncitizens are usually urgent endeavors. That is because, generally, not only must the noncitizen establish timeliness in filing their motion, but they are also under a final order of removal which DHS may execute at any moment. While reserving direct appeal to the BIA of an Immigration Judge's initial removal order automatically stays removal, no such mechanism exists with respect to MTRs except in very narrow circumstances. *See* 8 U.S.C § 1229a(c)(7)(C)(iv). This means that DHS may remove a noncitizen while they are preparing to file a MTR, while the MTR is pending before EOIR, or even while an appeal of the Immigration Judge's denial of the MTR is pending with the Board of Immigration Appeals. That is because the stay process before the agency is discretionary and there is no published decision on setting forth stay factors. This is problematic because it means that noncitizens with viable MTRs may be removed before their motion can be adjudicated on the merits, even if they are seeking protection from persecution or torture in the country to which they are removed.

Signed under penalty of perjury this 8th day of April 2025 at Oakland, California.

_____
Kelsey Morales