UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity, <br><br> Defendants. | Case No. 25-cv-10676-BEM |

**PLAINTIFFS' NOTICE OF MOTION FOR EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM IN SUPPORT**

Plaintiffs respectfully request that the Court grant their Emergency Motion for a Temporary Restraining Order. The grounds for this motion are set forth in the accompanying memorandum of law, exhibits in support thereof, and the applicable law. A proposed order also accompanies this motion.

REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiffs believe that oral argument may assist the Court but that this motion is urgently filed and there may not be time for argument before class members are deported.

1

**INTRODUCTION**

Plaintiffs seek an emergency order enjoining class members from being removed to Libya (and any country en route to Libya, including Saudi Arabia) and any other third country until Defendants demonstrate they have complied with this Court' Preliminary Injunction, Dkts. 64 and 86, ensuring meaningful notice and an opportunity to apply for protection under the United Nations Convention Against Torture (CAT) as to Libya and any other third country.

Late last night and earlier this morning, alarming reports from class members' counsel and from the press emerged announcing the imminent removal of, inter alia, Laotian, Vietnamese, and Philippine class members being prepared for removal to Libya, a county notorious for its human rights violations, especially with respect to migrant residents. Class members were being scheduled for removal despite not receiving the required notice and opportunity to apply for CAT protection. *See* Exhibit A (media reports); Exhibit F (imminent flight plan report). This motion should not even be required as it blatantly defies this Court's preliminary injunctions to remove class members without proper notice, a reasonable fear screening, and a 15-day opportunity to submit a motion to reopen after any negative reasonable fear determination. However, multiple credible sources report that flight/s are preparing to immediately depart the United States carrying class members for removal to Libya.

This motion follows class counsel receiving multiple reports that class members and their immigration counsel have not received the required protections provided by this Court's Preliminary Injunction. *See* Dkts. 64, 86. Specifically, they have not been provided, (1) notice of third country removal in their own language, (2) notice of the opportunity to request and obtain a reasonable fear screening, (3) notification of the results of any reasonable fear screening, and (4) a fifteen-day window in which to file a motion to reopen with the

2

immigration court if there is negative reasonable fear determination.

Given that class members are now facing imminent removal to Libya in the a matter of minutes or hours, Plaintiffs ask this Court for an immediate order restrain all flights carrying class members to Libya or any other third country, and if necessary, ordering the immediate return of any class members removed to Libya until Defendants provide the Court and Class Counsel with evidence that Defendants have complied with all terms of the preliminary injunction, including, but not limited to, evidence of written notices provided to class members' (and their counsel, if any) in their native language, written notice provided to class members (and their counsel, if any) on how to request and obtain a reasonable fear screening, notice of outcome of reasonable fear determinations, and evidence documenting that fifteen days have elapsed after any negative reasonable fear determination in which class members could file a motion to reopen with the immigration court.

As evidenced by the attached exhibits, Class Counsel sent Defendants' counsel an email this morning inquiring as to the status of the reported removals to Libya. Exhibit E. Defendants' counsel advised they would follow but 4.5 hours later, there has been no response. Accordingly, undersigned counsel then emailed Defendants' counsel to advise that because we have not received any confirmation that class members are not in fact being removed to Libya in violation of the preliminary injunction, Plaintiffs will file an emergency TRO to request that the reported flights to Libya (and Saudi Arabia or any other stopover country in route to those destinations) be immediately halted, and that if the flights have already disembarked on their trip that they immediately be ordered returned to the United States. *Id*.

## STATEMENT OF FACTS

Last night and this morning, government officials confirmed to multiple news outlets

that Defendants—or those working with Defendants—intend to remove people to Libya. *See, e.g.*, Exhibit A, including Exhibit A1, A2, and A8, Phil Stewart et al., *Exclusive: US may soon deport migrants to Libya on military flight, sources say*, Reuters (May 7, 2025); Eric Schmitt et al., *Trump Administration Plans to Send Migrants to Libya on a Military Flight*, New York Times (May 6, 2025); Camilo Montoya-Galvez, Eleanor Watson, *Trump administration may soon deport migrants to Libya, U.S. officials say*, CBS News (May 6, 2025). According to Reuters, "[t]wo of the officials said the U.S. military could fly the migrants to the North African country as soon as Wednesday . . . ." Exhibit A2. Citing government officials, the New York Times similarly reports that "a flight to Libya carrying the deportees could leave as soon as Wednesday." Exhibit A1. These reports are consistent with previous reports that Defendants have sought to make arrangements for third country removals to Libya. *See* Alexander Ward et al., *U.S. Looks for More Countries to Take Migrants*, Wall Street J. (Apr. 1, 2025) (identifying Honduras as a third country to which Defendants will soon begin removing people, and Mexico, Libya, and Rwanda (among others) as potential options).

Additional evidence indicates that these new reports are accurate and that Defendants or those working with them intend to remove people who are covered by the preliminary injunction in this case. First, publicly available information indicates that a C-17 flight is scheduled to fly on Wednesday from Kelly Field in San Antonio, Texas, to Misrata Airport in Libya. Exhibit A4, Alyana Treene, *Trump admin moving forward with plans to transport undocumented immigrants to Libya*, CNN (May 7, 2025); Exhibit F, @IntelWalrus, X (May 7, 2025, 7:25am) (screenshot of C-17 flight plan). Second, Class Counsel has received reports that corroborate Defendants intentions and their inclusion of Class Members on these flights. One attorney explains that ICE verbally informed his Filipino client—who has a final order of

4

removal—that he would be removed to Libya. Exhibit D, Email from Johnny Sinodis (May 7, 2025). Neither the noncitizen nor counsel for the noncitizen received written notice of the planned removal. *Id.* Likewise, the noncitizen has not received a reasonable fear interview (RFI) or been informed of his right to seek to reopen his case in the event he is found not to have a reasonable fear at the RFI. *Id.* Class Counsel for the noncitizen has emailed ICE to communicate his client's fear of removal to Libya, but ICE has not provided any meaningful response, much less the protections this Court's preliminary injunction order requires. *Id.*

Class Counsel has also received a report that Defendants and those working with them may be planning flights to Saudi Arabia. At least one detainee—a citizen of Laos—reported that he had been verbally informed he was to be removed imminently to Saudi Arabia on a military flight. *See* Exhibit C, Email from Allison Herre (May 7, 2025). Notably, this report coincides with a planned visit by President Trump to Saudi Arabia. *See* Exhibit A9, Amanda Friedman, *Trump to visit Saudi Arabia, Qatar and UAE in May*, Politico (Apr. 22, 2025).

After hearing these reports, on the morning of May 7, 2025, Class Counsel asked Defendants to confirm that flights to Libya and Saudi Arabia will not include class members in this case, given the lack of proper notice or procedures, as required by this Court's Preliminary Injunction. Plaintiffs' counsel requested an expeditious response. Defendants have not responded. *See* Exhibit E, emails between counsel (May 7, 2025).

**ARGUMENT**

To obtain temporary and preliminary injunctive relief, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Brox v.*

*Hole*, 83 F.4th 87, 91 (1st Cir. 2023). Irreparable harm and likelihood of success are the factors that "weigh heaviest in the analysis." *Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 41 (1st Cir. 2010). When the government is a party, the balance of equities and public interest merge. *Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021); *Nken v. Holder*, 556 U.S. 418, 435 (2009). The TRO is requested to preserve the status quo and ensure the protections provided by the preliminary injunction. Thus, it is does not qualify as a mandatory injunction. However, even if it were considered a mandatory injunction Plaintiffs satisfy that standard as "[w]hether a mandatory preliminary injunction should issue typically depends on the exigencies of the situation, taking into account [the] four familiar factors" under the *Winters* test. *W. Holding Co., Inc. v. AIG Ins. Co.-Puerto Rico*, 748 F.3d 377, 383 (1st Cir. 2014).

**Plaintiffs Satisfy the Requirements for a TRO.**

**A.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

Plaintiffs are likely to prevail on their allegations that Defendants' imminent flights removing class members to Libya violate the Court's preliminary injunction as Defendants have failed to: 1) provide written notice of the third country removal in their native language (and failed to provide counsel written notice for those class members with immigration counsel); 2) failed to provide a meaningful opportunity to request and obtain a reasonable fear screening, the first step to being able to apply for CAT protection; 3) failed to provide written determinations of the outcome of any reasonable fear screening, thus denying an opportunity for class members to submit motions to reopen with the immigration court within 15 days of any negative reasonable fear determination.

Class Counsel has received examples of the notice issued to some class members that DHS intends to remove the class member to a third country. *See* Exhibit E. Those notices fail to comply with this Court's order as it was submitted only in English and no notice was provided to immigration counsel. *See also* Exhibit D (no notice provided to attorney Johnny Sinodis despite

repeated requests). Further, it provided no instructions as to the process to obtain a reasonable fear interview. *See* Exhibit. E.

The reports with respect to the imminent removal to Libya show, *inter alia*, Philippine, Vietnamese and Laotian class members being set for removal without any reasonable fear screening, let alone a fifteen-day window to file a motion to reopen with the immigration court to contest any negative reasonable fear determination. *See* Exhibits B, C, D. In one reported case, "[U.S. Immigration and Customs Officers (ICE)] officers at the South Texas Detention Facility gathered 1 Vietnamese detainee, along with 5 others (including 1 from Laos) into a room and told them that they needed to sign a document agreeing to be deported to Libya. When they all refused, they were each put in a separate room and cuffed in (basically, solitary) in order to get them to sign it." Exhibit B.

This Court has already held that Defendants' failure to provide notice and a meaningful opportunity to apply for CAT protection violates Class Members' statutory and regulatory rights as well as their Due Process rights. *See* Dkt. 64. Similarly, this Court found is necessary to modify the Preliminary Injunction to ensure that Defendants did not seek to elude their obligations by arranging for other government agencies to effectuate removals to third countries. Dkt. 86.

Accordingly, any imminent third country removal to Libya (or Saudi Arabia or any third country in route), that fails to comply with the terms laid out by this Court's Preliminary Injunction is unlawful.

**B.    Plaintiffs Are Able to Demonstrate Irreparable Harm Absent Emergency Injunctive Relief.**

Libya has a long record of extreme human rights violations. Any Class Member who is removed to Libya faces a strong likelihood of imprisonment followed by torture and even disappearance or death. Indeed, given Libya's human rights record, it is inconceivable that Class Members from other countries would ever agree to removal to Libya, but instead would uniformly

seek protection from being removed to Libya.

For years Libya has been notorious for widespread and systematic abuses of migrants from other countries, by state security forces as well as militias and non-state armed groups. These abuses include harm that clearly constitutes torture. Amnesty International has described migrants in Libya as "trapped in a cycle of serious human rights violations and abuses including prolonged arbitrary detention and other unlawful deprivation of liberty, torture and other ill-treatment, unlawful killings, rape and other sexual violence, forced labour and exploitation at the hands of state and non-state actors in a climate of near-total impunity." Amnesty Int'l, *'Between Life and Death:' Refugees and Migrants Trapped in Libya's Cycle of Abuse* (2020). Migrants held in immigration detention centers in Libya described to Amnesty International being beaten with metal pipes, starved and deprived of water, and raped. *Id.* at 29-30. These grave abuses are continuing. As the U.S. Department of State reported in 2024,

> An unknown number of individuals, including refugees, asylum seekers, and other migrants, were held in facilities under the control of armed groups affiliated with either the government or the LNA, or in extralegal facilities run by smugglers and other nonstate actors. The criminal and nonstate armed groups controlling extralegal facilities routinely tortured and abused detainees, subjecting them to arbitrary killings, rape and sexual violence, beatings, electric shocks, burns, forced labor, and deprivation of food and water, according to dozens of testimonies shared with international aid agencies and human rights groups. In many instances, the purpose of this abuse was reportedly to extort payments from detainees' families.

U.S. Dep't of State, 2023 Country Reports on Human Rights Practices: Libya 7-8 (2024).

These problems are exacerbated by Libya's lack of a functioning central government. Independent monitors have almost no access to detention facilities under the control of the Benghazi-based "Libyan National Army" ("LNA"), and limited and impeded access to those under the control of the Government of National Unity. *Id.* at 10-11.

As such, Plaintiffs are readily able to demonstrate the likelihood of irreparable harm.

8

**C.     The Balance of Hardships and Public Interest Weigh Heavily in Plaintiffs' Favor.**

The final two factors for a preliminary injunction—the balance of hardships and public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, Plaintiffs and Class Members face weighty hardships: deprivation of statutory rights to protection, and removal to a country where they are likely to face imprisonment, torture or even death. "[T]he balance of hardships tips decidedly in plaintiffs' favor" when "[f]aced with such a conflict between financial concerns and preventable human suffering." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

This Court has already held that Defendants' failure to provide notice and a meaningful opportunity to apply for protection under CAT violates Class members' statutory and regulatory rights as well as their Due Process rights. *See* Dkt. 64. And it is always in the public interest to enforce the law. Because Defendants' policy and practice "is inconsistent with federal law, . . . the balance of hardships and public interest factors weigh in favor of a preliminary injunction." *Moreno Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019) (*Moreno I*); *see also Moreno Galvez*, 52 F.4th at 831–32 (affirming in part permanent injunction issued in *Moreno II* and quoting approvingly district judge's declaration that "it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue"). This is because "it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (citation omitted).

9

Accordingly, the balance of hardships and the public interest overwhelmingly favor injunctive relief to ensure that Defendants comply with federal law, this Court's ruling, and honor Plaintiffs' statutory and constitutional rights.

## CONCLUSION

Plaintiffs respectfully ask this Court grant emergency preliminary relief enjoining Defendants from removing Class Members to Libya (and country en route to Libya, including Saudi Arabia) and any other third country until Defendants demonstrate compliance with the Preliminary Injunction. In addition, if necessary, Plaintiffs ask the Court to order the immediate return of any Class Members who has been removed to Libya. *See* Proposed Order.

Respectfully submitted,

s/*Trina Realmuto*

| | |
|---|---|
| Trina Realmuto* | Matt Adams* |
| Kristin Macleod-Ball* | Leila Kang* |
| Mary Kenney* | Aaron Korthuis* |
| Tomas Arango | Glenda M. Aldana Madrid* |
| **NATIONAL IMMIGRATION LITIGATION ALLIANCE** | **NORTHWEST IMMIGRANT RIGHTS PROJECT** |
| 10 Griggs Terrace | 615 Second Avenue, Suite 400 |
| Brookline, MA, 02446 | Seattle, WA 98104 |
| (617) 819-4649 | (206) 957-8611 |
| trina@immigrationlitigation.org | matt@nwirp.org |

Anwen Hughes*
**HUMAN RIGHTS FIRST**
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

*Attorneys for Plaintiffs*

\* *Admitted pro hac vice*

Dated: May 7, 2025

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I certify that, in accordance with Local Rule 7.1(a)(2), I emailed Defendants' counsel Mary Larakers, Matthew Seamon, and Elianis Perez on May 7, 2025, at 9:55 AM Eastern to advise them of reports regarding third country deportation flights to Libya and Saudi Arabia as well as reports of failure to comply with this Court preliminary injunction. I again emailed Ms. Larakers, Mr. Seamon, and Ms. Perez on May 7, 2026 at 2:00 PM Eastern to advise them of the filing of this motion.

This communication was an attempt to resolve the issues raised in this motion. Ms. Larakers confirmed receipt of the 9:55 AM email at 10:10 AM, but has not yet responded further at the time of this filing and, therefore, the parties were unable to reach a resolution.

 s/ *Trina Realmuto*
Trina Realmuto

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

 s/ *Trina Realmuto*
Trina Realmuto

DATED: May 7, 2025