**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G.,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity,<br><br>    Defendants. | Case No. 25-cv-10676 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF ON BEHALF OF PLAINTIFF O.C.G.**

## I.  INTRODUCTION

Plaintiff O.C.G., a named plaintiff and class representative who was previously granted withholding of removal by an immigration judge (IJ), seeks immediate injunctive relief to protect him from an ongoing risk of imminent harm. Despite Defendants now acknowledging that they made misrepresentations to the Court regarding the notice provided to him and regarding his alleged statement that he had no fear of being removed to Mexico, Defendants have refused to commit to immediately facilitate his return. Moreover, Defendants have greatly exacerbated the risk of harm to Plaintiff O.C.G. through their disclosure of his identity on the public docket, which already had garnered media attention and heightened the threat to his life and safety by the time Defendants took steps to correct that filing. Defendants' unlawful deportation of Plaintiff O.C.G. to Mexico without notice or an opportunity to present his fear claim to that country placed him in serious danger of irreparable harm before that harm was compounded by the disclosure of his identity. This Court already has determined that Plaintiffs and class members are likely to prevail on the merits of their claims that Defendants violated their statutory and constitutional rights to meaningful notice and an opportunity to apply for protection before removing them to a third country—a country other than the designated country in removal proceedings. Plaintiff O.C.G. has also demonstrated that he satisfies the other factors for preliminary injunctive relief, including the fact that he continues to face irreparable harm absent such relief from this Court.

Plaintiff O.C.G. fled Guatemala where he had been persecuted and threatened with death on account of his sexual orientation. He was detained upon entering the United States and placed in withholding-only proceedings after an asylum officer found he had a reasonable fear of persecution. After a full hearing, an IJ granted his application for withholding of removal,

1

finding it was more likely than not that he would be persecuted if returned to Guatemala. Defendant Department of Homeland Security (DHS) did not appeal that decision. Instead, two days later, DHS officers with the Enforcement and Removal Operations (ERO) division of U.S. Customs and Immigration Enforcement (ICE) deported him to Mexico without prior notice to him or his immigration counsel. Defendants did this even though O.C.G. had testified that he had been targeted and raped in Mexico.

Plaintiffs filed an emergency motion for temporary restraining order and preliminary injunctive relief, requesting that the Court ensure that Plaintiffs and putative class members are provided meaningful notice and an opportunity to apply for protection prior to any removal to a third country. The motion also requested individual relief for Plaintiff O.C.G., as he had *already* been removed without an opportunity to apply for protection. Dkt. 6 at 1. In opposing the motion, Defendants alleged that O.C.G. received notice of the deportation to Mexico and verbally expressed that he had no fear. Dkt. 31 at 3; Dkt. 31-1 ¶ 13. This Court granted temporary and later preliminary injunctive relief on behalf of the class. Dkt. 34; Dkt. 64. But with respect to the individual relief for Plaintiff O.C.G., the Court ordered expedited discovery to address the disputed facts of the alleged notice and Plaintiff O.C.G.'s response. *Id.* at 47-48; Dkt. 80.

Two developments in this expedited discovery have arisen that strongly support this emergency motion.

First, on the evening of Thursday, May 15, 2025, Defendants cancelled the May 16, 2025 deposition of the officer whom Defendants previously identified as giving Plaintiff O.C.G. notice of deportation to Mexico and recording his response of lack of fear, and subsequently filed a Notice of Errata on the public docket acknowledging that "[u]pon further investigation,

2

Defendants cannot identify any officer who asked O.C.G. whether he had a fear of return to Mexico. Nor can Defendants identify the officer who O.C.G. states 'told [him] that he was being deported to Mexico.'" Dkt. 103 at 1. Defendants also filed amended discovery responses in light of the misrepresentations in the prior filings.[1] As such, Defendants' Notice of Errata (as well as the expedited discovery) has confirmed the salient facts—that Plaintiff O.C.G. was denied meaningful notice and did not "respond" to any such notice by informing a DHS officer that he had no fear of being removed to Mexico.

Second, Defendant's filings with the Notice of Errata publicly revealed O.C.G.'s name. Defendants attached a second declaration of Brian Ortega, Dkt, 103-1, which itself attached as exhibit excerpts from ICE's ENFORCE Alien Removal Module (EARM) related to Plaintiff O.C.G., which disclosed Plaintiff O.C.G.'s full name and A number on the public docket. In so doing, Defendants violated this Court's pseudonym order, Dkt. 13.

Although corrected on this Court's PACER docket in the afternoon of May 17, 2025 after Plaintiffs' counsel alerted Defendants' counsel and the Court to the disclosure, the disclosure remained publicly available on the widely-used Court Listener website, https://www.courtlistener.com/ until the website corrected the docket at the request of Plaintiffs' counsel on May 18, 2025 at 10:31 AM ET. Plaintiffs are filing this motion as expeditiously as possible after that correction to avoid further exposure to Plaintiff O.C.G.

Defendants' Notice of Errata already has been the focus of several news stories by major media outlets, all of which appear to have linked to Court Listener, and undersigned counsel

---

[1] Defendants have marked those discovery responses confidential. Under the terms of the protective order in place, Dkt. 96, Plaintiffs cannot share the responses with the Court without first following certain designated steps, which Plaintiffs' counsel has initiated. After which, Plaintiffs will file the additional supporting documents obtained through discovery.

3

have received further media inquiries. Plaintiff O.C.G is in hiding in Guatemala and the disclosure of his identity further exacerbates the risk of persecution by known persecutors as well as others who may become aware of his situation through the media. Plaintiff O.C.G. now seeks an emergency order to immediately facilitate his return.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY RELEVANT TO PLAINTIFF O.C.G.

On March 23, 2025, Plaintiffs filed a Complaint, a Motion for Temporary Restraining Order and Preliminary Injunction and Stay of Administrative Action, and a Motion for Leave to Appear under Pseudonyms. *See* Dkt. 1; Dkt. 2-3; Dkt. 6–8.

In the Complaint and a sworn statement by Plaintiff O.C.G., *see* Dkt. 1; Dkt. 8-4, Plaintiffs alleged and attested to the following: Plaintiff O.C.G. is a gay man from Guatemala who fled that country after facing multiple death threats on account of his sexuality. In March 2024, DHS denied him a credible fear interview and deported him to Guatemala pursuant to 8 U.S.C. § 1225(b). Still unsafe, he again fled Guatemala and entered Mexico in April 2024, where he was kidnapped and raped. O.C.G. eventually made it to the United States in May 2024 and was issued a reinstatement order pursuant to 8 U.S.C. § 1231(a)(5), but an asylum officer found he had a reasonable fear of persecution in Guatemala. DHS placed him in withholding-only proceedings before an IJ. The IJ granted his application for withholding of removal, preventing his deportation to Guatemala. DHS waived appeal. About two days later, DHS removed O.G.C. from immigration detention and deported him to Mexico. He was taken by bus to Nogales, Mexico and then to Tabasco, Mexico. There, he was forced to choose between being deported back to Guatemala from Mexico, or being shipped to another detention facility in Mexico where he would wait for several months to apply for asylum, a country where he also feared persecution. On February 25, 2025, Mexican authorities deported Plaintiff O.C.G. to Guatemala.

4

To date, Plaintiff O.C.G. remains in hiding in Guatemala. *See* Dkt. 1 ¶¶13, 78-89; Dkt. 8-4 ¶¶2-10.

In light of these facts, the Plaintiffs' Motion to Proceed under Pseudonyms sought to protect Plaintiff O.C.G.'s identity. *See* Dkt. 2; *see also* Dkt. 3 at 3 (explaining that Plaintiff O.C.G. is in hiding in Guatemala and that "[i]f he is forced to publicly reveal his name in this case, he will be at even greater risk"). This Court granted the motion and ordered that "[t]he parties shall submit pleadings, briefing and evidence using Plaintiffs' initials instead of their real names and other personally identifying information." Dkt. 13.

At the same time, in their Motion for Temporary Restraining Order and Preliminary Injunction and Stay of Administrative Action, Plaintiff O.C.G. sought "an order to facilitate his return as expeditiously as possible." Dkt. 6 at 1.

In response to that motion, Defendants filed an opposition in which they claimed that "Plaintiff O.C.G. was notified that DHS intended to remove him to Mexico and was given an opportunity to state a fear of return to Mexico," Dkt. 31 at 18, and that "ICE asked O.C.G. prior to his removal whether he had a fear of return to Mexico which he answered in the negative," *id*. at 20. Both of these statements relied on the Declaration of Brian Ortega, Assistant Field Office Director for U.S. Immigration and Customs Enforcement's Enforcement and Removal Operations Phoenix Field Office, in which he stated:

> On or about February 21, 2025, prior to O.C.G being removed to Mexico, ERO verbally asked O.C.G. if he was afraid of being returned to Mexico. At this time, O.C.G. stated he was not afraid of returning to Mexico.

Dkt. 31-1 ¶ 13.

At the March 28, 2025, hearing on the motion, counsel for Defendants repeated some of these assertions. *See, e.g.*, March 28 Hearing Transcript 56:9-10 ("DHS stated that O.C.G. did

5

get some process."); *id.* at 59:8-11 (stating that, in O.C.G.'s case, DHS "[t]old him shortly before he was going to Mexico that he was going to be removed to Mexico, which provided him an opportunity to say, I have a fear of return to Mexico").

This Court did not order O.C.G.'s return in its TRO, but in the memorandum in support of that order, stated that "[t]he facts here are both contested and contestable. At this very early stage, the Court finds it probable that O.C.G. was not given a meaningful opportunity to state his fear-based claim" Dkt. 40 at 6. The Court also expressed skepticism about the hearsay nature of the Ortega declaration as it contradicted Plaintiff O.G.G.'s sworn declaration. *Id.* at 6 n.4 ("This declaration, however, does not appear to have been given by anyone directly involved in O.C.G.'s handling. O.C.G. offers contrary, under-oath assertions that he received no such opportunity." (citations omitted)).

Defendants repeated their statements regarding the alleged notice and questions regarding fear to O.C.G. in their Memorandum in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification. Dkt. 52 at 11 ("Plaintiff O.C.G. was notified of DHS's intent to remove him to a third country and had the opportunity to assert a fear-based claim."); *id.* at 14, 16.

In granting class certification and the preliminary injunction, this Court acknowledged the parties' dispute regarding whether Plaintiff O.C.G. received notice and an opportunity to express fear before he was deported to Mexico, Dkt. 64 at 9, but again found it "likely that O.C.G. was not provided sufficient process prior to removal.," *id*. at 42 n.43. In light of the parties' "hotly contested" contentions on this issue, the Court declined to order Plaintiff O.C.G.'s return, but found Plaintiffs could renew their motion after discovery. *Id*. at 47-48. The Court ordered expedited discovery and the submission of a discovery plan by April 25, 2025. *Id*. at 48. The parties submitted proposed discovery plans, and the Court ordered written discovery to be

6

produced by May 12, 2025 and a "deposition of the officer who allegedly provided O.C.G." notice and recorded his response, by May 19, 2025. Dkt. 80. Plaintiffs served written discovery requests on Defendants on April 30, 2025, and the parties filed a proposed protective order for the discovery related to Plaintiff O.C.G. on May 12, 2025, Dkt. 94. The next day, the Court approved the protective order, which, *inter alia*, limits the parties to whom designated Confidential Information may be revealed and dictates how such Information must be stored and maintained. Dkt. 96.

On May 8, 2025, Defendants' counsel identified the deponent for the deposition under the Court's April 28, 2025, Order, namely, a deportation officer in Eloy, Arizona. The deposition was scheduled for May 16, 2025. *See* Exhibit A (counsel emails). Defendants produced responses to Plaintiffs' written discovery requests on Monday, May 12, 2025.[2]

On the evening of Thursday, May 15, 2025, at 5:37 pm ET, Defendants cancelled the May 16, 2025 deposition of the designated officer whom Defendants previously identified as giving Plaintiff O.C.G. notice of deportation to Mexico, because ICE could not identify an officer who provided O.C.G. with notice of deportation to Mexico or asked if he had a fear of return to Mexico. Exhibit A. Plaintiffs' counsel responded by email within twenty minutes, requesting that Defendants notify the Court and facilitate O.C.G.'s return in light of Defendants' misstatements. *Id*. After receiving no response regarding facilitation of O.C.G.'s return, Plaintiffs' counsel again emailed Defendants' counsel on Friday, May 16, 2025 at 3:49 pm ET to request that Defendants notify the Court and facilitate O.C.G.'s return and stating that, absent such action, Plaintiffs would seek a TRO to facilitate O.C.G.'s return to the United States. *Id*.

---

[2]  Defendants did not produce a transcript of O.C.G.'s immigration court proceedings; instead, they produced the digital recordings of those proceedings.

7

At approximately 8:00 pm ET on May 16, 2025, Defendants filed a Notice of Errata on the public docket advising the Court of their misstatements regarding notice and opportunity to present a fear-based claim for O.C.G. *See* Dkt. 103.[3] With that document, Defendants attached a second declaration of Brian Ortega, which itself attached an exhibit that disclosed Plaintiff O.C.G.'s full name and A number. Dkt. 103-1.[4] This document was filed on the public docket in violation of this Court's pseudonym order, Dkt. 13. Upon discovery of Defendants' disclosure of this information, Plaintiffs' counsel contacted Defendants' counsel and two Courtroom Clerks to request that the document be removed from the public docket at 12:10 pm ET on May 17, 2025. At 2:32 pm ET, Defendants' counsel contacted the Court to request that the document be removed from the public docket and provided a fully redacted version of the attachment. At 5:25 pm, the Court's Courtroom Clerk confirmed that the partially unredacted attachment to Ortega's declaration had been substituted with the fully redacted version on the Court's docket, likely in response to Defendants' counsel's call to the emergency desk.

Since that filing, several media outlets have published articles based on the document with O.C.G.'s identifying information. *See* Exhibit B, Kyle Cheney, *Trump Administration Acknowledges Another Error in a High-Profile Deportation*, Politico (May 16, 2025) (describing the "erroneous information" as "a key plank of the government's response to a high-stakes class action lawsuit" and linking to the unredacted document); Martha McHardy, *Trump Administration Admits Another Deportation Error*, Newsweek, May 17, 2025 ("In a late Friday court filing, U.S. Immigration and Customs Enforcement (ICE) admitted that it wrongly said a

---

[3]    Defendants inadvertently erroneously docketed this document as a "Notice of Filing Consent to Sue," but the docket has since been corrected.

[4]    On that day, Defendants also provided amended discovery responses to written discovery requests. *See* Exhibit A. Defendants' amended responses include significant differences from their original responses.

Guatemalan man had told officials he was not afraid to be deported to Mexico—a statement central to the government's defense in an ongoing class action lawsuit."); Russ Choma, *ICE Officials Just Admitted to Another Major Deportation Error*, Mother Jones, May 17, 2025 ("ICE blames a 'software tool' that allows officials to insert comments into an asylum seeker's file [for] . . . an entry in the system [that] noted that the man didn't mind returning to Mexico. But ICE officials haven't been able to identify any specific officer who asked the man about returning to Mexico, which means the entry was made without basis.").

### III.     ARGUMENT

To obtain temporary and preliminary injunctive relief, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Brox v. Hole*, 83 F.4th 87, 91 (1st Cir. 2023). Irreparable harm and likelihood of success are the factors that "weigh heaviest in the analysis." *Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 41 (1st Cir. 2010). When the government is a party, the balance of equities and public interest merge. *Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021); *Nken v. Holder*, 556 U.S. 418, 435 (2009). With respect to return of O.C.G. to the United States, "[w]hether a mandatory preliminary injunction should issue typically depends on the exigencies of the situation, taking into account [the] four familiar factors" under the *Winters* test. *W. Holding Co., Inc. v. AIG Ins. Co.-Puerto Rico*, 748 F.3d 377, 383 (1st Cir. 2014).

A temporary restraining order is required to preserve the status quo, returning Plaintiff to the position he was in before the alleged unlawful action. As such, this is not a mandatory preliminary injunction. A mandatory preliminary injunction alters rather than preserves the status

9

quo; it "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency*, 649 F.2d 71, 76 n.7 (1st Cir. 1981). Those exigencies should still be measured according to the same four-factor test, as "[t]he focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo." *Crowley v. Local No. 82*, 679 F.2d 978, 996 (1st Cir. 1982), *rev'd on other grounds by* 467 U.S. 526 (1984), (quoting *Canal Auth. V. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)). Plaintiff O.C.G. submits that he is not seeking a mandatory preliminary injunction, however, should the Court disagree, he satisfies the standard for a mandatory preliminary injunction.

### A.     Plaintiff O.C.G. Is Likely to Succeed on the Merits of His Claims.

#### 1.     Plaintiff O.C.G. is likely to prevail on his merits claims.

As this Court already has held in granting a preliminary injunction, amending that injunction, and clarifying that injunction, Plaintiff O.C.G. is likely to prevail on the merits of Plaintiffs' challenge to Defendants' policy or practice of deporting, or seeking to deport class members to a *third* country—a country *never* designated or identified for removal by an immigration judge—without first providing them with notice or opportunity to contest removal on the basis that they have a fear of persecution, torture, or even death if deported to that third country. Dkts. 64, 86, and 91. Moreover, the First Circuit has refused to stay this Court's temporary restraining order as well as its preliminary injunction order. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-1311 (Apr. 7, 2025); *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-1393 (May 16, 2025).

### 2. Plaintiff O.C.G. has demonstrated that he did not receive notice or an opportunity to be heard prior to removal to Mexico.

As set forth above in Section II, Plaintiff O.C.G. has consistently maintained that he was deported to Mexico without notice and without any opportunity to apply for protection from removal to Mexico. Defendants initially disputed his statement, alleging that ICE ERO officers notified him that DHS intended to remove him to Mexico, that they provided him with an opportunity to state a fear of return to Mexico, and that Plaintiff O.C.G. in fact stated that he did not have a fear of return to Mexico. Dkt. 31 at 19, 21 (citing the Declaration of Brian Ortega, Dkt. 31-1 ¶ 13). On the eve of a deposition of an ERO officer they previously identified as having provided verbal notice and having asked Plaintiff O.C.G about a fear, Defendants abruptly cancelled that deposition. Exhibit A (counsel emails).

Defendants subsequently filed a Notice of Errata on the public docket acknowledging that "[u]pon further investigation, Defendants cannot identify any officer who asked O.C.G. whether he had a fear of return to Mexico. Nor can Defendants identify the officer who O.C.G. states 'told [him] that he was being deported to Mexico'" as ICE was in the process of deporting him to that country. Dkt. 103 at 1. Accordingly, the only reliable evidence in this case demonstrates that Plaintiff O.C.G. did *not* receive prior verbal or written notice of DHS' intent to deport him to Mexico, as Defendants are unable to identify *any* officer or officers who asked O.C.G. if he feared return, let alone the officer responsible for recording a response that he had no fear of being removed to Mexico. Defendants neither identify nor offer any explanation as to who made the entry in ICE's ENFORCE Alien Removal Module (EARM) database claiming that O.C.G. did not have a fear.

Instead of contrition for their misrepresentations, Defendants attempt to confuse the Court: "Defendants maintain that—pursuant to O.C.G.'s own admission—he received notice of

11

his removal to Mexico." Dkt. 103 at 1 (citing Dk.t 8-4 ¶ 9). This Court well understands the difference between immigration officers providing advanced notice, *see* Dkt. 64 at 46–47 & nn. 46–47, and an immigration officer simply informing an individual that a deportation is happening *as it is occurring*, as O.C.G.'s declaration attests, Dkt. 8-4 ¶ 9 (explaining that O.C.G. was told he was being deported after he had already exited a detention facility to board the bus that would deport him to Mexico). As the Supreme Court recently stated, "notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster." *A.A.R.P. v. Trump*, No. 24a-1007, slip. op. at 4 (May 16, 2025). Likewise, being told that a person is being deported as they are being placed on a bus carrying out deportation "does not pass muster." *Id.*

Defendants made affirmative misrepresentations to this Court without proper investigation in an effort to dissuade the Court from ordering the facilitation of O.C.G.'s return. It defies logic that at 5:37 pm ET the night before the deposition of the deponent ERO officer, the person previously identified by Defendants as having provided notice to O.C.G. and receiving the response that O.C.G. did not have a fear, *see* Exhibit A, Defendants discovered this misrepresentation. Defendants' eleventh-hour correction raises serious doubts as to the veracity of ICE records underlying their earlier assertions.

Because Plaintiff O.C.G. has established that DHS did not provide him with notice or the opportunity to present a fear-based claim, but instead attempted to disguise their failures to comply with their statutory obligations and, in so doing, increased the risk to his life and safety, he asks this Court to order that Defendants immediately facilitate his return to the United States.

### 3. This Court has authority to order O.C.G.'s return

This Court has authority to order Plaintiff O.C.G.'s return as part of its inherent equitable

authority. *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction."); *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (holding that courts' authority would be "entirely inadequate to the purposes for which it was conferred by the Constitution" if they did not have the power to enforce their judgments). The Court's equitable authority is especially strong here, where Plaintiff O.C.G. was wrongfully deported without notice and an opportunity to seek protection from deportation to Mexico.

Courts routinely order return, or the facilitation of return, of individuals wrongly removed. *See Arce v. United States*, 899 F.3d 796, 799 (9th Cir. 2018) (describing unlawful deportation in violation of judicial stay and later return pursuant to court order); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 286 (4th Cir. 2020) ("[W]e are ordering Nunez-Vasquez's return because his presence is necessary to effectuate judicial relief" (internal quotations omitted)); *Orabi v. Att'y Gen.*, 738 F.3d 535, 543 (3d Cir. 2014) (granting petition for review and ordering return); *cf. Samirah v. Holder*, 627 F.3d 652, 665 (7th Cir. 2010) (ordering return to allow individual to pursue pending application to adjust status); *Umba v. Garland*, No. 19-9513, 2021 WL 3414104, at *10 n.2 (10th Cir. Aug. 5, 2021).[5] In many other cases, where DHS initially refused to

---

[5] *See also* Dkt. 59-17 at 1 (*Turnbull v. Ridge*, No. 1:04-cv-392 (E.D. Ohio Apr. 22, 2004)) (ordering return "forthwith" after "willful[] and surreptitious[]" removal); Dkt. 59-1 (*Guerra-Castaneda v. Garland*, No. 19-1736 (1st Cir. Sept. 14 & Sept. 19, 2019)) (ordering "all necessary inquiries" regarding efforts to return an individual after deportation in violation of a stay); Dkt. 59-2 (*Paye v. Garland*, No. 23-1426 (1st Cir. July 17, 2024)) (instructing DHS to immediately locate petitioner and make efforts to return him to the United States "forthwith"); Dkt. 59-3 (*W.G.A. v. Sessions*, No. 16-4193 (7th Cir. Mar. 19, 2018)) (granting stay that becomes effective on "reentry to the United States pending resolution of [the] petition for review"); Dkt. 59-4 (*Herrera-Meza v. Sessions*, No. 18-70117 (9th Cir. Sept. 18, 2018)) (granting a late motion to reconsider a judicial-stay denial and ordering individual's return to restore status prior to deportation); Dkt. 59-5 (*Rodriguez Sutuc v. Att'y Gen.*, No. 15-2425 (3d Cir. June 19, 2015)) (ordering immediate return of mother and daughter seeking asylum whom DHS deported before

facilitate return, the agency did so after a complaint was filed in district court.[6]

Returning persons unlawfully deported is also in keeping with Congressional instruction that DHS agencies "shall leverage all mechanisms provided by current law to facilitate the return to the United States of those whose removal was contrary to law, whose removal order has since been overturned or reopened by judicial order, where the return of an individual would correct an error or assist in an ongoing criminal or any other federal, state, tribal, or territorial investigation." Joint Explanatory Statement accompanying Div. F, FY 2022 Consol. Appropriations Act, Pub. L. No. 117-103 (Mar. 15, 2022), available at 168 Cong. Rec. H2402 (Mar. 9, 2022).

Here, DHS deported O.C.G. without providing notice of his deportation to a third country where he feared persecution, instead informing him only as agents were physically in the process of removing him; denied him access to counsel; failed to provide notice to his counsel; and lied to him that the IJ's order had "expired." Dkt. 8-4 ¶¶ 8–9. In this situation, granting a preliminary injunction ordering his return is similarly warranted. Defendants' admitted failure to provide O.C.G. even an oral opportunity to assert his fear is flatly contrary to their own repeated representations to the Supreme Court regarding what due process requires in a situation like this,

---

the court could act on the stay); Dkt. 59-6 (*H.I.L. v. Barr*, No. 19-3053 (2d Cir. Oct. 2, 2019)) (requiring DHS to report on its efforts to return the individual to the United States); Dkt. 59-7 (*Ramirez-Chavez v. Holder*, No. 11-72297 (9th Cir. Apr. 10, 2012)) (directing DHS to locate and return petitioner in order to enforce order granting stay of removal); Dkt. 59-8 (*Singh v. Att'y Gen.*, No. 15-10136 (11th Cir. July 2, 2015)) (instructing DHS to locate petitioner and advise him of his "right pursuant to this Court's stay of removal to be returned to the United States").
[6]      *See, e.g.*, *Fedoshchuk v. CBP*, No. 23-cv-089210-ODW-SK (C.D. Cal., filed Oct. 23, 2023); *Apostolov v. DHS*, No. 19-cv-01309 (C.D. Cal., filed July 2, 2019); *Balthazar v. Nielsen*, No. 18-cv-10590-RWZ (D. Mass., filed Mar. 27, 2018); *Nicio Lopez v. Sessions*, No. 18-cv-5397 (N.D. Cal., filed Aug. 31, 2018); *Previl v. DHS*, No. 1:13-cv-23230-MGC (S.D. Fla., filed Sept. 6, 2013); *Hairo Garcia v. DHS*, No. 12-0354 (M.D. Tenn., filed Apr. 5, 2012); *Alcaraz v. Napolitano*, No. 11-3716 (N.D. Cal., filed July 29, 2011).

as well as the specific protections this Court outlined in its preliminary injunction order. *See, e.g.*, Dkt. 64 at 46-47; Transcript of Oral Argument at 32–33, *Riley v. Bondi*, No. 23-1270 (S. Ct. Mar. 24, 2025); Transcript of Oral Argument at 20–21, *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) (No. 19-897).

This right to due process and to simply receive an opportunity to apply for the protection federal law provides is one the Supreme Court has strongly affirmed in similar contexts, even in recent days. *See A.A.R.P. v. Trump*, No. 24A1007, 2025 WL 1417281, at *2 (U.S. May 16, 2025) (explaining that due process requires adequate notice and time to assert a claim in the context of removal). Return is imminently reasonable—and necessary—in such a situation, as the Supreme Court recognized in recent weeks. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (holding that district court "properly" required government to facilitate return where individual was deported in violation of withholding of removal protections); *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112 (4th Cir. Apr. 17, 2025) (denying government request for stay pending appeal and reaffirming government must actively seek return of erroneously deported noncitizen, especially given the mistakes in the noncitizen's removal).[7]

Preliminary injunctive relief is necessary to ensure Defendants do not unilaterally reject their obligations to O.C.G. with respect to statutory withholding of removal and CAT protections. *See Lopez-Angel v. Barr*, 946 F.3d 527, 530 (9th Cir. 2019) (describing agency interpretation that would allow one party to unilaterally control proceedings as "strange" because "[i]t is unnatural to speak of one litigant withdrawing another's motion" (quoting *Marin-Rodriguez v. Holder*, 612 F.3d 591, 593 (7th Cir. 2010))); *Luna v. Holder*, 637 F.3d 85, 99-100

---

[7] Notably, ordering DHS to facilitate return in this case does not include the alleged complications involved in *Abrego Garcia*, where the plaintiff remains detained by a foreign government at the behest of the United States.

15

(2d Cir. 2011) (rejecting agency interpretation that could render a statutory right "'subject to manipulation' by the Government" (quoting *Boumediene v. Bush*, 553 U.S. 723, 765-66 (2008))); *Madrigal v. Holder*, 572 F.3d 239, 245 (6th Cir. 2009) ("To allow the government to cut off Madrigal's statutory right to appeal an adverse decision, in this manner, simply by removing her before a stay can be issued or a ruling on the merits can be obtained, strikes us as a perversion of the administrative process."); *cf. Boumediene*, 553 U.S. at 765-66 (rejecting argument that could allow the government to "manipulat[e]" "[t]he test for determining the scope of [the habeas corpus] provision"); *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (holding that, absent a clear statement to the contrary, statutes should not be read "to place in executive hands authority to remove cases from the Judiciary's domain").

      **B.**      **Plaintiff O.C.G. Has Suffered and Will Continue to Suffer Irreparable Harm Absent Emergency Injunctive Relief.**

Plaintiff O.C.G. has been forced to remain in hiding for almost three months since the date of his unlawful removal, fearing for his life because of Defendants' failure to provide meaningful notice and opportunity to present a fear-based claim before deportation to Mexico. Defendants' misrepresentations to this Court (which led the Court to order expedited discovery) have delayed adjudication of Plaintiff O.C.G.'s request for injunctive relief to facilitate his return, exacerbating this harm. Moreover, Defendants have now revealed his identity in violation of the Court's order requiring use of pseudonym. *See* Dkt. 13. As previously explained, after Plaintiff O.C.G. won protection from deportation to Guatemala, DHS deported him to Mexico with no notice and no opportunity to present his claim that he feared persecution and torture there and, indeed, had already been kidnapped and raped by individuals in Mexico. Dkt. 8-4 ¶¶ 3, 10. In Mexico, O.C.G. was given the Hobson's choice of waiting months in detention to apply for asylum in Mexico, where he had been persecuted and feared future persecution, or

16

deportation to Guatemala, where an IJ had found it was more likely than not that he would be persecuted. *Id.* ¶ 10. He currently remains in hiding in Guatemala. *Id.* ¶ 1. As the Court previously recognized, "[h]ere, the threatened harm is clear and simple: persecution, torture, and death. It is hard to imagine harm more irreparable." Dkt. 64 at 44.

      Notably, the press already is reporting on O.C.G.'s story and Defendants' misrepresentations to the Court, bringing increased attention to his situation. *See* Kyle Cheney, *Trump administration acknowledges another error in a high-profile deportation*, Politico, May 16, 2025 ("In a late Friday court filing, the administration acknowledged that th[e] claim [they asked O.C.G. if he had a fear of return and that he responded he did not]—a key plank of the government's response to a high-stakes class action lawsuit—was based on erroneous information."); Martha McHardy, *Trump Administration Admits Another Deportation Error*, Newsweek, May 17, 2025 ("In a late Friday court filing, U.S. Immigration and Customs Enforcement (ICE) admitted that it wrongly said a Guatemalan man had told officials he was not afraid to be deported to Mexico—a statement central to the government's defense in an ongoing class action lawsuit."); Russ Choma, *ICE Officials Just Admitted to Another Major Deportation Error,* Mother Jones, May 17, 2025 ("ICE blames a "software tool" that allows officials to insert comments into an asylum seeker's file [for] . . . an entry in the system [that] noted that the man didn't mind returning to Mexico. But ICE officials haven't been able to identify any specific officer who asked the man about returning to Mexico, which means the entry was made without basis."). The increased attention only heightens the threat of actors in Guatemala that may seek to harm him—including the actors from which he won protection.[8] Thus, in addition to the

---

[8]     The Court has since replaced Defendants' exhibit violating the Court's protective order with one that redacts O.C.G.'s name and A number. However, even after that correction, until

17

ongoing harm caused by being forced to live in hiding, the risk to his very life and safety is imminent.

### C. The Balance of Hardships and Public Interest Weigh Heavily in Plaintiff O.C.G.'s Favor.

The final two factors for a PI—the balance of hardships and public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Here, Plaintiff O.C.G. faces weighty hardships: deprivation of statutory rights to protection, removal to a country where he feared persecution, torture or even death, and return to the very country where an immigration judge found that he will be persecuted.

Defendants, by contrast, face minimal hardship by facilitating O.C.G.'s immediate return (which it knows how to do and has done in many other cases), and by providing the protections required by the preliminary injunction upon his return. "[T]he balance of hardships tips decidedly in plaintiffs' favor" when "[f]aced with such a conflict between financial concerns and preventable human suffering." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). The public interest is served by the faithful execution of the immigration laws, and that interest includes respect for protections Congress has enacted and to which the United States has committed itself by treaty. *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (recognizing "the public interest in having the immigration laws applied correctly and evenhandedly"); *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011) (noting "the public's interest in ensuring that we do not deliver [noncitizens] into the hands of their

---

10:31 am ET on May 18, 2025, the disclosure remained publicly available on the docket of the Court Listener website and several media articles included links to that docket.

persecutors").

## IV. CONCLUSION

Accordingly, as outlined in the accompanying proposed order, Plaintiffs request that the Court order Defendants to immediately facilitate Plaintiff O.C.G.'s return to the United States.

Respectfully submitted,

s/ Trina Realmuto

Trina Realmuto*
Kristin Macleod-Ball*
Mary Kenney*
Tomás Arango
**NATIONAL IMMIGRATION LITIGATION ALLIANCE**
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

Anwen Hughes*
**HUMAN RIGHTS FIRST**
121 W. 36th Street, PMB 520
New York, NY 10018
(212) 845-5244
HughesA@humanrightsfirst.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
**NORTHWEST IMMIGRANT RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

*Attorneys for Plaintiffs*

\* *Admitted pro hac vice*

Dated: May 18, 2025