UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D., *et al.*,<br>Individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:25-cv-10676-BEM |

**DECLARATION OF ACTING ASSISTANT DIRECTOR
MARCOS D. CHARLES**

Pursuant to 28 U.S.C. § 1746, I, Marcos D. Charles, declare as follows:

1. I am an Acting Assistant Director for Field Operations at Enforcement and Removal Operations ("ERO") at U.S. Immigration and Customs Enforcement ("ICE") within the U.S. Department of Homeland Security ("DHS"). As the Acting Assistant Director, I am responsible for oversight of the twenty-five ERO Field Offices, ensuring all field operations are working to efficiently execute the agency mission.

2. I began my career with the U.S. Government as a Border Patrol Agent for the former Immigration and Naturalization Service in Hebbronville, TX. Over time I was promoted to Senior Border Patrol Agent, Supervisory Border Patrol Agent, and Field Operations

Supervisor. I joined ICE in 2008 as the Assistant Officer in Charge. Overtime I was promoted to Supervisory Detention and Deportation Officer, Assistant Field Office Director, Chief of Staff, Deputy Field Office Director, and Field Office Director before becoming the Acting Assistant Director.

3. I provide this declaration based on my personal knowledge, reasonable inquiry, and information obtained from various records, systems, databases, other DHS employees, and information portals maintained and relied upon by DHS in the regular course of business.

4. Pursuant to the Court's inquiries about the individuals on the plane during the May 21, 2025 hearing, I submit this declaration to inform the Court of the identities and serious criminal histories of the seven aliens at issue in the litigation on the plane. (ECF No. 104).

███████████████ (E.A.H.)

5. I have personally reviewed the case of E.A.H.
6. E.A.H. is a native and citizen of Cuba.
7. On May 11, 1999, E.A.H. was convicted in the Eleventh Circuit Court of Florida, County of Dade, for Robbery, in violation of Florida Statutes § 812.13(2)(c); Robbery Using Deadly Weapon or Firearm, in violation of Florida Statutes §§ 812.13(2)(a) and 777.011; Attempted Arm Robbery, in violation of Florida Statutes §§ 812.13(2)(a)(b), 777.04, and 777.0111; Attempted Second Degree Murder, in violation of Florida Statutes §§ 782.04(2), 777.04, and 775.087; Unlawful Possession of a Firearm or Weapon by a Convicted Felon, in violation of Florida Statutes §§ 790.23(1); and Robbery Using a Deadly Weapon or Firearm, in violation of Florida Statutes §§ 812.13(2)(A) and 777.011.

8. Specifically, on September 19, 1997, E.A.H. pushed the victim from behind as she was entering her car and stole her purse. Subsequently, on October 20, 1997, E.A.H. waited by the elevator of an apartment building with two other co-defendants. When the victim entered the building, E.A.H. pulled out a .38 caliber gun and held it to the victim's head while demanding his wallet. He then pulled the trigger twice while holding the gun to the victim's head, but the gun misfired both times, so he pistol whipped the victim.

9. As a result of these criminal convictions, E.A.H. was sentenced to four years in prison to be followed by two years of probation.

10. On September 13, 1999, E.A.H. was ordered removed to Cuba by an immigration judge. E.A.H. did not file an appeal, and his removal order became administratively final on that date.

11. On February 6, 2007, E.A.H. was convicted in the Eleventh Judicial Circuit of Florida, Miami-Dade County, of Robbery/Strongarm, in violation of Florida Statute 812.13 2(c); Falsely Impersonating an Officer, in violation of Florida Statute § 843.08; and Kidnapping, in violation of Florida Statute 787.01.2, and was sentenced to fifteen years in prison to be followed by five years of probation.

12. Specifically, on March 17, 2006, E.A.H. approached the victim in a restaurant parking lot and falsely identified himself as a police officer. E.A.H. searched the victim and ordered him to get inside his vehicle, wherein he stole the victim's phone and wallet, and drove the victim away from the restaurant. The following day, E.A.H. called the victim and demanded a cash payment or he would otherwise place the victim under arrest. During the meet-up with the victim, E.A.H. was arrested by local law enforcement.

███████████████████████ **(J.M.R.)**

13. I have personally reviewed the case of J.M.R.

14. J.M.R. is a native and citizen of Cuba.

15. On October 10, 2008, J.M.R. was convicted in the Eighteenth Judicial Circuit of Florida, Brevard County, of Arson in the Second Degree, in violation of Florida Statutes § 806.01(2), and was sentenced to fifteen years of probation.

16. Specifically, on March 18, 2008, J.M.R. towed his vehicle to a remote location and then set fire to it by igniting combustible material in the passenger compartment in an attempt to receive the insurance proceeds.

17. On November 8, 2010, J.M.R. was convicted in the Eleventh Judicial Circuit of Florida, Miami-Dade County, of Cocaine/Trafficking, in violation of Florida Statutes §§ 893.135(1), (B)(1), and 777.011, and was sentenced to three years in prison.

18. Specifically, on August 12, 2008, J.M.R. attempted to sell approximately one kilogram of cocaine worth $22,000 to undercover police officers.

19. On October 24, 2012, J.M.R. was issued a Final Administrative Removal Order pursuant to section 238(b) of the Immigration and Nationality Act following his aggravated felony conviction described above.

20. On October 21, 2020, J.M.R. was convicted in the Seventh Judicial Circuit of Florida, Volusia County, of (1) Possession of a Firearm by a Convicted Felon, in violation of Florida Statute § 790.22(1), and was sentenced to four years in prison, and (2) Possession of Paraphernalia, in violation of Florida Statutes § 893.147(1), and was sentenced to 364 days in prison.

21. Specifically, on April 17, 2019, local law enforcement executed a search warrant at the residence of J.M.R. During the execution of the search, detectives found a .22 caliber rifle hidden behind J.M.R.'s bed. In addition, law enforcement seized the following items: one plastic box containing .22 cartridges, one cannabis oil cartridge, two magazines with .380 cartridges, fifty-two one-gram cannabis cartridges, approximately 8.9 grams of cannabis, miscellaneous drug paraphernalia, $3,240 dollars, two round blue tablets with no markings, approximately one gram of off-white power substance, miscellaneous chicken fighting paraphernalia, and multiple chickens used for cock fighting.

22. On January 12, 2022, J.M.R. was convicted in the Ninth Judicial Circuit of Florida, Orange County, of Attempted First Degree Murder with a Weapon, in violation of Florida Statute § 782.04(1)(A)(1), and was sentenced to four years in prison.

23. Specifically, on April 3, 2019, local law enforcement in Orange County, Florida, responded to multiple 911 calls. Officers arrived on scene to find a victim severely bleeding from his head and neck. The victim was given aid and rushed for emergency surgery. Upon investigation, it was discovered that J.M.R. and the victim were together at dinner, and when J.M.R. drove the victim to his car, he pulled over and attacked the victim with a knife.

███████████ (T.N.)

24. I have personally reviewed the case of T.N.

25. T.N. is a citizen of the Lao People's Democratic Republic (Laos).

26. On November 13, 1995, T.N. was convicted in the Superior Court of California, County of Riverside, for First Degree Murder, in violation of California Penal Code § 187;

Attempted Murder, in violation of the California Penal Code §§ 664 and 187; and Second-Degree Robbery, in violation the California Penal Code § 211, and was sentenced to life in prison without parole.

27. Conviction records and media reporting on his convictions show that on May 16, 1994, T.N. robbed and murdered a sixty-four-year-old German tourist and seriously injured her husband near a scenic outlook in Idyllwild, California..[1]

28. On March 2, 2018, T.N. was resentenced by the same court to life with the possibility of parole following a change in California law regarding minor offenders.

29. On July 12, 2023, T.N. was ordered removed to Laos by an immigration judge and waived appeal.

███████████████ (J.M.G.)

30. I have personally reviewed the case of J.M.G.

31. J.M.G. is a native and citizen of Mexico.

32. On January 11, 2005, J.M.G. was convicted in the Thirteenth Circuit Court of Florida, County of Hillsborough, for Murder in the Second Degree, in violation of Florida Statutes § 782.04(2), and sentenced to twenty-five years in prison.

33. Specifically, on February 21, 2004, while hosting a gathering at his residence, J.M.G. began fighting with his roommate in their driveway. After multiple attempts to separate the men, J.M.G. went inside his residence and returned to the driveway with a large knife. He then stabbed the victim in the chest and fled on foot.

███████████████████████████████████████████

34. On June 16, 2005, J.M.G. was ordered removed to Mexico by an immigration judge and waived appeal.

35. Recently, J.M.G. was identified as and admitted to being a member of a criminal organization. While incarcerated, ▓▓▓▓-▓▓▓▓ incurred multiple disciplinary violations; some of these violations were related to gang activity.

▓▓▓▓ (K.M.)

36. I have personally reviewed the case of K.M.

37. K.M. is a native and citizen of Burma.

38. On September 3, 2019, K.M. was convicted in the Iowa District Court, County of Marshall, of Lascivious Acts with a Child, in violation of Iowa Code § 709.8(1)(a), and was sentenced to no more than ten years of incarceration.

39. Specifically, K.M. was convicted of repeatedly sexually assaulting a minor from 2011 to 2017, which began when the victim was approximately seven years old.

40. Law enforcement found out that K.M. had been sexually assaulting the victim after the victim's mother opened a bedroom door to find K.M. on top of the victim, who was approximately seven years old at the time. Upon being discovered, K.M. separated himself from the victim, put his pants on, and walked away.

41. The last time K.M. raped the victim, he offered her fifty to one-hundred dollars and food in exchange for sex. When the victim rejected the offer, K.M. forced himself on her. At the time, the victim was twelve years old.

42. On September 23, 2021, K.M. was ordered removed by an immigration judge. On March 17, 2023, the Board of Immigration Appeals dismissed his appeal.

▓▓▓▓ (N.M.)

43. I have personally reviewed the case of N.M.

44. N.M. is a native and citizen of Burma.

45. On September 22, 2020, N.M. was convicted in the District Court of Nebraska, County of Lancaster, of Attempted Sexual Assault in the First Degree, in violation of Nebraska Revised Statutes §§ 28-201(4)(B) and 28-319(1)(A), and was sentenced from twelve to fourteen years in prison.

46. Specifically, in a March 2017 interview with law enforcement, N.M. admitted to having sex with a twenty-six-year-old woman described by her sister as having the mental capacity equal to that of a three-year-old. In the same interview, N.M., who was forty-four years old at the time, admitted that he had known the victim since she was twelve, knew she had attended a school for children with mental disabilities, and believed her to have the mental capacity of an eleven-year-old. Local law enforcement had been alerted to the situation after the victim was found to be pregnant.

47. On August 17, 2023, N.M. was ordered removed by an immigration judge and waived appeal.

██████████████ (T.T.P.)

48. I have personally reviewed the case of T.T.P.

49. T.T.P. is a native and citizen of Vietnam.

50. On January 12, 2001, T.T.P. was convicted in the Superior Court of Washington, County of Pierce County, of Murder in the First Degree, in violation of Washington Revised Code § 9A.32.030(1)(b), and sentenced to 264 months of imprisonment.

51. On January 12, 2001, T.T.P. was convicted in the Superior Court of Washington, County of Pierce, of Assault in the Second Degree, in violation Washington Revised Code § 9A.36.021(1)(a), and sentenced to fifty months of imprisonment.

52. According to contemporaneous media reports, on June 4, 2000, T.T.P. "randomly" discharged a firearm into a crowd following a gang dispute, where he struck two teenagers (one of whom was a minor) who were unrelated to the gang conflict.[2]

53. On June 17, 2009, T.T.P. was ordered removed to Vietnam by an immigration judge and waived appeal.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on the 23rd day of May 2025

MARCOS D CHARLES
Digitally signed by MARCOS D CHARLES
Date: 2025.05.23 19:12:12 -04'00'

Marcos D. Charles
Acting Assistant Director
Field Operations
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security