# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D., *et al.*, | ) |
| | ) |
| Individually and on behalf of all others | ) |
| similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 1:25-cv-10676-BEM |
| v. | ) |
| | ) |
| U.S. Department of Homeland Security, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PRESS MOVANTS' MOTION TO INTERVENE AND UNSEAL COURT RECORDS

The Court placed highly sensitive judicial records under seal to preserve their confidentiality and prevent significant harm from their disclosure. Intervenors[1] now seek access to obtain and presumably disseminate these highly sensitive documents. Neither the First Amendment nor common law entitles them to do so. The qualified right of access to judicial proceedings created by the First Amendment does not extend to the present circumstances, as all judicial records and factual information disclosed in civil cases have not historically been open to the press and public. Moreover, even if the news organizations enjoyed a First Amendment right of access to all facts disclosed during the course of civil litigation, which they do not, that right does not extend to the inspection and publication of a hearing transcript containing highly

---

[1] Intervenors comprise several news organizations, including The New York Times Company, American Broadcasting Companies, Inc. d/b/a ABC News, Cable News Network, Inc., Dow Jones & Company, Inc., publisher of The Wall Street Journal, National Public Radio, Inc., Reuters News & Media Inc., and WP Company LLC d/b/a The Washington Post.

sensitive, *ex parte* information or to a highly sensitive Declaration of the Secretary of Defense. To the contrary, courts have consistently undertaken to protect classified and other highly sensitive information through sealing orders and other protective measures – as this Court has done in this case consistent with the law on the right of access.

Under the common law, the Intervenors' effort to pry into highly sensitive matters fares no better. The default presumption of access is subject to a balancing test in which access may be denied if, as is the case here, a countervailing interest overcomes it. As courts have consistently recognized, there is no more compelling or substantial interest the United States possesses than the protection of national security and classified information, or the prevention from disclosure of highly sensitive law enforcement techniques and procedures. In this case, the government's compelling interest in protecting the sealed information from disclosure plainly outweighs any asserted public right of access, and the same goes for the protection of sensitive but non-classified information disclosed during the course of litigation where disclosure might adversely affect those compelling interests. The Intervenors' arguments do nothing to suggest otherwise. At the same time, the rules and procedures governing this case already provide broad public access to the proceeding, including publicly available briefs, public hearings, and the Court's orders and opinions, which are sufficient to inform the public how this case is decided and to satisfy the "citizen's desire to keep a watchful eye on the workings of" this Court. *See Nixon v. Warner Communications, Inc*., 435 U.S. 589, 597-98 (1978). Accordingly, the highly sensitive materials sought by the news organizations are properly sealed, and Intervenors fail to demonstrate any right to obtain them.

## BACKGROUND

On May 20, 2025, Plaintiffs filed an emergency request for relief, alleging that Defendants had violated the preliminary injunction entered on April 18, 2025 (ECF No. 64) by seeking to remove several class members to South Sudan. ECF Nos 111, 112. That same day, the Court held an emergency hearing during which it ordered Defendants "to maintain custody and control of class members currently being removed to South Sudan or to any other third country, to ensure the practical feasibility of return if the Court finds that such removals were unlawful." ECF No. 116. The Court also ordered Defendants to, *inter alia*, "be prepared at tomorrow's prescheduled hearing to identify by name the affected class members and to address: (1) the time and manner of notice each individual received as to their third-country removal; and (2) what opportunity each individual had to raise a fear-based claim." *Id*.

As a result, on May 21, 2025, Defendants appeared at the hearing, where the Court placed Marcos Charles and Joseph Mazzara under oath to testify. ECF No. 117. At counsel's request, the Court also held a sealed session with counsel and Marcos Charles. *Id*. The Court subsequently issued a remedial order with respect to the class members being removed to South Sudan. ECF No. 119. Thereafter, Defendants moved for reconsideration of that order and submitted under seal a declaration by Secretary of Defense Pete Hegseth. . ECF No. 130. The Court granted Defendants' request to seal Secretary Hegseth's Declaration. ECF No. 134.

On June 13, 2025, several news organizations (Intervenors) filed a motion to intervene and unseal both the sealed hearing transcript and Secretary Hegseth's Declaration. ECF No. 159, 163. Defendants now file this partial opposition to Intervenors' motion. Defendants do not oppose Intervenor's motion to the extent it is consistent with Defendants' limited redactions to the portion of the May 21, 2025, transcript attached hereto as sealed Exhibit A. Defendants oppose

Intervenor's motion to the extent it seeks to unseal Secretary Hegseth's Declaration and those portions of the May 21, 2025 transcript that Defendants have redacted in sealed Exhibit A.

## DISCUSSION

"Courts have long recognized that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system." *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013) (citing *In re Providence Journal*, 293 F.3d 1, 9 (1st Cir. 2002) (cleaned up). "This recognition is embodied in two related but distinct presumptions of public access to judicial proceedings and records: a common-law right of access to 'judicial documents,' and a First Amendment right of access to certain criminal proceedings and materials submitted therein." *See id.*; *see also In re Bos. Herald, Inc.*, 321 F.3d 174, 182, 189 (1st Cir. 2003). "Though the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Siedle v. Putnam Inv., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) (citing *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987)); *see also Nixon v. Warner Commc'ns*, 435 U.S. at 598 ("It is uncontested . . . that the right to inspect and copy judicial records is not absolute.").

I.     **The First Amendment Does Not Provide a Right of Access to the Requested Judicial Records and Documents**

"The Supreme Court recognized a qualified First Amendment right of access to certain judicial proceedings and documents in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)," namely in criminal cases. *In re Bos. Herald, Inc.*, 321 F.3d at 182. But "[n]either [the First Circuit] court nor the Supreme Court has recognized any right under the First Amendment to access documents filed in civil cases." *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 20 (1st Cir. 2022). The First Amendment may attach to some documents in civil litigation, such as complaints, but it does not follow that the First Amendment attaches to *every* document filed in a civil case.

4

*Id.* The court's assessment of whether there is a First Amendment right of public access must also be based on "experience and logic." *Kravetz*, 706 F.3d at 53-55 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) (explaining that in determining whether a First Amendment right of access attaches to a particular type of proceeding or document, courts should consider two complementary considerations: "whether [they] have historically been open to the press and general public" (the "experience" prong), and "whether public access plays a significant positive role in the functioning of the particular process in question" (the "logic" prong)) (parenthetical in original) (footnote omitted).

### A.    Intervenors Fail to Demonstrate a First Amendment Right of Access to the Requested Judicial Records and Documents

Intervenors fail to make a threshold showing that the First Amendment provides a right of access to the requested judicial records and documents. Regardless, there is a compelling governmental interest in keeping the requested judicial records and documents under seal.

The First Amendment guarantees access when (1) "the place and process have historically been open to the press and general public" and (2) "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 8 (1986) ("Press–Enterprise II"); *see In re Bos. Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003) (applying *Press-Enterprise II*). Intervenors seek access to judicial records and documents containing information that is both law enforcement sensitive and is related to intergovernmental relations. Applying the *Press-Enterprise II* test demonstrates that Intervenors do not have a First Amendment right of access to the requested judicial records and documents as there is both a lack of historical access and a significant positive role in open access to the materials Intervenors seek.

### 1.    Intervenors Fail to Demonstrate a Historical Practice of Access to the Requested Judicial Records and Documents

Intervenors have not put forth any argument that these types of documents have been historically open to the press and public. Plaintiffs assert, incorrectly, that the information they seek to unseal relates to a dispositive motion to which the First Amendment attaches. Memo. at 10. But Plaintiffs' remedial motion related to the Court's preliminary injunction is not "dispositive." A dispositive motion is "a motion that, if granted, results in a judgment on the case as a whole, as with a motion for summary judgment or a motion to dismiss." Motion, *Black's Law Dictionary* (12th ed. 2024); *Patton v. Johnson*, 915 F.3d 827, 832 (1st Cir. 2019) (dispositive motions are those "that are dispositive either of a case or of a claim or defense within a case."); *Moore v. Douglass*, No. CA 09-452 ML, 2010 U.S. Dist. LEXIS 116231, at *5 n.8 (D.R.I. Oct. 5, 2010) ("A dispositive motion is a motion which, if granted, would end the case with a judgment in favor of the moving party."). Plaintiffs' motion, which merely sought a remedy for alleged violations of the Court's previously-issued *preliminary* injunction with respect to *specific* class members, certainly does not qualify as a "dispositive" motion in this context. Moreover, the First Circuit has described actions seeking disclosure of true dispositive motions (*i.e.,* motions for summary judgment) as being "at the farthest reaches of the first amendment right to attend judicial proceedings." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st. Cir. 1986). Because the information Plaintiffs seek to unseal is not related to a dispositive motion and goes beyond the "farthest reaches of the first amendment," they cannot show that this information has been historically available. *See Press Enterprise II,* 478 U.S. at 8.

### 2. Intervenors Fail to Demonstrate a Significant Positive Role in Access to the Requested Judicial Records and Documents

Intervenors likewise have not put forth any argument that public access plays a significant positive role in the specific information they seek to unseal. They cannot do so because public access plays a significant negative role in discovery, which is the nearest analogy to the

information Intervenors seek to unseal. Intervenors have access to all the information that plays an essential role in the proper functioning of the judicial process. They have access to the Court's findings of law and fact which impacted the Court's decision and the vast majority of the judicial proceedings at issue. *See* Ex. A. All that has been withheld is highly specific, detailed information that, if disclosed, would have a significant negative impact on the functioning of the judicial process and our national security. Indeed, the only limited information they do not have access to is information that is routinely protected by protective orders. As the Fourth Circuit has explained, discovery, "which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." *Rushford v. New Yorker Mag., Inc*., 846 F.2d 249, 252 (4th Cir. 1988) (internal quotation marks omitted); *see United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("If ... discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe"); *In re Reporters Comm. for Freedom of the Press*, 773 F.2d at 1336 ("they are not greatly enhanced by access to documents … before judgment rather than after"); *see also Smith*, 985 F. Supp. 2d at 520 (compiling cases). Thus, there is no evidence that public access plays a significant positive role in the specific information Intervenors seek related to Plaintiffs' remedial—and not dispositive—motion, and Intervenors failed to demonstrate that experience and logic requires access to the requested sensitive judicial records and documents. *See Press-Enterprise II*, 478 U.S. at 8.

As a result, Intervenors have failed to demonstrate a First Amendment right of access to the requested judicial records and documents. Accordingly, the Court need not consider the question of whether a compelling governmental interest exists. *See Immigration & Naturalization Serv. v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not

required to make findings on issues the decision of which is unnecessary to the results they reach.").

### B.  Regardless, there is a Compelling Governmental Interest in Keeping the Requested Judicial Records and Documents Under Seal

Even if the Court considers the matter further, Intervenors are still not entitled to access the requested judicial records and documents because there is a compelling governmental interest—protecting national security and preventing the dissemination of sensitive law enforcement information—in keeping this sensitive information under seal. *See Central Intelligence Agency v. Sims*, 471 U.S. 159, 175 (1985) ("The government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service") (quotation omitted); *Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[N]o governmental interest is more compelling than the security of the Nation."); *see also El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007) ("In assessing the risk that such a disclosure might pose to national security, a court is obliged to accord the 'utmost deference' to the responsibilities of the executive branch.").

At the same time, the rules and procedures governing this case already provide the public with broad access to the proceeding, with publicly available briefs, oral arguments, and opinions. These comprehensive procedures are sufficient to inform the public how this case is decided and to satisfy the "citizen's desire to keep a watchful eye on the workings of" this Court. *Nixon v. Warner Communications, Inc*., 435 U.S. 589, 597-98 (1978). In sum, the relevant interests are best served by the procedures currently in place that seal sensitive material presented to this Court.

Further, the sealing is narrowly tailored to achieve that interest. The requested judicial records include unclassified but sensitive law enforcement, military, and political information, and Defendants have only opposed this motion to the extent necessary to protect such information.

Therefore, no less reasonable alternative than continued sealing will protect the government's interest in preventing the unauthorized dissemination of this information. *See In re Nat'l Sec. Letter*, 33 F.4th 1058, 1072 (9th Cir. 2022), citing *Dep't of the Navy*, 484 U.S. 518, 527 (noting that keeping sensitive information confidential in order to protect national security is a compelling government interest); *see also Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015) ("The First Amendment "requires that [the speech restriction] be narrowly tailored, not that it be 'perfectly tailored.").

Therefore, there is a compelling governmental interest in keeping the sensitive information under seal. Intervenors do not have a First Amendment right to the requested judicial records and documents. And even if they did, the government's interest in national security and sensitive information concerning law enforcement tactics is compelling and sealing that information is narrowly tailored to achieve that interest.

Intervenors opine that some of the information provided to the Court under seal is now publicly available. Memo. at 7-8. Consistent with this finding, Defendants have agreed to unseal information that is now within the public discourse. *See* Sealed Exhibit A. But the information Defendants believe should remain sealed is not. And, even if this Court were to disagree and find that some of the information Defendants seek to continue to seal relates to publicly available information, this Court should nonetheless continue to seal it. Courts should consider the source of the information when determining its sensitive nature. Common sense dictates that statements from high level agency officials concerning matters directly within their control carry more weight than those of the general news media. Statements from agency officials also have the capacity to precipitate consequences adverse to the interests of the United States that statements by the news media do not. Additionally, piecing together a particular conclusion from numerous publicly

available sources is meaningfully different than obtaining that conclusion directly from a high-ranking agency official. Accordingly, even if this Court should find that the information Defendants wish to continue under seal is, in some way, related to information in the public discourse, this Court should continue to seal it considering due to the source of the information.

## II.    Any Common Law Presumption of Access Intervenors Have to the Requested Judicial Records is Outweighed by the United States's Compelling Interest in Protecting National Security Information

"In addition to any constitutional right, there is also a presumption of public access to 'judicial records' under the common law." *In re Bos. Herald, Inc*., 321 F.3d at 189 (citing *Nixon v. Warner Communications, Inc*., 435 U.S. at 597; *Anderson v. Cryovac, Inc*., 805 F.2d 1, 13 (1st Cir. 1986)). The common law "presumption is more easily overcome than the constitutional right of access; when the first amendment is not implicated, 'the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'" *Anderson*, 805 F.2d at 13 (quoting *Nixon v. Warner Communications*, Inc., 435 U.S. at 599, and citing *In re Reporters Committee for Freedom of the Press*, 773 F.2d at 1340 (trial court's "eminently reasonable action" unquestionably lawful "[i]n the absence of some overriding constitutional command to provide access"); *cf. McCoy v. Providence Journal Co*., 190 F.2d 760, 765 (1st Cir. 1951) ("[t]raditionally, courts have exercised the power to impound their records when circumstances warranted such action")) (parentheticals in original). "[T]he decision as to [common law] access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

When deciding whether to unseal judicial records, a court must weigh "the presumptive public right of access against the competing interests" specific to the case, remaining cognizant that "'only the most compelling reasons can justify non-disclosure of judicial records' that come

within the scope of the common-law right of access." *In re Providence Journal*, 293 F.3d at 10 (quoting *Standard Fin. Mgmt.*, 830 F.2d at 410).

The Fourth Circuit has stated that in entering a sealing order, "a judicial officer may explicitly adopt the facts that the government presents to justify sealing when the evidence appears creditable." *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 430 (4th Cir. 2005) (internal citations and quotations omitted). Moreover, "if appropriate, the government's submission and the officer's reason for sealing the documents can be filed under seal." *Id.*

Here, the Court permitted sealing of the documents in question to safeguard sensitive information. *See Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) ("The trial court enjoys considerable leeway in making decisions of this sort."). This was appropriate given the nature of the proceedings and the compelling governmental interest in protecting foreign affairs and national security and preventing the dissemination of sensitive law enforcement information. Given the sensitive information involved, the Court did not abuse its discretion in sealing the documents in question. *See In re Bos. Herald, Inc.*, 321 F.3d at 190 ("The standard for our review [of trial court's decision to seal] is abuse of discretion"). Additionally, the Court's decision to seal is fully consistent with the case law on the right of access.

The Intervenors' request to unseal the challenged information, and presumably publish their contents to the world, must be rejected. *See* Memo. at 12-15. The challenged sealed filings—the hearing transcript and the Hegseth Declaration—contain sensitive national security, foreign affairs, and law enforcement information worthy of protection. *Cf. generally* Classified Information Procedures Act ("CIPA") § 1 (defining "classified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of

national security); Exec. Order No. 12,958 § 1.3(a)(1)-(3), 60 Fed. Reg. 19,825, 19,826 (Apr. 17, 1995); 28 C.F.R. § 17.21; 10 U.S.C. § 130c (protecting information obtained from foreign governments from disclosure); *see also United States v. Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984) ("[T]he government . . . may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it.").

Analogously, the government has a compelling interest in protecting sensitive and classified information. *See Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[N]o governmental interest is more compelling than the security of the Nation."). The government's compelling interest in protecting the sensitive information in this case from disclosure outweighs any generic public right of access. *See Nixon*, 435 U.S. at 598 (common law right of access may be outweighed by important competing interests). As discussed supra, there is a compelling governmental interest in maintaining the seal on those records. *See, e.g., Sims*, 471 U.S. 159, 175 (1985) ("The government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service"); *see* Sealed Ex. B.

Indeed, the Court placed the information under seal to preserve its sensitive nature. Before doing so, the Court weighed the interests advanced by the parties in light of the public interest and the duty of the courts. *See Rushford*, 846 F.2d 249, 253. *cf. Stone*, 855 F.2d at 182 (noting that district court has "superior vantage point" from which to make decisions regarding sealing of materials before it). This is particularly true with regard to the Hegseth declaration which the Court sealed only after reviewing the information contained therein. The Intervenors now seek to supersede the Court's informed determination based on a pro forma assertion of a right of public access. Although the challenged materials are not classified, the common-law right of access is

subject to a balancing test and does not entitle the press and the public to access in every case. *Rushford v. New Yorker Mag., Inc.*, 846 F.2d at 253. But given the compelling government interest in protecting national security and foreign affairs and preventing the dissemination of sensitive information that might adversely affect the government's ability to safely execute immigration laws, the default presumption of access is easily rebutted. *See* Sealed Exhibit B. Simply put, Intervenors' curiosity does not outweigh the national security, foreign affairs, and law enforcement interests in keeping the sealed material sealed. As with any district court case, the procedural maneuverings are highly fact-driven and circumstance specific.

Indeed, as to the May 21, 2025 under-seal hearing, the Court's procedural rulings were responsive to, and inextricably intertwined with, the substance of the sensitive law enforcement information presented to the Court by a government witness. Particularly with respect to the requested transcript of the Court's sealed hearing, the Intervenors implicitly ask the Court to take a course of action that is not within its province to take. "It is not the province of the judiciary . . . to determine whether a source or method should be (or should not be) disclosed." *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 762 (D.C. Cir. 1990), citing *Sims*, 471 U.S. 159, 167 (1985). Defendants have proposed redactions to the transcript that are in line with their interest in protecting law enforcement sensitive information, the disclosure of which could put officers at risk.[2]

The case against disclosure of Secretary Hegseth's declaration is particularly strong as it directly concerns matters of national security and diplomatic relations. *See* Sealed Ex. B. Thus,

---

[2] Defendants' proposed redactions to the May 21, 2025 transcript go beyond a concern for an increase in protestors at any given location at which ICE operates. The media has reported recent violence directed at law enforcement officials at ICE facilities such that disclosing information related to where ICE may frequently operate could have serious adverse consequences on ICE's ability to safely carry out lawful operations. Amanda Holpuch, *Police Officer Shot Outside Immigration Detention Facility in Texas*, N.Y. Times (July 6, 2025), available at https://www.nytimes.com/2025/07/06/us/ice-detention-facility-shooting-texas.html.

any promoted understanding of the court system is clearly outweighed by the most paramount countervailing interest—the security of the Nation. *Haig v. Agee*, 453 U.S. 280, 307 (1981). Accordingly, the challenged records should remain sealed and the Intervenors' request should be denied. *See In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 293–94 (4th Cir. 2013) (determining common law presumption of access was outweighed by government's interest in continued sealing where challenged records implicated government's interests in maintaining the secrecy of its investigation, preventing potential subjects from being tipped off, or altering behavior to thwart the government's ongoing investigation).

The case against disclosure of the information sought by Intervenors is also further enhanced by the fact that the Court entered a protective order in this case, designating materials as confidential or even attorneys'-eyes-only, to allow the parties to litigate this dispute while ensuring that implicated information may remain under seal. ECF No. 157. The information Defendants seek to continue under seal would be appropriately protected under the Protective Order if this information had been exchanged during the discovery process. *See id.* Accordingly, this Court should deny Intervenors' motion.

## CONCLUSION

For the foregoing reasons, this Court should deny Intervenors' motion to the extent it seeks to unseal information beyond what Defendants have proposed in Sealed Exhibit A.


Respectfully submitted,

| | |
|---|---|
| BRETT A. SHUMATE | /s/ *Mary L. Larakers* |
| Acting Assistant Attorney General | MARY L. LARAKERS |
| | Senior Litigation Counsel |
| ELIANIS N. PEREZ | U.S. Department of Justice, Civil Division |
| Assistant Director | Office of Immigration Litigation |
| | P.O. Box 868, Ben Franklin Station |
| MATTHEW P. SEAMON | Washington, DC 20044 |
| Senior Litigation Counsel | (202) 353-4419 |
| | (202) 305-7000 (facsimile) |
| | Mary.l.larakers@usdoj.gov |




## CERTIFICATE OF SERVICE

I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


                                        /s/ *Mary L. Larakers*
                                        Mary L. Larakers
Dated: July 7, 2025                     Senior Litigation Counsel