**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity, <br><br> Defendants. | Civil Action No. 25-cv-10676-BEM |

**PLAINTIFFS' MOTION TO STAY DISCOVERY RELATED TO TRO COMPLIANCE AND REQUEST TO EXPEDITE HEARING ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.    INTRODUCTION

Plaintiffs and class members currently have no protection against removal to third countries where they may be tortured or killed—and will remain so until the merits of their claims are resolved. To expedite that resolution, Plaintiffs have filed a motion for partial summary judgment alongside this motion. Through the present motion, Plaintiffs seek: (1) a temporary stay of discovery on Defendants' alleged violations of this Court's Temporary Restraining Order, allowing the parties and the Court to focus their limited resources on resolving the merits; and (2) an expedited hearing on Plaintiffs' motion for partial summary judgment following the close of briefing.

II.    STATEMENT OF RELEVANT PROCEDURAL HISTORY

A.    Temporary Restraining Order Compliance Discovery

Plaintiffs filed the instant class action on March 23, 2025, challenging DHS' failure to provide meaningful notice and an opportunity to present relevant fear-based claims prior to removal to a third country. Dkt. 1. Along with their complaint, Plaintiffs moved for a temporary restraining order (TRO), preliminary injunction (PI), and class certification. Dkts. 6, 4. At a March 28, 2025, hearing, Defendants stated that Plaintiffs and similarly situated individuals were not entitled to *any* notice or opportunity to make a fear-based claim before a third-country removal. Mar. 28, 2025, Hr'g Tr. 29:10-18. The Court then issued a TRO requiring Defendants, prior to any third-country removal, to provide written notice and a meaningful opportunity to apply for protection under the United Nations Convention Against Torture (CAT) and have the agency adjudicate the application. Dkts. 34, 40. The Court issued a PI and certified the class on April 18, 2025. Dkt. 64.

1

On March 31, three days after the TRO issued, at least four alleged class members were removed from the continental United States to El Salvador, via Naval Station Guantánamo Bay (NSGB), without receiving the TRO's procedural protections. *See* Dkts. 62, 72, 72-1. A second flight with class members, also from NSGB to El Salvador, departed on April 13, 2025. *See* Dkt. 81; Apr. 28, 2025, Hr'g Tr. 27:8-9. Defendants stated to this Court that "DHS did not violate" the TRO in conducting these removals, based only on DHS's claim that the removals were carried out by the U.S. Department of Defense (DoD). Dkt. 72 at 2; *see also* Dkt. 72-1 ¶¶ 12, 18, 27, 51 (stating that class members were "removed to El Salvador by the [DoD] on a flight where no DHS personnel were onboard" and that "DHS did not direct [DoD] to remove" these individuals).

This matter was discussed at a status conference on April 28. Dkt. 79. Following the conference, the Court ordered Defendants to identify individuals with a final order of removal who were removed on the two flights that occurred on or around March 31, 2025, and April 13, 2025, and to identify any additional flights from NSGB to third countries that occurred after the TRO. Dkt. 81. The Court also ordered the parties to submit a joint discovery plan addressing: "(1) the scope and timing of discovery related to the factual circumstances surrounding the removal of the four alleged class members identified in Defendants' April 23, 2025 response (Dkt. [72]) that occurred after the issuance of this Court's temporary restraining order on March 28, 2025; (2) the relationship between the Department of Homeland Security and the Department of Defense, including, but not limited to, each agency's role with regards to removals, the management of NSGB, and the March 7, 2025 memorandum of understanding between the two agencies; and (3) the facts in the declaration of Tracy J. Huettl (Dkt. 72-1)." Dkt. 83.

On April 30, after ordering and reviewing briefing from the parties, this Court amended the PI, ordering that Defendants "may not cede custody or control" of a noncitizen to another agency "in any manner that prevents [the noncitizen] from receiving" the protections of the PI. Dkt. 86; *see also* Dkts. 82, 84, 85.

On May 5, the parties jointly submitted separate discovery plans. Dkt. 88. On May 7, the Court ordered that:

> (1) the parties will conduct expedited discovery limited to the issues of (a) the scope and timing of discovery related to the factual circumstances surrounding the removal of the four alleged class members identified in Defendants' April 23, 2025 response (Dkt. 72) that occurred after the issuance of this Court's temporary restraining order on March 28, 2025; (b) the relationship between the Department of Homeland Security and the Department of Defense, including, but not limited to, each agency's role with regards to removals, the management of Guantanamo Bay, and the March 7, 2025 memorandum of understanding between the two agencies; and (c) the facts in the declaration of Tracy J. Huettl (Dkt. 72-1); (2) any deposition notices must be served by May 12, 2025; (3) each side will be limited to twenty-five Requests for Admission, twenty-five Interrogatories, and two sets of Requests for Production, issued by May 14, 2025; (4) any objection, motion to quash, or motion for a protective order must be made within fourteen days of receipt of the discovery request or subpoena, and each request and subpoena should reference this time limit; (5) all responses to requests for production of documents, interrogatories, and admissions shall be completed within thirty days of receipt of the request; and (6) depositions shall be completed by June 26, 2025.

Dkt. 92. The Court also ordered briefing on whether DoD should be joined as a party, which the Court subsequently declined to do. Dkts. 93, 98, 100, 107, 108; May 21, 2025, Hr'g Tr. 66:15-67:3.

Following the Court's discovery order, on May 12, Plaintiffs served notices for depositions of the DHS/ICE liaison officer with DoD (Tracy J. Huettl), the ICE officers who released custody of the four class members to DoD, and a DHS Rule 30(b)(6) witness. On May 14, Plaintiffs served their First Set of Requests for Admission, Interrogatories, and Requests for Production of Records on Defendants. On May 30, the parties filed a proposed protective order

3

for the expedited discovery related to the alleged TRO violations. Dkt. 147. The Court has not yet ruled on that proposed order.[1]

After Plaintiffs served TRO compliance discovery, Defendants filed a motion to quash, which they later withdrew after the parties filed a joint stipulation for an amended discovery schedule. Dkts. 148, 156. The joint stipulation set forth the following schedule:

- June 27, 2025: Deadline for responses to written discovery requests and identification of the names and positions of DHS deponents.
- July 13, 2025: Deadline for final production of responsive documents with the agreement that DHS will serve productions on a rolling basis, as they become available, in advance of the deadline.
- August 15, 2025: Deadline for completion of DHS Rule 30(b)(6) deposition and depositions for DHS deponents.

Dkt. 156. The Court adopted this schedule. *See* Dkt. 157. On June 27, Defendants provided their initial responses to written discovery, and on July 14, 2025, produced a set of documents accompanied by an explanation that review of additional documents was ongoing. In their response to written discovery, Defendants failed to answer several interrogatories, and instead stated they would supplement their responses. To date, Defendants have not identified the names and positions of DHS deponents (despite the service of deposition notices on May 12) and have not provided any supplemental responses.

B.    **The Preliminary Injunction and Subsequent Supreme Court Stay**

As noted above, on April 18, 2025, the Court issued a PI, which, broadly speaking,

---

[1] The Court granted the proposed stipulated clawback agreement related to that discovery. *See* Dkts. 166, 168.

required Defendants to provide notice and a meaningful opportunity to apply for CAT protection. Dkt. 64 at 46-47. Defendants subsequently attempted to violate the order by removing class members to Libya, *see, e.g.* Dkt. 91, and then violated the PI when they removed several more class members who were destined for South Sudan, *see* Dkts. 118, 119. The Court subsequently required that the class members destined for South Sudan remain in Defendants' custody while they received a process similar to that envisioned by the PI. *See* Dkts. 116, 119. In addition, the Court clarified the PI to specify the type and timing of notice that Defendants needed to provide prior to a third country removal. *See* Dkt. 118 at 2.

Meanwhile, Defendants sought a stay of the April 18 PI order, first from the Court of Appeals, *see* Order, *D.V.D. v. DHS*, No. 25-1393 (1st Cir. May 16, 2025) (denying stay), and later, the Supreme Court, *see* Appl. for a Stay, *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025) (No. 24A11153). The Supreme Court granted Defendants' motion for a stay without providing any reasoning, *see DHS v. D.V.D.*, 145 S. Ct. 2153 (2025), and later granted Defendants' motion for clarification as to whether the stay encompassed the Court's remedial order for the eight men Defendants sought to remove to South Sudan, *see DHS v. D.V.D.*, No. 24A1153, 2025 WL 1832186 (U.S. July 3, 2025). Notably, while the Supreme Court provided no guidance as to why it stayed the preliminary injunction, Defendants repeatedly emphasized 8 U.S.C. § 1252(f)(1) in their application for a stay.[2] It is against this backdrop—where the preliminary injunction no longer serves any purpose in this litigation, and where § 1252(f)(1) may have informed the Supreme Court's stay order—that Plaintiffs now seek to stay discovery and to expedite treatment of their motion for partial summary judgment.

---

[2]  *See also D.V.D.*, 145 S. Ct. at 2160 (Sotomayor, J., dissenting) ("Only one jurisdictional objection remains with any force[:] . . . § 1252(f)(1) . . . .").

5

### III.    ARGUMENT

####     A.    The Court Should Hold TRO Compliance Discovery in Abeyance Pending Resolution of the Completion of Partial Summary Judgement Briefing

The Court should hold the TRO compliance discovery in abeyance to allow the parties and the Court to focus their resources on resolution of several critical merits claims. Plaintiffs seek summary judgment on certain claims to bring some relief to class members, all of whom are at risk of unlawful third-country removals.[3]

Plaintiffs anticipate that the TRO compliance discovery will require both parties, as well as the Court, to expend significant additional resources. Plaintiffs deem many of Defendants' discovery responses inadequate and anticipate that they will need to file motions to compel in order to ascertain the information sought by their written discovery. For example, Defendants have failed to provide the names and positions of the DHS officers who determined that the four class members previously identified to Defendants were to be sent to NSGB, the date and time this decision was made, or the asylum office that conducts reasonable fear interviews for individuals held on NSGB. In addition, Plaintiffs intend to take at least six individual depositions of the not-yet identified officers and at least one Rule 30(b)(6) deposition of DHS. These discovery disputes will require time and the expenditures of Plaintiffs' limited resources while class members remain without any procedural protections or relief under the Administrative Procedure Act (APA) or Declaratory Judgment Act. *See infra* Section III.B.

Moreover, Plaintiffs believe expansion of the TRO discovery compliance is now warranted, which will require additional time and resources. Since the Court issued its discovery

---

[3]    The parties are also actively engaged in discovery related to Plaintiff O.C.G. with written discovery responses due on July 17, to be followed by three depositions. Because that discovery is limited, Plaintiffs are not seeking to stay it.

6

order as to the scope of discovery, a former high-level Department of Justice attorney who worked on this case lodged a formal whistleblower complaint that in part concerns the TRO violations at issue. *See* Protected Whistleblower Disclosure of Erez Reuveni Regarding Violation of Laws, Rules & Regulations, Abuse of Authority, and Substantial and Specific Danger to Health and Safety at the Department of Justice, 16-21 (June 24, 2025), https://s3.documentcloud.org/documents/25982155/file-5344.pdf. That complaint alleges that officials at the highest levels of the Department of Justice and the Department of Homeland Security conspired to deliberately violate the Court's order. *See id.* Emails more recently released further corroborate the whistleblower's account. *See* July 1, 2025 Addendum to June 24, 2025 Protected Whistleblower Disclosure of Mr. Erez Reuveni Submitted Pursuant to 5 U.S.C. § 2302 and 5 U.S.C. § 1213, Exs. 9-10, https://www.documentcloud.org/documents/25995064-reuveni-batch-1/; July 7, 2025 Addendum to June 24, 2025 Protected Whistleblower Disclosure of Mr. Erez Reuveni Submitted Pursuant to 5 U.S.C. § 2302 and 5 U.S.C. § 1213, Exs. 2-12, https://www.documentcloud.org/documents/25995065-reuveni-batch-2/.[4]

---

[4] In addition, class counsel are dedicated to pursuing compliance discovery and ultimately seeking the return of class members deported unlawfully on March 31 and April 13 in violation of this Court's TRO, all of whom are now believed to be imprisoned at the Centro de Confinamiento del Terrorismo (CECOT), a maximum-security prison in El Salvador. This is especially true in the wake of the recent revelations regarding the U.S. government's role in those detentions. *See, e.g.*, Dkt. 160-1, U.N. Office of the High Comm'r for Human Rights, Working Grp. on Enforced or Involuntary Disappearances, Report on Enforced or Involuntary Disappearances, at 3, 6, 9, *J.G.G. v. Trump*, No. 1:25-cv-00766-JEB, Dkt. 160-1 (D.D.C. July 7, 2025) (providing that the government of El Salvador responded that, with respect to Venezuelans removed to El Salvador, "[t]he actions of the State of El Salvador have been limited to the implementation of a bilateral cooperation mechanism with another State, through which it has facilitated the use of the Salvadoran prison infrastructure for the custody of persons detained within the scope of the justice system and law enforcement of that other State"). However, at least one other district judge may be positioned to afford all or some of that relief. *See* Order, *J.G.G. v. Trump*, No. 1:25-cv-00766-JEB, No. 1:25-cv-00766-JEB, 2025 WL 1577811, at *32 (D.D.C. June 4, 2025) (requiring Defendants to advise the Court "how they intend to facilitate the ability of [individuals detained in El Salvador] to seek habeas relief").

7

These are important matters, and they deserve the Court's and the parties' complete attention. But the Supreme Court's stay order in this case makes clear that at this point, such matters are retrospective: in other words, the discovery matters primarily for purposes of contempt. *See D.V.D.*, 2025 WL 1832186 at *1. Meanwhile, the entire class is vulnerable to unlawful third country removals. As a result, class counsel is compelled to prioritize relief on their behalf as expeditiously as possible. Although some district courts have been willing to issue temporary relief to individual class members,[5] that relief has been limited to the class members who have had the luck and means to find counsel with the ability to file habeas corpus petitions in the districts in which they are confined. *Cf. Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (confirming "the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement"). Other courts may elect to transfer those habeas petitions to this Court. *See, e.g., Phan v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-11910-BEM (D. Mass. transferred July 4, 2025).

Holding TRO compliance discovery in abeyance only until the completion of briefing on Plaintiffs' motion for partial summary judgment will allow the parties and this Court to focus on resolution of several of merits claims in an effort to more expeditiously determine whether relief is available to class members and curtail a potential deluge of individually filed habeas corpus petitions.

---

[5]    *See, e.g.*, Min. Order, Dkt. 7, *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGRx (C.D. Cal. Jul. 14, 2025); Order, Dkt. 14, *Mahdejian v. Bradford*, No. 25-cv-191-MJT-CLS (E.D. Tex. Jul. 3, 2025); Min. Order, Dkt. 18, *Vaskanyan v. Janecka*, No. 25-cv-1475-MRA-AS (C.D. Cal. Jun. 25, 2025); Order, Dkt. 33, *Y.J.C. v. Oddo*, No. 3:24-cv-179-SLH-KAP (W.D. Pa. Jun. 25, 2025); Order, Dkt. 14, *Ortega v. Kaiser*, No. 25-cv-5259-JST (N.D. Cal. Jun. 26, 2025).

### B. The Court Should Expedite the Scheduling of a Summary Judgment Hearing After the Conclusion of Briefing

Concurrent with this motion, Plaintiffs are filing a motion for partial summary judgment and a motion for an indicative ruling regarding dissolution of the preliminary injunction. Plaintiffs' motion for partial summary judgment seeks relief under the Declaratory Judgment Act and Administrative Procedure Act. Because the Supreme Court stayed this Court's preliminary injunction through the conclusion of the First Circuit appeal and any judgment resulting from a timely petition for certiorari regarding that order (Dkt. 183), Plaintiffs seek an expedited hearing on their motion for partial summary judgment (following full briefing) so that, should Plaintiffs prevail, class members may gain relief from ongoing harm.

As detailed in Plaintiffs' memorandum in support of their motion for an indicative ruling, Dkt. 192, expeditious treatment of Plaintiffs' motion for summary judgment is appropriate for three reasons. First, the material facts here are largely undisputed as this case presents pure legal questions. *See Martin v. Tricam Indus.*, Inc., 379 F. Supp. 3d 105, 107 (D. Mass. 2019) ("[T]he court shall grant summary judgment if the moving party shows, based on the materials in the record, 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56)). Dkt. 192 at 8-9. Second, expeditious relief through summary judgment is appropriate given the declaratory relief that Plaintiffs seek and the harm that will ensue while they await final judgment in this case. *Id*. at 10. Third, expeditious relief through summary judgment is appropriate pursuant to the APA. *Id*. at 11.

Thus, Plaintiffs request that the Court set a hearing on Plaintiffs' motion for partial summary judgment as expeditiously as possible after the conclusion of briefing.

9

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court stay or postpone discovery related to Defendants' alleged violations of the TRO and set an expedited hearing on Plaintiffs' motion for partial summary judgment.

Respectfully submitted,

s/*Trina Realmuto*

Trina Realmuto*
Kristin Macleod-Ball*
Mary Kenney*
**NATIONAL IMMIGRATION
    LITIGATION ALLIANCE**
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4649
trina@immigrationlitigation.org

Anwen Hughes*
Inyoung Hwang*
 **HUMAN RIGHTS FIRST**
121 W. 36th St., PMB 520
New York, NY 10018

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
**NORTHWEST IMMIGRANT
    RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

*Attorneys for Plaintiffs and Class Members*

* *Admitted pro hac vice*

July 15, 2025

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**

I certify that, in accordance with Local Rule 7.1(a)(2), I emailed Defendants' counsel Mary Larakers, Matthew Seamon, and Elianis Perez on July 15 at 9:11 am to inform counsel that Plaintiffs intended to file this motion. As of the time of this filing, Defendants have not provided a position.

s/ *Trina Realmuto*
Trina Realmuto

**CERTIFICATE OF SERVICE**

I, Trina Realmuto, hereby certify that on July 15, 2025, I caused a true and correct copy of the foregoing document to be filed with the Clerk of Court by using the CM/ECF system, which will send a notice of the electronic filing to counsel of record for all parties.

/s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance