IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D., et al.,<br><br>      Plaintiffs,<br><br> v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>      Defendants. | Case No. 1:25-cv-10676-BEM |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE PRESS MOVANTS'
MOTION TO INTERVENE AND UNSEAL COURT RECORDS**

In their motion to intervene and unseal, the Press Movants[1] set out three settled and straightforward propositions: (1) the public has a right of access to the records filed and proceedings held in this case; (2) whether that right of access arises from the First Amendment or common law, the party seeking to deny access bears the burden of justifying secrecy; and (3) the right of access further requires the Court to provide reasons on the record for denying access and rejecting less restrictive measures. *See generally* Mem. in Supp. of Press Movants' Mot. to Intervene & Unseal Court Records ("Mem."), ECF No. 163. The government does not dispute any of those points—indeed, it concedes that much of the information within the Sealed Records is already public and must be unsealed. Yet it opposes complete unsealing, offering only the conclusory claim that keeping the Sealed Records secret protects "national security" interests. *See* Gov't's Resp. in Opp. to Mot. to Intervene & Unseal ("Opp.") at 2, ECF 189. In fact, the government goes so far as to claim the Court *has no choice* but to obey the government's call for secrecy, arguing that unsealing these records is "not within [the Court's] province." *Id.* at 13.

---

[1] Capitalized terms defined in the Motion to Intervene and Unseal retain their definitions herein.

The government's opposition errs on access law generally and as to these records specifically. The Court, not the government, has discretion to seal or unseal judicial records, and courts cannot "abdicate [their] decisionmaking responsibility" merely because "national security concerns are present." *In re Washington Post Co.*, 807 F.2d 383, 391–92 (4th Cir. 1986). To the contrary, "[a] blind acceptance by the courts of the government's insistence on the need for secrecy, without notice to others, without argument, and without a statement of reasons, would impermissibly compromise the independence of the judiciary and open the door to possible abuse." *Id.* Thus, while national security considerations can, in the right circumstances, establish a legitimate need for secrecy, even then the First Amendment and common law require that the Court follow the proper procedural requirements before sealing or redacting records.

As to these records, none of the steps required to justify sealing was taken here, and the government has failed to show that continuing to keep any part of the records sealed actually advances a "most compelling reason." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 411 (1st Cir. 1987). Rather, the government offers only boilerplate assertions and a series of non sequiturs, which do not suffice to establish "the existence of special circumstances adequate to overcome the presumption of public accessibility." *Id*. at 413. That failure would make sealing unjustified in any case, but it is especially improper in such a closely watched matter—one that also raises profoundly important constitutional questions and issues. Accordingly, the Court should grant the Press Movants' motion and promptly unseal the records in their entirety.

I.  **IT IS UNDISPUTED THAT THE SEALED RECORDS MUST BE UNSEALED AT LEAST IN PART**

The parties agree that, at the least, the portions of the Sealed Records containing information that is already public must be unsealed and placed on the public docket. Pls.' Resp. to Press Movants' Mot. to Intervene & Unseal ("Pls.' Resp.") at 1, ECF No. 167; Opp. at 9

(government agrees "to unseal information that is now within the public discourse."). According to both the plaintiffs and the government, this covers most of the contents of the Sealed Records. *See* Pls.' Resp. at 1 ("Defendants themselves already have made much . . . of the information in the sealed records public."); Opp. at 7 (noting "only limited information" has been withheld). The Court should therefore grant the Press Movants' motion and promptly unseal those portions of the Sealed Records over which there is no dispute. *See* Mem. at 11 (citing *Skyhook Wireless, Inc. v. Google, Inc.*, Civil Action No. 10-11571-RWZ, 2015 U.S. Dist. LEXIS 176173, at *3 (D. Mass. Mar. 3, 2015) ("Once information is published, it cannot be made secret again.")).[2]

## II.  THE JUDICIARY, NOT THE EXECUTIVE, DECIDES WHETHER COURT RECORDS SHOULD BE UNSEALED

As for what else remains of the Sealed Records, the government is wrong to suggest that it "is not within its province" for the Court to decide whether to grant access to this material. *See* Opp. at 13. Under basic separation of powers principles, the Judicial Branch, not the Executive Branch, decides what judicial records can and should be released.

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). Among these is the "supervisory power over [the court's] own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *Parhat v. Gates*, 532 F.3d 834, 836 (D.C. Cir. 2008) ("it is the court, not the Government, that has discretion to seal a judicial record") (cleaned up); *R&G Mortg.*

---

[2] As numerous courts have recognized, courts "simply do not have the power . . . to make what has thus become public private again." *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004); *see also Siedle v. Putnam Invs.*, 147 F.3d 7, 9 (1st Cir. 1998) (recognizing that once information is public, "the cat [is] out of the bag, without any effective way of recapturing it").

3

*Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 12 (1st Cir. 2009) ("decisions about whether or not to seal are committed to the sound discretion" of the courts).

*In re Washington Post* is particularly instructive on this point. There, when the press sought access to records related to an espionage prosecution, the government argued that the standard procedural requirements for closure or sealing "should not apply where national security interests are at stake." 807 F.2d at 391. The appellate court soundly rejected that argument, stating that "troubled as we are by the risk that disclosure of classified information could endanger the lives of both Americans and their foreign informants, we are equally troubled by the notion that the judiciary should abdicate its decisionmaking responsibility to the executive branch whenever national security concerns are present." *Id.* The court further held that "the procedural requirements" for denying access to court records and proceedings "are fully applicable" when requests for sealing are "based on threats to national security." *Id.* at 392.

The weight of authority is clear: It is up to this Court—not the government—to decide whether there is sufficient justification to keep any part of the Sealed Records secret.

### III. THE GOVERNMENT HAS NOT OVERCOME THE PRESUMPTION OF PUBLIC ACCESS UNDER THE FIRST AMENDMENT OR COMMON LAW

The government further errs in disputing that the First Amendment right of access applies to the Sealed Records, which are (1) a transcript of the May 21, 2025 hearing on Plaintiffs' emergency motion for injunctive relief and (2) a declaration that the government later submitted with its motion to reconsider the finding that it had violated the preliminary injunction. The First Amendment right of access squarely applies to such records. *See, e.g.*, *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1072 (3d Cir. 1984) (concluding that the First Amendment right of access applies to a preliminary injunction motion and related hearing, and that the district court erred in "closing [a] portion of the hearing" when "[n]o countervailing interests were articulated, nor

were specific findings made to explain the closure as to this matter" and "no alternatives to closure were considered"). The government cites no authority to the contrary, but rather relies entirely on case law discussing the right of access to *discovery* proceedings. *See* Opp. at 6–7. Such cases are inapposite here. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099–1102 (9th Cir. 2016) (explaining why, for purposes of evaluating the public's right of access, preliminary injunction motions are entirely unlike discovery motions even "assum[ing] that the instant motion for preliminary injunction was technically nondispositive").[3]

Regardless, the Court need not decide whether the remaining portions of the Sealed Records in dispute are subject to the First Amendment right of access or the common law right of access because the government has failed to satisfy even the common law standard that "only the most compelling reasons can justify non-disclosure of judicial records." *See Standard Fin. Mgmt. Corp.*, 830 F.2d at 410. Indeed, the First Circuit has recognized that the burden to overcome that standard is even tougher to meet "in cases where the government is a party," because "in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Id*.

### A. The Record Lacks Any Explanation For Continued Sealing.

The government admits there are "rules and procedures governing this case" to ensure "public access." Opp. at 2. And the government does not dispute that the public record contains no findings of fact to explain why the Sealed Records remain secret. Yet the government claims that the lack of findings is irrelevant, as the Court must have "weighed the interests" at stake

---

[3] The suggestion that the First Amendment right of access does not apply to motions for "*preliminary*" relief, *see* Opp. at 6 (government's emphasis), also ignores the reasoning of *Press-Enterprise II*, where the Supreme Court held that the First Amendment right of access applies to *preliminary* hearings in criminal cases. *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1 (1986).

because it "placed the information under seal." *Id*. at 12. "This is particularly true with regard to the Hegseth declaration," the government insists, because "the Court sealed [it] only after reviewing the information contained therein." *Id*. This argument fails in two respects.

**First**, the government's argument "is an example of affirming the consequent, a classic form of invalid reasoning." *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 n.3 (4th Cir. 1995). The government's theory boils down to:

(1) If the court has sufficient justification, it may seal records.

(2) These records are sealed.

(3) Therefore, the court had sufficient justification.

The existence of sufficient grounds for sealing cannot, however, be presumed from the fact of the sealing itself. That is why precedent requires "particularized findings to support the decision to seal," which "must be specific enough to permit a reviewing court to determine whether sealing was appropriate." *United States v. Kravetz*, 706 F.3d 47, 60 (1st Cir. 2013).

**Second**, the government's argument only underscores the procedural irregularities here. No notice or opportunity to object to the courtroom closure were provided before the sealed proceedings were held. No findings were placed on the record to explain the basis for the continued sealing of the transcript, either at the May 21 hearing or after the Court itself realized the government had disclosed some of the sealed information. No explanation was provided for granting the government's request to seal the Hegseth Declaration. Yet regardless of these irregularities, the government claims that the court records already on the public docket "are sufficient to inform the public how this case is decided." *See* Opp. at 2. The government cites no authority for the proposition that there exists some minimum level of access above which additional disclosures are optional, nor does it explain how it purports to decide when the public has "sufficient" access to judicial records and proceedings. Rather, as the government has

conceded, there is a process that must be followed before a district court may seal any court documents, *see id.*, none of which occurred in this case. "[G]iven the absence here of particularized findings reasonably justifying non-disclosure," the Sealed Records "must be made public." *In re Globe Newspaper Co.*, 920 F.2d 88, 98 (1st Cir. 1990).

> **B.** **The Government Has Also Failed To Show That Its Interest In Secrecy Outweighs The Public's Powerful Interest In Access To These Records.**

The government's failure to articulate a sufficiently compelling reason to justify keeping the Sealed Records secret also compels their prompt unsealing. In opposing the Press Movants' motion, the government asserts that it has a compelling interest in "protecting national security and preventing the dissemination of sensitive law enforcement information." Opp. at 8. Though the Press Movants do not dispute that protecting national security can qualify as a compelling interest, the government has not offered *any specifics whatsoever* about what the national security risk at stake is or how maintaining these records under seal in particular advances that interest. The same is true with respect to the claimed law enforcement information. These deficiencies are fatal to the government's opposition to access. *See Kravetz*, 706 F.3d at 60 (The "sealing of judicial documents 'must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" (quoting *Standard Fin. Mgmt. Corp.*, 830 F.2d at 412)).

The government offers four points to distract from the conclusory nature of its asserted security concerns, none of which suffices to overcome the powerful presumption of access to the records and proceedings of this case.

**First**, the government repeatedly asserts that the need to protect classified information is a compelling interest of the highest order. *See* Opp. at 2, 11–12. But that point is irrelevant here because the government has admitted the Sealed Records do not contain any classified information. *See id.* at 12 ("[T]he challenged materials are not classified.").

7

**Second**, the government belittles the Press Movants' arguments for unsealing as "*pro forma*." *See* Opp. at 12. But there is nothing "*pro forma*" about the public interest in this case. Since the Press Movants moved to intervene in this case, it has twice been up to the U.S. Supreme Court, which stayed both the Court's preliminary injunction and its remedial orders at the center of the dispute over the Sealed Records. *See Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025); *id.*, No. 24A1153, 2025 WL 1832186 (July 3, 2025). The government cannot deny that this case has been discussed at the highest levels of government, or that it remains the subject of intense public scrutiny. Especially in such a closely watched case, the judicial process must "satisfy the appearance of justice, and the appearance of justice can best be provided by allowing people to observe it." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571–72 (1980) (cleaned up). Moreover, the government can hardly fault the Press Movants for advancing generalized interests in access when there has been no explanation on the record to indicate why the Sealed Records were being kept secret.

**Third**, the government suggests that disclosure of the sealed information "could put officers at risk." *See* Opp. at 13. But even setting aside the vagueness of that claim, it was the government that disclosed the date, time, and location from which the plane departed, and it was the government that confirmed the plane had landed at Camp Lemonnier in Djibouti. *See Immigration and Customs Enforcement Officials Hold News Conference*, C-SPAN (May 21, 2025), https://www.c-span.org/program/newsconference/immigration-and-customs-enforcement-officials-hold-news-conference/660241; *see* Haley Britzky et al., *Deported migrant detainees are holding at a US Naval base in Djibouti amid court fight, officials say*, CNN (May 22, 2025), https://www.cnn.com/2025/05/22/politics/deported-migrant-detainees-us-naval-base-djibouti. It was also the government that disclosed the detainees were being held in a conference room in a

Conex shipping container, that there were eleven ICE officers, working 12-hour shifts, assigned to guard them, and that offered approximate measurements of distance between various facilities on the naval base. *See, e.g.*, ECF No. 151 ¶¶ 4–7. Moreover, it is simply not credible that nothing about the status or the conditions of detention has changed such that unsealing the Sealed Records would risk officer safety. *See, e.g.*, Katelyn Polantz et al., *Trump administration deports Djibouti detainees to South Sudan after judge denies emergency bid to block flight*, CNN (July 5, 2025), https://www.cnn.com/2025/07/04/politics/migrants-djibouti-south-sudan.

**Fourth**, the government's claim that continued sealing is appropriate because it can designate information as confidential under a protective order confuses the issues before the Court. *See* Opp. at 14. The standards governing protective orders versus overcoming either the First Amendment or the common law right of access are distinct. *See In re Avandia Mktg., Sales Pracs. and Prod. Liab. Litig.*, 924 F.3d 662, 669 (3d Cir. 2019) (reversing the district court for applying the protective order standard instead of the proper right of access standard in refusing to unseal documents submitted in support of a dispositive motion). Thus, regardless of whether the government could designate these materials confidential *in discovery*, now that the Sealed Records have been filed with the Court, the only standards relevant are those governing the presumptive right of access to judicial records, which the government has not—and cannot—overcome here.

Because the government has not established a particularized compelling interest in this case that outweighs "the presumptively paramount right of the public to know," *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410, it fails to carry its burden under the common law right of access, and the Court should unseal the Sealed Records in their entirety.

9

**CONCLUSION**

For the foregoing reasons and those set forth in their initial brief, the Press Movants respectfully request that the Court grant their motion to intervene and unseal the Sealed Records (the transcript of the May 21, 2025 hearing, ECF No. 145, and the Hegseth Declaration, ECF No. 131-1) and promptly place those records on the public docket. The Press Movants further request that if the parties seek to file additional records or hold additional proceedings under seal in this matter, the Court provide reasonable notice, an opportunity to object, and on-the-record findings to support the granting of any sealing request.

Dated: July 17, 2025

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Christopher A. Hatfield*
Christopher A. Hatfield (BBO No. 688386)
Maxwell S. Mishkin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2263 | Fax: (202) 661-2299
hatfieldc@ballardspahr.com
mishkinm@ballardspahr.com

Isabella Salomão Nascimento (*pro hac vice*)
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3281 | Fax: (612) 371-3207
salomaonascimentoi@ballardspahr.com

*Counsel for the Press Movants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 17th day of July, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will serve all parties of record in the case.

                                          */s/ Christopher A. Hatfield*
                                          Christopher A. Hatfield