**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity,<br><br>Defendants. | Civil Action No. 25-cv-10676-BEM |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO QUASH AND FOR RELIEF FROM DISCOVERY**

## I. INTRODUCTION

The discovery at issue in Defendants' motion to quash or otherwise disallow discovery relating to the false declaration provided by Defendants' witness Brian Ortega, the Assistant Field Office Director of Enforcement and Removal Operations (ERO) for the Phoenix Field Office of Immigration and Customs Enforcement (ICE), is well within the scope of discovery that this Court ordered. Plaintiffs' discovery requests seek to uncover information related to database entries on which Ortega relied, including the metadata and historical content associated with those entries. To date, Defendants have refused to produce *any* information in response to Plaintiffs' requests, including the metadata which Defendants acknowledge the Court ordered them to produce.

Instead, Defendants attempt to avoid responding to Plaintiffs' requests by claiming that they are broad, burdensome, and duplicative, but Defendants' claims are belied by the requests themselves, which are narrowly tailed to ascertain information about the relevant databases and sourcing. Both are necessary to provide Plaintiffs with information necessary to depose additional government witnesses, to accurately present evidence to address the Court's concerns, and to support any motion for redress. Furthermore, Defendants' submission of a third declaration from Ortega does nothing to assuage the Court's serious concerns regarding prior false testimony.

Thus, the Court should deny Defendants' motion to quash and order an immediate response to Plaintiffs' pending discovery requests.

## II. RELEVANT PROCEDURAL HISTORY

In a sworn declaration dated March 25, 2025, Defendants' witness Brian Ortega stated that "[o]n or about February 21, 2025 . . . ERO verbally asked [Plaintiff] O.C.G. if he was afraid

of being returned to Mexico. At this time, O.C.G. stated he was not afraid of returning to Mexico." Dkt. 31-1 ¶ 13.[1]

Relying on this declaration and the factual dispute it raised, the Court postponed resolution of Plaintiffs' motion for O.C.G. to be returned to the United States and instead ordered the parties to conduct expedited discovery and submit a proposed discovery plan. Dkt. 64 at 47-48.

The parties submitted proposed discovery plans on April 25, 2025. Dkt. 77.  Following a hearing on April 28, 2025, the Court ordered:

> (1) the parties will conduct expedited discovery limited to the issue of whether, or to what extent, Plaintiff O.C.G. received notice that he would be removed to Mexico and any response he provided to that notice; (2) all responses to requests for production of documents, interrogatories, and admissions shall be completed by May 12, 2025; (3) each side will be limited to 10 total written discovery requests (the requests for interrogatories and admissions); (4) the deposition of the officer who allegedly provided O.C.G. with notice shall be completed by May 19, 2025; (5) the deposition will be limited to 4 hours; and (6) Defendants must produce O.C.G.'s a-file by May 12, 2025, without redactions, aside from those necessary to protect privileged information or as required by a protective order.

Dkt. 80. Thereafter, on April 30, 2025, Plaintiffs served Defendants with three Requests for Production (RFPs), five Requests for Admission (RFAs), and four Interrogatories (ROGs). On May 9, 2025, after Defendants provided the name of the ICE officer who allegedly notified Plaintiff O.C.G. of his deportation to Mexico, Plaintiffs served a notice to take the deposition of

---

[1] Notably, this declaration came at a time when Justice Department officials were allegedly engaged in willful defiance of district court orders. In a June 24, 2025 whistleblower complaint, Erez Reuveni, the former Acting Deputy Director for the Office of Immigration Litigation of the Department of Justice, detailed specific instances of such defiance in three cases of national importance, including the present case. *See* Protected Whistleblower Disclosure of Erez Reuveni Regarding Violations of Laws, Rules & Regulations, Abuse of Authority, and Sustantial and Specific Danger to Health and Safety at the Department of Justice (June 24, 2025) https://www.judiciary.senate.gov/imo/media/doc/06-24-2025_-_Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf. The conduct described in Mr. Reuveni's complaint occurred in March and early April 2025. *Id*.

that officer on May 16, 2025. On May 12, 2025, Defendants responded to Plaintiffs' written discovery requests and, in so doing, identified 3 ICE officers with connections to O.C.G.'s case. The Court signed the parties' stipulated protective order related to this discovery on May 13, 2025. Dkt. 96.

Plaintiffs then prepared for the May 16, 2025 deposition. On May 15, at 5:37 p.m. EDT, Defendants cancelled the deposition, stating:

> ICE cannot identify the officer who gave O.C.G. notice that he was being removed to Mexico when he was outside the detention center as stated in O.C.G.'s declaration (Dkt. No. 8-4). ICE has not found any officer who remembers such an interaction with O.C.G specifically. Nor can ICE confirm that any officer asked O.C.G. if he had a fear of return to Mexico.

Dkt. 105-1 at 3.

The next day, Defendants filed a Notice of Errata advising the Court that Ortega's statement about an ICE officer's notice to O.C.G. regarding his deportation to Mexico and O.C.G.'s response was erroneous, as was Defendants' reliance on this declaration in statements to the Court. Dkt. 103. Defendants attached to the Notice of Errata a second sworn declaration from Ortega, explaining that the statement in his prior declaration was based on an entry in ICE's ENFORCE Alien Removal Module (EARM) database, which he then believed to be accurate. Dkt. 103-1 ¶¶ 4-7. Attached as an exhibit to the second Ortega declaration was a two-page print out from the EARM database pertaining to O.C.G. *Id*. at Ex. 1. On May 16, 2025, Defendants served amended discovery responses, amending, inter alia, the identification of the ICE officer who served O.C.G. with documents related to his removal and denying knowledge of the identity of the ICE officer described in Ortega's declaration.

At a hearing on May 21, 2025, this Court expressed "concern[] that there's been information put forward to this Court, and that the Court has relied on. That [information] is

demonstrably untrue. And that requires some investigation to preserve the integrity of the Court." Tr. of May 21, 2025 H'rg at 68:12-15. The Court then emphasized that "It's a really big deal to lie to a Court under oath. It's an extraordinarily big deal to do so when you have matters of national importance the Court is being forced to consider. So I could not take this more seriously." *Id.* at 71:12-16. In particular, the Court explained:

> [M]y concern is that that declaration was of such great import and the Department ran away from it only when the veracity of its statements were about to be tested. Hours before the veracity of the statements were about to be tested. It was, I believe, it was 5:37 in the evening before a deposition for the next morning. That doesn't appear, to me, that that is replete with forthrightness. And it raises the question to me that there was some malfeasance occurring.

*Id*. at 74:3-11. After Defendants' counsel represented that DHS had identified two ICE officers who entered the relevant statements in the EARM database, *id.* at 70:8-11, and instead of holding a hearing on the matter, the Court provided the parties "the opportunity . . . to get to the bottom of the error," *Id.* at 77:5-6, instructing the parties to "go depose those three individuals, Ortega and the two individuals in question; . . . hire a computer expert to examine the metadata and explore when those entries were made and by whom and from what location." *Id*. at 74:19-23.

In its subsequent order granting a preliminary injunction to Plaintiff O.C.G., the Court reiterated its concern, explaining that "[t]he Court was given false information, upon which it relied, twice, to the detriment of a party at risk of serious and irreparable harm," and further noting that it ordered discovery, "*including* depositions of the individuals involved in the false declaration and underlying data entries, to better understand how this happened." Dkt. 132 at 3 (emphasis added).

On June 17, 2025, Plaintiffs served six additional RFPs and eleven additional ROGs on Defendants. Dkt. 197-1. These requests sought to uncover information related to the EARM entries on which Ortega relied, including the metadata and historical content associated with

those entries. *Id*.

Defendants filed their Motion to Quash and for Relief from Discovery on July 18, 2025. Dkt. 197. That same day, they served Plaintiffs their objections to each of Plaintiffs' discovery requests; further, with respect to each discovery request, they responded by stating "Defendants stand on their objections," thereby producing no documents, no metadata, and no answers to any interrogatory or request for production. Ex. A (Defendants' Responses to Plaintiffs' Discovery Requests Regarding the Declarations of Brian Ortega and Underlying Data Entries).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 26, "the trial court is required to balance the burden of proposed discovery against the likely benefit." *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 400 (1st Cir. 2005). Consequently, in examining a motion to quash, "'courts weigh the need of the party seeking discovery against any undue hardships created by permitting it.'" *Green v. Cosby*, 152 F. Supp. 3d 31, 36 (D. Mass. 2015) (quoting *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 269 F.R.D. 360, 363-64 (S.D.N.Y. 2010)). The burden rests with the party resisting discovery, and "[i]t is not enough to merely assert overbreadth, burden, or oppression; instead, the party resisting discovery must specifically show how each request for production is either not relevant or overbroad, burdensome, or oppressive." *Katz v. Shell Energy North America (US), LP*, 566 F. Supp. 3d 104, 107 (D. Mass. 2021); *see also BPP Retail Properties, LLC v. North American Roofing Services, Inc.*, 300 F.R.D. 59, 61 (D.P.R. 2014) (same with respect to interrogatories).

## IV. ARGUMENT

### A. Plaintiffs' Requests Are Carefully Tailored to Ascertain the Source of the False Information Provided to the Court.

Emphasizing that Defendants' submission of the declaration containing a false statement

was "an extraordinarily big deal," Tr. of May 21, 2025 H'rg at 71:13, the Court concluded that an investigation was required, particularly because the Court relied upon the declaration "to the detriment of a party at risk of serious and irreparable harm," Dkt. 132 at 2; *see also* Tr. of May 21, 2025 H'rg at 68:15 (stating the discovery at issue was necessary to "preserve the integrity of the Court").

Contrary to Defendants' assertions, Plaintiffs' discovery requests are not "duplicative, overly burdensome, [or] disproportionate to the needs of the case." Dkt. 197 at 1; *see also id*. at 4 (calling the requests "overly broad, unduly burdensome, and not proportional to the needs of this limited discovery"). Rather, Plaintiffs' discovery requests are narrowly tailored to focus on determining the source of the misinformation that Defendants submitted to the Court. Plaintiffs' six RFPs are limited to information concerning Plaintiff O.C.G. that Ortega claims he reviewed before signing the first declaration, including the database entries and related metadata underlying the false statement in his declaration (RFPs 1-2, 5); agency technical documents necessary to interpret that metadata (RFP 3); guidance to ICE employees regarding use of ICE databases (RFP 4); and documents related to the user interface for accessing, inputting, modifying, or otherwise altering entries in the ICE databases (RFP 6).

In addition, Plaintiffs' ROGs seek only the identity of the ICE personnel who made, or could have made, specific database entries related to Plaintiff O.C.G., including the false database entries (ROGs 1-4); general information about the relevant ICE databases, including the process for entering and modifying entries such as those concerning Plaintiff O.C.G. (ROGs 5-6); the identity of systems or sources which Ortega reviewed prior to completing his first declaration and all steps he took to verify the information it contained (ROGs 7, 11); the identity of the persons who drafted Ortega's first declaration (ROG 10); and information regarding the

discovery of the false statement and Ortega's investigation into the circumstances behind it (ROGs 8-9). Defendants' unsupported claim that the discovery requests are "overly burdensome" is particularly spurious given the burden on both the Court and Plaintiffs resulting from Ortega's initial, false declaration.

Because the discovery requests are narrowly tailored to ascertain the source of the false information in the initial Ortega declaration, Defendants fail to meet their burden of demonstrating why any of Plaintiffs' limited discovery requests should be quashed. *Katz*, 566 F. Supp. 3d at 107. Defendants erroneously assert that Plaintiffs propounded "broad, wide-ranging discovery into a host of issues that are, at best, tangentially related to the subject of this limited discovery." Dkt. 197 at 4. However, the *sole* example they offer for this sweeping description is RFP 4, which seeks "policies, instructions, guidance, protocols, user manuals, training manuals, or similar documents for DHS employees' use of EARM or EADM." But, given the significance of the false entry in the ICE database, this material is directly relevant to an investigation into how such an error could occur. It also is critical for Plaintiffs' counsel to understand how these databases work to formulate deposition questions that will solicit information relevant to the inquiry at hand.

Similarly, Defendants wrongly contend that Plaintiffs' discovery "seek[s] the content of privileged conversations," citing only ROG 9, which asks for a description of the sources Ortega consulted during his investigation and what he learned from each source. *Id*. at 3-4. "The burden to demonstrate that a privilege applies 'rests with the party resisting discovery.'" *Delaney v. Town of Abington*, 890 F.3d 1, 12 (1st Cir. 2018) (quoting *FDIC v. Ogden Corp*., 202 F.3d 454, 460 (1st Cir. 2000)). Here, Defendants offer no explanation—much less evidentiary support or a privilege log—for their privilege claim and thus fail to meet that burden.

Finally, Defendants' contention that all the interrogatories are beyond the scope of the Court's order, Dkt. 197 at 3-4, is equally meritless. The Court asked the parties to engage in discovery that would "get[] to the bottom" of the issue, Tr. of May 21, 2025 H'rg at 77:5-6, and specified that this discovery "includ[ed]" three depositions and production of metadata. Dkt. 132 at 3. The interrogatories at issue here, which are designed to illuminate the circumstances leading to Defendants' submission of a false statement, will do just that. These interrogatories will streamline the three Court-ordered depositions and enhance Plaintiffs' and the Court's understanding of any metadata that Defendants produce.

Significantly, Defendants have refused to produce *any* information in response to Plaintiffs' requests, including the very metadata for the database entries which, as Defendants acknowledge, Dkt. 197 at 3-4, this Court specifically ordered them to disclose.

Because Plaintiffs' discovery requests are tailored to determine the source of the false information provided to the Court, and because Defendants have not demonstrated undue burden, expense, or inconvenience, the Court should deny Defendants' motion to quash.

### B. The Third Ortega Declaration Does Not Resolve the Court's Serious Concerns Regarding His Prior False Testimony.

Defendants also assert that no further discovery is needed because Ortega—the individual who previously supplied false information—conducted a "further investigation" that allegedly uncovered why he provided false testimony. *See* Dkt. 197 at 4-6. But Defendants do not contest that courts have "the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). A self-serving declaration describing an internal investigation was not what this Court ordered, nor among the options that this Court considered for how to identify the reason Defendants submitted false testimony. *See supra* Section II (recounting how the Court considered holding its

own hearing or ordering discovery and the Court's decision to order discovery to address this issue).

Ortega's third declaration repeats the central flaw of his original declaration: it repeatedly relies on hearsay. *See* Dkt. 197-2 ¶¶ 8-9 (noting he "understand[s]" the information conveyed). In his first declaration, Ortega submitted false testimony after relying on notes in ICE's EARM database. Counsel objected to the reliability of that very testimony. *See* Tr. of Mar. 28, 2025 Hr'g at 13:4-5 (explaining that Ortega's claims regarding whether O.C.G. was asked about a fear of removal were "complete hearsay"). Now, in an effort to justify that initial false testimony, Ortega once again relies on hearsay. The fact that Defendants submitted false testimony in the first instance underscores why the Court should not accept Ortega's explanation in the new declaration as true without independent verification and why hearsay is not admissible testimony.

Furthermore, if Ortega's claims regarding the source of the false testimony are correct, then the answers to Plaintiffs' ROGs and RFPs should confirm his hearsay.[2] Yet, as noted above, even though this Court indisputably ordered Defendants to produce metadata underlying the EARM entries, they have produced *nothing whatsoever*. As this Court has already determined and ordered, *see* Tr. of May 21, 2025 H'rg at 68:12-15, some "independent investigation" of Defendants' false testimony is warranted to preserve "the integrity of the court[]," *Chambers*, 501 U.S. at 44, Ultimately, the issue before the Court is whether sanctions may be appropriate. *See id.* at 44-46. The Court should not permit Defendants to evade this inquiry merely by

---

[2] Moreover, Ortega's third declaration does not resolve the ultimate question at issue here. Ortega testifies that the deportation officer "who entered the February 21, 2025 EARM entry" did so based on an assumption. Dkt. 197-2 ¶ 9. Notably, that statement does not confirm *when* the entry was made, simply identifying the entry by its purported date and leaving open the question of when the text at issue was in fact entered into EARM.

submitting another declaration from the same person who previously misrepresented facts to the Court.

Finally, the Court must consider Defendants' motion within the broader context of this case. Defendants have repeatedly violated the Court's orders and advanced bad-faith interpretations of those orders. *See, e.g.*, Dkt. 194 at 5-7 (recounting how Defendants transferred custody of class members to the Department of Defense to undertake removals, even though the Court's temporary restraining order prevented them from doing so, and attempted to remove individuals to Libya and South Sudan with insufficient notice, notwithstanding the Court' preliminary injunction order); *see also supra* n. 1. Indeed, their motion to quash is of a piece with that conduct: this Court ordered an independent investigation that, at a minimum, required the production of metadata and depositions, yet Defendants now refuse to comply. Excusing them from further discovery now will only further embolden Defendants' brazen disrespect and disregard for the Court's authority.

## V.  CONCLUSION

For the forgoing reasons, the Court should deny Defendants' motion and order Defendants to immediately respond to Plaintiffs' pending discovery requests.

Respectfully submitted,

s/*Trina Realmuto*

Trina Realmuto*
Kristin Macleod-Ball*
Mary Kenney*
**NATIONAL IMMIGRATION
    LITIGATION ALLIANCE**
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4649
trina@immigrationlitigation.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
**NORTHWEST IMMIGRANT
    RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

Anwen Hughes*
Inyoung Hwang*
**HUMAN RIGHTS FIRST**
121 W. 36th St., PMB 520
New York, NY 10018

*Attorneys for Plaintiffs and Class Members*

* *Admitted pro hac vice*

July 30, 2025