UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G.,<br><br>    Plaintiffs,<br><br>        v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity,<br><br>    Defendants. | Civil Action No. 25-cv-10676-BEM |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**

**MOTION TO STAY PROCEEDINGS PENDING APPEAL**

I.     **INTRODUCTION**

This Court should not stay proceedings as to Plaintiffs' motion for partial summary judgment as either a matter of law or a matter of discretion and nothing in Defendants' motion, Dkt, 206, compels a contrary conclusion.[1] First, because the appeal currently pending before the First Circuit Court of Appeals primarily focuses on jurisdiction to issue injunctive relief, it likely will *not* resolve the entirety of this case and certainly will not resolve the merits issues in Plaintiffs' motion for partial summary judgment, Dkt. 193. Moreover, should the Court grant Plaintiffs' pending motion for an indicative ruling, Dkt. 191, the First Circuit could remand the appeal to this Court to dissolve the preliminary injunction. Were this to occur, a stay of proceedings would only unnecessarily *delay* resolution of the merits claims presented in Plaintiffs' motion for partial summary judgment. Thus, a stay is not warranted as a matter of law.

Second, and similarly, a discretionary stay is not warranted. A ruling from the First Circuit will not necessarily address the merits issues presented in Plaintiffs' partial motion for summary judgment, all of which are presented in the context of and the standard governing *preliminary* injunctive relief.  Furthermore, the hardship analysis underlying this Court's authority to issue a discretionary stay favors Plaintiffs and class members. Contrary to Defendants' assertion, Plaintiffs and class members are suffering and will continue to suffer hardship, in the form of potential persecution, torture, or death if proceedings are stayed because the Supreme Court's ruling has deprived them of any procedural protections during appellate proceedings related to preliminary injunctive relief in this case while the court proceeds to the merits of the claims. As such, Plaintiffs are harmed by a delayed resolution of their merits claims, and this harm will continue unless and until the Court reaches the merits on Counts I, III, and IV

---

[1]     Plaintiffs do not object to staying compliance discovery at this juncture.

1

and issues a final judgment as to those counts as requested under Federal Rule of Civil Procedure 54(b). Dkt. 193.

## II. RELEVANT PROCEDURAL HISTORY

The procedural history of this case is well documented in previous filings. Two aspects of the case's history are relevant here: the procedural history of injunctive relief as it relates to the corresponding expenditure of judicial and party resources, and the pending motions before this Court insofar as they impact the alleviation of harm to class members and the expenditure of resources.

### A. Injunctive Relief Procedural History

Along with filing their class action complaint, Plaintiffs moved for a temporary restraining order (TRO), preliminary injunction (PI), and class certification. Dkts. 1, 6, 4. Following a hearing on March 28, 2025, this Court issued a TRO requiring Defendants to provide procedural protections prior to any third-country removal. Dkts. 34, 40. Defendants appealed this order and moved for a partial stay of the TRO, which this Court denied, Dkt. 38, 41, and also moved for an emergency stay from the First Circuit, which the First Circuit denied after expedited briefing by the parties. Order, *D.V.D. v. DHS*, No. 25-1311 (1st Cir. Apr. 7, 2025).

On April 18, the Court certified the class and issued a PI which, broadly speaking, required Defendants to provide class members with notice and a meaningful opportunity to apply for CAT protection. Dkt. 64. On April 30, after ordering and reviewing briefing from the parties relating to the deportation of alleged class members from the continental United States to El Salvador, via Naval Station Guantánamo Bay (NSGB), this Court amended the PI, ordering that Defendants "may not cede custody or control" of a noncitizen to another agency "in any manner that prevents [the noncitizen] from receiving" the protections of the PI. Dkt. 86; *see also* Dkts.

82, 84, 85. Defendants subsequently attempted to violate the order by removing class members to Libya, *see, e.g.* Dkt. 91, and then violated the PI when they removed several more class members who were bound for South Sudan, *see* Dkts. 118, 119. The Court then clarified the PI to specify the type and timing of notice that Defendants needed to provide prior to a third-country removal. *See* Dkt. 118 at 2.

Defendants preemptively sought a stay of the PI from this Court before the PI had issued, Dkt. 63. Defendants then appealed the April 18 PI order and sought an emergency stay from the First Circuit Court of Appeals, *see* Order, *D.V.D. v. DHS*, No. 25-1393 (1st Cir. May 16, 2025) (denying stay), and then from the Supreme Court, *see* Appl. for a Stay, *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025) (No. 24A11153). On June 23, 2025, the Supreme Court granted Defendants' motion for a stay without providing any reasoning. *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025).[2] That same day, Defendants moved to voluntarily dismiss their appeal of the TRO, which the First Circuit did on June 30, 2025. Judgment, *D.V.D. v. DHS*, No. 25-1311 (1st Cir. June 30, 2025).

Meanwhile, also on June 30, 2025, Defendants *both* filed their opening brief in support of their appeal of the PI and also filed an amended Notice of Appeal, appealing all orders related to this Court's grant of injunctive relief. *See* Br. for Appellants, *D.V.D. v. DHS*, No. 25-1393 (1st Cir. June 30, 2025) (opening brief); Dkt. 180 (amended notice of appeal). On July 17, 2025, the First Circuit consolidated the pending appeal of the PI and the new appeal and vacated the prior PI appeal briefing schedule. Order, *D.V.D. v. DHS*, Nos. 25-1393, 25-1631 (1st Cir. July 17, 2025). The First Circuit then set a new briefing schedule on the consolidated appeals with briefing to commence on September 9, 2025. Appellant's Briefing Notice, *D.V.D. v. DHS*, Nos.

---

[2] The Court later granted Defendants' motion for clarification as to whether the stay encompassed the Court's remedial order for the eight men Defendants sought to remove to South Sudan. *See DHS v. D.V.D.*, No. 24A1153, 2025 WL 1832186 (U.S. July 3, 2025).

3

25-1393, 25-1631 (1st Cir. July 31, 2025).

  **B.**  **Pending Motions**

On July 13, 2025, Plaintiffs filed three motions. First, Plaintiffs filed a motion for an indicative ruling that this Court would dissolve the PI if the First Circuit remands the appeal of the April 18 PI in Case No. 25-1393. Dkt. 191.[3] The motion argues that dissolution of the PI is warranted because the Supreme Court's ruling renders the PI inoperable through both the First Circuit's disposition of the appeal and through the Supreme Court's final judgment in any timely filed petition for a writ of certiorari. As such, the ruling is depriving Plaintiffs and class members of *any* preliminary relief, including critical procedural protections from threats of torture and death.

Second, Plaintiffs concurrently filed a motion for partial summary judgment seeking declaratory relief and relief under the Administrative Procedure Act (APA) on Counts I, III, and IV of the Complaint. Dkt. 193. Third, Plaintiffs concurrently moved for an expedited hearing on their partial summary judgment motion (and a temporary stay of compliance discovery) because no preliminary relief is available and they seek to mitigate the ongoing harm. Dkt. 195. Through these motions, Plaintiffs seek to expeditiously resolve merits claims that implicate both the sequencing of third-country removals and the procedural protections required prior to a third-country removal. Indeed, in the same or less time than it would take to further litigate the merits of the *preliminary* injunction, this Court could reach the ultimate merits of the claims that could provide permanent relief to Plaintiffs and class members.

**III.**  **LEGAL BACKGROUND**

---

[3]  At the time the motion was filed, the First Circuit had not yet consolidated the appeals nor issued a briefing schedule in Case No. 25-1631.

As an initial matter, "[a]n appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending." *Contour Design, Inc. v. Chance Mold Steel Co.*, 649 F.3d 31, 34 (1st Cir. 2011) (quoting 11A Wright & Miller, *Federal Practice and Procedure* § 2962, at 438–39 (2d ed. 1995)); *see also Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 161–62 (1906) ("The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered."). Thus, it is "standard practice" for a district court to grant permanent relief while an interlocutory appeal is pending. *Contour Design*, 649 F.3d at 34 (citing *Ry. Labor Execs. Ass'n v. City of Galveston*, 898 F.2d 481 (5th Cir. 1990)).

*Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023), does not supply the applicable legal standard. *Coinbase* applied the rule that appeal of a final judgment "divests the district court of its control over those aspects of the case involved in the appeal" in the context of interlocutory appeals taken under the Federal Arbitration Act, 9 U.S.C. § 16(a), where the issue was whether the case belonged in district court versus binding arbitration. 599 U.S. at 740 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). The Court did not hold, however, that every interlocutory appeal automatically halts district court litigation. *See Coinbase, Inc.*, 599 U.S. at 740 ("The *sole* question before this Court is whether a district court must stay its proceedings while the interlocutory appeal *on arbitrability* is ongoing." (emphasis added)); *see also id.* at 760-61 (remarking that the "majority stops short" of dictating such a broad rule, which effectively "would upend federal litigation as we know it" with "destabilizing consequences" (Jackson, J., dissenting)). For this reason, the Ninth Circuit has rejected the application of the *Coinbase* rule outside "the arbitration context," noting that the "the unique aspects of arbitration

5

that automatic stays help preserve are not at issue" in every case. *California v. Express Scripts, Inc.*, 139 F. 4th 763, 768 (9th Cir. 2025) (affirming district court's denial of stay pending interlocutory appeal taken under 28 U.S.C. § 1447(d)); *see also, e.g.*, *Att'y Gen. v. Dow Chem. Co.*, No. 23-2449 (RK) (JBD), 2024 WL 3361395, at (D.N.J. July 9, 2024) (declining to adopt broad interpretation of *Coinbase* because it pertained to "a context unrelated to the procedural posture of the case at bar").

The Court retains "the inherent power to stay proceedings for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 74 (1st Cir. 2004). The party moving for a stay "must carry a heavy burden to succeed in such an endeavor." *Id.* at 77; *see also id.* at 78 (affirming district court's denial of stay where the plaintiff "had an obvious interest in proceeding expeditiously"); *see also, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 707 (1997) (finding that district court abused discretion in granting a stay that "takes no account whatever of the [plaintiff's] interest in bringing the case to trial"); *Landis v. North American Co.*, 299 U.S. 248, 255 (1936) (requiring movant to "make out a clear case of hardship or inequity in being required to go forward").

## IV.   ARGUMENT

### A.   A Stay of All Proceedings Is Not Mandated Here.

Defendants exaggerate the scope of their First Circuit appeal by contending that "the entire [*D.V.D.*] case is essentially 'involved in the appeal.'" Dkt. 206 at 4 (quoting *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023)). To the contrary, the appeal is focused on this Court's preliminary injunction and its orders relating to Defendants' violation of, and attempts to violate, the Court's injunctive orders. *See* Dkt. 64, 180. Resolution of the propriety of those orders will not resolve the entire case, let alone the merits of the issues presented in Plaintiffs' motion for partial summary judgment. For example, currently pending is Plaintiffs' motion for an indicative

6

ruling that this Court would dissolve the preliminary injunction were the First Circuit to remand the appeal. Dkt. 191, 192. Although that motion is not at issue in the pending appeal, Defendants would have this Court postpone its ruling until *after* the appeal is finally decided, rendering the entire motion nugatory, defeating not only the equitable concerns behind the motion, but also the inefficiencies involved in continued litigation of a preliminary injunction order which is inoperable and will remain so for many months if not close to a year. This is exacerbated by the fact that briefing on the PI appeal will not commence in the First Circuit until September, and the Supreme Court's stay of that order will remain in effect through the Supreme Court's final judgment in any timely filed petition for a writ of certiorari of the First Circuit's decision.

Similarly, because the appealed orders involve only injunctive relief and Defendants primarily argue that the court is divested of jurisdiction to provide injunctive relief pursuant to 8 U.S.C. § 1252(f)(1), the appeal is not likely to address—much less resolve—Plaintiffs' claim for declaratory relief. *See* Dkt. 1 at 33 Count IV; Dkt. 194 at 2 (seeking summary judgment on, inter alia, Count IV).[4] Consequently, this Court should not stay further proceedings in the case while the appeal of the preliminary injunction and related orders is pending at the First Circuit.

Neither *Coinbase* nor *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), hold otherwise. As several courts have held, *Coinbase* is properly limited to arbitration cases. *See, e.g., California v. Express Scripts, Inc.*, 139 F.4th 763, 768 (9th Cir. 2025) ("'[T]he sole question before [the *Coinbase*] Court [was] whether a district court must stay its proceedings

---

[4] While Defendants also contend that other statutory provisions strip this Court of jurisdiction, this Court, and many others, have correctly rejected their efforts to dramatically expand jurisdiction-limiting provisions beyond their plain language. This is especially true given "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233, 251 (2010); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991).

while the interlocutory appeal on arbitrability is ongoing.'" (quoting *Coinbase*, 599 U.S. at 740)); *Cnty. of Westchester v. Express Scripts, Inc.*, No. 24-1639 (2d Cir. Sept. 6, 2024) ("[T]he request to stay is DENIED because the Appellants are not entitled to an automatic stay pending appeal under *Coinbase*."). Defendants rely on *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265 (4th Cir. 2025), Dkt. 206 at 4-5, but that case is it is an outlier. *California*, 139 F.4th at 766 n.2.

In *Coinbase*, the Court held that because the issue in an appeal of a denial of arbitration "is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal.'" 599 U.S. at 741 (quoting *Griggs*, 459 U.S. at 58). The Court compared such an arbitration appeal to the "analogous contexts of qualified immunity and double jeopardy [where] district courts likewise must automatically stay their proceedings while the interlocutory appeal is ongoing." *Id*. It further explained that, without such a stay, the "benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost" no matter the outcome of the appeal. *Id*. at 743. Here, unlike in arbitration cases, the entire case is not involved in the PI appeal.

In contexts other than arbitration cases, as *Coinbase* recognized, *Griggs* stated a general rule that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." *Griggs*, 459 U.S. at 58 (emphasis added). The First Circuit "has recognized that the filing of a notice of appeal does not divest the district court of all authority" and that "the divestiture rule 'is rooted in in concerns of judicial economy, crafted by courts to avoid the confusion and inefficiency that would inevitably result if two courts at the same time handled the same issues in the same case.'" *United States v. Carpenter*, 941 F.3d 1, 6

(1st Cir. 2019) (quoting *United States v. Rodriguez-Rosado*, 909 F.3d 472, 478 (1st Cir. 2018); *accord Coinbase*, 599 U.S. at 741-43 (emphasizing efficiency related concerns behind the divestiture rule). Consequently, "absent a stay, further proceedings in the same controversy often may continue in the district court while an appeal of an earlier phase is pending." *Contour Design*, 649 F.3d at 34. "To conduct a trial and grant or deny a permanent injunction based on that trial is standard practice." *Id*.

Here, contrary to Defendants' claim, a stay of all further proceedings is not required. As noted, staying a ruling on Plaintiffs' motion for an indicative ruling defeats judicial economy—as the result will be an ongoing appeal in the Court of Appeals, and possibly a further appeal to the Supreme Court—over an order which will remain inoperable throughout that long appellate process, and may be resolved on the sole issue of whether § 1252(f)(1) precludes classwide injunctive relief over these claims. Instead, were this Court to issue the requested indicative ruling, and the First Circuit to remand the appeal, the case could more efficiently and expeditiously move to final judgment. Similarly, this Court should follow "standard practice" and allow adjudication of Plaintiffs' motion for partial summary judgment, Dkt. 193, 195, particularly with respect to Plaintiffs' declaratory relief claim which is not at issue in the appeal.

### B. A Discretionary Stay of All Proceedings Is Not Warranted.

This Court should reject Defendants' two reasons urging a discretionary stay because both are predicated on false premises. First, Defendants argue that the pending PI appeal "implicates important legal issues that the Court will necessarily have to address in future proceedings," listing the jurisdictional provisions set forth in 8 U.S.C. § 1252(g), (a)(5), (b)(9), and (f)(1). Dkt. 206 at 5. But this assertion ignores that these provisions have all been, thus far, briefed, argued, and decided in the context of *preliminary injunctive relief* (which Plaintiffs'

9

motion for an indicative ruling seeks to dissolve).

In contrast, Plaintiffs' motion for partial summary judgment is fundamentally different because it does not seek preliminary nor injunctive relief *while the case is being litigated*, it seeks final resolution on Counts I, III, and IV. *See* Dkt. 193 (requesting final judgment as to those counts under Federal Rule of Civil Procedure 54(b)). Specifically, the motion seeks declarations that: (1) DHS must first pursue removal to the designated country and thereafter follow the sequencing of countries in 8 U.S.C. § 1231(b)(1) and (b)(2); (2) DHS must provide meaningful notice of third-country removal; (3) DHS must provide a meaningful opportunity to present a claim for withholding or CAT protection to the immigration court;[5] and (4) the March 30, 2025 Memorandum and July 9, 2025 Guidance are unlawful. *See generally* Dkt. 194. In addition, Plaintiffs' motion for partial summary judgment asks the Court to set aside, under the Administrative Procedure Act, Defendants' policy or practice of violating the law through their use of the March 30, 2025, Memorandum and July 9, 2025, Guidance. *Id*. It is unlikely that these issues will be addressed on appeal given, as discussed *supra*, the appeal is premised on jurisdictional issues—primarily the bar to injunctive relief at § 1252(f)(1). Even if the appeals court were to reach these issues, they would only be addressed under the standard set forth in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)—which is not the standard that applies to Plaintiffs' motion for partial summary judgment.

Notably, while the Supreme Court provided no reasoning as to why it stayed the

---

[5] It bears repeating that, on summary judgment, the Court can declare the rights of Plaintiffs and class members with fear-based *persecution* claims under the withholding of removal statute, 8 U.S.C. § 1231(b)(3), whereas 8 U.S.C. § 1252(f)(1) barred the Court from granting injunctive relief pertaining to that statute. *See, e.g.*, Dkt. 7 at 19-20 (explaining that the withholding of removal "provision is not the subject of Plaintiffs' motion for injunctive relief, other than for individual named Plaintiffs").

preliminary injunction, Defendants repeatedly emphasized 8 U.S.C. § 1252(f)(1) in their stay applications before the First Circuit and the Supreme Court. Of course, that provision, by its plain language, is limited to injunctive relief. Thus, to the extent that § 1252(f)(1) may have informed the Supreme Court's stay order, a ruling addressing this statute will not address or resolve the merits claims presented in Plaintiffs' motion for partial summary judgment.

Second, Defendants erroneously contend that "Plaintiffs would not suffer hardship as a result of a stay of proceedings" because the Supreme Court's ruling governs "the proper interim status quo" during appellate proceedings. Dkt. 206 at 5-6. But, again, the interim appellate proceedings that are controlled by the Supreme Court's ruling relate to *preliminary injunctive* relief, not final judgments on Plaintiffs' requests for declaratory and APA relief on the counts at issue in their partial summary judgment motion. More critically, however, with every passing day, Plaintiffs and class members are suffering extreme hardship from potential and actual removals to countries to which they have little to no connection and without meaningful notice or the opportunity to seek protection. For example, numerous class members have been forced to file individual habeas petitions in district courts across the country to attempt to stave off removal to countries where they face persecution, torture or death. *See, e.g.*, Order, Dkt. 8, *Nguyen v. Scott*, No. 2:25-cv-01398-TMC-SKV (W.D. Wash. Jul. 25, 2025) (granting TRO); Min. Order, Dkt. 7, *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGRx (C.D. Cal. Jul. 14, 2025) (granting TRO); Order, Dkt. 28, *Diaz Turcios v. Oddo*, No. 3:25-cv-00083 (W.D. Pa. Jul. 10, 2025) (denying TRO); Order, Dkt. 8, *Phan v. DHS*, No. 1:25-cv-11910 (D. Mass. Jul. 4, 2025) (denying TRO); Order, Dkt. 14, *Mahdejian v. Bradford*, No. 25-cv-191-MJT-CLS (E.D. Tex. Jul. 3, 2025) (granting TRO). Others have been whisked away without the opportunity to seek federal court protection. *See, e.g.*, Gerald Imray, *Men Deported by U.S. to Eswatini in Africa Will Be*

11

*Held in Solitary Confinement for Undetermined Time*, PBS (Jul. 18, 2025), https://www.pbs.org/newshour/politics/men-deported-by-u-s-to-eswatini-in-africa-will-be-held-in-solitary-confinement-for-undetermined-time; Angeline McCall, *Wife Shares Family Impact after Cuban Husband Deported to Mexico*, 9News (Jul. 20, 2025), https://www.9news.com/article/news/local/wife-shares-family-impact-cuban-husband-deported-to-mexico/73-8703a46d-31bc-4dd9-9521-29001fddefcc. Still other class members have been denied reopening to pursue fear-based claims to third countries. *See, e.g.*, Exhibit A (IJ order denying motion to reopen to challenge third-country removal in part because "litigation is underway [in *D.V.D. v. DHS*] throughout the federal court system over the issue of third country removals").

Thus, for the reason set forth here and in Plaintiffs' motion for an indicative ruling, the Court should exercise its discretion to decide the indicative ruling motion and expeditiously proceed to the merits of the summary judgment motion.

## V.   CONCLUSION

For the forgoing reasons, the Court should deny Defendants' motion to stay all further proceedings in the case.

Respectfully submitted,

s/*Trina Realmuto*

Trina Realmuto*
Kristin Macleod-Ball*
Mary Kenney*
**NATIONAL IMMIGRATION
   LITIGATION ALLIANCE**
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4649
trina@immigrationlitigation.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
**NORTHWEST IMMIGRANT
   RIGHTS PROJECT**
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

12

Anwen Hughes*
Inyoung Hwang*
 **HUMAN RIGHTS FIRST**
121 W. 36th St., PMB 520
New York, NY 10018

*Attorneys for Plaintiffs and Class Members*

\* *Admitted pro hac vice*

August 14, 2025