## DECLARATION OF ANA DIONNE-LANIER

I, Ana Dionne-Lanier make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a practicing attorney licensed to practice in the District of Columbia. My business address is 1025 Connecticut Ave, Washington, DC 20036. I have been employed at the Amica Center for Immigrant Rights (formerly known as CAIR Coalition) (Amica Center) since March of 2018. I am over the age of 18 and am competent to testify regarding the matters described below.

2. I am a Managing Attorney in the Detained Adults Program at Amica Center. We provide direct representation to detained individuals and assist in providing legal presentations to individuals detained by ICE at facilities in Virginia. I have been practicing removal defense since 2018 in proceedings before the Executive Office for Immigration Review (EOIR); representing, providing consultations, and providing pro se assistance to hundreds of noncitizens in removal proceedings.

3. Amica Center began representing M.M.[1], on August 26, 2025. M.M. won withholding of removal under the Immigration and Nationality Act on August 1, 2019, from the Gambia on the basis of the clear risk of persecution and torture by Gambian officials due to his activism in support of LGBTQ rights. Evidence showed that he was already being targeted by Gambian officials and would face persecution or torture if returned to the Gambia. He was released from detention and placed on an order of supervision in 2019. He complied with the conditions of the order and attended ICE Check-ins as requested throughout this time. The U.S. Department of Homeland Security (DHS) re-detained and placed him into custody at the Farmville Detention Facility in Virginia in June 2025.

4. On October 31, 2025, DHS notified M.M. that they intended to deport him to Ghana. Fellow Amica Center counsel immediately emailed local ICE officers articulating M.M.'s fear of removal to Ghana, especially given the risk of chain refoulement.[2] DHS referred M.M. for an interview regarding this fear. On November 3, M.M. had a fear interview with the local asylum office. Counsel was not notified of or present during the interview. Counsel only found out about the interview once M.M. called later in the day to share that it had happened. ICE sent a one-page notice that same afternoon from the Asylum Office indicating that he did not pass the interview.

5. On November 6, 2025, only three days after his screening, M.M. was deported to Ghana. On November 4, M.M. called paralegal staff in the evening to inform us that he was being moved from the facility. No notice was given to counsel, and he explained that ICE was not telling him where he was being moved. At that time, he had not been personally given any notice about the results of his fear interview. Throughout November 5, he did not

---

[1] To protect my client, given his risk of removal refoulment to his country, I am using his initials.
[2] *See*, Reuters, "West Africans sent by US to Ghana have been deported, lawyer says", (September 23, 2025) available at https://www.reuters.com/world/africa/west-africans-sent-by-us-ghana-have-been-deported-lawyer-says-2025-09-23/

1

        appear at any detention facility in the online detainee locator, and ICE was unable to tell counsel where he was. On November 6, 2025, DHS confirmed that M.M. was removed to Ghana that day.

6.     I filed a motion to reopen and an emergency stay of removal the morning of November 6, 2025, to try and prevent M.M.'s deportation. At the time I filed the motion, it was unclear where M.M. was located, but he appeared to still be in the United States. Later that day, once we were notified of a third country removal flight, with the help of local counsel, we filed a habeas petition with the U.S. District Court for the District of Columbia (Case No. 1:25-cv-03880). However, we voluntarily dismissed the petition after we were notified that M.M. had been removed to Ghana.

7.     I was able to regain communication with M.M. via WhatsApp on November 7, 2025. He explained that after being moved from the Farmville Detention Facility in Virginia, he was taken to Texas and then Louisiana, where ICE officers told him he was being put on a flight to Ghana. He explained to the officers that he could not go there because he knew Ghana had been sending people back to their countries of origin, and he had been granted protection from his country of origin. He also explained that he has a heart condition and began throwing up and resisting, so ICE officers tackled him. He lost consciousness and was put in a strait jacket and had his face covered. He and others were on the plane for hours before it took off. The other individuals were also restrained at the ankles and wrists. Once the officials on the plane realized they were almost in Africa, M.M. was finally released from the strait jacket.

8.     Upon arrival in Ghana, M.M. and the others on the plane were moved to a hotel. The hotel was guarded, and they were told by Ghana immigration officers that they would be sending them all back to their countries of origin. My client explained to the officers that he is unable to return to his country because he fears persecution and torture and that he wouldn't be safe.

9.     I last spoke to M.M. on a telephone call on Tuesday, November 11, 2025. On this call, he narrated as another person in his group was being forcibly removed from the hotel to be driven to the airport and presumably returned to their country of origin. He, along with others, took videos of this physical altercation. I reached out to M.M. the next morning to check in but the WhatsApp messages were not delivered, indicating to me that his phone was no longer connected. I was later informed by a local Ghanaian attorney that my client and the group had been moved the night before under heavily-armed guards and that their location was unknown. As of writing this declaration, the location of my client remains unknown, and we fear he has been returned to the Gambia where he is likely to be persecute or tortured.

I declare under penalty of perjury that the above information is true and correct to the best of my knowledge.

Executed on this 13th day of November 2025 at Washington, DC.

                                                                     Ana Dionne-Lanier