# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| D.V.D., *et al.*, | ) | |
| | ) | |
| Individually and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:25-cv-10676-BEM |
| | ) | |
| v. | ) | **Leave to File Granted November 24, 2025** |
| | ) | |
| U.S. Department of Homeland Security, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 193)

## INTRODUCTION

The Supreme Court has already found, twice, that Defendants are likely to succeed in this case. This Court should follow the Supreme Court's lead and dismiss this case in its entirety and deny Plaintiffs' Motion for Partial Summary Judgment ("Motion"). Plaintiffs' claims are barred multiple times over and fail on the merits in any event. Accordingly, Plaintiffs' Complaint should be dismissed in its entirety and their Motion denied. In Counts I-IV, Plaintiffs seek to challenge the "execution" of their final orders of removal, which is plainly barred by 8 U.S.C. § 1252(g). Additionally, because these claims both concern the "application" of the Convention Against Torture (CAT) and constitute a "cause or claim under" CAT, they are barred by 8 U.S.C. § 1252(a)(4) and section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA). Moreover, Plaintiffs' claims challenging their removal orders are channeled into their immigration court proceedings and are therefore barred by 8 U.S.C. §§ 1252(a)(5) and (b)(9). Because these claims challenging the third country removal process are thus triply barred by jurisdiction-stripping provisions, Counts I-IV should be dismissed for lack of jurisdiction. Underscoring the strength of the government's arguments on Counts I-IV, the Supreme Court has twice granted the government's motions for stays of relief this Court granted on those counts, meaning that it necessarily concluded that the government, not Plaintiffs, would likely prevail on those counts.

Additionally, Plaintiffs' claim (Count V) challenging the detention of Plaintiffs D.V.D., M.M., and E.F.D. should be dismissed for failure to state a claim because none of those individuals are currently detained. Finally, Plaintiffs' claim (Count VI) under the Freedom of Information Act ("FOIA")—which bizarrely seeks to invalidate an administrative program under FOIA, rather than the APA—should be dismissed because it fails to state a claim.

1

Because Counts I-IV should be dismissed for lack of jurisdiction, Plaintiffs' Motion seeking declaratory relief on those same claims should also be denied for lack of jurisdiction. Additionally, Plaintiffs' Motion should be denied because this Court lacks jurisdiction to proceed with Plaintiffs' claims in Counts I-IV while those same claims are the subject of a pending appeal. Alternatively, even assuming the Court otherwise had jurisdiction, Plaintiffs' Motion should still be denied because Plaintiffs' third country removal claims fail on the merits.

## PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit on March 23, 2025. ECF No. 1. That same day, Plaintiffs moved for class certification and a preliminary injunction. ECF Nos. 4, 6. On April 18, 2025, the district court granted Plaintiffs' motion for class certification and granted a classwide preliminary injunction. ECF No. 64.

Defendants promptly appealed and sought a stay. ECF No. 69; Defendants-Appellants' Emergency Mot. to Stay, *D.V.D. v. DHS*, No. 25-1393 (1st Cir. April 22, 2025). The First Circuit denied Defendants' stay request. Electronic Order, *D.V.D. v. DHS*, No. 25-1393 (1st Cir. May 16, 2025). But the U.S. Supreme Court subsequently granted a complete stay "pending the disposition of the appeal in the United States Court of Appeals for the First Circuit and disposition of a petition for a writ of certiorari," if any. *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025).

On July 13, 2025, Plaintiffs filed a Motion for Indicative Ruling seeking an indicative ruling that the Court would dissolve the preliminary injunction if the First Circuit remanded the appeal for that purpose. ECF No. 191. That same day, Plaintiffs filed their Motion for Partial Summary Judgment. ECF No. 193. On August 28, 2025, the Court granted Plaintiffs' motion for indicative ruling. ECF No. 212. The next day, Plaintiffs filed a motion with the First Circuit, seeking to remand Defendants' pending appeal of the preliminary injunction, which that court

denied. Electronic Order, *D.V.D. v. DHS*, No. 25-1393 (1st Cir. Oct. 20, 2025). Defendants' appeal of the preliminary injunction is currently being briefed before the First Circuit.

## LEGAL BACKGROUND

### A. Removal Proceedings

Several classes of aliens are "inadmissible" and therefore "removable." *See* 8 U.S.C. §§ 1182(a), 1229a(e)(2)(A). These include aliens who lack a valid entry document "at the time of application for admission." *Id.* § 1182(a)(7)(A)(i)(I). Aliens who arrive in the United States or are present in the United States without admission are deemed applicants for admission. *Id.* § 1225(a)(1). Applicants for admission are required to be inspected by an immigration officer to determine whether the alien is admissible to the country or, instead, will be placed in immigration proceedings. *Id.* § 1225(a)(3), (b).

If an alien is inadmissible, the alien generally may be removed. Removal proceedings pursuant to section 1229a involve an evidentiary hearing before an Immigration Judge (IJ), and at that hearing an alien may attempt to show that he or she is not removable or is eligible for relief or protection from removal. *Id.* § 1229a(a)(3), (b)(4). Among other things, an eligible alien may apply for asylum on the ground that he or she would be persecuted on account of a statutorily protected ground if returned to his or her home country. *Id.* §§ 1158, 1229a(c)(4); 8 C.F.R. § 1240.11(c) (2020). If that claim is denied and the alien is ordered removed, the alien can appeal the IJ's order to the BIA and, if that appeal is unsuccessful, the alien may petition for review in a federal court of appeals. 8 U.S.C. §§ 1229a(c)(5), 1252(a).

While asylum is discretionary, withholding of removal under 8 U.S.C. § 1231(b)(3) and protection under the regulations implementing U.S. obligations under the Convention Against Torture (CAT), 8 C.F.R. §§ 208.16-.18, 1208.16-.18, for which an alien may also apply during removal proceedings, are mandatory and prohibit removal to a country where the alien will likely

be persecuted or tortured. *See Moncrieffe v. Holder*, 598 U.S. 184, 187 n.1 (2013).

### B. Reinstatement and Withholding-Only Proceedings

Under 8 U.S.C. § 1231(a)(5), the Department of Homeland Security (DHS) may reinstate a prior order of removal for an alien it finds "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). When DHS reinstates a removal order, the "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.*

If the alien expresses fear of returning to the country of removal, the alien is referred to U.S. Citizenship and Immigration Services (USCIS) for an interview by an asylum officer to determine whether the alien possesses a "reasonable fear" of persecution or torture. 8 C.F.R. § 208.31(a). If the asylum officer determines that the alien has not established a reasonable fear, the alien may request review of that determination by an IJ. 8 C.F.R. § 1208.31(f). If the IJ concurs with the determination that no reasonable fear of persecution or torture exists, the case is returned to DHS for execution of the reinstated order of removal, and no administrative appeal is available. 8 C.F.R. § 208.31(g)(1). If, on the other hand, the asylum officer determines that the alien has established a reasonable fear of persecution or torture, the alien is referred to the IJ for "withholding-only proceedings." In withholding-only proceedings, the IJ is limited to consideration of eligibility for withholding and deferral of removal under the Immigration and Nationality Act (INA) and the CAT. 8 U.S.C. § 1231(a)(5) (providing that an alien subject to reinstatement "is not eligible and may not apply for any relief under [the INA]"); 8 C.F.R. § 1208.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings . . . shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal."). Indeed, during withholding-only proceedings, "all parties are prohibited from raising or considering any

other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." *Id*.

Withholding of removal is a country-specific protection that does not prevent removal to other countries; thus, even if an alien succeeds on his withholding claim, he can be removed to an alternate country. *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country"). Thus, the alien remains removable as an alien with a final order of removal.

## C. Third Country Removals

Aliens subject to removal orders need not be removed to their native country. Generally, with certain limits, aliens ordered removed "may designate one country to which the alien wants to be removed," and DHS generally "shall remove the alien to [that] country[.]" 8 U.S.C. § 1231(b)(2)(A); *see id*. § 1231(b)(2)(C) (permitting DHS to "disregard a designation" in various circumstances).[1] In certain circumstances, DHS will not remove the alien to their designated country, including where "the government of the country is not willing to accept the alien into the country." *Id*. § 1231(b)(2)(C)(iii). In such a case, the alien generally is removed to the alien's country of nationality or citizenship, unless that country "is not willing to accept the alien[.]" *Id*. § 1231(b)(2)(D). If an alien cannot be removed to the country of designation or the country of nationality or citizenship, then the government may consider other options, including "[t]he country from which the alien was admitted to the United States," "[t]he country in which the alien

---

[1] Separate but similar provisions apply to arriving aliens who are processed for Section 240 proceedings upon arrival. *See* 8 U.S.C. § 1231(b)(1). The provisions in 8 U.S.C. § 1231(b)(2) discussed here apply to all other aliens.

was born," or "[t]he country in which the alien last resided[.]" *Id.* §§ 1231(b)(2)(E)(i), (iii)-(iv).

Where removal to any of the countries listed in subparagraph (E) is "impracticable, inadvisable,

or impossible," then the alien may be removed to any "country whose government will accept the

alien into that country." *Id*. § 1231(b)(2)(E)(vii); *see Jama v. ICE*, 543 U.S. 335, 341 (2005). In

addition, DHS "may not remove an alien to a country if the Attorney General decides that the

alien's life or freedom would be threatened in that country because of the alien's race, religion,

nationality, membership in a particular social group, or political opinion," 8 U.S.C.

§ 1231(b)(3)(A); 8 C.F.R. §§ 208.16(a)-(b), 1208.16(a)-(b), or if it is more likely than not that the

alien would be tortured, 8 C.F.R. §§ 208.16(c), 208.17, 1208.16(c), 1208.17.

While the INA provides for third-country removals, it does not delineate a particular

process for carrying out those removals. *See* 8 U.S.C. § 1231(b). More specifically, Congress did

not provide a particular process for ensuring that third-country removals remain consistent with

the United States's obligations under CAT. Instead, it delegated to the Executive Branch the

responsibility for developing such procedures. *See* 8 U.S.C. § 1231 note (providing that the "heads

of the appropriate agencies shall prescribe regulations to implement" the United States's CAT

obligations).

On March 30, DHS issued the March Guidance, clarifying its "policy regarding the

removal of aliens with final orders of removal pursuant to sections 240, 241(a)(5), or 238(b) of the

[INA] to countries other than those designated for removal in those removal orders." ECF No. 43-

1 at 2. The March Guidance distinguishes between removals to countries that have provided

credible diplomatic assurances that aliens removed there will not be persecuted or tortured, and

removals to countries that have not done so. *Id.* at 2-3. For countries that have provided such

assurances, "the alien may be removed without the need for further procedures." *Id.* at 3. For

countries that have not, DHS must first inform the alien of removal to the country. *Id.* If the alien "affirmatively express[es] a fear of persecution or torture" in the country of removal, an immigration officer will refer the alien to USCIS. USCIS will conduct a prompt screening to determine whether the alien "would more likely than not be" be persecuted or tortured in the country of removal. *Id.* If the alien fails to satisfy this standard, he "will be removed." *Id.* If he does satisfy it, he will be referred for proceedings before the Immigration Court. *See id.* "Alternatively, ICE may choose to designate another country for removal," and start the process afresh. *Id.*

<u>**ARGUMENT**</u>

I.    **Counts I-IV of the Complaint Should be Dismissed for Lack of Jurisdiction Pursuant to 8 U.S.C. § 1252 and FARRA.**

The Court lacks jurisdiction to consider Plaintiffs' claims challenging Defendants' third country removal procedures. First, section 1252(g) plainly bars Plaintiffs' attempt to challenge the "execution" of their removal orders. Second, the Court clearly lacks jurisdiction to review Defendants' implementation of the CAT. Third, sections 1252(a)(4), (a)(5), and (b)(9) channel Plaintiffs' claims into their immigration court proceedings and, ultimately, to the courts of appeals via a petition for review. The Court should therefore dismiss Counts I-IV.

A.  **Plaintiffs' claims are barred by section 1252(g).**

Plaintiffs' claims, which seek to prohibit ICE from executing, valid final orders of removal, are explicitly barred by section 1252(g), which eliminates district court jurisdiction over claims arising from the government's actions to execute removal orders. Section 1252(g) bars claims arising from the three discrete actions identified in section 1252(g), including, as relevant here, the decision or action to "execute removal orders." Congress spoke clearly, emphatically, and repeatedly, providing that "no court" has jurisdiction over "any cause or claim" arising from the

execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 (as well as review pursuant to the All Writs Act and Administrative Procedure Act) of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 482 (1999).

Plaintiffs' claims arise entirely from actions taken to "execute removal orders," 8 U.S.C. § 1252(g)—namely, to remove them to third countries without the additional process they demand—and thus those claims "fall[] squarely within" the INA's jurisdictional bar, *AADC*, 525 U.S. at 487. The class is explicitly defined to *only* include individuals "who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA." ECF No. 64 at 23. Plaintiffs seek a declaratory judgment that they must be provided "with meaningful notice and opportunity to present a fear-based claim to an immigration judge prior to deportation to a third country." ECF No. 1 at 36. However, courts of appeals have consistently held that claims like Plaintiffs' seeking a stay of removal—even temporarily to assert other claims to relief—are barred by § 1252(g). *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); *Hamama v. Adducci*, 912 F.3d 869, 874–77 (6th Cir. 2018) (vacating district court's injunction staying

removal, concluding that section 1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims).[2]

The Ninth Circuit's decision in *Rauda* and the Sixth Circuit's decision in *Hamama* are particularly relevant. In *Rauda*, the Ninth Circuit considered whether § 1252(g) barred the alien's claim seeking to temporarily prevent his removal while his motion to reopen his removal proceedings raising "new developments" regarding his CAT claim. 55 F.4th at 776-77. Plaintiff claimed that the administrative procedures associated with his motion to reopen were constitutionally insufficient because they did not guarantee judicial review of these "new developments" prior to his removal. *Id.* He argued that section 1252(g) did not apply to ICE's allegedly unlawful decision to remove him now. *Id.* at 777. The Ninth Circuit held that section 1252(g) "does not include any temporal caveats" and nonetheless barred plaintiff's claims.

Similarly, in *Hamama,* a class of Iraqi nationals claimed that ICE could not enforce their years-old removal orders without first providing them an opportunity to reopen their proceedings and make new fear-based clams. The Sixth Circuit held that "[u]nder a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to review." 912 F.3d at 874.

---

[2] *See also E.F.L. v. Prim,* 986 F.3d 959, 964-65 (7th Cir. 2021) (upholding jurisdictional bar despite argument that petitioner was challenging DHS's legal authority, not its "discretionary decisions"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (upholding jurisdictional bar because "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute") (emphasis in original); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (upholding jurisdictional bar against constitutional claims arising from the execution of removal order because and language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim").

Plaintiffs' claims are no different than those rejected by numerous courts of appeals. They seek to prevent their removal based on an assertion that their removal, at least temporarily, is unlawful while they seek to have any fear claims adjudicated. But section 1252(g) contains no exception for such claims, regardless of their nature or merit, and therefore, this Court should dismiss Counts I-IV of Plaintiffs' Complaint, which seek to block the execution of their removal orders and force them to be executed in a different way.

### B. Plaintiffs' claims are also barred by section 1252(a)(5) and (b)(9).

Section 1252(a)(5) and (b)(9) also bar Plaintiffs' claims. As discussed above, Congress has explicitly and unambiguously stripped district courts of jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C § 1252(g). To the extent claims arising from these distinct actions are reviewable at all, they are only reviewable along with any other "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien"—in a petition for review of a "final order" of removal. 8 U.S.C. § 1252(b)(9). And that petition is the "sole and exclusive means for judicial review" of such claims. 8 U.S.C § 1252(a)(5).

Plaintiffs have previously made much of language interpreting § 1252(b)(9) narrowly in the Supreme Court's decision on immigration detention in *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). ECF No. 57 at 11. But *Jennings* is readily distinguishable because in that case the Supreme Court indicated that § 1252(b)(9) should not be interpreted so broadly as to cover categories of claims that either had nothing to do with removal (*e.g.*, assault) or could never be "effectively" reviewable in any form (*e.g.*, prolonged detention). 583 U.S. at 293. None of that bears on the allegations here, which inescapably—indeed, exclusively—target an "action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Moreover, Plaintiffs

fail to grapple with the real paths to administrative relief available to them which form the foundation for this Court's lack of jurisdiction under § 1252(b)(9).

The First Circuit's decision in *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 11 (1st Cir. 2007) is instructive. It recognized that § 1252(b)(9) bars claims that can be "raised efficaciously within the administrative proceedings delineated in the INA." *Id.* at 11; *see also* 8 U.S.C. § 1231(h) ("Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."). And that includes Plaintiffs' claims here.

Indeed, the March Guidance makes clear that Plaintiffs' claims are foreclosed by § 1252(b)(9) because the Guidance establishes safeguards and calls for sufficiently reliable diplomatic assurances that aliens who will be removed to a third country will not be persecuted or tortured. The alien may be removed to the third country if that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured and the State Department concludes that those assurances are credible. If diplomatic assurances are absent or the State Department determines the assurances are not credible, the Guidance provides a process under which Plaintiffs can assert fear of removal to the third country to DHS and have that claim considered by USCIS. If USCIS determines that the alien would more likely than not be persecuted on account of a statutorily protected ground or tortured in the third country, USCIS will refer the matter to the Immigration Court in the first instance; for cases where the alien was previously in proceedings before the Immigration Court, ICE Office of the Principal Leal Advisor (OPLA) may file a motion to reopen for further proceedings for the sole purpose of determining eligibility for protection from removal or, alternatively, ICE may choose to designate another country for removal.

Separate from this Guidance, Plaintiffs may—at any time—move to reopen proceedings to assert new fear claims regarding removal to a third country. *See*, *e.g.*, 8 U.S.C. § 1229a(c)(7) (allowing a motion to reopen within 90 days after removal order becomes administratively final); 8 C.F.R §§ 1003.2(c), 1003.23(b) (allowing a motion to reopen after 90 days under immigration court or BIA's sua sponte authority); *Charles v. Garland*, 113 F.4th 20, 23 (1st Cir. 2024) (describing the sua sponte motion to reopen process under 8 C.F.R. § 1003.2 and providing for review of denials of such motions in limited circumstances).

Plaintiffs focus on the lack of notice regarding the country of removal as if their fear depends on receiving that notice. It does not. From the outset, an alien knows to which specific countries they fear removal, and an alien need not await any DHS designation before seeking protection. They can seek withholding of removal or other protections from removal to those countries during their removal proceedings. Indeed, aliens are instructed to list any country where they fear removal in their initial removal proceedings. *See* U.S. Citizenship & Immigration Servs., DHS, Form I-589: Application for Asylum and for Withholding of Removal (Edition: Jan. 20, 2025) (asking alien to list and explain "any" country "to which [he] may be returned" where he fears "torture"); *see also* 8 C.F.R §§ 1240.10(f), 1240.11(c). Aliens can also move to reopen their proceedings to seek protection from removal to additional countries at any time, again without any need to await any DHS designation of a country for third-country removal. And aliens can assert fear of removal to any country at any time, again with no need to wait for DHS to designate a country. To the extent Plaintiffs claim that due process requires notice of removal to the third country, they can also make that claim through the administrative process. Plaintiffs know that this process is available but would rather seek relief in the district court because it is more convenient.

This is precisely the scenario Congress intended to preclude with section 1252(b)(9). This Court should give effect to Congress' plain intent and dismiss Counts I-IV for lack of jurisdiction.

### C. The Court lacks jurisdiction to review Defendants' implementation of the Convention Against Torture and dictate additional procedures.

The Court also lacks jurisdiction over Counts I-IV because jurisdictional bars in the INA and FARRA specifically preclude this Court from reviewing "any cause or claim" under the CAT, including any "determination made" with respect to the application of CAT, and they also bar judicial review of any claims challenging Defendants' implementation of the United States' obligations under the CAT.

The INA provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of any cause or claim under [CAT]." 8 U.S.C. § 1252(a)(4). Likewise, FARRA confirms that "no court shall have jurisdiction to review . . . any . . . determination made with respect to the application of [CAT] . . . except as part of the review of a final order of removal." § 2242(d), 112 Stat. 2681-822; *see* 8 C.F.R. § 208.18(e). FARRA further bars judicial review of the "regulations adopted to implement [CAT]," and assigns to the Executive alone the duty to design procedures to "implement the obligations of the United States" under that treaty. § 2242(d), 112 Stat. 2681-822.

The relief Plaintiffs seek would run afoul of each of these limits. Plaintiffs' claims—which challenge DHS's existing procedures for certain CAT claims and specifically challenge the March Guidance—both concern the "application" of CAT and are a "cause or claim under [CAT]." ECF No. 194 at 16-17 (arguing that FARRA "requires" additional procedures beyond what the March Guidance provides); *see also* ECF No. 64 at 24 (recognizing that the relief Plaintiffs seek is "based on" FARRA). And there is no doubt that this action arises outside of a petition for review from a final order of removal. Thus, this Court lacks jurisdiction: the sorts of CAT-related claims

Plaintiffs attempt to raise in Counts I-IV can only be reviewed, *if at all*, in an appellate court through a petition for review.

In its prior order granting a preliminary injunction, this Court largely ignored FARRA. *See generally* ECF No. 64 at 4-48. It did not explain how it had authority to issue an injunction regarding the "application" of CAT. § 2242(d), 112 Stat. 2681-822. Nor have Plaintiffs adequately explained how this Court could have "jurisdiction to review" the procedures that the Executive Branch has adopted to "implement" CAT. *Id.* By their own admission, Plaintiffs are asking this Court to "declare unlawful and set aside" the procedures that the Executive Branch has crafted for CAT claims in this context. ECF No. 194 at 2. Plaintiffs are asking this Court to "review"—and hold inadequate—the procedures that the Executive "implemented." FARRA makes clear that this Court is without jurisdiction to do so.

As for section 1252(a)(4), this Court previously concluded that the provision applies only to matters that could have been raised in a petition for review of a final order of removal. ECF No. 64 at 22. And because Plaintiffs' CAT objections arose *after* the final removal order was issued, the court reasoned they fell outside section 1252(a)(4). *Id*. But that temporal rationale is flawed at multiple levels. To start, the premise is wrong: CAT claims like those at issue here can be raised in the administrative process. *Supra* at § I.B. More fundamentally, the conclusion does not follow. Section 1252(a)(4) identifies a type of action—"any cause or claim under [CAT]"—and specifies the "sole and exclusive" way that such a claim can be reviewed in court: a petition for review filed in a court of appeals. If an action does not fit within that means for review, the result is that judicial review is simply not available. That is the nature of exclusive review. *See, e.g.*, *United States v. Fausto*, 484 U.S. 439, 454-455 (1988) (holding that the comprehensive framework of the CSRA precluded review of certain claims); *Riley v. Bondi,* 606 U.S. 259, 272 (2025) (rejecting an

argument that the majority's interpretation could deprive an alien of any judicial review because the Court "must nevertheless follow the statutory text"). And that holds particular force in the context of CAT, which is a non-self-executing treaty that Congress implemented through FARRA by giving the Executive broad discretion to establish its procedures. *See* § 2242(b) and (d), 112 Stat. 2681-822.

Concluding otherwise, this Court previously invoked the Supreme Court's decision in *Jennings v. Rodriguez* to support its conclusion that the INA's channeling provisions "cannot be read to strip jurisdiction over claims that could not have been raised in the removal proceedings." ECF No. 64 at 19. But *Jennings* did not adopt such a categorical rule. Instead, the Court read a specific statutory term narrowly ("arising from") to limit the reach of a different jurisdiction-stripping provision. 583 U.S. at 293 (interpreting 8 U.S.C. § 1252(b)(9)). There is a world of difference between adopting the narrower reading of an open-ended phrase and ignoring the plain text of a limitation entirely. Plaintiffs ask this Court to again do the latter. But when Congress specifies the "sole and exclusive" means for judicial review over a claim, there is only one way for the federal courts to review that claim. Anything more involves rewriting the statute, not interpreting it. *Riley,* 606 U.S. at 272 (noting that though "an alien may thus be deprived of any judicial review" "we must nevertheless follow the statutory text and our prior precedents").

By seeking additional procedures beyond those already provided by the Executive's implementation of CAT, Plaintiffs' claims in Counts I-IV are plainly barred by the INA and FARRA and should be dismissed for lack of subject matter jurisdiction.

## II.    Counts V and VI of the Complaint Should be Dismissed.

### A.    Plaintiffs' detention-related claims fail because they are not in Defendants' custody.

The Court should dismiss Plaintiffs' detention-related claims (Count IV) under Rule 12(b)(1) and 12(b)(6) because none of the named Plaintiffs are currently in custody and therefore their claims challenging the legality of their detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), are not ripe and necessarily fail to state a claim upon which relief can be granted.

In *Zadvydas*, the Supreme Court considered the government's ability to detain an alien subject to a final order of removal before the removal is effectuated. 533 U.S. at 699. The Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period, limiting "post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." 533 U.S. at 682, 689. The Court further held that a detention period of six months is "presumptively reasonable." *Id.* at 701. Then after this first six months, the burden is on the petitioner to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" (SLRRFF) before the burden shifts back to the government to rebut that showing. *Id.*

The Complaint does not allege that Plaintiff D.V.D. or Plaintiff M.M. are in Defendants' custody. ECF No. 1 at ¶¶ 10, 11. DHS records indicate that D.V.D. and M.M. are not detained as of November 24, 2025. Therefore, their detention-based *Zadyvdas* claim based on a hypothetical lack of SLRRFF is not ripe for this Court to consider. *Farah v. United States Attorney General,* 12 F.4th 1312, 1333 (11th Cir. 2021); *Kumar v. U.S. Dep't Homeland Sec.,* No. 19-2404, 2020 WL 2904685 at *3 (June 1, 2020); *Singh v. Donelan,* No. 15-cv-30026-MGM, 2015 U.S. Dist. LEXIS 59734 *6 (D. Mass. March 4, 2015).

Plaintiffs nevertheless assert that hypothetical future re-detention would violate *Zadvydas'* mandate that 8 U.S.C. § 1231(a)(6) no longer authorizes detention "once removal is no longer reasonably foreseeable." 533 U.S. at 699. However, aliens cannot state a claim under *Zadvydas* unless and until they are detained for six months. *See, e.g., Singh v. Donelan,* *6 (D. Mass. March 4, 2015) (collecting cases). And regardless, as Plaintiffs acknowledge, section 1231(b) permits their removal to countries other than those designated in their removal orders and ICE has successfully removed class members to third countries. ECF No. 1 at ¶¶ 13, 33. Therefore, far from offering any reason why their removal would not be reasonably foreseeable, Plaintiffs essentially admit that if they were detained, their removal would be reasonably foreseeable. Their claim would thus fail even if it were properly before the Court at present.

Finally, Plaintiffs allege that Plaintiff E.F.D. was detained at Plymouth County Correctional Center in Plymouth, Massachusetts. ECF No. 1 at ¶ 12. ███████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ E.F.D. was released from custody on or about September 26, 2025 based on *Zadvydas*. Accordingly, he has already received the relief requested in this Count and his duplicative claim here should be dismissed. Because Plaintiffs D.V.D., M.M., and E.F.D. are all out of Defendants' custody, their attempts to challenge detention under *Zadvydas* necessarily fail. For these reasons, Count V of the Complaint should be dismissed.

### B. Plaintiffs fail to state a valid claim under FOIA.

This Court should dismiss Plaintiffs' claim under FOIA (Count IV) pursuant to Rule 12(b)(6) for several reasons.

First, the type of relief Plaintiffs seek—prohibiting Defendants from "rely[ing] on or us[ing]" the February 18, 2025 email—is not available under FOIA. A court's power to remedy

17

an improper withholding is limited by FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B). *See Kennecott Utah Copper Corp.*, 88 F.3d 1191, 1202 (D.C. Cir. 1996) ("The statute's remedial provision, § 552(a)(4), governs judicial review of all three types of documents[.]"). The D.C. Circuit has recognized that "while it may seem strange for Congress to command agencies" to take certain action under FOIA without "providing courts with the power to order" that an agency take that action, "that is exactly what Congress intended." *Id.* at 1202-03. "Providing documents to the individual fully relieves whatever informational injury may have been suffered by that particular complainant," and prohibiting Defendants from acting in accordance with an email, even after the email has been made public, "goes well beyond that need." *Id.* (refusing to order the agency to publish documents).

This analysis is buttressed by the practical consequences of adopting Plaintiffs' proposed remedy for a technical FOIA violation. Plaintiffs' version would radically transform the FOIA statute from a disclosure statute into a vehicle to set aside agency policies regardless of their legality. As the Supreme Court has noted, courts should be reluctant to construe FOIA "as silently departing from prior longstanding practice." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 154 (1980). Longstanding practice dictates that challenges to an agency's policies that carry the force of law and requests to set those policies aside should be brought under the APA—not FOIA. *See* 5 U.S.C. § 702. Congress never intended FOIA to displace or otherwise truncate the requirements of the APA.

FOIA is not the only statute that bars the relief Plaintiffs seek. To the extent Plaintiffs seek to preclude ICE from removing aliens to third countries by prohibiting ICE from relying on the February 18, 2025 email, their request for relief runs afoul of section 1252(f)(1). As explained *supra*, section 1252(f)(1) bars any relief that "enjoins or restrains" Defendants' operation of the

18

removal statutes, to include third country removals under § 1231(b), on a non-individualized basis. *Infra* at III(C). Prohibiting ICE from removing aliens because the email was not preemptively disclosed would restrain third country removals under section 1231(b) and therefore is forbidden by section 1252(f)(1).

Finally, even if the FOIA statute did authorize the relief Plaintiffs seek, the February 18, 2025 email does not fall within the categories of documents section 552(a)(2) directs agencies to affirmatively publish. Under FOIA, government agencies are required to affirmatively publish certain categories of records. *See* 5 U.S.C. § 552(a)(1), (2). As relevant here, the affirmative disclosure provisions of FOIA require that:

> Each agency . . . shall make available for public inspection . . . (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; (C) administrative staff manuals and instructions to staff that affect a member of the public[.]

*Id.* § 552(a)(2).

The Supreme Court has described documents under section 552(a)(2) as representing the "working law" of the agency and an "affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 153 (1975).

Despite Plaintiffs' characterization of this email as a "directive," it is nothing more than a restatement of what 8 U.S.C. § 1231(b) allows: removal to third countries. Nothing about this email is precedential in nature. It does not "create[] or provide[] a way of determining the extent of substantive rights and liabilities." *Cuneo v. Schlesinger,* 484 F.2d 1086, 1091 n.13 (D.C. Cir. 1973). It does not interpret section 1231(b) in any way, let alone in a way that constitutes "secret law." *Id.* at 1091. Rather, it presents third country removal as an option just as section 1231(b) does. Indeed, the email only addresses what Plaintiffs admit is ultimately lawful: third country

removals. It does not address the issue at the heart of this lawsuit: what *procedures* are required before a third country removal. This illustrates that the email does not represent some "secret law" and is merely a restatement of the statute. Adopting Plaintiffs' interpretation of section 552(a)(2) would require agencies to publish any and all emails that direct ICE to remove aliens under section 1231(b). That is an unworkable and unrealistic outcome not envisioned by the FOIA statute.

Plaintiffs also vaguely allege that DHS "has possibly relied on other statements of policy or instruction or guidance covered by 5 U.S.C. § 552(a)(2)(E)." This conclusory statement does not begin to meet the threshold for stating a plausible claim for relief particularly given Plaintiffs' warped view of what information falls under section 552(a)(2). For all of these reasons, Count VI should be dismissed.

### III. Alternatively, Plaintiffs' Motion for Partial Summary Judgment Should be Denied

#### A. The Court lacks jurisdiction to proceed with Plaintiffs' third-country removal claims while they are the subject of a pending appeal in the First Circuit.

Plaintiffs' Motion should be denied because, as explained in Defendants' motion to stay proceedings (ECF No. 206), the Court lacks jurisdiction to proceed with Plaintiffs' claims in Counts I-IV while those same claims are the subject of an appeal. In its order denying Plaintiffs' motion to remand Defendants' appeal of this Court's preliminary injunction, the First Circuit noted that, "as a general matter[,]... 'the district court is free to carry forward' while an appeal in an earlier phase of the case is pending and, if appropriate, 'order permanent relief after the merits are resolved.'" *D.V.D. v. DHS*, No. 25-1393, at *1 (1st Cir. Oct. 20, 2025) (quoting *Contour Design, Inc. v. Chance Mold Steel Co.*, 649 F.3d 31, 34 (1st Cir. 2011))). This Court appeared to rely on that axiom in its order denying Defendants' motion to stay proceedings pending appeal. ECF No. 218. But that reliance was in error.

First and foremost, *Contour Design* pre-dates the Supreme Court's decision in *Coinbase, Inc. v. Bielski,* 599 U.S. 736, 741 (2023) and, therefore, is abrogated to the extent it is inconsistent with "controlling intervening event" such as "a Supreme Court opinion on the point." *United States v. Walker-Couvertier*, 860 F.3d 1, 8 (1st Cir. 2017) (quoting *United States v. Chhien*, 266 F.3d 1, 11 (1st Cir. 2001). As Defendants explained in their stay motion, ECF No. 206 at 3, the filing of a notice of appeal "is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). This *Griggs* principle "requires an automatic stay of district court proceedings that relate to *any aspect* of the case involved in the appeal." *Coinbase,* 599 U.S. at 741 (emphasis added); *see also United States v. Mala*, 7 F.3d 1058, 1060-61 (1st Cir. 1993) ("an appeal from either a final order or an interlocutory order made immediately appealable by statute divests a district court of authority to proceed with respect to any matter touching upon, or involved in, the appeal." (citation omitted)). Accordingly, the "general principle" espoused in *Contour Design* must yield to the more specific—and binding—rule outlined in *Griggs* and reiterated in *Coinbase.*

Moreover, a boilerplate statement regarding when an appeal does or does not divest a lower court of jurisdiction is particularly inapposite in this uniquely complex procedural situation where the question on appeal is whether the district court has jurisdiction to hear Plaintiffs' third country removal claims and where the Supreme Court has already weighed in and stayed the preliminary injunction. It may be true that, in a typical case, a district court retains jurisdiction to proceed with a case while an interlocutory appeal is pending. But this is not such a typical case. Instead, the question on appeal is *whether* this Court has jurisdiction to hear Plaintiffs' third-country removal claims (which are also the subject of Plaintiffs' Motion) *at all. Coinbase, Inc.,* 599 U.S. at 741

("[I]it makes no sense for [a case] to go forward while the court of appeals cogitates on whether there should be one."). Moreover, the issues on appeal—both Plaintiffs' substantive claims and Defendants' jurisdictional defenses—are identical to those being litigated at the First Circuit in the pending appeal. The Court has recognized as much by observing the need for prompt appellate guidance. ECF No. 212 at 3 ("This Court believes that the case here would benefit from meaningful, swift, and complete appellate review."). And after the Court acknowledged that the First Circuit was "better positioned than this Court to determine the trajectory of its appeal," the First Circuit opted to provide appellate review in the preliminary injunction posture by denying Plaintiffs' motion to remand. Even if the Court could moot the appeal by issuing a final judgment on the same issues that are before the First Circuit, it should decline to do so when the First Circuit has already declined an explicit invitation to permit this Court to forge ahead to final judgment without the court of appeals' input.

Even setting aside the *Griggs* principle and *Coinbase*, there are a myriad of prudential reasons for this Court to deny Plaintiffs' Motion and stay further proceedings. It is one thing to proceed with litigation while an interlocutory appeal is pending. But it is quite another to proceed with a case when a higher court has already intervened—twice—and stayed this Court's prior orders on the same claims. As the Northern District of California recently noted, a district court should be particularly reluctant to proceed with a case when an appellate court has already stayed its prior orders on the issue. *Newsom v. Trump*, No. 25-CV-04870-CRB, 2025 WL 2609917, at *2 (N.D. Cal. Sept. 9, 2025) ("Such a stay warrants additional caution beyond the usual effort to avoid conflicting claims of jurisdiction from the district and appellate courts.").

At the very least, there is significant reason to doubt that this Court has jurisdiction to proceed with Plaintiffs' claims at this time. *See Coinbase, Inc.,* 599 U.S. at 741; *Newsom*, 2025

WL 2609917, at *2 (staying proceedings related to Plaintiffs' motion for further relief while an appeal of a temporary restraining order was pending because the merits of the issue on appeal "are inextricably tied up with the merits of Plaintiffs' new motion" and the "complicated and fragmented procedural posture of this action leaves the Court skeptical of its jurisdiction to consider Plaintiffs' motion"). For that reason alone, Plaintiffs' motion for partial summary judgment should either be denied or held in abeyance pending the outcome of Defendants' appeal of the preliminary injunction. Alternatively, to the extent that the Court disagrees and is inclined to grant a declaratory judgment in favor of Plaintiffs, Defendants ask that such order be stayed pending the outcome of any potential appeal.

### B. Plaintiffs' third country removal claims fail on the merits.

Assuming *arguendo* that the Court had jurisdiction to hear Plaintiffs' third country removal claims—and had jurisdiction to proceed with those claims while they are the subject of a pending First Circuit appeal—the claims would still fail because they are without merit. Defendants' procedures for carrying out removal to third countries are fully consistent with the statute and due process, and there is no legal basis for this Court to order that those procedures be supplemented with ones Plaintiffs would prefer.

Notably, all class members here have final orders of removal. All have received the panoply of procedural safeguards and protections available to them in their prior immigration proceedings, including the opportunity to raise withholding of removal and CAT claims regarding *any* country, voice fears as to any potential countries of removal, and move to reopen past proceedings as new fears have arisen. The March Guidance explains that the government provides these aliens with additional process before any one of them is removed to a third country. ECF No. 43-1. That process, as detailed below, ensures that an alien will either be sent to a country where the United States has received credible diplomatic assurance the alien will not be persecuted or tortured, or

23

that the alien will be given notice and an opportunity to be heard regarding any fear as to his country of removal. *Id*. The Court should not second-guess the details of these procedures under the guise of constitutional due-process analysis.

As noted, the March Guidance provides that an alien may be removed to a "country [that] has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." *Id*. at 2-3. If the State Department finds that country's assurances credible, "the alien may be removed without the need for further procedures." *Id*. For aliens being removed to a third country not covered by an adequate assurance, the March Guidance states that DHS will first inform the alien of removal to that country. ECF No. 43-1 at 2. If the alien affirmatively states a fear of removal to that country, USCIS will generally screen the alien within 24 hours of referral from the immigration officer to determine whether he "would more likely than not" be persecuted or tortured if sent to that country. *Id*. If not, the alien will be removed; if so, the alien will be referred to the immigration court—or, if appropriate, the government "may choose to designate another country for removal." *Id*.

Neither the statute nor the Constitution require anything further. First, the Supreme Court has held that courts cannot second-guess the Executive's "conclusive" determination that a country will not torture a person upon his removal. Second, the class includes applicants for admission, who are clearly not entitled to any process beyond what is already provided. Third, even for class members who are not applicants for admission, the March 30 Guidance satisfies the minimum requirements of due process. Finally, Plaintiffs' statutory claim that the March 30 Guidance somehow violates section 1231(b) is clearly erroneous.

### i. The Court cannot second-guess the Executive's determination that a recipient country is not likely to torture a detainee.

Plaintiffs object to Defendants' use of country-wide assurances in the third country removal process and insist that "individualized assessments" are required before aliens may be removed to a third country. *See generally* ECF No. 194 at 15-19. But as the Supreme Court has made clear, the "Judiciary is not suited to second-guess such determinations," in either substance or scope, given their "foreign policy" ramifications. *Munaf v. Geren*, 553 U.S. 674, 702 (2008). And when the Executive determines a country will not torture a person on his removal, that is conclusive. *Id. at* 702-03. Indeed, "[u]nder *Munaf* ... the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009), *cert. denied*, 559 U.S. 1005 (2010).

The "*Munaf* decision applies here a fortiori: That case involved transfer of American citizens, whereas this case involves transfer of alien detainees with no constitutional or statutory right to enter the United States." *Id.* at 517-18 (Kavanaugh, J., concurring). When the Executive decides an alien will not be tortured abroad, courts may not "second-guess [that] assessment," at least unless Congress has specifically authorized judicial review of that decision. *Id.* at 517 (citation omitted); *see Munaf*, 553 U.S. at 703 n.6.

Plaintiffs clearly disagree, but they provide no sound basis for distinguishing *Munaf* and *Kiyemba*. Instead, they merely insist that that the Executive Branch must make an "individualized assessment" to satisfy due process. Plaintiffs' reference the out-of-circuit decision in *Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 257 (3d Cir. 2008), but that decision is clearly distinguishable because it arose in the context of a petition for review.[3] Moreover, courts may not "second-guess"

---

[3] Plaintiffs' reference to *Khouzam* is particularly mystifying because that decision supports Defendants' jurisdictional arguments here. In that case, the petitioner had filed both an action with

the scope of the Executive's conclusion any more than its substance. *See Kiyemba*, 561 F.3d at 517-18 (Kavanaugh, J., concurring). The decision that a foreign government's categorial assurance against torture is sufficient to be accepted for all aliens is itself a "foreign policy" judgment the Judiciary "is not suited" to question. *Munaf*, 553 U.S. at 702.[4]

Relatedly, Plaintiffs' objection does not sound in procedural due process at all. It is a substantive objection that an assurance alone provides insufficient basis for the government to find that an alien is not likely to be tortured. The Supreme Court has rejected attempts to "recast in 'procedural due process' terms" what is really a challenge to the "'substantive'" criteria that the government has adopted. *Reno v. Flores*, 507 U.S. 292, 308 (1993) (rejecting similar argument for "individual[ized]" procedure). For good reason: It makes no sense to require the government to provide additional process with respect to potential evidence that is immaterial under the substantive standard the government has adopted. When the government is satisfied based on another country's diplomatic assurances that no alien will be tortured in the receiving country, a further "individualized" assessment serves no rational purpose.

Plaintiffs also suggest that the March Guidance is insufficient because it does not provide for judicial review before removal. ECF No. 194 at 21. But that too is irreconcilable with *Munaf's* recognition that certain determinations by the political branches are conclusive in this context.

---

the district court and a petition for review with the court of appeals. The Third Circuit concluded that the district court had lacked jurisdiction to review his claim concerning CAT pursuant to section 1252(a)(4) and vacated the district court's decision. 549 F.3d at 244-45.

[4] This Court previously concluded that an individualized determination was required under CAT regulations. ECF No. 64 at 42-43. Of course, that has no bearing on what the Constitution might require. Anyway, the Court was wrong. While the regulations say that an assurance must be limited to a "specific country," nothing requires an alien-by-alien determination as to what will likely happen in that country. 8 C.F.R. § 1208.18(c)(1). The Secretary is free to conclude that "an alien" would not be tortured upon removal, on the ground that no alien would be treated that way in light of the strength and reliability of the assurance provided by that country. *Id*.

Moreover, Plaintiffs do not even attempt to explain why judicial review would be required here, but not for the many other provisions in the INA that make the Executive's decisions conclusive and unreviewable. *See*, *e.g.*, *AADC*, 525 U.S. at 486-87 (collecting examples); *cf.* 8 C.F.R. § 1208.30(g)(2)(iv)(A) (barring judicial review over adverse credible fear determination in expedited-removal proceedings).

### ii. Class members who are applicants for admission are clearly not entitled to additional process beyond what is already provided.

Plaintiffs' claims asking this Court to impose novel due process requirements are particularly misguided here because, for many aliens included in the class, the Due Process Clause requires no more process than what the political branches provide. The Supreme Court has repeatedly held that "the due process rights of an alien seeking initial entry" are no greater than "[w]hatever the procedure[s] authorized by Congress." *Thuraissigiam*, 591 U.S. at 139 (citation omitted). For aliens who have never been admitted—a group which undoubtedly includes many members of the certified class—"the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) (emphasis added); *accord Thuraissigiam*, 591 U.S. at 138-40.

To this end, the Supreme Court has also long applied the so-called "entry fiction" that all "aliens who arrive at ports of entry . . . are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (citation omitted). Indeed, that is so "even [for] those paroled elsewhere in the country for years pending removal." *Id*. The Supreme Court has applied the entry fiction to aliens notwithstanding their claims to having "entered" and developed significant ties to this country. *See*, *e.g.*, *Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (holding that a mentally disabled girl paroled into the care of relatives for nine years must be "regarded as stopped at the boundary line" and "had gained no foothold in the United States"); *Shaughnessy v. United*

27

*States ex rel. Mezei*, 345 U.S. 206, 214-15 (1953) (holding that an alien with 25 years' of lawful presence who sought to reenter enjoyed "no additional rights" beyond those granted by "legislative grace"). Compared to these cases, it follows *a fortiori* that an unlawful entrant who violates our laws and evades detection must, once found, be "treated as if stopped at the border." *Mezei*, 345 U.S. at 215; *see also Thuraissigiam*, 591 U.S. at 140 (holding that aliens who enter the United States illegally "cannot be said to have 'effected an entry'" and remain "on the threshold").

Accordingly, the Supreme Court's precedents indicate that illegal aliens who evade detection in crossing the border should be treated the same as those who are stopped at the border in the first place. *See Thuraissigiam*, 591 U.S. at 138-40. While aliens who have been admitted may claim due-process protections beyond what Congress has provided, even when their legal status changes (e.g., an alien who overstays a visa, or is later determined to have been admitted in error), *see Wong Yang Sung v. McGrath*, 339 U.S. 33, 49-50 (1950), the Supreme Court has never held that aliens who have "entered the country clandestinely" are entitled to such additional rights, *The Japanese Immigrant Case*, 189 U.S. 86, 100 (1903). Put differently, "once an alien gains admission to our country and begins to develop the ties that go with permanent residence"—a status that, by definition, unlawful entrants are legally barred from obtaining—"his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). But before then, an alien who clandestinely enters "does not become one of the people to whom these things are secured by our Constitution by an attempt to enter, forbidden by law." *United States ex rel. Turner v. Williams*, 194 U.S. 279, 292 (1904); accord *Wong Yang Sung*, 339 U.S. at 49-50.

Congress has codified that distinction by treating all aliens who have not been admitted—including unlawful entrants who evade detection for years—as "applicants for admission." 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted . . . shall

be deemed for purposes of [the INA] an applicant for admission."). That rule comports with the Constitution. The Due Process Clause does not offer a windfall for those who successfully circumvent our laws and evade detection. For constitutional purposes, it should not matter whether an alien was apprehended "25 yards into U.S. territory" or 25 miles; nor should it matter whether he was here unlawfully and evades detection for 25 minutes or 25 years. *See Thuraissigiam*, 591 U.S. at 139. When an illegal alien has never been admitted to this country by immigration officers, his constitutional status for due-process objections to removal is no different from an alien stopped at the border.[5]

That principle is fatal to the classwide relief Plaintiffs' seek. The class covers "[a]ll individuals who have a final order of removal issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA." ECF No. 64 at 23. That includes aliens who were apprehended at the border illegally reentering after having been removed. It includes aliens deemed inadmissible at the border but then released into the country for removal proceedings. It also includes aliens who were able

---

[5] This conclusion is consistent with the Supreme Court's recent rulings that aliens detained and subject to removal under the Alien Enemies Act (AEA), 50 U.S.C. 21 *et seq.*, are entitled to judicial review, including notice and opportunity to be heard regarding their AEA status. *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (per curiam); *A.A.R.P. v. Trump*, No. 24A1007, 2025 WL 1417281, at *2 (May 16, 2025) (per curiam). As noted in the government's application in *J.G.G.*, Gov't Br. at 18-20, *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025) (No. 24A931), the Supreme Court in *Ludecke v. Watkins*, 335 U.S. 160 (1948), interpreted the AEA and the habeas corpus statute to provide for limited but significant judicial review of the Executive's AEA determinations, including review of "questions of interpretation and constitutionality," *id.* at 163, and "[t]he additional question as to whether the person restrained is in fact an alien enemy," *id.* at 171 n.17. In those cases, therefore, Congress has provided procedures by statute that comport with due process, and they apply regardless of whether the AEA-designated alien is an applicant for admission who lacks due-process removal rights beyond what Congress provides. Here, by contrast, Plaintiffs ask this Court to create an entirely new process without any statutory basis, based on its subjective "sense of what fairness requires," Add. 49; superimpose that process upon the more limited (but still constitutionally adequate) procedures adopted by the political branches; and apply that judge-manufactured process to many aliens who lack due-process removal rights beyond what Congress provides. Add. 59.

to clandestinely enter the country illegally, only to be apprehended later. And it includes non-lawful permanent resident aliens who are deportable based on an aggravated felony conviction.

The Due Process Clause does not give such aliens a constitutional entitlement to any extra removal procedures beyond what the political branches have provided. *See Thuraissigiam*, 591 U.S. at 138-40. But that is precisely what Plaintiffs seek. Again, the INA is silent as to any specific process that aliens must be afforded under CAT before they are removed to a third country, and FARRA delegates that decision to the Executive Branch. *See* 8 U.S.C. § 1231 note. The March Guidance thus constitutes the political branches' reasoned judgment as to what that process should be in these circumstances, for aliens who have a final order of removal. For aliens who were never admitted to the United States, the Executive's policies and decisions made under FARRA "are due process of law." *Nishimura Ekiu*, 142 U.S. at 660 (emphasis added). And as detailed, far from some exercise of "arbitrary power," *Japanese Immigrant*, 189 U.S. at 101, that Guidance is exceedingly reasonable, and provides aliens with more than ample process to effectuate their responsible removal. As the Supreme Court has already recognized, the Constitution requires nothing further. Accordingly, Plaintiffs' classwide claims fail and their motion for partial summary judgment should be denied.

### iii.  The March 30 Guidance satisfies the minimum requirements of due process.

In any event, Plaintiffs' challenge to the adequacy of the procedures afforded by the March Guidance is meritless. The government's procedures for implementing withholding and CAT protection in this context are fully consistent with due process, and the Court should deny Plaintiffs' Motion.

Under the traditional *Mathews v. Eldridge* test for procedural due process, where a liberty or property interest is implicated, the Court balances three factors:

the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures.

*Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *see Hamdi v. Rumsfeld*, 342 U.S. 56, 529-30 (2004) (plurality). In performing this analysis, however, the Court must bear in mind that "[t]he role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." *Landon*, 459 U.S. at 34-35. "[I]t would be improper simply to impose deportation procedures here because the reviewing court may find them preferable." *Id.* at 35. Courts must take care to only order what "would satisfy the *minimum requirements of due process*" under the particular circumstances. *Id.* (emphasis added). This is particularly true given the "weighty" interest the government has in "efficient administration of the immigration laws" and that "control over matters of immigration is a sovereign prerogative, largely within the control of the Executive and the Legislature." *Id.* at 34.

As an initial matter, the *Mathews* analysis is ill-suited to be conducted on a classwide basis. Courts are required to limit any relief to the *minimum* requirements of due process, *Landon,* 459 U.S. at 34, but this class is comprised of aliens with a near infinite number of different backgrounds critical to a due process analysis and for which it is impossible to account. In short, this Court cannot order classwide relief under the Due Process Clause that comports with binding Supreme Court precedent. *See Jennings,* 583 U.S. at 318 ("Similarly, the Court of Appeals should also consider on remand whether a Rule 23(b)(2) class action litigated on common facts is an appropriate way to resolve respondents' Due Process Clause claims.").

The combination of the March Guidance and the procedures class members received in their prior immigration proceedings substantially eliminate the risk of an erroneous deprivation

regarding potential fear of persecution or torture and undermine class members' interest in additional procedures. All members of the class have final orders of removal, which means they received the panoply of procedural safeguards and protections available to them in their prior immigration proceedings, including the opportunity to raise withholding of removal and CAT claims and voice fears as to any potential countries of removal. Moreover, they can move to reopen those past proceedings at any time as new fears arise. 8 C.F.R §§ 1003.2(c), 1003.23(b). Some class members have been granted withholding of removal or protection under the CAT, but this limited type of protection means that they may still be removed to any country that will accept them. *See generally* 8 U.S.C. § 1231(b).

Moreover, pursuant to the March Guidance, Defendants provide these aliens with additional process before any one of them is removed to a third country. ECF No. 43-1. An alien may be removed to a "country [that] has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." *Id.* at 2. If the State Department finds that country's assurances credible, "the alien may be removed without the need for further procedures." *Id.* For aliens being removed to a third country not covered by an adequate assurance, the March Guidance states that DHS will first inform the alien of removal to that country,. ECF No. 43-1 at 2. If the alien affirmatively states a fear of removal to that country, USCIS will generally screen the alien within 24 hours of referral from the immigration officer to determine whether he "would more likely than not" be persecuted or tortured if sent to that country. *Id.* If not, the alien will be removed; if so, the alien will be referred to the immigration court—or, if appropriate, the government "may choose to designate another country for removal." *Id.*

Accordingly, the March Guidance ensures that class members will either be sent to a country where the United States has received adequate diplomatic assurances they will not be

persecuted or tortured, or that they will be given notice and an opportunity to be heard regarding any fear as to their country of removal. *Id*. And these procedures are provided *on top of* the procedures provided to them in their underlying immigration proceedings, as well as the ability to move to reopen their prior cases. Taken together, these procedures significantly reduce the risk of erroneous deprivation and reduce Plaintiffs' interest in additional procedures.

The risk of erroneous deprivation here—being *entitled* to withholding of removal or CAT protection to a third country but being *unable to seek* that protection—is further undermined by the high bar that Plaintiffs must meet in order to prevail on their potential fear claims. CAT protection is an extraordinary remedy reserved for the "extreme" scenario when an alien faces a specific threat of severe pain or suffering intentionally inflicted by the hand or with the concurrence of a government official in the receiving country. *Settenda v. Ashcroft*, 377 F.3d 89, 94 (1st Cir. 2004); *see also* 8 C.F.R. § 1208.18(a). Likewise, withholding of removal is reserved for circumstances where an alien faces a clear, objective probability of persecution in the receiving country. *Ang v. Gonzales*, 430 F.3d 50, 58 (1st Cir. 2005). And "persecution" in this context requires proof of "a certain level of serious harm (whether past or anticipated), a sufficient nexus between that harm and government action or inaction, and a causal connection to" the alien's race, religion, nationality, or membership in a particular social group." *Martínez-Pérez v. Sessions*, 897 F.3d 33, 39 (1st Cir. 2018). These forms of protection do not, as Plaintiffs seem to suggest, extend to whenever an alien is removed to a country with which the alien is unfamiliar, or to a country with a high crime rate, civil unrest, or other risk of private violence. *See, e.g., Ravindran v. I.N.S.*, 976 F.2d 754, 759 (1st Cir. 1992) ("[E]vidence of widespread violence and human rights violations affecting all citizens is insufficient to establish persecution."); *Paye v. Garland*, 109 F.4th 1, 10 (1st Cir. 2024) ("[A] fear of harm from general conditions of violence and civil unrest does not

even establish a well-founded fear of persecution, the asylum standard, much less a clear probability of persecution, the withholding of removal standard."); *Rasiah v. Holder*, 589 F.3d 1, 5 (1st Cir. 2009) (Evidence of "civil strife" not sufficient to establish persecution); *Vargas Panchi v. Garland*, 125 F.4th 298, 310 (1st Cir. 2025) (Evidence of "widespread discrimination, poverty, and occasional violence" was not sufficient to establish a fear of persecution.); *Gomez-Abrego v. Garland*, 26 F.4th 39, 46 (1st Cir. 2022) (Evidence of "widespread violence and police corruption" not sufficient to prevail on CAT claim.); *Bazile v. Garland*, 76 F.4th 5, 16 (1st Cir. 2023) (Evidence that "danger and violence are endemic" is insufficient for a grant of CAT protection.).[6] Given that demanding standard, it is far from unreasonable to expect that an alien with a bona fide withholding of removal or CAT claim will be able to identify well before any designation of a country by DHS the countries where he faces a genuine threat of persecution or torture—especially aliens like the class members, who have already "gone through a removal process" and would have been "advised" as to the scope of these forms of protection. ECF No. 130-2 at ¶ 12. Nor is it unreasonable to place the burden on the alien to proactively identify where he fears he may be persecuted or tortured.

Nevertheless, Plaintiffs insist that even more procedures must be required before class members may be removed to a third country. But that assertion is inconsistent with established immigration law. The most analogous situation is in expedited-removal proceedings, where aliens are expected to raise fears of removal "almost immediately," and are often processed in a matter

---

[6] *See also Rodrigues v. Garland*, 124 F.4th 58, 66 (1st Cir. 2024) ("Generalized country conditions reports that do not shed light on the asylum applicant's particular situation are ordinarily not enough to establish fear of future persecution."); *Kho v. Keisler*, 505 F.3d 50, 54 (1st Cir. 2007) (Fear-based relief "generally requires individualized evidence that the applicant will be 'singled out' for persecution[.]"); *Cabrera v. Garland*, 100 F.4th 312, 325 (1st Cir. 2024) ("Generalized country conditions evidence (by itself) is not sufficient for a grant of CAT protection.").

of hours. ECF No. 130-2 ¶¶ 11, 13; *see*, *e.g.*, 8 U.S.C. § 1225(b)(1)(B)(i). If the asylum officer determines the alien does not have a credible fear, any review by an immigration judge must be completed within seven days after that finding was made. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R § 1003.42(e). The expedited-removal statute does not limit the countries to which an alien can be removed pursuant to Section 1231(b), *see* 8 U.S.C. § 1225(b), so its expedited procedures for raising and assessing fear claims apply even when an alien is removed somewhere other than the country he designates or his home country, *see*, *e.g.*, 8 U.S.C. § 1231(b)(2)(A)-(E). Plaintiffs do not explain why those sorts of procedures are adequate for expedited removal, but not here— where, again, the entire class comprises aliens who already have valid removal orders, and who already have had a prior opportunity to raise claims for withholding of removal or protection under CAT.

It bears emphasizing that the risk of erroneous deprivation, in this context, is the risk that an alien will be *entitled* to withholding of removal or CAT protection to a third country but will be *unable to seek* that relief. By any reasonable standard, the risk of such a deprivation under the current procedures is exceedingly low. As discussed above, all class members have already received considerable process and have had an opportunity to seek fear-based protection from removal in their prior immigration proceedings. All class members have also had the opportunity to seek to reopen those prior proceedings if new fears have arisen subsequently. And pursuant to the March Guidance, all class members receive additional procedures prior to removal to a third country. And, as discussed above, a lack of familiarity or nonspecific fear of the general living conditions in that country does not constitute a meritorious withholding of removal or CAT claim. Accordingly, the risk of erroneous deprivation is exceedingly low, Plaintiffs' interest in additional procedures is equally low, and they are therefore not entitled to any more process under *Mathews*.

#### iv. Plaintiffs' statutory claim under section 1231(b) fails.

Plaintiffs argue that the March Guidance violates section 1231(b), but this claim relies on a clear misinterpretation of the statutory text. Plaintiffs assert that section 1231(b) "prohibits pursuit of removal to third countries when the designated country or country of citizenship is willing to accept the noncitizen." ECF No. 194 at 10. But as Plaintiffs concede in that same paragraph, this assertion is patently untrue. Instead, the statute permits Defendants to remove individuals to any other "country whose government will accept the alien into that country" when removal to other countries (including, inter alia, the country in which the alien was born) is "impracticable, inadvisable, or impossible," 8 U.S.C. § 1231(b)(2)(E)(vi), and to disregard the alien's designated country in various circumstances, including if the alien does not make a prompt designation, if the designated country does not timely inform the United States whether it will accept the alien, or if the Attorney General concludes that removal to the designated country "is prejudicial to the United States," *id.* § 1231(b)(2)(C). Nowhere does the statute limit disregarding the alien's designated country of removal to only when the country is unwilling to accept the alien. And there are countless logistical and foreign policy considerations that could make removal to a particular country impracticable or inadvisable and have nothing to do with that country's willingness (or lack thereof) to accept the alien. If Congress wanted to *require* that removal to the designated country be *impossible* because the country is unwilling to accept the alien, it could have said so. But it did not, and Plaintiffs' preferred interpretation of section 1231(b)(2)(E)(vi) would entirely remove the words "impracticable" and "inadvisable" from the statute. For this reason, their statutory claim fails.

### C. Section 1252(f)(1) deprives this Court of jurisdiction to enter the vacatur relief that Plaintiffs seek.

Finally, Plaintiffs' motion for partial summary judgment should also be denied for lack of the jurisdiction to the extent that it seeks coercive non-individualized relief against the operation of the third country removal statute. As Defendants argued extensively in their prior briefing in this case, the Court lacks jurisdiction to issue classwide injunctive relief against the operation of the third country removal statute (8 U.S.C. § 1231(b)), which is one of the statutory provisions covered by section 1252(f)(1). *See* ECF Nos. 31, 38, 51. Plaintiffs' expedited attempt to seek declaratory relief on those same claims appears to be premised upon their (belated) recognition that section 1252(f)(1) clearly strips this Court of jurisdiction to issue the classwide injunctive relief that it already entered. However, Plaintiffs' Motion still runs afoul of section 1252(f)(1) because it seeks not just declaratory relief but also vacatur. *See* ECF No. 194 at 21 (asking this Court to "declare the Memo unlawful and set it aside").[7] Vacatur (or "set aside") relief is equally barred by section 1252(f)(1). Section 1252(f)(1) deprives lower courts of jurisdiction to "enjoin or restrain" the "operation of" specified INA provisions "[r]egardless of the nature of the action or claim." 8 U.S.C. § 1252(f)(1). Taken together, those terms encompass coercive relief that compels or prohibits the Executive's operation of the covered provisions. Although vacatur of an agency decision can be a "less drastic remedy" than an injunction in some respects, *Monsanto Co.* v. *Geertson Seed Farms*, 561 U.S. 139, 165 (2010), vacatur is still coercive. Because vacatur prohibits the agency from giving effect to its guidance, a district court necessarily "enjoin[s] or restrain[s] the operation of" the covered INA provisions when it vacates agency guidance

---

[7] In addition, it remains the government's view that § 1252(f)(1) permits at most properly crafted declaratory relief—that is, declaratory relief that does not compel or purport to compel the government to operate the covered provisions in a particular way. *See* Supp. Br. For The Petitioners, *Biden v. Texas*, No. 21-954, at 11-13, 22 (U.S. May 9, 2022).

implementing them. 8 U.S.C. § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (an injunction that, *inter alia*, "vacated" the challenged DHS memorandum violated section 1252(f)(1)). Therefore, this Court may "declare the [March 30 Guidance] unlawful" but is without jurisdiction to "set it aside" on a classwide basis. Accordingly, Plaintiffs' motion must be denied to the extent that it seeks coercive vacatur or declaratory relief.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' motion for partial summary judgment.

Respectfully submitted,

BRETT A. SHUMATE                              /s/*Matthew P. Seamon*
Assistant Attorney General                    MATTHEW P. SEAMON
                                              Senior Litigation Counsel
DREW C. ENSIGN                                U.S. Department of Justice, Civil Division
Deputy Assistant Attorney General             Office of Immigration Litigation
                                              P.O. Box 868, Ben Franklin Station
ELIANIS N. PEREZ                              Washington, DC 20044
Assistant Director                            (202) 598-2648
                                              (202) 305-7000 (facsimile)
MARY L. LARAKERS                              Matthew.Seamon2@usdoj.gov
Senior Litigation Counsel

## CERTIFICATE OF SERVICE

I, Matthew P. Seamon, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Matthew P. Seamon*
Matthew P. Seamon
Dated: November 24, 2025              Senior Litigation Counsel