## DECLARATION OF ▮▮▮▮

I, ▮▮▮▮ make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. My name is ▮▮▮▮ I am over the age of 18 and am competent to testify regarding the matters described below.

2. I am a citizen of the United States. I am originally from Chad.

3. Our family came to the United States legally when my son H.G. was five years old. We were all granted asylum for political reasons that arose after our arrival here and then received permanent residence. The rest of us naturalized, but H.G. was unable to do so due to arrests and convictions.

4. On July 3rd, 2024, U.S. Immigration and Customs Enforcement (ICE) detained my son, (after he had received his renewed green card, in February 2024), and began removal proceedings against him. H.G. was detained throughout his immigration court proceedings.

5. In an order dated November 22, 2024, following a hearing that my wife, myself and all our family members attended, an immigration judge ordered my son removed to Chad but granted him protection under the Convention Against Torture (CAT), based on the same reasons that had led to our family being granted asylum as well as reasons specific to him. This grant of CAT protection prohibited his removal to Chad, and my son understood that.

6. My son remained in ICE custody for months after being granted protection under CAT. In July 2025, he filed a habeas petition by himself. His lawyer later amended the habeas petition on his behalf challenging his continued detention after being issued an order of removal.

7. In the following weeks, ICE transferred my son through at least four different detention centers in different states. He was finally transferred to a detention facility inside an airport in Alexandria, Louisiana, where he was held for over a week. My son called me during this time and told me about these transfers.

8. On or around October 4, 2025, ICE deported my son to Eswatini. All of the information in this paragraph and the ones below are based on telephone calls that I have had with my son. He told me later that ICE officers in Alexandria, Louisiana, told him that he and the other men in the airport detention facility would be making a short flight to Puerto Rico. Up until that point, ICE officers had never told my son that they had identified any third country to which they thought they could remove him. At the airport, my son saw a paper that indicated that Puerto Rico was not the plane's final destination and that they were going to Eswatini. He and others refused to get on the plane.

EXHIBIT Q

9. He told the officers he had CAT protection against removal to Chad and wanted a fear screening, which was something the lawyer representing him in his habeas petition had told him about. My son had no connection whatsoever to Eswatini but feared harm in Eswatini for some of the same reasons as in Chad, in addition to the fear that Eswatini would turn around and send him to Chad. He was not given an interview with an asylum officer before being deported to Eswatini.

10. When my son and the other men in the group refused to get on the plane, armed men he described as military officers came and forced my son onto the plane, along with about ten other men.

11. Since his arrival in Eswatini on October 6, 2025, my son has been held in a maximum-security prison. He has never been in Eswatini before in his life, and there are no criminal charges pending against him in Eswatini or anywhere else in the world as far as I am aware.

12. Since his arrival in Eswatini, my son has been able to call me or his mother every two days, but always with a prison guard next to him. On October 8, 2025, when my son called me for the first time from Eswatini and said that the officers in Eswatini were putting pressure on him to go to Chad and telling him that if he refused or resisted, he would face 4 to 5 years in jail in Eswatini for refusing to cooperate. When he told them that he had been granted protection from deportation to Chad in the United States, they accused him of lying.

13. My son has also told me and his mother that the food provided to him and the other men in the prison is bad and insufficient, consisting only of a small amount of rice with cabbage or a small amount of porridge. We transferred money to a lawyer in Eswatini to deposit with the prison for our son's use, which took days to become available to him.

14. The prison officers in Eswatini told my son that no one—not lawyers and not international organizations—could visit him and the other people deported with him at that prison and that only the U.S. embassy in Eswatini could order his release.

Executed on this day 19th of November 2025 at Silver Spring, Maryland (USA)