# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.V.D.; M.M.; E.F.D.; and O.C.G., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-cv-10676-BEM |
| U.S. DEPARTMENT OF HOMELAND SECURITY; Kristi NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity; Pamela BONDI, U.S. Attorney General, in her official capacity; and Antone MONIZ, Superintendent, Plymouth County Correctional Facility, in his official capacity, | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

## I.    INTRODUCTION

On July 15, 2025, shortly after the Supreme Court's June 23 order that stayed the procedural protections this Court ordered in its preliminary injunction (PI), Plaintiffs moved for partial summary judgment asking this Court to reach a final judgment on the merits of Counts I, III, and IV of their Complaint, Dkt. 194, and moved for an expedited hearing on these claims, Dkt. 195. Indeed, because the PI protections are effectively inoperable for the foreseeable future, resolution of these merits claims is the only way to safeguard the rights of Plaintiffs and class members and protect them from removal to third countries where they face persecution or torture. Defendants actively have sought to delay a ruling on Plaintiffs' motion for partial summary judgment by opposing the motion for an expedited hearing, Dkt. 203, moving to stay proceedings pending the PI appeal, Dkt. 206, and seeking to extend their deadline to respond to Plaintiffs' motion for partial summary judgment, Dkt. 207. Following the First Circuit's instruction that summary judgment proceedings may proceed concurrently with the PI appeal, Dkt. 212, on October 27, 2025, this Court set a briefing schedule and hearing date on Plaintiffs' motion, Dkts. 218, 219.

Because Plaintiffs filed the motion for summary judgment in July, and Defendants' continued application of their third-country policy and practice since that filing has led to additional harm to class members, Plaintiffs filed additional exhibits reinforcing their existing arguments and existing record in mid-November. *See* Dkts. 227-1 – 227-12. Defendants indicated that they would move to strike the exhibits and postpone the summary judgment hearing (and, accordingly, a ruling on partial summary judgment) unless Plaintiffs withdrew the exhibits. *See* Dkt. 234-1. Plaintiffs agreed to do so to maintain the existing schedule but continued to collect evidence of the impact of Defendants' third country removal policy and

practice on class members in case it would be relevant to responding to Defendants' upcoming filing. Upon reviewing Defendants' Motion to Dismiss and Opposition to Plaintiffs' Motion for Partial Summary Judgment, *see* Dkt. 231, Plaintiffs determined that the motion to dismiss included a factual jurisdictional attack. Plaintiffs submitted the previously submitted declarations, as well as additional responsive exhibits, in response to this factual challenge. *See* Dkt. 232 at 2 n.1; Dkts. 233-1 – 233-25. Additionally, because the exhibits further buttress the existing record and are responsive to contentions placed at issue in Defendants' opposition to summary judgment, Plaintiffs also pointed to them to reinforce their existing arguments and the record demonstrating that partial summary judgment is warranted. As opposed to "gamesmanship," Dkt. 234 at 1, 5, 6, as explained below, Plaintiffs' submission of the exhibits is proper and justified; whereas Defendants fail to cite even a single case for their claim that the exhibits work a manifest injustice against them, *id*. Notably, also, Defendants do not dispute the contents of the exhibits. The Court should not permit Defendants' motion to strike to further delay the Court from ruling on Plaintiffs' motion for summary judgment.

## II.  STANDARD OF REVIEW

"In resolving motions to strike, trial courts are empowered with broad discretion." *Soni v. Boston Med. Ctr. Corp.*, 683 F.Supp.2d 74, 92 (D. Mass. 2009) (quoting *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 398 (D.R.I. 1998)). "It is well settled that motions to strike 'are disfavored' and 'rarely granted absent a showing of prejudice to the moving party.'" *Autila v. Mass. Bay Transp. Auth.*, 342 F.R.D. 23, 32 (D. Mass. 2022) (citation omitted); *see also Sheffield v. City of Boston*, 319 F.R.D. 52, 54 (D. Mass. 2016). Moreover, because motions to strike "may be employed by a defendant only to obtain relief from 'redundant, immaterial, impertinent, or scandalous matter,'" they "are narrow in scope,

disfavored in practice, and not calculated readily to invoke the court's discretion." *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985) (quoting Fed. R. Civ. P. 12(f)); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (same). The moving party bears the burden of establishing that the court should strike the pleading. *Autila*, 342 F.R.D. at 32.

## III.   THE COURT SHOULD DENY DEFENDANTS' MOTION AND MAINTAIN THE SUMMARY JUDGMENT HEARING DATE

### A.    Motion for Summary Judgment

Defendants err in contending that Plaintiffs' exhibits are improper in the context of their summary judgment motion. As an initial matter, none of Plaintiffs' exhibits change the substance of their arguments. They simply supplement the pre-existing record that already supports summary judgment. The exhibits reinforce Plaintiffs' arguments that (1) Defendants violate 8 U.S.C. § 1231(b) by failing to follow the statutory sequencing in selecting a third country, and (2) their third-country removal policy is unlawful, in part because it fails to protect against chain refoulement. Dkt. 232 at 4. With respect to the first point, in arguing that "the record supports Plaintiffs' challenge to Defendants' use of diplomatic assurances and demonstrates they do not comply with the law," Plaintiffs reference the existing record and cite media reports. *Id*. And as to the second point, Plaintiffs cite Dkt. 216-1 at 3-4, which is the district court's decision in *D.A. v. Noem*, No. 25-cv-3135 (TSC), -- F. Supp. 3d. --, 2025 WL 2646888 (D.D.C. Sept. 15, 2025), involving Ghana's chain refoulement of class members, as well as the order to return Plaintiff O.C.G., Dkt. 132, who has been chain refouled by Mexico to Guatemala. Plaintiffs' "see also" cites in footnotes 4 and 5 simply reinforce the existing record by referencing declarations concerning DHS' failure to follow sequencing and class members who were subjected to chain refoulement, respectively. Moreover, Defendants' objection to the declarations addressing the first point is misguided, since Defendants readily claim that they are empowered to conduct third

country removals even where an individual's country of origin is willing to accept them and that

they may deport someone to *any* country if DHS deems it "impracticable, inadvisable, or

impossible" to deport them elsewhere, based on a broad interpretation of those statutory terms

that encompasses "countless logistical and foreign policy considerations." *See* Dkt. 231 at 36,

Dkt. 232 at 14-15.

Additionally, Plaintiffs rely on the existing record to refute Defendants' contention that

the risk of erroneous deprivation to Plaintiffs and class members from their third-country

removal policy is "low." *See* Dkt. 232 at 14 (refuting Defendants' contention at Dkt. 231 at 35).

Namely, Plaintiffs cite Plaintiff O.C.G.'s experience, Dkt. 132, as well as the existing record.

The record already includes ample evidence that Defendants subjected individuals to third

country deportation to face indefinite detention in El Salvador and affirmatively lied to class

members that they were being returned to their countries of origin while subjecting them to third

country deportation to countries where they had experienced harm, *see* Dkt. 7 at 14-15 (citing

Dkt. 8-8); Dkt. 57 at 20 (citing Dkts. 59-14, 59-16), and of Defendants' attempted removals and

actual removals of class members to El Salvador, Libya, and South Sudan. *See* Dkts. 86, 91, 118;

*see also* Dkt. 72 (describing third country deportations); Dkt. 89 (citing Dkts. 90-1 – 90-6, which

describe attempted third country removal of class members to Libya without notice); Dkt. 112

(citing Dkts. 112-1, 112-3, which describe then-ongoing third country removal of class members

to South Sudan). While Plaintiffs *additionally* cite the accompanying exhibits, they do so only to

demonstrate that class members' ongoing experiences since the March 30 Memo and July 9

Guidance *continue to* demonstrate a high risk of erroneous deprivation. Specifically, class

members continue to be deprived of notice and an opportunity to contest removal, including

under the guise of diplomatic assurances, prior to removal to countries where class members

have been indefinitely detained under armed guard by foreign governments, subjected to chain

refoulement back to countries from which they have received protection, disappeared and held

incommunicado, and physically attacked by immigration agents in the United States and other

countries. Dkt. 232 at 14. Again, the exhibits simply illustrate the *ongoing* problem of DHS'

failure to provide meaningful notice and opportunity to raise a fear-based claim prior to removal

to a third country—the precise problem that Plaintiffs challenged in the Complaint and have

continued to challenge following Defendants' eleventh-hour issuance of the March 30 Memo.[1]

 "Courts and parties 'have great flexibility with regard to evidence that may be used on a

Rule 56 proceeding,' and as Rule 56(c) makes clear, in deciding summary judgment motions

courts 'may consider any material that would be admissible or usable at trial.'" *Asociación de*

*Periodistas de Puerto Rico v. Mueller,* 680 F.3d 70, 78 (1st Cir. 2012) (citation omitted). Here,

the exhibits include sworn declarations that do not change the substance of the legal arguments

or the existing record and would be admissible at trial. Plaintiffs are not raising new legal

arguments based on the exhibits nor do the exhibits change the merits of their existing

arguments; rather, the exhibits illustrate DHS' continued third-country policy and practice.

 Defendants cite cases that are inapposite. Dkt. 234 at 2-3. In citing *United States v.*

*Tsarnaev,* a criminal case involving a change of venue motion, Defendants plainly ignore that the

court *allowed* the defendant to submit a "'reply' brief and supporting documents . . . , which

totaled *9,580 pages*, [and] *set forth new arguments* with new evidentiary support, including a 37–

---

[1]  To the extent that Defendants complain that some of the exhibits address the conditions of confinement in third countries to which Defendants have removed class members, including under the guise of diplomatic assurances, Dkt. 234 at 6, these exhibits likewise demonstrate Defendants' third country removal policy and practice. In their motion for partial summary judgment, Plaintiffs are not asking the Court to provide any declaratory relief regarding class members' rights abroad.

page [expert] declaration." Crim. No. 13–10200–Gao, 2015 WL 45879, at *1 (D. Mass. Jan. 2, 2015) (emphasis added).[2] In *Hilsinger Co. v. Kleen Concepts, LLC*, the district court struck from defendant's reply brief "*an entirely new legal theory*" and "an affidavit containing new facts" because the arguments were not raised in defendant's opening brief. No. CV 14-14714-FDS, 2017 WL 3841468, at *7 (D. Mass. Sept. 1, 2017) (emphasis added).

Here, unlike the parties opposing the motion to strike in *Tsarnaev* and *Hilsinger*, Plaintiffs do not raise any new legal arguments in their Reply in Support of Partial Summary Judgment. Defendants erroneously argue "Plaintiffs have previously scarcely addressed" chain refoulement. Dkt. 234 at 5. On the contrary, Plaintiffs repeatedly have addressed chain refoulement, including in the Complaint with respect to Plaintiff O.C.G., in the motions for injunctive relief seeking his return, in opposition to Defendants' motion for an indicative ruling based on the March 30 Memo, and in their partial motion for summary judgment. *See, e.g.*, Dkt. 1 ¶¶ 5, 13,78- 89 (Complaint); Dkt. 8-4 (O.C.G. declaration); Dkt. 7 at 8-9, 11, 20 and Dkt 57 at 11, 14 (first motion for injunctive relief and reply in support of first motion for injunctive relief); Dkt. 49 at 1, 7-8 (Plaintiffs' opposition to Defendants' motion for an indicative ruling based on the March 30 Memo); Dkts. 105, 123, 132 (second injunctive relief motion, reply, declaration and order to return Plaintiff O.C.G.); Dkt. 194 at 15-18 (Plaintiffs' motion for partial summary judgment). Further, Plaintiffs supplemental exhibits total 172 pages, substantially less than the 10,000 pages the court accepted in *Tsarnaev*.

Defendants' citation to *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, Dkt. 234 at 3, supports Plaintiffs' position. There, the First Circuit held defendants' materials were improper and prejudicial where defendants submitted a reply brief and new affidavits on *the day of the*

---

[2]       Rather than strike the documents, the court allowed the defendant to file a sur-reply. *Id.*

*summary judgment hearing*. 754 F.2d 404, 409 (1st Cir. 1985). Additionally, unlike the party

opposing the motion to strike in *Caribe*, Plaintiffs filed the exhibits *within* the court-scheduled

filing deadline for their reply and eight days before the hearing. *See id.*

Finally, in *Alifax Holding Spa v. Alco Scientific Inc.*, the court accepted declarations

attached to a reply in support of summary judgment that corroborated evidence provided in

support of summary judgment and argued that contentions in the opposition to summary

judgment were contrary to facts that could not be genuinely disputed. No. 14-440 S, 2018 WL

11371589, at *2-3 (D.R.I. Oct. 16, 2018). Here, the exhibits support Plaintiffs' responses to

claims for which Defendant provided *no* evidentiary support in the record. *See, e.g.*, Dkt. 231 at

31-32, 35 (stating, without support, that the existing process "substantially eliminate[s] the risk

of an erroneous deprivation regarding [class members'] potential fear of persecution or torture"

and that "the risk of such a deprivation under the current procedures is exceedingly low").

Lastly, contrary to Defendants' assertion that the exhibits "undermine[]" Plaintiffs' claim to

partial summary judgment, Dkt. 234 at 3, 4, they merely reinforce the existing record.

Thus, this Court should not strike Plaintiffs' exhibits in the context of their summary

judgment motion.

### B.     Motion to Dismiss under Rule 12(b)(1)

Defendants also err in challenging the propriety of the exhibits filed in support of

Plaintiffs' opposition to Defendants' motion to dismiss, in which Defendants launch a factual

jurisdictional attack under Rule 12(b)(1). Dkt. 234 at 3-5. Because Defendants attack this Court's

jurisdiction based on these factual allegations, this Court may "weigh the evidence and satisfy

itself as to the existence of its power to hear the case." *Toddle Inn Franchising, LLC v. KPJ

Assocs., LLC*, 8 F.4th 56, 61 n.5 (1st Cir. 2021) (citation omitted). Indeed, this Court "enjoys

broad authority" to "consider extrinsic evidence." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

As Plaintiffs have indicated, Defendants raise, inter alia, the following factual claims in their motion to dismiss: that a noncitizen "knows to which specific countries they fear removal;" "can . . . move to reopen their proceedings to seek protection from removal to additional countries at any time;" "can assert fear of removal to any country at any time;" "can make [a third-country fear claim] through the administrative process;" and "know[s] this process is available"; that "CAT claims . . . can be raised in the administrative process"; that "Plaintiffs essentially admit that if they were detained, their removal would be reasonably foreseeable"; and that Plaintiff E.F.D. "has already received the relief requested in [Count V]." *See* Dkt. 232 at 2 n.1 (citing Dkt. 231 at 12, 14, 17).

Plaintiffs' exhibits refute these factual contentions. For example, the exhibits demonstrate that noncitizens often do not know enough regarding conditions in third countries to affirmatively provide an exhaustive list of countries to which they fear removal—many noncitizens have been subject to indefinite detention and/or abuse in detention *as a result of* the third country removals, *see, e.g.*, Dkts. 233-1, 233-2, 233-3 & Att., 233-4, 233-5, 233-6, 233-7 & Atts., 233-9, 233-13, 233-17, and would not have been aware of that risk before Defendants sought to deport them. Similarly, other noncitizens have claims that arose due to publicity around their deportations in the country to which they were deported, *see* Dkt. 233-4 ¶ 6, or because they were subject to actual or threatened chain refoulement after a third country deportation, *see* Dkts. 233-7 & Atts., 233-8, 233-9, 233-11, 233-12, 233-18 & Atts, 233-19, 233-20. The exhibits refute Defendants' claims that class members could move to reopen proceedings or assert a fear claim related to any country at any time or assert a CAT or other third country fear claim through an

"administrative process." They show that many class members were unaware of the country to which they would be deported until they were in the process of being deported, *see, e.g.*, Dkt. 233-1 ¶ 13; Dkt. 233-2 ¶¶ 23, 36; Dkt. 233-4 ¶ 5; Dkt. 233-6 ¶ 17; Dkt. 233-7 ¶ 4; Dkt. 233-8 ¶ 11; Dkt. 233-9 ¶ 3; Dkt. 233-13 ¶ 5; Dkt. 233-14 ¶ 8; Dkt. 233-17 ¶ 8; Dkt. 233-19 ¶ 6; 233-21 ¶ 6, and, as Plaintiffs previously established, class members' attempts to raise fear claims and/or motions to reopen have been denied absent proof that deportation to the country in question was forthcoming, *see, e.g.*, Dkt. 232 at 12-13; *see also, e.g.*, Dkt. 233-5 ¶ 4 (describing class member who believed he would be deported to his country of origin). Moreover, the declarations establish that individuals attempting to raise fear claims to DHS have been beaten, threatened, or ignored. *See, e.g.*, Dkts. 233-15 & Atts. (describing physical abuse and coercive threats used against individuals attempting to raise fear claims); Dkt. 233-12 ¶ 14 (threats and request for fear screening interview ignored); Dkt. 233-25 ¶ 6 (threatened with lifelong detention when raising fear claim); Dkt. 233-10 ¶ 7 (immigration officers beating, dragging, and kicking individuals raising fear claims during third country deportation); Dkt. 233-8 ¶ 7 (request for fear screening interview ignored); *cf.* Dkt. 233-22 ¶ 8 (beaten and tied up following expression of fear); Dkt. 233-23 ¶ 10 (pepper-sprayed and dragged during third country deportation).

The exhibits also belie Defendants' claim that Plaintiffs "essentially admit that if they were detained, their removal would be reasonably foreseeable," since they provide examples of class members detained for more than six months before being subject to third country deportation. *See, e.g.*, Dkt. 233-1 ¶ 30, 33; Dkt. 233-2 ¶ 70; Dkt. 233-13 ¶ 3. The exhibits demonstrate that Plaintiffs' re-detention claims are ripe for consideration, contrary to Defendants' effort to dismiss the claim as moot. Dkt. 232 at 25-27. The exhibits provide further evidence beyond the plain language of Defendants' written policy (March 30 Memo and July 9

Guidance), that Defendants "are aggressively detaining noncitizens to attempt to effectuate third-country removals and that their third-country-removal policy permits them to carry such removals out with less than 24 hours' notice (if any notice is even provided)." *Id*. at 26.[3]

Finally, Defendants' citation to *Valentin* is irrelevant—Plaintiffs do not dispute Defendants' entitlement to challenge jurisdictional facts through a Rule (b)(1) motion to dismiss. *See* Dkt. 234 at 4 (citing *Valentin*, 254 F.3d at 363-64). And Defendants acknowledge that the Court "may consider facts outside the complaint" when assessing a motion to dismiss under 12(b)(1). Dkt. 234 at 4 (citing *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002)).

Here, the exhibits are relevant to dispute Defendants' erroneous factual contentions regarding jurisdiction, counter Defendants' ripeness argument as to Plaintiffs' re-detention claim, and buttress previously raised arguments grounded in the existing record. Thus, this Court should not strike the exhibits filed in support of Plaintiffs' opposition to Defendants' motion to dismiss.

## IV.    CONCLUSION

The Court should deny Defendants' motion to strike Plaintiffs' exhibits and should maintain the December 16, 2025 hearing date.

---

[3]    *See, e.g.*, Dkt. 233-9 ¶ 3 (Venezuelans interviewed by Human Rights Watch "were [not] informed prior to their removal that they would be sent to El Salvador"); Dkt. 233-14 ¶ 6 (class member, a Honduran transgender woman, was removed to Mexico and "did not know she was going to Mexico until she got off the bus and saw Mexican immigration officers"); Dkt. 233-7 ¶ 4 (non-Ghanaian individuals did not know they were being removed to Ghana until "only shortly before or while being loaded onto the plane," or "received no notice of their removal to Ghana until after the plane took off"); Dkt. 233-8 ¶ 11 (class member, a citizen of Sierra Leone deported to Ghana, "had no opportunity to raise a fear claim about deportation to Ghana and did not know where she was being sent before being placed on a plane for deportation"); Dkt. 233-21 ¶ 8 (Cuban class member did "not receive[] any kind of advance notice of deportation to Mexico" and did not know he was being deported to Mexico until he "saw the border wall").

Respectfully submitted,

s/*Trina Realmuto*
Trina Realmuto
Kristin Macleod-Ball
Mary Kenney
NATIONAL IMMIGRATION
   LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4649
trina@immigrationlitigation.org

Anwen Hughes
Inyoung Hwang
HUMAN RIGHTS FIRST
121 W. 36th St., PMB 520
New York, NY 10018

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
NORTHWEST IMMIGRANT
   RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

*Attorneys for Plaintiffs and Class Members*

December 12, 2025

## CERTIFICATE OF SERVICE

     I, Trina Realmuto, hereby certify that on December 12, 2025, I caused a true and correct copy of the foregoing document to be filed with the Clerk of Court by using the CM/ECF system, which will send a notice of the electronic filing to counsel of record for all parties.

/s/ *Trina Realmuto*
Trina Realmuto